UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA

    -against-

                                                         05 Cr. 621 (KMK)

ALBERTO WILLIAM VILAR and
GARY ALAN TANAKA,
                Defendants.
-----------------------------------------------------------

**DEFENDANT ALBERTO VILAR'S REPLY MEMORANDUM
OF LAW IN SUPPORT OF HIS MOTIONS TO SUPPRESS**

      This memorandum is submitted in reply to the Government's Memorandum of Law in Response and in further support of the defendant Alberto Vilar's pretrial motions to suppress evidence seized pursuant to a search warrant executed on or about May 25, 2005 at the offices of Amerindo Investment Advisors, Inc., 399 Park Avenue, 22nd floor, New York, New York; to suppress any and all post-arrest statements taken in violation of *Miranda v. Arizona,* 384 U.S. 436 (1966); for leave to file additional motions based upon defendant's review of the voluminous discovery in this case, and for leave to join in the motions made by counsel for co-defendant Tanaka to the extent said motions are applicable to the defendant Vilar.

**ARGUMENTS IN REPLY**

**The Search Warrant is Overbroad and the Vast Majority of Its
Provisions Are Unsupported by Probable Cause**

      At the outset, in considering the scope of the alleged fraud in this case, we ask the Court to take judicial notice of the tremendous decline in the stock market, especially in the technology sector, starting in or about 2001. The indictment's gratuitous allegation that Lilly Cates' approximately $18 million investments sharply declined in value during the two years following

September, 2000 must be read in this historical context.  The complaint and indictment allege malfeasance with respect to a specific $5 million investment Cates made in June, 2002, and not with respect to her earlier investments. [1]

Both the Mayer and Cates investments described in the search warrant application were, according to the allegations, offshore investments through a Panamanian entity, referred to as Amerindo Investment Advisors, Inc. or Amerindo Panama.  Similarly, the Tanaka complaint attached to the application describes "redemptions" apparently taken by Tanaka from Amerindo Panama brokerage accounts.  Nevertheless, the search warrant authorized the seizure of records of four affiliated Amerindo companies, including the U.S. regulated company.  While the government claims that the "[t]he warrant included two specifically defined terms, 'Amerindo' and 'Amerindo Brokerage Accounts,' which were employed *to limit* the scope of the documents to be seized," these definitions were expansive rather than in any way limiting, since no Amerindo entities were excluded.  Thus, the government has taken the complaints of two investors whose funds were allegedly invested by Amerindo Panama and inflated those two complaints into an argument that all of the Amerindo entities were permeated by fraud.  The government's argument is not supported by the case law in this area and should be rejected.

The search warrant in this case is not limited by reference to a particular entity, time frame or offense.  It is overbroad and all of the evidence seized should be suppressed.  Because the language of most of the eighteen paragraphs is so general, and there is so much overlap among the paragraph descriptions, it is submitted that portions of the warrant cannot be severed and sustained.  If, however, the Court concludes that severance is appropriate, the Court should

---

[1] The search warrant application also includes a claim – the kind of claim disappointed investors often and easily make -- that Cates did not receive sufficient information about a 1988 investment in Rhodes Capital.  See Exhibit B at p.4.

suppress all evidence except that obtained pursuant to paragraphs 6 (pertaining to Cates and the Mayers) and 7 (pertaining to the SBIC investment).

**The Good Faith Exception Cannot be Applied to the Circumstances of this Case**

In determining whether the executing agents acted in good faith, the Court examines the totality of the circumstances, including whether the affidavit effectively limited the scope of the search, whether the search was in fact limited by the allegations supported by probable cause, and whether a general search was in fact conducted. *See United States v. Burke,* 718 F.Supp. 1130, 1141-2 (S.D.N.Y. 1989).

The search warrant inventory includes the following entries that are illustrative of the scope, breadth and generality of the search:

- Alberto Vilar – personal finance documents
- Orange hanging folder containing written speech by Villar to Hispanic Federation 11/21/02
- Personal correspondence
- Vilar personal
- Privileged & Confidential memo
- Alberto Vilar Tax and Banking files 1990 > [on]

The search warrant inventory is almost two inches thick (pages not numbered), including pages and pages of computer equipment seizures. The majority of the materials seized appear to pertain to Amerindo US, for which the application provides no probable cause at all.

It is hard to imagine a warrant that is broader than the one in this case; it is not a question of specificity or lack thereof, it is an issue of overbreadth – the warrant authorizes the seizure of everything. Item number 16 of the warrant alone, which authorizes the seizure of "other

3

documents concerning or reflecting information concerning the identities of participants in the fraud scheme," could be used to seize virtually every personal item of every person who worked on the premises. The evidence seized should be suppressed or, in the alternative, a hearing should be held.

In order for the warrant clause of the Constitution to have any meaning and any continued viability in the wake of the good faith exception, law enforcement agents must have some incentive to carefully tailor warrant applications to specific probable cause showings and so avoid the temptation to conduct general searches. Similarly, Magistrates must have some incentive to scrutinize warrant applications instead of relying on the government's good faith. The incentive in this realm is and has always been the exclusionary rule. If this Court were to find that the agents acted in good faith (which, we submit, they did not), there must be some consequence for having submitted to the Magistrate a warrant so hugely and obviously overbroad. Otherwise, the warrant clause is meaningless. That consequence should be, at the very least, a limitation on the use of the materials that were seized in derogation of the defendants' constitutional rights. If the seized evidence is deemed admissible under the good faith exception, the Court should not also permit the government to exploit the fruits of an unconstitutional warrant in pursuing additional charges against the defendants. The admissibility of seized evidence should be limited, in cases where a warrant is saved by the good faith exception, to proving pending charges; the evidence should not be used to pursue the commonplace practice of obtaining successive superseding indictments as the government continues to review the materials. Just as an individual may receive use immunity for relinquishing her Fifth Amendment privilege, a defendant whose Fourth Amendment rights have been violated should at least receive a measure of that kind of immunity – immunity from further

exploitation, beyond the pending charges, of the improperly seized evidence. This result would strike a balance that serves the public's dual interest in seeing that crimes are prosecuted and that the constitutional rights of individuals are preserved.

**Other Issues**

With respect to all other issues raised in the defendant's motion and Memorandum, he relies on the arguments already submitted. He also joins in the motion of his co-defendant to suppress computer files.

## CONCLUSION

For the reasons stated above and in the defendant's initial Memorandum, defendant Alberto Vilar respectfully prays that his pretrial motions be granted in their entirety or, in the alternative, that a hearing be held.

Dated:  New York, New York
        October 10, 2005

                                                Respectfully submitted,

                                                **HOFFMAN & POLLOK LLP**
                                                260 Madison Avenue
                                                New York, NY  10016
                                                (212)  679-2900

                                                A*ttorneys for Defendant*
                                                Alberto Vilar

On the Brief,
       Susan C. Wolfe