

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 14, 2005

BY HAND

**MEMO ENDORSED**

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 920
New York, New York 10007

    Re: United States v. Alberto William Vilar and Gary Alan Tanaka,
       S1 05 Cr. 621 (KMK)

Dear Judge Karas:

  The Government respectfully submits this letter to update the Court on its progress to date with respect to: (1) reviewing documents and computer evidence obtained from Amerindo Investment Advisors Inc. ("Amerindo US") pursuant to a search warrant executed on May 26, 2005, and (2) obtaining evidence sought from foreign countries through the mutual legal assistance treaty ("MLAT") process.

  As the Court no doubt recalls, on August 11, 2005, the Court granted the Government's request for a 90-day exclusion of time under the Speedy Trial Act, to October 31, 2005, to complete discovery (including time to sort out privilege issues raised by the defendants), and a 120-day exclusion of time, to November 30, 2005, to permit the Government to obtain discovery from foreign countries pursuant to the MLAT process.

  The Government completed its initial review of approximately 168 boxes of documents seized from Amerindo US before the end of August, 2005. From those documents, the Government segregated approximately 22 boxes of potentially privileged documents. Because the Government cannot assert privilege on behalf of the defendants, in the first week of September, the Government proposed that the defendants review the 22 boxes of potentially privileged documents and create a privilege log identifying any documents for which they were asserting a privilege and the privilege being asserted. The Government further proposed that a Government "taint team" comprised of Assistant United States Attorneys not otherwise involved in the prosecution of this case would then review the documents identified on the privilege logs and litigate such claims, if necessary.

Hon. Kenneth M. Karas
October 14, 2005
Page 2

On September 30, 2005, Mr. Tanaka's counsel, Steven Kobre, Esq., on behalf of both Mr. Tanaka and Mr. Vilar, informed the Government that the defendants had decided to have counsel for Amerindo US, Eugene Licker, Esq., take the first pass at reviewing the potentially privileged documents, that Mr. Licker would be responsible for asserting privilege on behalf of Amerindo US, and that each defendant would then review the subset of documents as to which he might be able to assert a privilege. Over the past two weeks, a team of Amerindo US lawyers has been reviewing the 22 boxes of documents and has, by their estimate, flagged approximately one-half of the documents for copying so that appropriate further review and preparation of a privilege log or logs can be undertaken. The Amerindo lawyers completed their initial review of the 22 boxes of documents today.[1]

According to its best current estimate, the Government's review of the computer evidence seized from Amerindo US will take approximately six weeks longer than expected when it requested a ninety-day exclusion of time under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(8)(A). The Government has completed its analysis of approximately 24 of the 32 seized computers. Several of the remaining computers have raised unexpected challenges. First, one server, which the Government's computer analyst had delayed reviewing in part because Amerindo's Chief Technology Officer had informed him that it did not contain a significant amount of data, was recently found to contain approximately 125,000 e-mails, approximately 50,000 files, and a large corrupt file which can not be viewed and which may require analysis by a private contractor. Given the analyst's experience analyzing a comparable Amerindo server, and the uncertainty about the time required to restore the corrupt files, he estimates that it will take approximately three to four weeks longer than had been expected to complete the analysis and segregation of potentially privileged material from that computer alone. Second, the production of a copy of the mirror images of all of the seized computers – more than approximately one terabyte of data – as requested by Mr. Kobre in approximately mid-September, unexpectedly tied up one of the two computers being used for the forensic analysis for approximately one week. Finally, one of the seized computers contains proprietary database software with which the analyst is not familiar. He has spent considerable time working with that software, and the manufacturer to put the data into a useable form. He estimates that, by the time those issues are resolved, approximately one to two weeks' more time will have been spent analyzing that computer than the Government had originally anticipated.

Because of unexpected circumstances which have arisen with respect to the forensic analysis of the Amerindo computers, and delays in the privilege review process, it is now clear that the privilege review process will not be completed by October 31, as the Government had

---

[1] On September 29, 2005, the Government produced to defense counsel an initial installment of thirteen (13) DVDs containing potentially privileged material from the Amerindo US computers. The Government does not know how much, if any of that material has been reviewed by Mr. Licker's team.

Hon. Kenneth M. Karas
October 14, 2005
Page 3

hoped, but rather will take at least six weeks longer than expected – with the total amount of time required depending in part upon how quickly the defendants identify with specificity the documents for which they are claiming a privilege, and how many such documents must then be reviewed by a Government "taint team" to determine whether litigation regarding asserted privilege is necessary. In that regard, the Government notes that in an October 11, 2005 letter (in response to an October 7, 2005 letter from the undersigned, both of which are attached hereto as Exhibits A and B), Mr. Kobre announced that Mr. Tanaka did not intend to review the 22 boxes of potentially privileged documents (nor, presumably, the potentially privileged computer data), but nevertheless did not want to be bound by the review conducted by his agent, Mr. Licker. Instead, Mr. Tanaka is "reserv[ing] the right to assert any applicable privilege with respect to any document, including those documents which Mr. Licker determines are not privileged." The Government believes that Mr. Tanaka's position, if maintained, would prevent the Government from being able to meet its *Brady* and other obligations without fear of being tainted by exposure to privileged documents for which no privilege had either been claimed or waived.[2] In these circumstances, it is impossible for the Government to predict how long it will take to complete the litigation of any privileges asserted by the defendants and Amerindo US, among others.

With respect to the Government's efforts to obtain evidence from foreign countries pursuant to the MLAT process, the Government can report the following. First, the documents formerly located in the Amerindo UK offices (which were the subject of discussion at the August 11 hearing) were moved on or about August 17 to a warehouse in London. It took several weeks for the UK authorities to locate the facility to which those documents were moved, and several more weeks to obtain the necessary search warrants. The facility was searched on October 13 and 14. The preliminary estimate from U.S. Postal Inspectors assisting with the search is that approximately 40 boxes of documents will be copied and then shipped to the United States by the Metropolitan Police in approximately two to three weeks. Approximately ten computer hard drives are also being imaged, and will be sent to the United States. (The Govenment is making arrangements to have another computer forensics analyst available to begin working on those hard drives as soon as they are in the Government's custody). Second, the Government has outstanding requests for documents pending in Panama and the Bahamas. Those requests were first transmitted to Washington in July and August, respectively, and were transmitted abroad in August and October, respectively. The Government has not received firm estimates of when Panama and the Bahamas will produce responsive documents. Third, a supplemental request for documents from the United Kingdom is pending approval in the U.S. Department of Justice, Office of International Affairs ("OIA"). It now appears that the Government may require some additional time to finish obtaining evidence from foreign countries; however, the Government

---

[2] The Government has asked for clarification of whether Mr. Vilar is adopting the same position as Mr. Tanaka in this regard, but has, to date, received no response. That request is contained in the Government's response to Mr. Kobre's letter which is attached hereto as Exhibit C.

Hon. Kenneth M. Karas
October 14, 2005
Page 4

will not be in a position to estimate how much additional time, if any, it will require until it has obtained firmer estimates from the Bahamas and Panama about when they will produce documents responsive to the Government's requests. The Government will continue to press for that information through the OIA.

The Government will be prepared to discuss these issues at the pretrial conference scheduled for November 7, 2005, at 4:30 p.m.

Respectfully submitted,

MICHAEL J. GARCIA
UNITED STATES ATTORNEY

By: *Marc Litt*
Marc Litt
Assistant United States Attorney
(212) 637-2295

cc: Glenn C. Colton, Esq. (By facsimile)
Steven Kobre, Esq. (By facsimile)
Jeffrey Hoffman, Esq. (By facsimile)
Eugene Licker, Esq. (By facsimile)

*Defendants are directed to respond to this letter by October 25, 2005. The issues addressed in this letter will be discussed at the November 7 conference.*

SO ORDERED

*KENNETH M. KARAS U.S.D.J.*
10/18/05

# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 7, 2005

<u>BY FACSIMILE</u>

Glenn C. Colton, Esq.
Wilson Sonsini Goodrich & Rosati
12 East 49th Street, 30th Floor
New York, New York 10017-8203

Steven G. Kobre, Esq.
Kobre & Kim LLP
800 Third Avenue
New York, New York, 10022

Jeffrey C. Hoffman, Esq.
Hoffman & Pollok LLP
260 Madison Avenue
New York, New York 10016

        Re:    *United States v. Alberto William Vilar and Gary Alan Tanaka,*
              S1 05 Cr. 621 (KMK)

Dear Counsel:

      I write to memorialize the Government's understanding of the privilege review process that is now underway.

      On September 30, 2005, Mr. Kobre informed the Government, on behalf of both Mr. Tanaka and Mr. Vilar, that Eugene Licker, Esq., counsel for Amerindo, would take the first pass at reviewing the 22 boxes of potentially privileged documents segregated by the Government from the documents seized during the search of Amerindo Investment Advisors Inc.'s ("Amerindo") offices at 399 Park Avenue, New York, New York. It is the Government's understanding, based on conversations with Mr. Kobre and Mr. Licker that Mr. Licker is reviewing the documents and dividing them into categories including documents for which: (1) no privilege is applicable; (2) Amerindo is asserting a privilege; (3) Mr. Vilar may be able to assert a privilege; (4) Mr. Tanaka may be able to assert a privilege; (5) the Amerindo mutual fund may be able to assert a privilege; (6) Amerindo Investment Advisors, Inc. may be able to assert a privilege; and (7) any other entity or individual may be able to assert a privilege. It is the

Government's further understanding that Mr. Licker will create a privilege log for the documents falling into Category No. 2, and that attorneys for Mr. Vilar and Mr. Tanaka will examine the documents falling into Category Nos. 3 and 4, respectively, to determine what, if any, privilege(s) to assert and to prepare a privilege log of documents for which any privilege is being asserted. Mr. Licker will, in conjunction with the attorneys for Mr. Vilar and Mr. Tanaka attempt to determine who may properly assert privilege with respect to documents falling into categories 5, 6, and 7. Once the Government is provided with privilege logs from Amerindo, Mr. Vilar, and Mr. Tanaka (and potentially other interested parties), a "taint team" of Assistant U.S. Attorneys not participating in the prosecution of this case will review those logs and the referenced documents and will litigate privilege issues, if necessary. Finally, it is the Government's understanding that Mr. Vilar's and Mr. Tanaka's lawyers do not intend to examine the documents falling into Category No. 1 as part of the privilege review and that the defendants are waiving any applicable privileges with respect to documents so categorized by Mr. Licker.

The Government is also operating under the assumption that the defendants intend to have Mr. Licker review the potentially privileged documents recovered from the computers seized from Amerindo. When I mentioned that to Mr. Licker yesterday, it appeared to be the first time he had heard anything about reviewing computer data (including the 13 DVDs of potentially privileged materials that were forwarded to you with my letter of September 29, 2005). Please let me know how the defendants intend to review the potentially privileged computer data so that I know to whom I should send additional potentially privileged data as it becomes available. If the defendants intend to have Mr. Licker review those materials, I trust that counsel will make available to Mr. Licker either a copy of one of the sets of DVDs that were sent to you on September 29, or make a copy of those materials available to him.

Please don't hesitate to contact me if you would like to discuss this matter further.

Very truly yours,

MICHAEL J. GARCIA
United States Attorney

By: _____
Marc Litt
Assistant United States Attorney
(212) 637-2295

cc:   Eugene Licker, Esq. (by facsimile)

2

# EXHIBIT B

# KOBRE & KIM LLP

800 THIRD AVENUE
NEW YORK, NEW YORK 10022
TEL 212.488.1200
FAX 212.488.1220
WWW.KOBREKIM.COM

October 11, 2005

**BY FAX**

Marc Litt, Esq.
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

    Re:  **United States v. Alberto William Vilar and Gary Alan Tanaka**
        S1 05 Cr. 621 (KMK)

Dear Mr. Litt:

  I am writing in response to your letter relating to the privilege review process.

  We share your understanding of the privilege review process with the following exception. Mr. Tanaka reserves the right to assert any applicable privilege with respect to any document, including those documents which Mr. Licker determines are not privileged. Although Mr. Tanaka does not intend to review such documents in the first instance and has no reason to believe that he will disagree with any of Mr. Licker's determinations, Mr. Tanaka does not wish to waive his rights should the Government seek to use a privileged document.

  Please contact me if you wish to discuss this matter further.

                Sincerely,

                Steven G. Kobre
                212.488.1202

cc:  Glenn C. Colton, Esq.
    Jeffrey C. Hoffman, Esq.
    Eugene Licker, Esq.

# EXHIBIT C

Case 1:05-cr-00621-RJS    Document 39    Filed 10/20/2005    Page 10 of 12



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 12, 2005

BY FACSIMILE

Steven G. Kobre, Esq.
Kobre & Kim LLP
800 Third Avenue
New York, New York, 10022

      Re:   *United States* v. *Alberto William Vilar and Gary Alan Tanaka,*
             S1 05 Cr. 621 (KMK)

Dear Mr. Kobre:

    I write in response to your letter dated October 11, 2005, concerning the privilege review process that is now underway.

    First, your caveat to the Government's description of the privilege review process – that is, your client's reservation of "the right to assert any applicable privilege with respect to any document, including those documents which Mr. Licker determines are not privileged" – is unacceptable to the Government because it essentially renders the process a meaningless exercise. In the Government's view, the point of the process is to identify expeditiously those documents for which a privilege is being claimed, and to litigate the validity of such claims, if necessary. Only after that process is complete can the Government confidently review the universe of non-privileged documents and fulfill its *Brady* and other discovery obligations without fear of being "tainted" by exposure to privileged documents. Based on our conversation in early September, I thought that you agreed that your client could not maintain a "blanket" privilege over a group of documents, but rather was required to identify specific documents and assert specific privileges with respect to any document believed to be privileged. Your letter reasserts an unspecified privilege over <u>all</u> the documents that the Government has identified as being potentially privileged. If your client is not prepared to live with the decisions made by Mr. Licker in identifying documents for which he believes no privilege attaches, please inform me when and how your client will review those documents and prepare a privilege log so that privilege issues concerning those documents, if any, can be litigated promptly. Likewise, if your client is not prepared to live with the decisions made by others (for example, decisions made by Mr. Vilar with respect to documents identified by Mr. Licker as being potentially privileged as to Mr. Vilar), please confirm that your client will review all the documents identified by Mr. Licker

as being potentially privileged as to individuals and entities other than your client so that it will be clear that no privilege will be asserted by your client with respect to any document not identified on a privilege log.

Second, it was not clear whether by your use of the word "We" in the second paragraph of your letter you were speaking on behalf of Mr. Vilar's counsel, as you were when you informed me of the defendants' plan to have Mr. Licker review documents for privilege in the first instance.

Third, your letter was silent with respect to whether Mr. Licker also will be responsible for undertaking the initial review of the potentially privileged computer data identified and produced by the Government. Please inform me of how the defendants intend to review that material. (Of course, the Government's reservations about your *caveat* apply equally to the computer data and the paper documents).

Finally, although we have not discussed the issue of the costs associated with copying those documents identified by Mr. Licker as falling into Categories 2-7 (as defined in my letter of October 7, 2005), the Government expects that someone other than the Government will pay for any copies of those documents prepared for the use of the defendants and/or Amerindo US. The Government expects to send those documents to a copy center for copying as soon as Mr. Licker's initial review is complete, which may be as early as the end of this week. You, Mr. Hoffman, and/or Mr. Licker should make arrangements with JAGG Management (718-381-8560) concerning the copying of those documents for your individual and/or collective use.

Please don't hesitate to contact me if you would like to discuss this matter further.

Very truly yours,

MICHAEL J. GARCIA
United States Attorney

By: _____
Marc Litt
Assistant United States Attorney
(212) 637-2295

cc:   Glenn C. Colton, Esq.
      Jeffrey C. Hoffman, Esq.
      Eugene Licker, Esq. (by facsimile)