UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA

    -against-

                                      05 Cr. 0621

ALBERTO VILAR, *et. al.,*

---------------------------------------------------------

## DEFENDANT ALBERTO VILAR'S POST-HEARING MEMORANDUM
## IN SUPPORT OF HIS MOTION TO SUPPRESS POST-ARREST STATEMENTS

       The defendant Alberto Vilar submits this letter memorandum in support of his motion to suppress post-arrest statements and to address the two questions posed by the Court: (1) what constitutes a complete *Miranda* rights recitation, and; (2) whether a defendant's acknowledgement that he understood what was said to him is enough to constitute a waiver of those rights.

<u>Testimony at the Hearing of Inspector Jean Wright and Inspector Thomas Feeney</u>

       Defendant Alberto Vilar was arrested at 8 pm on May 26, 2005 at Newark International Airport. He was taken into custody by Postal Inspectors Jean Wright and Thomas Feeney at the arrival gate.

       According to the testimony of both agents, Inspectors Feeney and Wright identified themselves as Postal Inspectors and informed Mr. Vilar that they were arresting him on charges of securities fraud and mail fraud (Tr. 21 and Tr. 34-35). Mr. Vilar asked what mail fraud was and Inspector Feeney provided him with a brief explanation (Tr. 21 and Tr. 35). Mr. Vilar was escorted to the bathroom and then taken to the agents' vehicle parked outside the arrival terminal. Inspector Wright testified that Mr. Vilar was not

placed in the vehicle in handcuffs, while Inspector Feeney testifies that he was (Tr. 21, 36). The defendant was placed in the backseat with Inspector Wright, and Inspector Feeney was in the driver's seat. (Tr. 22).

According to Inspector Wright, Inspector Feeney read Mr. Vilar the *Miranda* rights about 10 to 12 minutes into the ride, while driving the car and glancing at Mr. Vilar through the rear view mirror (Tr. 22).

Inspector Feeney testified that he informed the defendant: (1) "that he had a right to remain silent", (2) "that anything he said could be used against him", (3) "that he had a right to an attorney" and (4) that if he could not afford one, "one would be provided to him" (Tr. 40). Inspector Wright claimed that Mr. Vilar was also advised that, if he chose to answer questions without an attorney present, he would still have the right to stop answering at any time (Tr. 23).

Inspector Feeney further testified that, at the end of the recitation of rights, he asked the defendant if he understood, and Mr. Vilar said "Yes, I do."(Tr. 42).  Inspector Wright, however, did not recall if Mr. Vilar said anything at all after the rights were read. (Tr. 24)

For the rest of the approximately 35 minute car ride, Mr. Vilar did not speak, other than to ask if he could call an acquaintance and cancel an appointment.  Inspector Wright described Mr. Vilar's demeanor as "aloof." (Tr. 25).  Inspector Feeney described it as "professional and controlled." (Tr. 42).

Upon arrival at Postal Office Headquarters, Inspector Feeney took Mr. Vilar's pedigree information in Inspector Wright's presence but without her participation. (Tr. 25).  Inspector Feeney was also present for part of Mr. Vilar's subsequent substantive

interrogation by Inspector Fraterrigo. (Tr. 43). Inspector Fraterrigo did not read Mr. Vilar his *Miranda* rights before questioning him at headquarters and the entire interview was conducted without the presence of defendant's counsel.

1. <u>A Complete *Miranda* Rights Recitation Must Include Advisement of the Right to Have Counsel Present During Questioning</u>

In the landmark case of *United States v. Miranda*, 384 U.S. 436, 86 S.Ct. 1602 (1966), the Supreme Court recognized the need to protect targets of custodial interrogation from the "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he does not otherwise do so freely." *Id.* at 467. The High Court held that officers must warn a defendant that he "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id*. at 479.

The Court explicitly held that being informed of your "right to the presence of an attorney" means the right to counsel prior to questioning, during questioning and at any proceeding thereafter:

> The right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today. Our aim is to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process … the need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires. *Id*. at 469-470.

3

According to Inspector Feeney, who administered the rights to Mr. Vilar, he did not inform Mr. Vilar of his right to counsel's presence during questioning.[1]

In emphasizing the importance of this aspect of the *Miranda* warnings, the Court said that "as with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning [the right to consult with a lawyer and to have the lawyer with him during interrogation] is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead." *Id.* at 471-472.

In *California v. Prysock*, 453 U.S. 355, 359, 101 S.Ct. 2806, (1981), the Supreme Court stated that the Miranda warnings need not be a virtual incantation of the precise language of Miranda. It found the warnings adequate in the case before it only after noting that the defendant was "indisputably" advised of "the right to talk to a lawyer before you are questioned, *have him present with you while you are being questioned, and all during the questioning.*" *Id.* 358 (emphasis supplied).

The Ninth Circuit in *United States v. Noti*, 731 F. 2d 610, 614 (1984) recognized the "critical importance of the right to know that counsel may be present *during* questioning." In *United States v. Bland*, 908 F.2d 471, 473-474(1990), the Ninth Circuit held the *Miranda* warnings "inadequate" when the officer informed the defendant that "he had a right to an attorney prior to questioning and if he could not afford one, that an attorney would be appointed for him." The Court noted that "[t]he warning, however,

---

[1] As noted in the second issue addressed herein, Mr. Vilar was never presented with a written waiver describing his rights. Thus, the court has only an agent's memory, seven months later, of what was said to Mr. Vilar. While Inspectors Feeney and Wright remember the rights differently, Agent Feeney was the one who administered them. Agent Wright's memory may well be colored by her different understanding of what *Miranda* requires. Had she read the rights, she may have read them differently, but she did not. Inspector Feeney did, and he said nothing about Mr. Vilar's right to have an attorney prior to and during questioning.

failed to mention that Bland was entitled to have an attorney during questioning," *id.* at 474) and reaffirmed its decision in *United States v. Noti*, 731 F. 2d 610 (1984).

The Second Circuit, however, has taken the position, contrary to the explicit dictates of *Miranda*, that expressly informing a defendant of the right to counsel prior to and during interrogation is not an absolute prerequisite. [2] In *United States v. Floyd*, 496 F.2d 982 (1974) the Second Circuit held that the Miranda warnings were sufficient even though the defendant was not advised of his right to an attorney prior to and during questioning.

Even after the Supreme Court decision in *Prysock*, the Second Circuit continued along the same incorrect path in *United States v. Burns*, 684 F.2d 1066 (1982). The Court cited Prysock only for that proposition that there is no rigid and precise formula for giving the warnings, ignoring the central tenet that a defendant must be informed, in words or substance, of his right to have counsel prior to and during questioning.

Because *Floyd* and *Burns* conflict with Supreme Court precedent, they are not good law.

In reading to Mr. Vilar his *Miranda* rights, Inspector Feeney quite simply failed to inform him of his right to the presence of counsel prior to interrogation as well as during interrogation. All he told Mr. Vilar was that he "had a right to an attorney." While Mr. Vilar, like many people, may have known that he has the right to an attorney in a courtroom, this court cannot presume that he knew he had a right to an attorney before and during questioning at a police station. *See Miranda,* 384 U.S. at 471-472 ("No

---

[2] New York State Law is, appropriately, also consistent with *Miranda. See People v. Hutchinson*, 59 N.Y.2d 923, 466 N.Y.S.2d 294 (1983); *People v. Lyons*, 125 A.D.2d 593, 509 N.Y.S.2d 654( 2d Dept., 1986); *People v. Gomez*, 192 A.D.2d 549, 596 N.Y.S.2d 439, N.Y.A.D. (2d Dept., 1993).

amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead").

*Miranda* and its progeny are still the law of this land – as they should be. Any deviation from the recitation of the essential elements of the warnings, including the right to have counsel present not just in court but prior to and during any police questioning, renders the recitation toothless: it does not provide the defendant with all the required information to make the necessary choice between invoking his rights or waiving his rights.

2. The Government Failed To Show, By A Preponderance Of The Evidence, "That The Defendant Knowingly And Intelligently Waived His Rights

According to Inspector Feeney, after he read Mr. Vilar his rights and asked him if he understood, Mr. Vilar's only response was a three word acknowledgement -- "Yes, I do." Inspector Wright could not recall whether Mr. Vilar made any response at all. Both inspectors testified that Mr. Vilar spoke only in requesting permission to make a phone call to cancel an appointment. Mr. Vilar was never presented with or asked to sign a written release form waiving his *Miranda* rights, even though both inspectors testified that they had used such a form in many other cases.

When the government cannot show that a defendant expressly waived his rights, it has the burden of showing, by a preponderance of the evidence, that a waiver can be inferred through the defendant's words and actions.

In *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755 (1979), the Supreme Court held that "[t]he courts must presume that a defendant did not waive his rights; the

6

prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *Id*. at 373 (emphasis supplied).

In *Butler*, the defendant, after being advised of his rights, told the arresting officers that he understood them. He was then given a waiver release form, which he refused to sign. He was told that he need neither speak nor sign the form, but that the agents would like him to talk to him. The respondent replied: "*I will talk to you* but I am not signing any form." *Id*. at 371 (emphasis supplied).

In *Butler,* not only was the defendant read his rights orally, but his attention was specifically focused on them immediately prior to the interrogation by presentation of a written waiver form.  In the case at bar, even if the court credits Inspector Feeney's uncorroborated testimony that Mr. Vilar said "Yes, I do," the fact remains that Mr. Vilar was not advised of his rights at the same time as or even in the same location as the interrogation, and he was never presented with a written waiver form.  Thus, there are no facts in this case from which to infer a waiver.

In *United States v. Tutino*, 883 F. 2d. 1125 (1989), the Second Circuit found an inferred waiver when, after the defendant was read his rights while he was seated in the back of an FBI car, he "nodded his head and said that he understood his rights." *Id*. at 1137.  When the agents informed Tutino that they were going to search Gaetano's home, "Tutino responded that the agents could find what they were looking for in the glove compartment of his car." *Id*. In *Tutino*, as in *Butler*, the defendant was read his rights at the same time and in the same place that he made statements.

The actions and words of the defendants in the above-cited cases stand in sharp contrast to Mr. Vilar's conduct following his arrest.  Mr. Vilar said nothing other than to

7

ask to be allowed to make a phone call. He remained otherwise silent throughout the drive to postal headquarters, purportedly speaking only to answer Inspector Feeney's question with a simple "yes, I do." He was interrogated at a later time and in a different place without his attention in any way being focused on the Miranda warnings, and he was never advised of his right to have a lawyer present during the interview.

Nothing in Mr. Vilar's conduct allows the inference that he made a knowing and voluntary decision to waive his right to remain silent and have counsel present during questioning. His post-arrest statements must therefore be suppressed.

## CONCLUSION

For all of the reasons set forth above as well as those argued at the close of the hearing, the defendant's motion to suppress post-arrest statements should granted in its entirety.

Dated:  New York, New York
       December 23, 2005

Respectfully submitted,

HOFFMAN & POLLOK, LLP

By:_____
    Susan C. Wolfe

Attorneys for Alberto Vilar
260 Madison Avenue
New York, NY 10016
(212) 679-2900
(212) 679-1844 (fax)

8