UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA

    -against-

                                                  05 Cr. 0621

ALBERTO VILAR, *et. al.,*

---------------------------------------------------------

**DEFENDANT ALBERTO VILAR'S POST-HEARING REPLY
MEMORANDUM IN SUPPORT OF HIS MOTION
TO SUPPRESS PHYSICAL EVIDENCE**

      The defendant Alberto Vilar submits this Memorandum In Reply to The Government's Memorandum in Response and in further support of his motion to suppress evidence seized pursuant to an unconstitutionally overbroad search warrant and during a prohibited general search. For the most part, the defendant relies upon the memoranda he submitted prior to the hearing and on his Post Hearing Memorandum. This Reply is limited to a few aspects of the government's Response.

      In its Memorandum, the Government incorrectly asserts that the defendants only challenge four paragraphs of the warrant. This could not be farther from the truth. In addition to those four paragraphs (¶¶1, 14, 16A, 17) that are all-encompassing and therefore overbroad, the defendants discussed three other overbroad paragraphs (10, 13 and 15) in their Post-hearing Memorandum. Moreover, it is and has been the defendants' position that each and every paragraph of the warrant sweeps too broadly. For example, although the search warrant affidavit alleged that one client, the Mayer Family, had difficulty redeeming their investment in "GFRD's," paragraph 8 of the rider broadly authorizes the seizure of all documents pertaining to all clients who invested in GFRD's.

As another example, paragraph 12 authorizes the seizure of "documents reflecting brokerage accounts maintained by Amerindo at any broker-dealer other than Baer, Stearns & Co. . . .," a potentially very broad category (how many broker-dealers are there in New York alone?), for which the warrant application did not establish probable cause. Paragraph 10 authorizes the seizure of "documents reflecting or relating to the cancellation of completed trades and rebooking of those canceled trades in other accounts . . . ." There are no allegations in the complaints or the search warrant affidavit of such conduct. While this may be a common practice of "boiler room" operations, there are no allegations suggesting that Amerindo was a "boiler room" or that it engaged in the conduct described in this paragraph.

The government makes a tortured effort to mitigate the breadth of paragraph one of the warrant rider -- that calls, *inter alia,* for all "client lists client files, investment brochures . . . copies of correspondence . . .," etc. -- by claiming that the examples cited in the paragraph are not really appropriately considered "corporate records." In other words, the government suggests that the searching agents would have known exactly what "corporate records" are and to ignore at least half of the examples in the paragraph.

The government makes a similar tortured argument regarding paragraph 14; that the agents would have known to ignore the last line of the paragraph that calls for "other documents relating to the running and supervision of the operations of the investment advisory businesses of Amerindo."

This is precisely the kind of overbroad warrant that provides insufficient guidance, leaves too much discretion to the searching agents and violates the Fourth Amendment. In addition, paragraphs 1 and 14 served as "catch-all" provisions, allowing

the agents to take anything they could not immediately tie into the other paragraphs. Those two paragraphs encompassed all manner of "corporate" and business records. Such catch-all provisions are forbidden and vitiate any claim of good faith. *See United States v. George,* 975 F.2d 72, 74 (2d Cir. 1992).

The government argues that records of expenses, as shown on the inventory, were properly seized pursuant to paragraph 14 because the application alleges that $650,000 of Cates' SBIC investment was transferred to the Amerindo US business checking account to pay corporate expenses. Govt's Memo. at 9, fn. 4. The problem with this argument is illustrative of the problem with the entire warrant – there is no time frame. Cates' $650,000 was allegedly transferred in June, 2002. The government seized expense records, including phone bills, rent bills, federal express invoices, legal bills, etc. – for many years before and after June, 2002. Cates' did not make any investment in the SBIC fund until June, 2002. Records of expenses before June, 2002 could not possibly be evidence of the fraud scheme alleged in the warrant application.

The government claims that the investigation involved "complex overlapping fraud schemes." That may be what the investigation evolved into after the search; however, at the time of the warrant application, the government had the complaint of a single investor regarding the manner in which her investment was handled and the complaint of another investor (the Mayer family), that was not mentioned in any criminal complaint, about difficulties in redeeming their investments.

In its Memorandum, the government again misconstrues the defendants' argument as limited to evidence related to Amerindo Cayman and three other investors briefly mentioned in the complaint. An inexcusable infirmity of the warrant (*i.e.* the rider

3

describing the items to be seized), is the lack of any time frame whatsoever.  As we have argued, the government did not establish probable cause as to the existence of a fraud scheme prior to Cates' June 2002 investment, and it did not establish probable cause with respect to any investor other than Cates, and arguably, the Mayer's.  While the government claims that it established probable cause to believe that *unknown* investors were defrauded by Tanaka's purchase of racehorses, (Govt's Memo. at 16), the complaint simply does not show a nexus between investor funds and funds used to purchase racehorses.  While not arguing for the application of the "all-records exception" -- obviously because the law does not support that exception in this case -- the prosecution nevertheless argues that the fraud here was so extensive that the exception should nevertheless apply.  Neither the facts nor the law support that argument.

Indeed, the government concedes that certain documents, which the government calls a "relatively small quantity," "should not have been seized under the terms of the warrant."   The government further concedes that such documents should be returned and cannot be used at trial. *Id.* at 9-10.  As demonstrated in the defendants' prior submission, if the Court were to read the warrant as limited by the allegations in the application, then a far greater quantity of documents must be returned to the defendants.  Indeed, if the Court adopts the government's proposed remedy, then everything but the records of Cates' and the Mayer's and information pertinent to their investments must be suppressed.

While the government argues that the search was reasonable because the agents "only" seized 60-70% of the documents they searched and they were not just boxing up piles of documents, it should be kept in mind that the government also took *the whole*

4

*computer system.*[1]  No limitations were imposed by the Magistrate as to the searches that the government could do in that system.  Realistically, under these circumstances, there is no way around the conclusion that the government essentially took everything but the most obviously personal items of employees.  As we have argued in our supplemental letter of December 13, 2005, if the government's free reign to search the computer system is upheld, the Fourth Amendment becomes meaningless in the computer age.

With respect to the government's good faith argument, the prosecutor in this case accompanied the law enforcement officer to the Magistrate and answered the Magistrate's question about the drawing of inferences.  Under such circumstances, it is not the good faith of the officer, but the good faith of an Assistant United States Attorney who, the Court can infer, drafted the warrant application and presented it, with the affiant, to the Magistrate.  Under the principles set forth in *United States v. Leon,* 468 U.S. 897 (1984), a reasonably well trained federal prosecutor should and would have known that the law does not permit a search this broad based on the narrow set of allegations contained in the warrant application.  Federal prosecutors deal with the criminal laws every day; they routinely research and respond to suppression motions.  Magistrates spend half if not more of their time on civil matters and are far less frequently involved in suppression litigation.  The good faith exception should not apply under the circumstances in this case.   Every prosecutor should know that a warrant this broad is no good.

---

[1] While the government did not physically take the documents in a storage room and a bank of file cabinets, opting to deliver a subpoena for them instead, it searched the room and the file banks and made a detailed inventory, therefore seizing significant information about the materials.  See Government Exhibit 3; Tr. 89)

5

We have no doubt that it is part of a prosecutor's job to try to advance the law in a direction that facilitates apprehension and conviction of those it accuses. But, when prosecutors undertake to advance the law in that direction in an *ex parte* proceeding, they should do so at the risk losing their evidence. The Magistrate has no one else there to alert it to an application's infirmities. If a prosecutor's "good faith belief" in what the law should allow means that the law will allow it based on the good faith exception, regardless of constitutional principles, then there is no exclusionary rule and no deterrence.

## CONCLUSION

For all of the reasons set forth above, the evidence seized pursuant to the warrant to search the Amerindo offices and any and all fruits and leads there from, should be suppressed. In the alternative, the Court should impose reasonable limitations on the use of evidence seized in derogation of the defendants' Constitutional right to be free of unreasonable searches and seizures.

Dated:  New York, New York
        February 10, 2006

> Respectfully submitted,
>
> HOFFMAN & POLLOK, LLP
>
> By:_____
>         Susan C. Wolfe
>
> *Attorneys for Defendant Alberto Vilar*
> 260 Madison Avenue
> New York, NY  10016
> (212)  679-2900
> (212)  679-1844 (fax)