**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x

UNITED STATES OF AMERICA          :

               -v.-                    :          S2 05 Cr. 621 (KMK)

ALBERTO WILLIAM VILAR,            :
  a/k/a, "Albert Vilar," and
GARY ALAN TANAKA,                 :

               Defendants.          :
--------------------------------------------------------x

 

 

**GOVERNMENT'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANTS' MOTION TO QUASH GRAND JURY SUBPOENA**
**TO AMERINDO INVESTMENT ADVISORS INC.**

 

 

                                  MICHAEL J. GARCIA
                                  *United States Attorney for the*
                                  *Southern District of New York*

                                  *Attorney for the United States of America*

Deirdre McEvoy
Marc Litt
*Assistant United States Attorneys*
*Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

UNITED STATES OF AMERICA            :

            -v.-                     :        S2 05 Cr. 621 (KMK)

ALBERTO WILLIAM VILAR,              :
    a/k/a, "Albert Vilar," and
GARY ALAN TANAKA,                   :

                    Defendants.      :
--------------------------------------------------------x

## GOVERNMENT'S MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION TO QUASH GRAND JURY SUBPOENA
## TO AMERINDO INVESTMENT ADVISORS INC.

### PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to the defendants'

Motion to Quash Grand Jury Subpoena to Amerindo Investment Advisors, [sic] Inc.[1]

Defendants' argument that the grand jury subpoena at issue (the "Subpoena") should be quashed

because it was: (1) issued for improper purposes; (2) overbroad and oppressive; and (3)

unreasonable under the Fourth Amendment, is without merit and should be rejected by the Court.

The Subpoena was issued as part of the grand jury's broad investigation into a range of the

defendants' activities, and those of other possible co-conspirators between in or about 1986 and

---

[1]     Defendant Vilar's motion to quash was apparently joined by defendant Gary
Tanaka. *See* Tanaka Memorandum In Further Support of Motion to Suppress at 2, n. 3
("Defendant Tanaka joins Vilar in the motions to suppress the evidence seized from the
Premises, including the computer evidence and the evidence taken pursuant to the Grand Jury
subpoena."). Although the defendants' motion refers throughout to a subpoena served upon
"Amerindo Investment Advisors, Inc.," the grand jury subpoena was, in fact, served upon
Amerindo Investment Advisors Inc. (the U.S. entity, not the Panamanian entity). The
Government assumes that the defendants did not intend to refer to Amerindo Panama and that
the use of the name of the Panamanian corporation merely reflects understandable confusion on
their part about the proper nomenclature for the U.S. corporation.

May 26, 2005. For the reasons discussed below, the Government contends that the Subpoena was properly issued in furtherance of the grand jury investigation, was appropriate in its scope (and to the extent that the corporation had believed otherwise, could have been refined had Amerindo engaged in a dialogue with the Government about the scope of the materials sought), and was not violative of the Fourth Amendment. The Government respectfully submits that the Court should reject this belated ploy by the defendants to delay or deny the grand jury and the Government timely access to information pertinent to its ongoing investigation.

### Background

As the Court well knows from the evidence presented at the December 14, 2005 hearing on defendants' motions to suppress, and the extensive briefing related to those motions, U.S. Postal Inspectors conducted a search at the offices of Amerindo U.S. on May 26, 2005. During the course of conducting that search, Eugene Licker, Esq., outside counsel for Amerindo U.S. spoke to U.S. Postal Inspector John Feiter and, subsequently, the Government, about the search and about his willingness to accept a grand jury subpoena on behalf of Amerindo U.S. (Tr. 86).[2] Mr. Licker told the Government that Amerindo U.S. wanted to cooperate with the Government in its investigation, and he promised to implement policies and procedures that would prevent the company's documents from being destroyed. According to the fax line on the Subpoena (which is attached as an exhibit to defendants' moving papers) the Government faxed the Subpoena to Mr. Licker's office (then at Kirkpatrick and Lockhart) at approximately 1:37 p.m. on the day of the search. The Subpoena in large part tracked the language of the search warrant

---

[2] "Tr." refers to the transcript of the December 14, 2005 suppression hearing held in this case.

2

and sought evidence including documents concerning: the brokerage accounts which lay at the center of the defendants' fraud schemes; victims, suspected victims and investments (*e.g.*, SBIC, GFRDA, Rhodes Capital) involved in those schemes; client communications and marketing materials; defendants' finances; business expense records; employee records; and funds used for the purchase of thoroughbred racehorses. The Subpoena also sought certain office equipment including computers used to store the information identified in the Subpoena, fax machines, and devices capable of replicating the signatures of Amerindo clients or employees.

Mr. Licker subsequently suggested to the Government on May 26, 2005 that it would be more efficient for the Government to collect the remaining documents it sought from Amerindo U.S. through the grand jury subpoena process rather than by completing the as yet unfinished search. Mr. Licker pointed out that it would take considerable time for the Postal Inspectors to complete the search, that the Government's interests were protected by the Subpoena, and reiterated that he would ensure that no documents or other evidence would be destroyed were the search to be halted. Mr. Licker noted that not only would it be less disruptive to Amerindo U.S. to proceed via the Subpoena, but that the Government would be able to get more efficiently "what it really wanted" through the company's cooperation with the grand jury subpoena process. As a consequence, the search team was informed that it need not complete the search because Amerindo U.S. had agreed to comply with the Subpoena, and the Postal Inspectors cut short the search. (Tr. 86, 89, 101).

The Government initially agreed to postpone Amerindo's compliance with the Subpoena so that Mr. Licker and certain Amerindo employees could assist the Government with its investigation in other ways. In or about July or August, Mr. Licker informed the Government

that associates at his firm and Amerindo employees were reviewing documents to find materials responsive to the Subpoena, and that it would take several weeks to complete that task. In September, in response to a question about when Amerindo U.S. would be in a position to produce documents responsive to the Subpoena, Mr. Licker told the Government that his team had completed the review of a portion of the company's documents, and that they were arranging to have those responsive documents reproduced. Mr. Licker further indicated that he expected to begin producing the documents to the Government on a rolling basis in a matter of weeks.

In or about mid-October, in response to another Government inquiry about when the Government would receive documents responsive to the Subpoena, Mr. Licker stated that he had documents ready to be produced, but that he felt that he had to consult with the defendants prior to producing the documents. In early November, in response to yet another request by the Government for the responsive documents, Mr. Licker informed the Government that he was still awaiting instructions from the defendants.

Despite having been on notice for approximately five to six months of the existence of the Subpoena and Mr. Licker's intent to comply with the Subpoena on behalf of Amerindo U.S., despite having been informed in October that Mr. Licker had documents ready to produce in response to the Subpoena, and despite having a copy of the Subpoena no later than November 15, 2005 (according to the fax date and time stamp on the copy of the Subpoena attached as an exhibit to defendants' moving papers), the defendants waited until the start of the suppression hearing on December 14, 2005, to file the instant motion to quash. (Tr. 5). At no time prior to that date had the Government been given any reason to expect anything less than full compliance with the Subpoena.

## ARGUMENT

## I.

## DEFENDANTS' MOTION TO QUASH IS UNTIMELY
## AND WHOLLY WITHOUT MERIT AND SHOULD BE DENIED

Defendants' motion to quash should be rejected by the Court. Because the motion is

untimely under Fed. R. Crim. P. 17(c)(2), defendants are not entitled to the remedy that they

seek.[3] Even were the Court to determine that the motion was timely made or, alternatively, that

the remedy of quashing the Subpoena may be available to the defendants, the Court should

nevertheless deny defendants' motion because it lacks basis in law and fact.

**A.      The Motion To Quash Was Not Filed Promptly And Should Be Dismissed**.

Rule 17(c)(2) of the Federal Rules of Criminal Procedure provides a remedy for

individuals or entities served with an unreasonable or oppressive subpoena. Under that Rule,

"On motion made *promptly*, the court may quash or modify the subpoena if compliance would be

unreasonable or oppressive." (emphasis supplied). Although there is no well-developed case law

defining the meaning of "promptly" in Rule 17(c), defendants' challenge should be found to be

untimely. *See United States* v. *Kleen Laundry & Cleaners, Inc.*, 381 F. Supp. 519, 521

(E.D.N.Y. 1974) (Weinstein, J.) (motions to quash should be made "when the abuse becomes

apparent"); Paul S. Diamond, FEDERAL GRAND JURY PRACTICE AND PROCEDURE 4-76 (3d ed.

1997) ("In the great majority of instances, however, there will be no mystery as to timeliness.

Just as under Fed. R. Civ. P. 45(b), if a party receives an objectionable grand jury subpoena,

---

[3]       The Government assumes for purposes of this motion that the defendants have
standing to make the motion, notwithstanding the fact that the Subpoena was served on the
corporation and seeks, in the main, corporate documents and records, not personal documents.

counsel should move to quash as soon as its unreasonable or oppressive nature is discovered, certainly before compliance is called for."). In *United States* v. *Heard*, 952 F. Supp. 329 (N.D. W. Va. 1996), defendants were served on March 26, 1996 with subpoenas to testify before a grand jury nine days later. The defendants failed to comply, and the Government filed an application for an order to show cause why the defendants should not be held in criminal contempt. In their defense, the defendants claimed to have filed a document that the court should have interpreted as a motion to quash the subpoena. The court stated that it was "dubious" that the filed document was a motion to quash, and went on to state that "even if construed as a motion to quash [it was] not under the circumstances 'promptly made' as required under Fed. R. Crim. P. 17(c)." *Id.* at 330-31, 335.

Based on the above-cited authorities, and the lack of any controlling authority to the contrary, the word "promptly" should be accorded the same meaning as in standard usage; that is, "with little or no delay." It simply belies common sense to think that the Rule contemplates that owners, directors and officers of a corporation who have been notified of the existence of a subpoena and the intent of the company's outside counsel to comply with that subpoena, may sit on any right they may have to challenge the subpoena for nearly seven months, wait until after two indictments have been returned, and then move to quash the subpoena as part of a tactic to stymie the ongoing investigation of the grand jury and to prevent the Government from obtaining access to evidence which may be relevant to proving the pending charges. The Court should not condone this gamesmanship by the defendants, and should not construe Rule 17(c) to permit it. Accordingly, because of the defendants' failure *promptly* to move to quash the Subpoena, the Court should deny the defendants' motion.

**B.**     **The Grand Jury Subpoena Was Issued For Proper Purposes**
          **In Furtherance of the Grand Jury's Investigation.**

Defendants' argument that the Subpoena should be quashed because it was issued for the improper purpose of substituting for a potentially invalid search warrant has no basis in fact or law. The Subpoena was issued concurrently with the execution of the search warrant and there is no evidence whatsoever that it was issued for the purpose of curing possible defects in the search warrant. In fact, the record reflects that it was Amerindo's counsel who suggested substituting compliance with the Subpoena for completion of the search, not the Government. Mr. Licker broached the subject, and persuaded the Government that proceeding via subpoena was in the interest of all concerned. Defendants conveniently ignore those facts and, instead raise several "red herring" arguments that should be summarily rejected by the Court.

First, the defendants cite *United States* v. *Eng*, 971 F.2d 854, 861 (2d Cir. 1992) for the proposition that "subpoenas must not serve as an after the fact 'insurance policy' to 'validate an unlawful search under the inevitable discovery doctrine.'" Def.'s Mem. at 8. The Government has never sought to use the existence of the Subpoena to make such an "inevitable discovery" argument. Thus, the lead argument raised by defendants has no applicability here whatsoever.

Second, defendants contend that the Government's failure to seek to enforce the Subpoena until months after its return date, after securing indictments, indicates that the Government now merely seeks enforcement of the Subpoena for the improper purpose of obtaining evidence for trial. Def.'s Mem. at 8-9. That, too, is a fallacious argument. As an initial matter, the relevant question in a motion to quash a grand jury subpoena under Rule 17(c) is the purpose of the grand jury subpoena when it was issued, not when it is challenged. The Subpoena was issued on May 26, 2005, *prior* to the return of the original indictment, a fact that

7

is tellingly ignored by defendants.  Furthermore, their argument that the only purpose of the Subpoena "now, post-indictment," is to obtain discovery for trial is frivolous in light of the defendants' own actions with respect to the Subpoena.

Although the Subpoena was issued on May 26, 2005, the defendants waited nearly seven months to move to quash the subpoena, all the while knowing that Mr. Licker, acting on behalf of the defendants' company, had led the Government to believe that the company was going to comply with the Subpoena.  It was the agent of the defendants' company, Mr. Licker, who suggested that the Government complete its goal of gathering evidence through the subpoena process rather than through execution of a search warrant.  Furthermore, it was on the basis of Mr. Licker's promises made on behalf of the company that the Government agreed to suspend the search on May 26, 2005, the very day the Subpoena was issued, and before any indictment was returned by the grand jury.  Based on the continuing representations of Mr. Licker over the course of months concerning the company's progress toward complying with the Subpoena, there was seemingly no need for the Govenment to move to compel compliance with the Subpoena until defendants made compliance an issue by filing their motion to quash.  Thus, the defendants should not succeed in their effort to hold the Government's failure to move to compel compliance with the Subpoena against the Government.

Third, defendants' contention that "[e]nforcement of the subpoena now would only serve to provide the government with evidence for use at trial," Def.'s Mem. at 9, is simply untrue.  Not only is the grand jury investigation ongoing with respect to others who may have been involved in the conduct charged in the second Superseding Indictment, but the grand jury is also investigating other financial fraud crimes as yet uncharged which the defendants or others may

have committed.  Moreover, the sole example provided by the defendants on this point is demonstrably false.  Defendants complain that paragraph F of the Subpoena, which seeks production of documents concerning Ms. Cates's investments, could only have relevance for trial because "those investments are the subject of the pending indictment." *Id*.  In fact, only Ms. Cates's SBIC and GFRDA investments are the subjects of the pending indictment.  The pending indictment does not charge the defendants with any crime in connection with Ms. Cates' investment in Rhodes Capital, although that investment too, is a subject of the grand jury's ongoing investigation.  Likewise, the grand jury is continuing to investigate other seeming improprieties committed with respect to Ms. Cates's account involving investment vehicles managed by the defendants other than SBIC, GFRDAs and Rhodes Capital.  Finally, but for the defendants' actions over an approximately two-month period from mid-October to mid-December, part or all of the documents responsive to the Subpoena would have been produced prior to the grand jury's consideration of the second superseding indictment.  Defendants' complaint that materials responsive to the Subpoena have become become less relevant to the grand jury's investigation as it has gone about its work while being stonewalled by the defendants should be rejected outright by the Court.

Most importantly, courts have made it clear that they will not interfere with post-indictment grand jury proceedings so long as the *sole* or *dominant* purpose of those proceedings is not to discover facts relating to a defendant's pending prosecution.  *See United States* v. *Salameh*, 152 F.3d 88, 109 (2d Cir. 1998) (*per curiam*) (no abuse of grand jury power for government to introduce at trial evidence obtained from postindictment subpoena if there is "some proper dominant purpose for the . . .subpoena") (emphasis added).  Since the Subpoena

was issued in May 2005, the grand jury has investigated and continues to investigate a broad

variety of possible crimes including but certainly not limited to the SBIC and GFRDA

investment scams detailed in the second superseding indictment that was returned by the grand

jury on January 31, 2006.  The grand jury is also continuing to investigate criminal activity by

other possible targets besides the defendants.  *See United States* v. *Sasso*, 59 F.3d 341, 351-52

(2d Cir. 1995) (postindictment grand jury subpoena valid because dominant purpose of subpoena

was to investigate nonindicted individuals).

In sum, the Subpoena was issued for the proper purpose of gathering evidence for an

ongoing grand jury investigation into possible wire fraud, securities fraud, money laundering,

false statements, among other things, by the defendants and others.  This grand jury investigation

is still ongoing.  The defendants should not be permitted to gain tactical advantage by knowingly

allowing the Government to expect compliance with the Subpoena, sitting on their rights, and

then filing a motion to quash the Subpoena based in part on an argument that the Government's

delay in enforcing the Subpoena has converted its purpose to one that is improper.  The

defendants' audacious argument should be rejected.

## C.    **The Subpoena is Not Overbroad and Oppressive.**

Defendants' argument that the Subpoena should be quashed because it is overbroad and

oppressive fares no better.

The grand jury has broad authority to conduct criminal investigations.  *See*, *e.g.*, *In re

Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 384 (2d Cir.

2002) (grand jury subpoena supports public's fundamental right to evidence); *In re Grand Jury*,

286 F.3d 153, 159 (3rd Cir. 2002) (subpoena is most important tool of grand jury investigation);

*In re Grand Jury Subpoenas Dated December 10, 1987*, 926 F.2d 847, 854-55 (9th Cir. 1991) (Fourth Amendment protection against unreasonable searches and seizures not triggered by grand jury subpoena); *In re Grand Jury Subpoena Served Upon John Doe*, 781 F.2d 238, 248-49 (2d Cir. 1986) ("The investigative powers of the grand jury necessarily are broad so that it may carry out adequately its task of determining the existence of criminal activity and returning well-founded indictments."). The Supreme Court has made it clear that "a grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." *United States* v. *R. Enterprises, Inc.*, 498 U.S. 292, 301 (1991). In *R. Enterprises*, the Supreme Court also held that where a subpoena is challenged on relevancy grounds "the motion to quash must be denied unless the district court determines that there is *no* reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." *Id.* (emphasis added). The defendants have wholly failed to meet their burden in this regard.

The recent return of the second superseding indictment, which broadened the scope and duration of the conspiracy and charged the defendants with an additional count of securities fraud relating to the GFRDA fraud and false statements, largely undermines the defendants' argument that many of the documents requested in the subpoena are not relevant to the grand jury's investigation. Even assuming *arguendo* that the documents sought by the Subpoena are not relevant to the SBIC fraud charged in the original indictment – and that is not the yardstick by which the propriety of the Subpoena should be measured – the defendants can hardly now claim that there is *no* reasonable possibility that the category of materials the Government seeks

11

will produce information relevant to the general subject of the grand jury's investigation. The defendants' arguments regarding the lack of specificity regarding a time period similarly are baseless in light of the fact that conspiracy charged in the superseding indictment spans from 1986 through May 2005.

Moreover, as the Government made abundantly clear in its various submissions in connection with its opposition to defendants' motion to suppress the fruits of the search warrant, the Government maintains that the search warrant was supported by probable cause, was valid, and was not overly broad and was sufficiently particularized. Even were the Court to conclude that the search warrant was overbroad, the standard for the proper scope of a grand jury subpoena is far different from those standards governing the proper issuance and/or reliance on a search warrant. The Government does not need to establish probable cause to issue a grand jury subpoena. As the Second Circuit has observed, "the grand jury's scope of inquiry 'is not limited to events which may themselves result in criminal prosecution, but is properly concerned with any evidence which may afford valuable leads for investigation of suspected criminal activity during the limitations period.'" *United States* v. *Doe*, 457 F.2d 895, 901 (2d Cir. 1972) (quoting *United States* v. *Cohn*, 452 F.2d 881, 883 (2d Cir. 1971)). Indeed, "[a] grand jury's investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed." *United States* v. *Stone*, 429 F.2d 138, 140 (2d Cir. 1970).

The defendants' reliance on *In re Grand Jury Subpoena Duces Tecum Dated November 15, 1993*, 846 F. Supp. 11 (S.D.N.Y. 1994), is misplaced. The subpoena at issue in that case was *not* framed in terms of specified categories of information but, rather, demanded

specified information storage devices including *all* computer hard drives and floppy disks. 846 F. Supp. at 12. Similarly, in *In Re Horowitz*, 482 F.2d 72 (2d Cir. 1973), the subpoena at issue demanded the entire contents of particular filing cabinets "without any attempt to define classes of potentially relevant documents or any limitations as to subject matter or time period." *Id.* at 79. In contrast, the subpoena that was served on Amerindo U.S. specified limited categories of information and defined classes of potentially relevant documents by subject matter. For example, paragraphs B, D and M and O of the grand jury subpoena rider request documents relating to four specific Bear Stearns accounts (collectively, the "Amerindo Brokerage Accounts") into which victims of the schemes charged in the second superseding indictment placed their money, paragraph C requests documents concerning Rhodes Capital, which, according to relevant offering documents received by Cates, was an investment vehicle that Vilar and Tanaka managed, paragraph E requests documents relating to client investments in overseas bank accounts, including PTC Management Limited in the Bahamas, an account into which investor money was diverted, and paragraph H requests documents relating to GFRDA investments, which form the basis of the conspiracy and additional securities fraud charge in the second superseding indictment. The Subpoena also limits the specified categories of information sought in many cases and excludes documents pertaining solely to any publicly traded Amerindo mutual fund. *See* paragraphs U, V, W, X and Z.

Judge Friendly's observations in *In Re Horowitz*, which involved an investigation into whether any of the funds loaned by a development fund had been misapplied and diverted, are particularly apt here. In reviewing the district court's denial of a motion to quash the contents of all file cabinets at the target's accountant's office, Judge Friendly observed that "any document

relating to the [target's] finances, or any that sheds light on the complex corporate structure of [the target's] enterprises, which he allegedly used to conceal the misapplication of funds in The Pas project, may turn out to be relevant to the grand jury's inquiry." *Id*. at 79.  Here, any document relating to the defendants' or Amerindo's finances or any document that sheds light on the complex corporate structure of the Amerindo entities, particularly the offshore entities, and the various investment products purportedly offered through them may turn out to be relevant to the grand jury's inquiry.  The defendants have utterly failed to meet their burden of demonstrating that the production of such documents would be unduly oppressive or unreasonable and, in fact, counsel for Amerindo, on which the subpoena was served, has not once complained that compliance with the existing subpoena is unduly burdensome, and has not requested clarification of its terms.  To the extent that the defendants complain about the lack of specificity with respect to a time period, the Government is willing to limit the time period of the subpoena to the time period of the conspiracy charged in the superseding indictment, that is from 1986 through May 26, 2005.

In sum, the subpoena in this case should not be quashed on relevance or overbreadth grounds.  The grand jury subpoena at issue here was issued through normal channels prior to the return of an indictment and defendants have failed to meet their burden of demonstrating that the categories of documents and information sought by the Subpoena is unreasonable or oppressive. In this regard it is especially noteworthy that those delegated to comply with the Subpoena – the company's outside counsel – have not once in eight and one-half months conveyed any concern to the Government about overbreadth or insufficient particularity of the Subpoena.  Accordingly, defendants' motion to quash on those grounds should be denied.

14

**D.      The Subpoena Is Not Unreasonable Under The Fourth Amendment.**

The defendants' final contention – that the Subpoena to Amerindo violates the Fourth Amendment because it is unreasonable – has no more merit than their other arguments.  The protection provided by the Fourth Amendment with respect to subpoenas duces tecum is narrowly limited to overbreadth and indefiniteness.  *See Oklahoma Press Pub. Co.* v. *Walling*, 327 U.S. 186, 208 (1946); *In re Grand Jury Subpoena Duces Tecum Dated May 29, 1987*, 834 F.2d 1128, 1134 (2d Cir. 1987); *Horowitz*, 482 F.2d at 77.  As discussed in Part C, *supra*, defendants' contentions are simply refuted by a fair reading of the Subpoena which clearly identifies specific categories of documents to be produced.  The Subpoena is neither indefinite nor overbroad and therefore, the defendants' Fourth Amendment claim must fail.

<u>CONCLUSION</u>

For all the reasons stated herein, the defendants' motion to quash the Subpoena should be denied.

Dated: February 10, 2006
        New York, New York

                              Respectfully submitted,

                              MICHAEL J. GARCIA,
                              United States Attorney for the
                              Southern District of New York,
                              *Attorney for the United States of America*

                        By:  __/s/_____
                              Deirdre McEvoy / Marc Litt
                              Assistant United States Attorneys
                              (212) 637-2309 / -2295

15