Steven G. Kobre
Justin M. Sher
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: 212.488.1200

Glenn C. Colton
Jessica L. Margolis
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
12 E. 49th Street, 30th Floor
New York, New York  10017
Tel: 212.999.5800

*Attorneys for Defendant
Gary Alan Tanaka*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | S1 05 Cr. 621 (KMK) |
| - against - | ECF CASE |
| ALBERTO WILLIAM VILAR, a/k/a "Albert Vilar," and GARY ALAN TANAKA  Defendants. | |

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT GARY A. TANAKA'S MOTION TO SUPPRESS

Defendant Gary Alan Tanaka respectfully submits this reply memorandum in further support of his motion to suppress evidence seized during the Government's May 26, 2005 search of the offices of Amerindo Investment Advisors Inc. ("Amerindo U.S."), located at 399 Park Avenue in New York City.

**ARGUMENT**

The warrant relied upon by the Government to search the premises of Amerindo U.S. was overbroad and permitted the seizure of *all* corporate records of four separate corporate entities, including one entity – Amerindo Investment Advisors (Cayman) Limited ("Amerindo Cayman") – which was not the subject of *any allegation* of wrongdoing. The Government cannot salvage the warrant by claiming that the warrant's language was "intended" to be more limited than it reads. Nor can the Government successfully invoke the good-faith exception where the warrant was facially deficient and the supporting affidavit itself lacked indicia of probable cause. As discussed in greater detail below, the Court should suppress all of the fruits of the Government's search.

A.  **The Warrant Was Overbroad and Cannot Be Retroactively Limited According to An Interpretation Purportedly "Intended" By the Government**

The warrant which authorized the search of the offices of Amerindo U.S. (the "Warrant") was plainly overbroad and constituted an unlawful, general warrant. The affidavit and complaints which supported the application for the Warrant named only two potential victims, Lily Cates and the Mayer family, and named three other individuals whom Ms. Cates "*believed* to be investors with Amerindo, *some of whom may* have had trouble redeeming all or part of their investments." (Fraterrigo Affidavit ¶ 6(E) (emphasis added).) Nevertheless, the Warrant did not limit the search to materials relating to the two alleged victims or even to the three referenced investors but called for the seizure of *any* "[c]orporate records" and *any* "client files" related to four different companies: Amerindo U.S.; Amerindo Cayman; Amerindo Investment Advisors (U.K.) Limited ("Amerindo U.K.") and Amerindo Investment Advisors, Inc. ("Amerindo Panama"). (Warrant, ¶ 1.) Indeed, United States Postal Inspector John Feiter, the very person

2

who was offered by the Government to testify about the scope of the search, acknowledged that the Warrant authorized the seizure of *anything that had "writing on it."* (Tr. at 162 (emphasis added).) The Warrant fell far short of describing the items to be seized with "as much particularity as the circumstances reasonably allow" and clearly violated the Fourth Amendment. United States v. George, 975 F.2d 72, 76 (2d Cir. 1992).

The Government makes several unsuccessful attempts to defend the Warrant. First, the Government suggests that broad searches are generally appropriate in cases of complex frauds and cites Andresen v. Maryland, 427 U.S. 463, 482 n.10 (1976) for this proposition. Andresen does not justify the general search of Amerindo U.S. that took place in this case. Andresen involved a fraud investigation concerning the sale of a certain parcel of real estate. The warrant authorized a search for items pertaining to the parcel, listed several categories and types of evidence separated by semicolons, and concluded with the phrase "together with other fruits, instrumentalities and evidence of crime [which is unknown at this time]." Id. The Supreme Court held that the last catch-all phrase did not convert the warrant into a general warrant because it was modified by the phrase "pertaining to [the parcel]" that preceded it and was, therefore, appropriately limited. Id. at 480-82. Here, the language of the Warrant at issue does not permit such a limitation. Among other things, paragraph 16 seeks "other documents concerning or reflecting information concerning the identities of participants in the fraud schemes." (Warrant at ¶ 16.) Not only is paragraph 16 not limited as in Andresen, but nowhere in the Warrant is a particular "scheme" specified – either directly or by reference.[1]

---

[1] As discussed in Defendant Tanaka's memorandum dated January 10, 2006, the Government may not cure the lack of particularity in the Warrant by reference to the affidavit because the affidavit was not expressly incorporated

3

Moreover, despite the confusing and complicated way in which the complaints were drafted, the allegations that gave rise to the Warrant were not as complex as the Government suggests and did not justify the broad search that took place. For instance, although Postal Inspector Cynthia Fraterrigo reviewed four years worth of "numerous letters of authorization," the Complaint against Gary Tanaka focuses on only five specific wire transfers and does not name a single victim. (Tanaka Complaint ¶¶ 12-15.) Similarly, the Complaint against Alberto Vilar includes allegations against only one victim, Lily Cates. These allegations fall far short of the sort of evidence of a complex fraud that might justify the seizure of 60 to 70 percent of the hard-copy records and 100 percent of the electronic records of Amerindo U.S. Indeed, the Government appears to acknowledge this in its post-hearing memorandum by abandoning its argument that Amerindo was "permeated with fraud" such that the all-records exception applies.

The Government's second unsuccessful attempt to defend the Warrant is based on its claim that the Warrant was "inartfully drafted" and was actually "intended" to be more limited. (Gov't Post-Hearing Mem. at 5-6.) With this argument, the Government attempts to distance itself from its own witness's understanding of the Warrant. Inspector Feiter – the agent who supervised the search and answered questions from other agents about the scope of the search – testified that the plain language of the Warrant authorized the seizure of any business records on the premises and excluded only personal items, blank stationary and duplicate copies of business cards. (Tr. 105, 136, 162, 163.) In its post-hearing memorandum, the Government asks the Court to ignore its own witness's testimony in favor of a retroactive, more limited interpretation of the Warrant: "[n]otwithstanding Inspector Feiter's acknowledgment that paragraph 1 of the

---

in the Warrant and there is no evidence that the affidavit was attached to the Warrant or that the affidavit should be considered. George, 975 F.2d at 76.

4

Warrant could be broadly interpreted to authorize the seizure of all business documents of four Amerindo entities (*see* Tr. 161-63), the Government maintains that the plain meaning of the paragraph is significantly more limited than that." (Gov't Post-Hearing Mem. at 5.) The Government's suggestion that the Court ignore Inspector Feiter's testimony and rely instead on the Government's *ex post facto* reading of the Warrant is absurd.

In addition to contradicting the testimony of its own witness, the Government's limited interpretation of the Warrant is contrived. For example, the Government makes a technical distinction between "business records" and "corporate records" and claims that the reference to "corporate records" in paragraph 1 of the Warrant was intended to refer to documents reflecting the "formation and organization of the Amerindo entities." Id. Tellingly, this interpretation is significantly more limited than the Government's initial explanation of paragraph 1 in its first submission to the Court on the suppression motions. (Gov't Pre-Hearing Mem. at 17, 31.) The interpretation is also nonsensical. In urging the Court to adopt this revised reading of the Warrant, the Government fails to adequately explain the language that directly follows the phrase "corporate records": "including but not limited to . . . client lists, client files, investment brochures, marketing materials, investment advisory agreements, copies of correspondence . . . ." (Warrant at ¶ 1.) The plain meaning of paragraph 1 clearly calls for more than "formation and organization" records and comports more with Inspector Feiter's understanding than the Government's tortured, retroactive interpretation.

The Government's other attempts to narrow the Warrant are similarly contrived. For instance, the Government suggests that, since other sections of the Warrant included more specific descriptions of documents that could be considered "business records," paragraph 1 should not be read broadly because to do so would render it duplicative – a result which was not

"intended." The Government's argument ignores the fact that lawyers routinely include repetitive language in such documents in order to ensure that relevant materials are not missed. Indeed, the Government clearly intended other sections of the Warrant to be duplicative. Paragraph 2 of the Warrant, which authorized the seizure of documents concerning the Amerindo Brokerage Accounts, including "correspondence," clearly called for some of the same materials as paragraph 4, which authorized the seizure of "correspondence sent to or received from clients . . . who have investments in the Amerindo Brokerage Accounts." (Warrant at ¶¶ 2, 4.) Moreover, even if the Government's interpretation was reasonable, the Court of Appeals for the Second Circuit made clear in United States v. George, 975 F.2d at 78, that overbroad language in a warrant is not cured by more narrowly-tailored language that may appear in other sections of the same warrant.

Similarly contrived is the Government's effort to retroactively narrow paragraph 14 of the Warrant, which authorized the seizure of "other documents relating to the running and supervision of the operations of the investment advisory business(es) of Amerindo." After making a technical distinction between "corporate records" and "business records" in paragraph 1, the Government asks the Court *not* to read paragraph 14 of the Warrant in a "hypertechnical" fashion. Instead, the Government urges a "commonsense" interpretation of this phrase according to the Government's "intended" meaning. According to the Government, this phrase of paragraph 14 was "intended" to refer to "documents comparable to communications with boards of directors related the [sic] running and supervision of the operations of Amerindo's business." (Gov't Post-Hearing Mem. at 7). It is not clear what documents "comparable to communications with boards of directors" would actually be, and it is far from commonsense to interpret paragraph 14 this way. Indeed, in its initial submission relating to the suppression motions, the

6

Government provided no indication that it understood paragraph 14 to refer to such an obscure category of documents. On the contrary, the Government initially stated that paragraph 14 called for "documents related to the operations of the investment advisory businesses of Amerindo." (Gov't Pre-Hearing Mem. at 19.) This is the plain and intended meaning of paragraph 14, and it is clearly unlawful under the Fourth Amendment.

The Warrant that authorized the seizure of anything with "writing on it" from the offices of Amerindo U.S. was plainly an overbroad, general warrant that was executed in violation of the Fourth Amendment. The Court should not permit the Government to justify the unlawful search by retroactively interpreting the Warrant according to the Government's purported, "intended" meaning. The Court should instead accept the broad view of the Warrant adopted by the Government's own witness and declare the Warrant unlawful.

### B. All Fruits of the Unlawful Search Should be Suppressed

There is no dispute that, in seizing documents from the offices of Amerindo U.S., the Government overstepped the bounds of the Fourth Amendment. The Government itself concedes that certain documents were taken that "should not have been seized" and that these materials must be returned.[2] (Gov't Post-Hearing Mem. at 9.) The only dispute between the Government and Defendants, therefore, relates to *which* documents should be returned. Defendant Tanaka respectfully submits that all documents seized from the offices of Amerindo U.S. should be suppressed.

---

[2] The Government has represented that it intends to return these materials to Amerindo U.S.; however, it has been nine months since 60 to 70 percent of the hard-copy documents and 100 percent of the electronic documents were seized, and the Government has not returned a single document.

The very purpose of the exclusionary rule is to deter unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures. United States v. Calandra, 414 U.S. 338, 347 (1974). Were the Court to allow the Government to conduct an unlawful, general search and require the Government to do nothing other than return those items that were beyond the scope of the investigation, the Government would have no disincentive to execute as broad a search as possible. The only way to effectively deter the Government from proceeding on an overbroad warrant, as it did in this case, is to suppress *all* of the fruits of the search. See United States v. Leon, 468 U.S. 897, 923 (1984) (ruling that suppression remains the appropriate remedy for subsequently invalidated warrants when the good-faith exception does not apply).

The Government argues that the appropriate remedy for the seizure of materials beyond the scope of a "valid warrant" is the suppression of only those materials. The Government contends that, because the postal inspectors did not act in "flagrant disregard" of the warrant's terms, the entire fruits of the search may not be suppressed. (Gov't Post-Hearing Mem. at 9-10.) The Government's argument is entirely misplaced. The search of the offices of Amerindo U.S. did not involve agents disregarding a valid warrant but executing an *invalid, overbroad warrant*. Indeed, each of the cases cited by the Government in its memorandum related to agents who were accused of departing from the terms of valid warrants. E.g. United States v. Shi Yan Liu, 239 F.3d 138, 141-42 (2d Cir. 2000). The Government is correct that, where agents go beyond the scope of a valid warrant, the movant must prove that the agents acted in "flagrant disregard" of the warrant's terms. However, the appropriate remedy for the execution of an invalid, general warrant is suppression of the entire fruits of the search. See, e.g., United States v. Marti, 421 F.2d 1263, 1269 (2d Cir. 1970) (reversing conviction and holding that evidence seized pursuant

to general warrant should have been suppressed despite the care of the executing officers in seizing only those items that were described in the affidavit and relevant to the investigation).

As the Second Circuit explained in Shi Yan Liu, the "flagrant disregard" rule is intended to suppress the entire fruits of a search when the search approximates a general search: "[t]he rationale of blanket suppression is that a search that greatly exceeds the bounds of a warrant and is not conducted in good faith is *essentially indistinguishable from a general search . . . the search . . . must actually resemble a general search*." Id. at 141 (emphasis added). In this case, agents of the Government executed an overbroad, unlawful warrant and conducted a general search. The appropriate remedy is the suppression of the entire fruits of the search.

> C. **The Good-Faith Exception Does Not Apply Because The Warrant Was Facially Deficient And Because The Underlying Affidavit Was Itself Lacking in Indicia of Probable Cause**

As discussed in Defendant Tanaka's memorandum dated January 10, 2006, the good-faith exception does not apply in this case because (1) the Warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" and because (2) the Warrant was so facially deficient "in failing to particularize the place to be searched or the things to be seized" that the executing officers could not have reasonably presumed it to be valid. Leon, 468 U.S. at 922. As indicated above, the postal inspectors could not have reasonably presumed valid a warrant, which, according to their supervisor's testimony, authorized the seizure of any document with writing on it. Nor could the postal inspectors – or those inspectors who actually reviewed the affidavit – have reasonably believed that the affidavit established probable cause to support the seizure of evidence relating to Amerindo Cayman and the three investors, Harvey, Urich and Marcus.

With respect to the inadequacy of the affidavit, the Government is forced once again to make significant concessions. The Government itself acknowledges that "*there was no direct evidence of the involvement of Amerindo Cayman in the fraud schemes*" and that "*the allegations concerning Amerindo Cayman and the Victims would not in and of themselves (separately or jointly) provide probable cause to search for and seize evidence*." (Gov't Post-Hearing Mem. at 15-16 (emphasis added).) In an effort to overcome this inadequacy, the Government urges the Court to consider the affidavit in light of "all the information." (Id.) Yet the only other information the Government cites in connection with Amerindo Cayman is the fact that the Defendants were associated with it. The Government thus appears to espouse the extraordinary principle that once the Government establishes probable cause with respect to one corporate entity, it may reasonably infer that any other entity that is owned by the same individuals is involved in a crime. Such an inference is clearly prohibited by the Fourth Amendment. See United States v. Martin, 430 F.3d 73, 76 (2d Cir. 2005) ("probable cause must be based on particularized information about the specific person or place searched, not on 'mere propinquity' to illegal activity"). Similarly troubling is the Government's suggestion that, because there was probable cause with respect to two clients, the Government may seize records related to other individuals whom one witness "*believed*" to be clients and who "*may*" have had trouble redeeming part or all of their investments. (Fraterrigo Affidavit ¶ 6(E) (emphasis added).) The affidavit was wholly lacking in indicia of probable cause, and it was unreasonable for the postal inspectors to believe otherwise.

Ultimately, Inspector Feiter and the other postal inspectors should have known that a warrant that authorized the seizure of any document that had writing on it was invalid. If the Defendants cannot overcome the good-faith exception in this case, it is not clear when the good-

10

faith exception could ever be overcome. To apply the good-faith exception to this case would be to render the exclusionary rule meaningless in cases involving subsequently invalidated warrants.

## CONCLUSION

For the foregoing reasons, Defendant Gary Alan Tanaka respectfully requests that the Court order that any evidence seized from Amerindo U.S.'s offices be suppressed.

Dated: February 10, 2006
    New York, New York

By: /s/ Steven G. Kobre

Steven G. Kobre
Justin M. Sher
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: 212.488.1200

Glenn C. Colton
Jessica L. Margolis
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
12 E. 49th Street, 30th Floor
New York, New York 10017
Tel: 212.999.5800

Attorneys for Defendant Gary Alan Tanaka