February 16, 2006

Hon. Kenneth M. Karas
Judge, U.S. District Court
United States Courthouse
500 Pearl Street – Rm. 2260
New York, N.Y.  10007-1312
Fax No:  212 805-7968

        Re:    *United States v. Alberto Vilar* - 05 Cr. 0621

Dear Judge Karas:

      The parties have conferred on the issue of a bill of particulars and the Government has agreed to provide the names of the alleged victims "as soon as it can notify the victims of the Government's intent to do so."   Because we cannot efficiently continue our review of the search materials until we know which customers/transactions to look for, we urge the Government to provide us with the names as soon as possible, and respectfully reserve our right to apply to the Court if there appears to be any significant delay in disclosure.

      This letter addresses defendant Vilar's additional request for particulars, as well as Rule 16 disclosure, disclosure of <u>Brady</u> material and notice of Rule 404(b) evidence .

Rule 16 Disclosure

      On February 9, 2006, counsel requested in writing that the Government clarify its position regarding Rule 16 disclosure, particularly with respect to the Government's obligation to produce documents and objects "the government intends to use in its case-in-chief at trial," pursuant to Rule 16(E)(ii).  The Government has in its possession everything that was taken from the Amerindo US and UK offices, all computer data taken from both offices, and other documents obtained by them through subpoena or otherwise, amounting to an enormous universe of documents, much of which we believe the Government should not have taken in the first place. We asked the Government to disclose to us, either by sending us copies or identifying for us, all of the items the government intends to use in its case in chief.  The Government responded by stating that it has made available to the defense all documents in its possession "from which it

Hon. Kenneth M. Karas
2/16/2006
Page 2

intends to select evidence to use in its case-in-chief at trial," and declined to provide the defense with an "exhibit list."

  For the Government to "disclose" the requested Rule 16 documents as part of all of the items that were taken from two offices and two extensive computer systems, is like telling the defense to find a needle in a haystack, especially because the Government has not maintained the pre-existing filing system and, with the closing of Amerindo, the defendants do not have their former employees available to them to search through the boxes. In <u>United States v. Turkish,</u> 458 F.Supp. 874, 882 (S.D.N.Y. 1978), the district court granted the defendants' request for an order directing the Government to identify among the 25,000 documents, in the Government's possession which ones it intended to use at trial. *See* <u>United States v. Upton</u>, 856 F.Supp. 727 (E.D.N.Y. 1994). In <u>United States v. Poindexter</u>*,* 727 F.Supp. 1470 (D. D.C, 1989), the Government produced several thousand pages of documents, any of which it indicated it might rely on at trial. The Court directed the Government to identify with greater specificity those documents in the "financial, calendar and diary areas" that it intended to use at trial, as well as documents on which its witnesses will rely or to which they will refer. The Court stated that the notice procedure would not prevent the Government from supplementing its disclosure or later introducing other documents on a limited scale. *Id.* at 1484. *Cf.* <u>United States v. Bortnovsky</u>*,* 820 F.2d 572, 574 (2d Cir. 1987)(conviction reversed where, in response to request for particulars, the Government provided "mountains of documents to defense counsel who were left unguided as to which would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged")

  If the Government is not directed to provide greater specificity in its Rule 16 disclosure, it will have obtained a substantial tactical advantage by seizing far more paper and computer records than it needed to investigate and prosecute its case. The Second Circuit has recognized that the District Court has inherent authority to regulate disclosure as part of sound case management. See <u>United States v. Cannone</u>*,* 528 F.2d 296, 298 (2d Cir. 1975); <u>United States v. Coppa,</u> 267 F.3d 132, 146 (2d Cir. 2001). We therefore request that the Court order the Government to specify and disclose, pursuant to Rule 16(E)(ii), which documents it intends to use in its case-in-chief at trial.

Hon. Kenneth M. Karas
2/16/2006
Page 3

Bill of Particulars

The defendant requests the following particulars with respect to the superseding indictment:

1. With respect to Page 3, ¶6, identify the "others" whom Vilar and Tanaka allegedly solicited and caused . . . "to solicit victims to invest in fraudulent investment products. . . . "

2. With respect to Page 8, ¶19(c), identify by name and account number the "trust account at Bank of America" that received a purported $500,000 transfer from the AMI account in June 2002.

3. With respect to Page 9, ¶20, identify by name and account number the account referred to as the "Luxembourg Account"

4. With respect to Page 13, ¶31, identify the "others" whom Vilar and Tanaka allegedly solicited and caused . . . "to solicit victims to invest in Amerindo Guaranteed Fixed Rate Deposit Accounts . . . . "

5. With respect to Page 15, ¶32(b), identify the investors who were allegedly unable to redeem or liquidate their GFRD investments.

6. With respect to Page 16, ¶ 34, identify the GFRDA investors allegedly affected and identify the changes Tanaka and Vilar allegedly made to the terms of the GFRD program without investor consent (other than, if any, the one investor and change specified in the paragraph).

7. With respect to Page 21, ¶41(c ), state the names of the Panamanian entities into whose brokerage accounts Vilar and Tanaka allegedly deposited investor funds, and identify the institution and account numbers of the alleged brokerage accounts.

8. With respect to Page 21, ¶41 (d), state the dates, amounts and investors from whom Vilar and Tanaka allegedly misappropriated funds.

9. Provide the defendants with copies of the documents referred to in the following sections of the indictment: Page 4, ¶8; Page 6, ¶14; Page 8, ¶19(a) and 19(b) and 19(c ) and 19(d); Page 8-9, ¶20; Page 10-12, ¶26(a) and 26(b) and 26(c ) and 26(d); Page 12, ¶27; Page 12, ¶28; Page 13, ¶29; Page 14, ¶32; Page 16, ¶33; Page 17, ¶ 34; Page

Hon. Kenneth M. Karas
2/16/2006
Page 4

      22, ¶ 42(e), 42(f), 42(k), 42(l), 42(m), 42(r ), 42(s), 42(t), 42(u), 42(x), 42(y); Page 32, ¶59; Page 33, ¶60.

Rule 7(c)(1) provides, in relevant part, that "[t]he indictment . . . shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."  As the Second Circuit explained in United States v. Walsh, 194 F.3d 37 (2d Cir. 1999):

> This requirement performs three constitutionally required functions: It fulfills the Sixth Amendment right "to be informed of the nature and cause of the accusation;" it prevents a person from being subject to double jeopardy as required by the Fifth Amendment; and it serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury.

Id. at 44 (citation omitted).  Moreover, the Grand Jury Clause of the Fifth Amendment "requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." Id (citation and internal quotation marks omitted).   As the Second Circuit has stated:

> A court should order a bill of particulars when needed to: identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.

United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988), quoting United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987) (conviction reversed where, in response to request for particulars, the Government provided "mountains of documents to defense counsel who were left unguided as to which would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged").  See United States v. Torres, 901 F.2d 205, 234 (2d Cir.), cert. denied, 498 U.S. 906, 111 S.Ct. 273 (1990).

      For all of these reasons, the Court should direct the government to comply with each and every one of the defendants' requests for a bill of particulars.

Hon. Kenneth M. Karas
2/16/2006
Page 5

Disclosure of Brady Material

The Government has a duty to produce evidence that is "material" to the defendant's guilt or punishment.  <u>Brady v. Maryland</u>, 373 U.S. 83, 87, 83 S.Ct. 1194 (1963); see <u>Kyles v. Whitley</u>, 514 U.S. 419, 437, 115 S.Ct. 1555 (1995); <u>United States v. Bagley</u>, 473 U.S. 667 (1985).  For <u>Brady</u> purposes, information is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 57, 107 S.Ct. 989 (1987).   A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome."  See <u>id</u>. (internal citations omitted); <u>Bagley</u>, 473 U.S. at 682, 105 S.Ct. 3375;  <u>Kyles</u>, 514 U.S. at  437, 115 S.Ct. 1555; <u>United States v. Madori</u>, 419 F.3d 159, 169 (2d Cir. 2005);<u>United States v. Payne</u>, 63 F.3d 1200, 1209 (2d Cir.1995).

In <u>Kyles</u>, the Supreme Court elaborated on the materiality standard.   First, <u>Kyles</u> rearticulated the "reasonable probability" test discussed in <u>Bagley</u>.

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.  A "reasonable probability" of a different result is accordingly shown when the Government's evidentiary suppression "undermines confidence in the outcome of the trial."

<u>Kyles</u>, 514 U.S. at 437, 115 S.Ct. at 1555-6, quoting <u>Bagley</u>, 473 U.S. at 678.  Second, the <u>Kyles</u> Court stated that the materiality standard is "not a sufficiency of the evidence test." <u>Id</u>. at 1556.  A court's review of a <u>Brady</u> claim does not entail weighing the inculpatory evidence that was admitted.  Rather, one shows a <u>Brady</u> violation by "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  <u>Id</u>., 155 S.Ct. at 1556. (Emphasis added)   Third, the <u>Kyles</u> Court held that, once the "reasonable probability" test has been satisfied, there is no need for further harmless error review.  <u>Id</u>.  Finally, it is the government's obligation to learn of law enforcement information relating to its investigation, even when that information is not within its possession.  <u>Id</u>., 514 U.S. at 437, 155 S.Ct. at 1557-68.

The prosecutor's obligation to turn over "material" information is not limited to "exculpatory" information but also encompasses information that could be used for impeachment purposes, so-called <u>Giglio</u> material.  <u>Bagley</u>, 473 U.S. at 676 (Impeachment evidence as well as exculpatory evidence falls within the <u>Brady</u> rule "[as being] 'evidence favorable to the accused' .

Hon. Kenneth M. Karas
2/16/2006
Page 6

. . so that if disclosed and used effectively, it may make the difference between conviction and acquittal); see Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763 (1972).  This duty to disclose impeachment evidence stems from the Constitutional "right to put before a jury evidence that might influence the determination of guilt." United States v. Salerno, 937 F.2d 797, 809 (2d Cir. 1991), reversed on other grounds, 112 S.Ct. 2503 (1992), quoting Pennsylvania v. Ritchie, 488 U.S. at 57, 107 S.Ct. 989 (1987).  As the Supreme Court has long recognized, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Delaware v. E. Van Arsdall, 475 U.S. 673, 678-79 (1986).  A Confrontation Clause violation may exist when a defendant is prohibited from "exposing to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness." E. Van Arsdall, 475 U.S. at 1436 (citation omitted).  We note that for Giglio purposes, the Government's disclosure obligations extend to any declarant whose statements the government will introduce at trial whether or not the declarant is testifying as a witnesses.  See Fed.R.Evid.806; United States v. Friedman, 854 F.2d 535, 569 (2d Cir. 1988).[1]

The appropriate timing for disclosure of information material to the defense is dictated by constitutional due process concerns, so disclosure must be made in time for its effective use at trial or at a plea proceeding. Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir. 2001); United States v. Persico, 164 F.3d 796, 804 (2d Cir. 1999).  In United States v. Coppa, 267 F.3d 132 (2d Cir. 2001), the Second Circuit ruled that a prosecutor is not constitutionally required to provide exculpatory and impeachment material immediately upon demand of a defendant, far in advance of trial and without regard to its "materiality." Coppa, 267 F.3d at 142 ("we have never interpreted due process of law as requiring more than that Brady material must be disclosed in time for its effective use at trial"), abrogating United States v. Shvarts, 90 F. Supp.2d 219

---

[1] Rule 806 of the Federal Rules of Evidence provides that:

> [w]hen a hearsay statement, or a statement defined in Rule 801(d)(2), (C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness.

As the Advisory Committee's Note explains, "[t]he declarant of a hearsay statement which is admitted in evidence is in effect a witness.  His credibility should in fairness be subject to impeachment and support as though he had in fact testified. See Rules 608 and 609." Id. advisory committee's note.  In turn, under Rule 608(b), "[s]pecific instances of the conduct of a witness ... may ... in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness ... concerning the witness' character for truthfulness or untruthfulness." Fed.R.Evid. 608(b).

Hon. Kenneth M. Karas
2/16/2006
Page 7

(E.D.N.Y. 2000). Rather, the Second Circuit concluded that due process requires the prosecutor to disclose exculpatory and impeachment information "no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made." Id. Therefore, it is incumbent upon the prosecutors to make a "prediction" in order to "gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability is reached." Id. at 143, quoting Kyles, 514 U.S. at 437, 115 S.Ct. at 1555.

The Court in Coppa also recognized that the trial judge retains the authority to determine when disclosure should occur. While it noted that no constitutional principle mandates disclosure of exculpatory and impeachment evidence at the moment of defendant's request, "[t]his case presents no occasion to consider the scope of a trial judge's discretion to order pretrial disclosures as a matter of sound case management." Id. at 146. Upon remand, Judge Glasser quoted from the Coppa decision and exercised "prudent case management" in ordering disclosure of all material evidence four weeks before trial to afford time for motions *in limine*. United States v. Aparo, 221 F. Supp.2d 359, 366 (E.D.N.Y. 2002). Since the decision in Coppa, a District Court in Nevada has ruled that the Jencks Act does not apply to the disclosure of material information, having been superseded by Fed.R.Crim.P. 26.2, so the Government cannot rely on the Jencks Act to withhold pretrial disclosure until the eleventh hour. United States v. Acosta, 2005 WL 281232 *5 (D. Nev. January 31, 2005).

The "prediction" of a prosecutor, who views his evidence through the eyes of an advocate for one side, cannot satisfy the demands of Due Process. Indeed, in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004), Judge Scalia wrote, in reference to evidence admitted in violation of the Sixth Amendment:

> We have no doubt that the courts below were acting in utmost
> good faith when they found reliability. The Framers, however,
> would not have been content to indulge this assumption. They knew
> that judges, like other government officials, could not always be
> trusted to safeguard the rights of the people . . . . They were loath to
> leave too much discretion in judicial hands.

Id. at 1373. Prosecutors, like judges and other government officials, cannot "always be trusted to safeguard the rights of people." Id.

In Leka v. Portuondo, 257 F.3d 89 (2d Cir. 2001), the Second Circuit found that the State had violated its Brady obligations in a murder prosecution by delaying disclosure of exculpatory eyewitness evidence from an off-duty police officer which contradicted two eyewitnesses at trial.

Hon. Kenneth M. Karas
2/16/2006
Page 8

The witness was identified to the defense nine days before trial (and twenty-three days before the defense case began), resulting in a hasty investigation by the defense which proved unsuccessful. Moreover, the delayed timing prevented effective assimilation of the evidence into the defense case  Id. at 101.  For these reasons, the Second Circuit found that the State had suppressed exculpatory Brady material and reversed.  See id. at 101; see also United States v. Gil, 297 F.3d 93, 106 (2d Cir. 2002) (Brady violated where Government lumped together exculpatory documents with 2,700 pages of material itemized in a 41-page memoranda produced less than one business day before trial, despite Government's own assessment of memorandum as insignificant.)

     There are no allegations in this case that would warrant withholding impeachment or exculpatory evidence.  Therefore, we submit that due process requires at least two months for the defense to review the information, investigate the credibility of the government's witnesses, and file appropriate motions *in limine*.  Any questions concerning the discoverability of a particular document should be submitted to the Court for in camera review and determination. See United States v. Sainato, 29 F. Supp.2d 116, 117 (E.D.N.Y. 1998) (agent notes submitted to court to determine whether the notes constituted Jencks Act statements).  At a minimum, the Court should order the following disclosure two months before trial

1. Production of materials showing any prior criminal or other bad acts of any witness the Government anticipates calling in its case-in-chief, including (i) a copy of any criminal record of any such witness;  (ii) a written description of any prosecutable federal offense known by the Government to have been committed by any such witness;  and (iii) a written description of any conduct that may be admissible under Rule 608(b) of the Federal Rules of Evidence known by the Government to have been committed by any such witness;

2. Production of materials showing a potential bias or prejudice of any witness the Government anticipates calling in its case-in-chief, including (i) a statement whether any promise, reward, or inducement has been given to any such witness, identifying by name each such witness and each promise, reward, or inducement, and  (ii)  a copy of any promise, reward, or inducement reduced to writing;

3. Any report, prepared by the Pretrial Services Agency or the United States Probation Department in connection with any witness the Government anticipates calling in its case-in-chief, should be submitted to the Court for in camera inspection in accord with the procedures set forth in United States v. Pena,  227 F.3d 23 (2d Cir. 2000) and United States v. Moore, 949 F.2d 68 (2d Cir. 1991); and

Hon. Kenneth M. Karas
2/16/2006
Page 9

     5.     Information known to the Government about: (i) complaints made by cooperating witnesses, (ii) reports of cooperating witnesses during investigations, (iii) adverse personnel information of agent witnesses, and (iv) any mental or physical impairment of any witnesses whom the Government anticipates calling in its case-in-chief.

     6.     Any statements of witnesses that are inconsistent with prior statements of that witness or of another witness, which statements constitute impeachment evidence and must be disclosed.

<u>Disclosure of Expert Witnesses And Any And All Information, Studies And Reports Upon Which Any Expert Witness Will Base His/Her Testimonial Opinions.</u>

At the trial of this case, the Government may call one or more witnesses to testify as non-scientific "expert witnesses." To the extent that any expert is permitted to testify in this case, it is respectfully requested that this Court direct the Government to disclose to defense counsel the name and address of each such expert, a summary of his/her anticipated testimony, and the reports, studies or other data on which such expert testimony will rely. Timely disclosure of this information is needed to enable counsel to file a motion *in limine* prior to trial, to properly restrict the scope and extent of the proposed testimony. Failing such disclosure, the witness will be free to say anything, claim the source is some confidential government document or witness, without counsel effectively confronting this testimony.

Rule 702 of the Federal Rules of Evidence allows expert testimony that will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Thus, expert testimony regarding matters not beyond the ken of an average juror should generally be excluded. See, e.g., <u>United States v. Cruz</u>, 981 F.2d 659, 664 (2d Cir.1992) (expert testimony should have been excluded where it concerned narcotics operations that were not "reasonably perceived as beyond the ken of the jury"); <u>United States v. Long</u>, 917 F.2d 691, 701-03 (2d Cir. 1990) (expert testimony should have been excluded where it concerned the structure and operations of an illegal kickback scheme that were not beyond the ken of an average juror). For example, it is improper for an expert witness to merely parrot the testimony of other witnesses with respect to information which is certainly not beyond the ken of the average juror. See <u>United States v. Long</u>, 917 F.2d 691, 702 (2d Cir. 1990).

To this end, the Government is barred from using experts "solely to bolster the credibility of the government's fact witnesses by mirroring their version of events." <u>United States v. Cruz</u>,

Hon. Kenneth M. Karas
2/16/2006
Page 10


981 F.2d 659, 664 (2d Cir. 1992).   In particular, the Cruz Court condemned the technique of having an expert state that a given set of facts are consistent with criminal behavior and then "arguing that the witnesses' version of events is consistent with an expert's description of patterns of criminal conduct." Id.  Rather, the expert's testimony must deal with operations which "have esoteric aspects reasonably perceived as beyond the ken of the jury and that expert testimony cannot be used solely to bolster the credibility of the government's fact witnesses by mirroring their version of events." Id.  See also United States v. Castillo, 924 F.2d 1227, 1231 (2d Cir. 1991); United States v. Scop, 846 F.2d 135, 139-43 (2d Cir. 1988).

In recent years, the Second Circuit has also made it clear that a case agent may not testify as an expert regarding the meanings of words and phrases used in criminal conversations where such words are "patently not drug code," United States v. Dukagjini, 326 F.3d 45, 55 (2d Cir. 2003).   Nor may a case agent give expert testimony as to statements where the words or phrases at issue cannot be shown to have a "fixed meaning" within the context of the criminal activity – such as narcotics trafficking – or within the charged conspiracy.  Id.; see also United States v. Tommy Cruz, 363 F.3d 187, 196 (2d Cir.2004) (finding that "expert witness called on to testify about the meaning of narcotics codes strays from the scope of his expertise when he interprets ambiguous words or phrases and there is no evidence that these terms were drug codes").

Rule 16(a)(1)(G), of the Federal Rules of Criminal Procedure provides that, upon defendant's request, "the government must give to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . .The summary provided under this subparagraph must describe the witnesses's opinions, the basis of the reasons for those opinions, and the witness's qualifications." The Rule permits the opposing party to determine, prior to trial, whether the proposed witness meets the qualifications of an expert within the meaning of the Federal Rules of Evidence.  It is, therefore, respectfully requested that the Government be directed to provide the requested information to the defense.

Notice of Rule 404(b) Evidence

Defendants respectfully request timely disclosure of any "other crimes, wrongs and acts" evidence that the Government intends to introduce against them at trial pursuant to Fed.R.Evid. 404(b).  The Government has not formally advised the defense of any evidence to be offered pursuant to Fed.R.Evid. 404(b).  Rule 404(b) explicitly states that a defendant has a right to receive "reasonable notice in advance of trial" of the Government's intent to offer the proof described in the Rule.

Hon. Kenneth M. Karas
2/16/2006
Page 11

In addition to the need to investigate any "other crimes" incidents that the Government will introduce, counsel also need timely notice in order to evaluate and draft appropriate motions *in limine*. In that regard, "other crimes" evidence under Rule 404(b) may not be introduced merely to show criminal propensity. It must be offered for some permissible purpose, including, *inter alia*, defendant's knowledge, intent or plan to commit the charged crimes. Fed.R.Evid. 404(b). Moreover, it must be relevant to a material element of the charged offense that is in dispute. See United States v. Colon, 880 F.2d 650, 656 (2d Cir. 1989); United States v. Manafzadeh, 592 F.2d 81, 86 (2d Cir. 1979); United States v. Sampson, 980 F.2d 883, 886 (3d Cir. 1992). Further, the 404(b) evidence is only relevant "if the jury can reasonably conclude that the act occurred and that the defendant was the actor." Huddleston v. United States, 485 U.S. 681, 689 (1988). Finally, if the "other crimes" evidence tends to prove some fact besides character, its admissibility will then depend upon whether its probative value outweighs its prejudicial effect. Sampson, 980 F.2d at 887.

The Government must not only provide sufficient factual details concerning the 404(b) acts to suggest their relevance to the charged crimes, but it must indicate the legal hypothesis upon which each act will be offered. See Sampson, 980 F.2d at 887 ("[if] the government offers prior offense evidence, it must clearly articulate how that evidence fits into a chain of logical inferences"); United States v. Hogue, 827 F.2d 660, 662 (10th Cir. 1987) (Government must articulate precise evidentiary hypothesis by which a fact may be inferred from the other acts evidence). For all of these reasons, the Court should order timely disclosure of Rule 404(b) proof.

                      Respectfully submitted,

                      HOFFMAN & POLLOK

                      By; _____
                         Susan C. Wolfe

Cc:  Marc Litt, AUSA
     Glenn Colton, Esq.
     Steven Kobre, Esq.