UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

    -against-

                                                      05 Cr. 621 (KMK)

ALBERTO WILLIAM VILAR and
GARY ALAN TANAKA,

        Defendants.
------------------------------------------------------------x

**DEFENDANT ALBERTO VILAR'S REPLY MEMORANDUM
IN SUPPORT OF HIS MOTION TO QUASH
GRAND JURY SUBPOENA**

**Preliminary Statement**

Defendant Alberto Vilar respectfully submits this memorandum in reply and in further support of his motion to quash the grand jury subpoena served on the date of the search the Amerindo Investment Advisors Inc. offices

On September 12, 2006, defendant Vilar filed his motion to suppress evidence seized pursuant to the warrant to search Amerindo's Park Avenue offices and all evidence derived therefrom. That motion necessarily encompassed the subpoenaed materials, as the subpoena was simply an alternative method of continuing the search of the Park Avenue offices. In its lengthy response to the defendant's motion to suppress, the Government never mentioned that documents subject to the search remained on the premises subject to subpoena. It was not until December 8, 2005, a few days before the suppression hearing, that the Government disclosed to the defense a 35-page inventory titled "Items not taken," which was introduced into evidence at the hearing as Government's Exhibit 3. A copy of the Government's December 8, 2005 letter is attached hereto as Exhibit A.

On November 1, 2005, counsel for Vilar was informed by Eugene Licker, counsel for Amerindo U.S., that he had received a subpoena on the day of the search and was prepared to begin producing documents. He did not specify whether it was an SEC or grand jury subpoena. We subsequently received a copy of the subpoena and advised Mr. Licker that we were researching the issue of a motion to quash on grounds similar to those stated in the motion to suppress. Presumably this information was conveyed to the Government. Presumably, also, the Government understood that the subpoenaed materials were subject to the suppression motion and may, for that reason, have determined not to enforce the subpoena until the suppression motion had been decided.

Defendant Vilar submitted his motion to quash on December 14, 2005, approximately a month and a half after he was informed by counsel for Amerindo that a subpoena was outstanding. The only difference between the subpoena and the warrant was that the subpoena included an additional five paragraphs which effectively sought to catch any and all documents which may have been missed by the search warrant.

**1. The Memorandum In Support Of Defendant's Motion To Quash Was Promptly Submitted To The Court**

**A.    The Subpoena Was An Extension Of The Search Warrant**

The Government's response to defendant's motion to quash makes much of the timing of the defendant's motion to quash. The defendant, however, filed his motion to suppress according to the schedule set by the court. Since the subpoena was the fruit of the search, indeed, it was part and parcel of the search, the materials that remained on the premises subject to the subpoena were covered by the motion to suppress.

The Government stresses that using a subpoena to complete the search was first broached by Amerindo counsel. Mr. Licker "persuaded the Government that proceeding via subpoena was in the interest of all concerned." Government's Memo at 7. The search

2

team had been at the Park Avenue premises since 8 a.m., reviewing and seizing masses of documents pursuant to an all-encompassing search warrant.  See Transcript of Suppression Hearing, dated December 14, 2005 at p. 79, 80, 89.  Amerindo counsel was never in a position to dictate to the Government what their search parameters should be.  The subpoena issued that afternoon was a substitute for a continued search by a team of agents -- an alternative that Amerindo's counsel opted for as less disruptive to the company's business.  Mr. Licker's suggestion was tantamount to opening the door when the police knock and announce that they have a warrant, rather than letting them break down the door.

**B**.        The **Motion To Quash Was Submitted In A Timely Manner**

The Government acknowledges in its memorandum that there is no dispositve case law on the definition of "promptly" as contained in Rule 17(C ) (2).  The Government cites a thirty year old decision in  US v. Kleen Laundry & Cleaners, Inc. 381 F. Supp.519 (EDNY 1974) where the defendants moved to dismiss the indictment and suppress evidence under the Forth Amendment prohibition against unreasonable searches and seizures. The Court held that, despite the fact that the subpoena was issued in the name of a grand jury which was not in session, not consulted, and not notified of the subpoena, the indictment was valid.  Id. at 522. On the issue of timeliness, the court held that "such motions [to quash] should be made when the abuse becomes apparent." Id. at 523. The "abuse" in the case at bar became apparent only after defense counsel had an opportunity to review the search warrant, research the law and examine the inventories cataloguing both the documents seized and those not seized.   The latter inventory was not turned over until December 8, 2005.  The "abuse" was initially addressed in the defendant's motion to suppress and addressed further after counsel came to understand all of the facts pertinent to the subpoena and its relationship to the search.

3

The only other case cited by the Government is United States v. Heard, 952 F. Supp. 329 (N.D. W. Va. 1996), where the Court rejected the defendants' argument that their submission constituted a proper response to the Government's subpoena. The subpoena in question requested that the defendants appear and testify before a grand jury the following week. Id. at 330, 331. Less than a day before they were due to appear before the grand jury, the defendants sent documents entitled "non-statutory abatement" forms to the Government in response to the subpoena. Id. at 331. The Court held that the aforementioned documents did not constitute an appropriate response to the subpoena. Id. at 335. In addition, the Court held that "even if construed as a motion to quash [these forms] were not under the circumstances "promptly made" as required under Fed.R.Crim.P. 17(c) and do not even suggest, much less prove, to this Court, or any other, that compliance would be "unreasonable or oppressive" as is also required under Rule 17(c)."Id at 335. The case does not purport to establish a definition of "promptly."

Indeed, it does not appear that any court has established a timetable or fleshed out the parameters of a time frame within which a motion to quash would be considered "promptly" made. Under the complex and probably unique circumstances of this case, which involves a related, timely filed motion to suppress, the motion to quash was promptly filed.

## 2. **THE SUBPOENA SERVES AN IMPROPER PURPOSE**

In response to defendant's argument that the subpoena now would only improperly serve to provide the Government with evidence for use at trial, the Government states that the grand jury investigation is still "ongoing" and therefore the documents sought are not in preparation for trial. The trouble with this argument is that it can be too handily employed whenever the Government wishes to obtain additional evidence as they ready themselves for trial. The court must therefore decide whether any

4

ongoing grand jury investigation has as its <u>sole or dominant purpose</u> the discovery of facts relating to a defendant's pending prosecution. In making that determination, the Court should consider the fact that the government's deadline for filing a superseding indictment has passed. In addition, some of the documents called for by the subpoena deal directly with Lily Cates, the only alleged victim named in both the first and second indictment, and others relate to investments in SBIC and GFRD accounts which are also alleged in the indictment. Under these circumstances, it appears that the dominant purpose of the subpoena is to obtain evidence for use at trial

## **CONCLUSION**

For the reasons stated above and in the defendant's initial memorandum, defendant Alberto Vilar requests that the Court quash the Subpoena as set forth above.

Dated:      New York, New York
            February 24, 2006

Respectfully submitted,

HOFFMAN & POLLOK, LLP

By:_____
       Susan C. Wolfe

*Attorneys for Defendant Alberto Vilar*
260 Madison Avenue
New York, NY  10016
(212)  679-2900
(212)  679-1844 (fax)