March 13, 2006

**HAND DELIVERY**

The Honorable Kenneth M. Karas
United Stated District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 920
New York, New York 10007

**Re:**   *United States v. Alberto William Vilar and Gary Alan Tanaka SI 05Cr. 621 (KMK)*

Dear Judge Karas:

   Defendant Alberto Vilar respectfully submits this letter to join in the motion of his co-defendant Tanaka and to establish his standing to contest the October 13, 2005 and October 14, 2005 search of Amerindo Investment Advisors, Inc. ("Amerindo U.K.") documents stored at the Cadogan Tate storage facility, 239 Acton Lane in London, England.  Mr. Vilar, a founder and principal of Amerindo U.K, had an expectation of privacy in the stored Amerindo U.K. property and documents and, therefore, has standing to contest the search.

   In connection with the motion to suppress evidence obtained during the October 13, 2005 and October 14, 2005 search, Mr. Vilar has executed a declaration in which he explains that he was "a founder and principal of Amerindo U.K.," and that, in such a capacity, he "expected that the property of Amerindo U.K.'s London office would remain private and free from unlawful, official intrusion." Mr. Vilar's Declaration is attached hereto as Exhibit "A."  On October 13, 2005 and October 14, 2005, operating pursuant to an extremely broad search warrant, three U.S. Postal Inspectors, aided by two officers from the Metropolitan Police Service of Greater London, searched the Cadogan storage facility where Amerindo U.K.'s documents were stored and seized forty-three boxes of documents along with several computers. The search and subsequent seizure of documents and computers that had been transferred from the London offices into private storage intruded upon Mr. Vilar's expectation of privacy thereby conferred standing upon him to contest the search.

In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421 (1978), the Supreme Court held that, in determining standing, a Court should analyze the extent of a particular defendant's Fourth Amendment rights, rather than focusing on any "theoretically separate, but invariably intertwined concept of standing." Id. at 428. In *United States v. Chuang*, 897 F. 2d 646 (1990), the Second Circuit, citing *Rakas*, emphasized that the question of standing hinged on whether "the disputed search and seizure has infringed an interest of the defendant which the Forth Amendment was designed to protect." Id. at 649. The Court went on to state that establishing a legitimate expectation of privacy under the Forth Amendment required that a defendant demonstrate "a subjective expectation of privacy in a searched place or item" and show that the expectation is "one that society accepts as reasonable." Id.

In *United States v. Leary,* 846 F.2d at 592 (Tenth Circuit 1988), the Court held that "there is no doubt that a corporate officer or employee may assert a reasonable or legitimate expectation of privacy in his corporate office." Mr. Vilar maintained a work area in the London offices and he kept his business and personal records in a credenza there. The Supreme Court, in addressing the variety of work environments that exist, held that the question of whether an employee has a reasonable expectation of privacy in business premises should be determined on a case-by-case basis. *O'Connor v. Ortega*, 480 U.S. 709, at 718 107 S.Ct.1492 (1987). In *United States v. Hamdan,* 891 F. Supp. 88, 94 (E.D.N.Y. 1995), standing to challenge a search of business premises by a corporate officer hinged on whether he could make "a sufficient showing of a possessory or proprietary interest to the area searched." Where evidence is seized from an employee's work area, courts applying this test generally find that the employee has standing. Standing has also been found in areas in an office that go beyond the specific office of the defendant. See *United States v. Lefkowitz*, 618 F.2d 1313, 1316 (9th Circuit 1980) (holding defendant had standing to challenge search of corporate "suite," which was "the target of the search and where corporate records were seized").

Mr. Vilar's standing to contest the search of all of Amerindo U.K's documents and computers stored at the Cadogan Tate facility is founded on the following three factors that demonstrate his "possessory or proprietary interest" in the Amerindo U.K.'s premises, and by extension the Cadogan Tate storage facility. First, as explained in his declaration, when Mr. Vilar visited London, he would conduct business in the Upper Grosvenor Street offices, maintaining his work space in the conference room of the building. (See Vilar Declaration). Mr. Vilar also kept his business and personal files in a large credenza located in the conference room.(Id). Mr. Vilar had his own private bathroom in the London office where he kept his personal belongings and clothing. (Id.) Two paintings from his private art collection were also kept in the Amerindo U.K. offices. (Id.) Indeed, the "Record of Exhibits" which defines broadly what materials were seized by Postal Inspectors at the Cadogan Tate storage facility includes entry # 26 which is listed as "Alberto Vilar" files. (See Sher Decl., Exhibit "B.")

Second, Mr. Vilar states that he is a founder and principal of the company and that he conducted business in Amerindo U.K.'s offices whenever he traveled to London. In *United States v. Broadhurst*, 805 F.2d 849, 852 (9th Circuit 1986), the Court held that, in determining standing based on involvement in joint venture, physical presence "is not talismanic to the determination of standing…."

Third, Mr. Vilar stored his business records in a credenza located in the conference room. (Id.). This credenza was only used by Mr. Vilar and despite the fact that others at Amerindo U.K. may have had access to the conference room and the credenza, the Supreme Court has recognized that expectations of privacy in private business offices are not defeated by the presence of co-workers, supervisors, and the public, unless the office is "so open to fellow employees or the public that no expectation of privacy is reasonable." *O'Connor v. Ortega*, 480 U.S. 709, at 718 107 S.Ct.1492 (1987). The conference room where Mr. Vilar worked and kept his personal and business records was not accessible to the general public, nor was the Cadogan Tate storage area accessible to the general public. (See Sher Decl. Exhibit "A," Information in Support of an Application for Warrant of an Entry to Search ("I am satisfied that entry and access to the material will not be granted unless a warrant is produced")).

Fourth, Amerindo U.K. contained confidential records of private clients, and there has been no allegation or evidence that the property and area searched was accessible by the public.

In his declaration, Mr. Vilar states that he had a subjective expectation of privacy in the offices of Amerindo U.K. and the property contained therein. That privacy interest continued when the property was transferred to a secure storage facility inaccessible to the public. Mr. Vilar respectfully submits that, in light of the facts outlined above, his expectation of privacy was reasonable and that he is entitled to contest the legality of the search.

        Respectfully submitted,

        SUSAN C. WOLFE

Encls.

cc:   Glenn C. Colton, Esq., counsel for Gary Tanaka (by fax);
      Steven G. Kobre, Esq., counsel for Gary Tanaka (by fax)
      Marc Litt, Esq., Assistant United States Attorney (by fax)