

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 28, 2006

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 920
New York, New York 10007

    Re: <u>United States v. Alberto William Vilar and Gary Alan Tanaka,</u>
       S2 05 Cr. 621 (KMK)

Dear Judge Karas:

    The Government respectfully submits this letter in opposition to defendant Tanaka's letter dated June 23, 2006, and to raise certain issues in advance of next week's hearing concerning the production of information to the defendants pursuant to Fed. R. Crim. P. 26.2. For the reasons stated below, the Government respectfully requests that the Court preclude the defendants from inquiring about Inspector Fraterrigo's investigation and facts known to her through that investigation at the time she applied for the search warrant. Questioning Inspector Fraterrigo on such topics not only goes beyond the scope of <u>Leon</u> and its progeny but in effect amounts to a back-door <u>Franks</u> hearing.

### Background

    On December 14, 2005, the Court held a hearing on defendants' motion to suppress evidence taken in the May 26, 2005 search of Amerindo U.S.'s offices. Prior to the commencement of that hearing, the Court denied defendants' motion for a hearing pursuant to <u>Franks</u> v. <u>Delaware</u>, 438 U.S. 154 (1978) on the ground that they had not made the requisite preliminary showing. (<u>See</u> 12/14/05 Tr. at 3-5; 12/9/05 Order). The Government called one witness at that hearing, United States Postal Inspector John Feiter, a supervisor with 27 years of experience as a Postal Inspector, and the team leader of a securities and commodities fraud team in the Southern District of New York.

    In an order dated December 16, 2005 (the "Order"), this Court denied defendants' request to call Inspector Fraterrigo and found that "the only question is whether it was objectively reasonable for the agents executing the search to rely upon the warrant issued by the magistrate judge." Order at 2. The Court held that "[u]nder the objective test articulated in

Hon. Kenneth M. Karas
June 28, 2006
Page 2

Leon, Inspector Fraterrigo's subjective beliefs about the validity of the warrant are irrelevant." Id.

The parties submitted post-hearing briefs and, on March 9, 2006, the Court heard oral argument on the motions. During that oral argument, the Court indicated that in this case, unlike United States v. Burke, 718 F. Supp. 1130 (S.D.N.Y. 1989), the defendants challenged the actual extent of the searches, which was relevant to the Court's determination of whether the agents acted in good faith in relying on the warrant. (3/9/06 Tr. at 59-60). In light of defendants' challenge to the extent of the search in this case, Your Honor indicated that the instructions that Inspector Fraterrigo gave the Inspectors conducting the search and the process by which the Inspectors decided what was and what was not covered by the warrant became relevant to the Court's determination of whether the good faith exception applies.[1] (Id.). At the conclusion of oral argument, Your Honor indicated that you believed that the resolution of the motion to suppress "is going to come down to good faith." (3/9/06 Tr. at 77).[2]

On March 16, 2006, the Government submitted a letter to the court requesting that it be permitted to present additional testimony on the factual issues raised by the Court at oral argument, namely, issues relating to the instructions provided by the case agent to those agents conducting the search, the manner in which the search was conducted, and the nature of the items that inspectors determined were not covered by the search warrant and were left behind. In an order dated April 4, 2006, the Court granted the Government's request to re-open the hearing and indicated that it "require[d] more information about the execution of the search." (4/4/06 Order at 3).

In a letter dated June 23, 2006, defendant Tanaka requested that he be permitted to question the postal inspectors at the upcoming hearing about the "facts and circumstances known to the Postal Inspectors at the time of the search but not included within the affidavit presented to the magistrate in support of the warrant." (6/23/06 Tanaka Ltr. at 1). Specifically, Tanaka requests that he be permitted to question the postal inspectors about facts known to the postal inspectors at the time the search was executed, including but not limited to (a) the full extent of the information provided by the two alleged "victims," including any positive

---

[1] Although Inspector Feiter testified that the agents conducting the search left approximately 30 to 40 percent of paper behind (12/14/05 Tr. at 89), the Court correctly noted that there was no evidence in the record whether that 30 or 40 percent of the paper that was left behind had writing on it. (3/9/06 Tr. at 45).

[2] The Government continues to maintain that the warrant executed at Amerindo U.S. offices was lawfully issued and was neither overbroad nor insufficiently particularized. Thus, it is not "beyond dispute at this point that the Amerindo US warrant was unconstitutionally overbroad and therefore invalid." (6/23/06 Tanaka Ltr. at 2).

Hon. Kenneth M. Karas
June 28, 2006
Page 3

experiences with defendants, (b) information provided by individual investors other than the two alleged "victims" noted in the affidavit, (c) information provided by institutional clients of Amerindo U.S. and (d) information as to the full scope of Amerindo U.S.'s business, including the various investment services offered by the company and the total amount of money under management. (6/23/06 Tanaka Ltr. at 4). For the reasons set forth below, defendant Tanaka's application should be denied.

**Discussion**

I.   Good Faith Analysis

The "good faith" exception to the exclusionary rule allows the admission of evidence, despite the absence of probable cause, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." United States v. Leon, 468 U.S. 897, 920 (1984). Because the application of the exclusionary rule is an extreme sanction and "[s]ociety pays a heavy price when relevant probative evidence of a defendant's guilt is excluded from consideration at trial." United States v. Varela, 968 F.2d 259, 263 (2d Cir. 1992) (Walker, J., concurring), the Leon court identified only four exceptions in which the Leon good faith exception should not apply. The Leon exception is inapplicable where: (1) the issuing judicial officer was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. Franks v. Delaware, 438 U.S. 154 (1978)"; (2) the issuing officer "wholly abandoned his judicial role"; (3) the affidavit supporting the warrant contained so few indicia of probable cause "as to render official belief in its existence entirely unreasonable"; and (4) the warrant itself is so facially deficient that no executing officer could reasonably presume it to be valid. Id. at 923.

The purpose of the exclusionary rule is to deter police misconduct and the Leon Court held that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." Id. at 919. "As with any remedial device, the application of the [exclusionary] rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." United States v. Calandra, 414 U.S. 338, 348 (1974). "[W]here the officer's conduct is objectively reasonable, 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . .the officer is acting as a reasonable officer would and should act in similar circumstances.'" Leon, 468 U.S. at 920 (quoting Stone v. Powell, 428 U.S. 465, 539-40 (1976)). "This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." Id.

Under the guise of evaluating "good faith," Tanaka is simply trying to use the opportunity presented by having the case agent testifying to inquire into the details of Inspector Fraterrigo's investigation for the purposes of obtaining early free discovery with respect to victims' statements prior to trial, developing impeachment testimony for use at trial, and

Hon. Kenneth M. Karas
June 28, 2006
Page 4

attempting to develop the evidence needed to make the requisite preliminary showing under Franks.[3]  In arguing that the "totality of the circumstances" test justifies the proffered line of questioning, Tanaka ignores that the good-faith inquiry "is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."  Leon, 468 U.S. at 923 n. 23.

The Supreme Court's own analysis in Leon demonstrates that the defendants' position is fatally flawed.  First, Leon makes it clear that what is relevant under the good faith analysis is the facial validity of the warrant and how the officers acted in executing the search once the warrant was obtained.  At a hearing evaluating good faith under Leon, testimony may be elicited as to what the officers said and how the officers acted during the execution of the search to comply with the law.  See Leon, 468 U.S. at 918-23; see also United States v. Burke, 718 F. Supp. 1130, 1146 (S.D.N.Y. 1989).  Second, in creating the first exception to the application of the Leon good faith exception, the Supreme Court acknowledged that the Leon exception would not apply in situations where the Government failed to successfully defend against a claim brought pursuant to Franks.  See Leon, 468 U.S. at 923 ("Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.  Franks v. Delaware, 438 U.S. 154 (1978)").  Simply put, only if the defendants meet their high burden of making a substantial preliminary showing under Franks that an affiant made an intentional or reckless misstatement concerning a fact required to establish probable cause and the Government fails to meet its burden to disprove the allegation, then the Supreme Court in Leon found that the good faith exception to the exclusionary rule should not apply.  The Leon court, however, did not hold that the converse was true:  that where the Government defends a search conducted pursuant to a warrant, in part on the basis of the Leon good faith exception, a defendant is automatically entitled to look beyond the four corners of the search warrant and incorporated affidavit to inquire into an affiant's sources of knowledge without first making the substantial preliminary showing required by Franks.  Leon did not create a new vehicle to pursue a Franks inquiry.  See 1 Wayne LaFave, Search and Seizure § 1.3(f),  at 75 (4th ed. 2004) ("[T]he Court [in Leon] expressly left untouched the doctrine of Franks v. Delaware").

Were a court, in conducting the Leon inquiry, to look beyond the four corners of the warrant and affidavit to determine what an agent had learned during the course of his investigation that he did not include in his search warrant affidavit – not to uphold the warrant,

---

[3] It also appears that Tanaka may be seeking to use that testimony to justify calling Lily Cates and Lisa Mayer – two of the defendants' victims – as witnesses at the hearing.

but rather to look for possible impeachment material of the affiant,[4] – the high bar set by Franks would be eliminated. The inquiry under Leon – whether an agent held an objectively reasonable belief that probable cause existed to search – should be distinguished from the inquiry at a Franks hearing – whether the affiant made an intentional or reckless misstatement concerning a fact required to establish probable cause. See Franks v. Delaware, 438 U.S. 154, 156 (1978); United States v. Martin, 426 F.3d 68, 73 (2d Cir. 2005). Conflating the two inquiries – which is what Tanaka, despite his claim to the contrary, is asking this Court to do – runs rough shod over the substantial preliminary showing that the Franks Court requires before a defendant is entitled to such an evidentiary hearing. See Franks v. Delaware, 438 U.S. at 155-56; Rivera v. United States, 928 F.2d 592, 604 (2d Cir. 1991) (noting that "[t]he Franks standard is a high one."). The Franks Court specifically observed that requiring the defendant to make a substantial preliminary showing was necessary to "prevent the misuse of a veracity for purposes of discovery or obstruction" and to guarantee that defendants' challenges are "more than conclusory and supported by more than the desire to cross-examine." 438 U.S. at 170-71; see also United States v. One Parcel of Property Located at 15 Black Ledge Drive, Marlborough, Conn., 897 F.2d 97, 100 (2d Cir, 1990). Where, as here, the defendants have failed to make this substantial preliminary showing and the Court has, as a consequence, denied a Franks hearing, defendants should not be permitted under the guise of Leon to cross-examine Inspector Fraterrigo about the details of her investigation prior to her application for a search warrant.

      In Leon, the Supreme Court offered guidance on the contours of the good-faith inquiry: "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances – including whether the warrant application had previously been rejected by a different magistrate – may be considered." 468 U.S. at 923 n.23. The Supreme Court made it clear, however, that "sending state and federal courts on an expedition into the minds of police officers would produce a grave and fruitless misallocation of judicial resources." Id. (quoting Massachusetts v. Painten, 389 U.S. 560, 565 (1968) (White, J., dissenting) (internal quotations omitted)). The Court noted that "the good-faith exception, turning as it does on objective reasonableness, should not be difficult to apply in practice." Id. at 924. Indeed, "[w]hen officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time." Id.

      In arguing that it is appropriate for this Court to hear details about Inspector Fraterrigo's investigation leading up to her application for a search warrant, Tanaka relies principally on cases from other Circuits. In a footnote, Tanaka concedes that the Second Circuit

---

[4]     The Government is not aware of any such impeachment material for Inspector Fraterrigo which further supports its argument that the defendants not be allowed under the guise of Leon to gather free discovery prior to trial in contravention of Rule 26.2.

has not held that a court may consider facts known to the executing officers but not set forth in the search warrant affidavit when assessing whether it was objectively reasonable for the officers to rely on a warrant. Although the Second Circuit has not explicitly decided this issue, in myriad cases it has effectively confined the good faith analysis to facts set forth in the supporting search warrant affidavit. See, e.g., United States v. Singh, 390 F.3d 168, 183 (2d Cir. 2004) (holding that, in a case involving the search of a doctor's office, reliance on the warrant was reasonable because the affidavit, which described information provided by the office manager, set forth sufficient indicia of probable cause and recited that an AUSA had told the affiant that the facts set forth therein established probable cause); United States v. Smith, 9 F.3d 1007, 1010, 1015-16 (2d Cir. 1993) (basing its finding of good faith, in a narcotics case involving a confidential informant, on only those facts found in the incorporated warrant affidavit); United States v. Moore, 968 F.2d 216, 223 (2d Cir. 1992) (holding that, in a search of a residence for drug-related documents or records, Leon applied because the facts set forth in the warrant affidavit were sufficient to support the reasonable belief that there was probable cause and that the fact that the magistrate did not put the affiant under oath was irrelevant to the finding of good faith because it did not affect the facial validity of the warrant); United States v. Riley, 906 F.2d 841, 846 (2d Cir. 1990) (upholding the seizure of firearms pursuant to a warrant on the grounds that the warrant specifically authorized the executing officer could seize any firearms found in the defendant's apartment, and if this provision was error it was not one that the officers should have reasonably detected).

In United States v. Fama, 758 F.2d 834 (2d Cir. 1985), relied upon by Tanaka, the Second Circuit similarly confined its good faith analysis to the four corners of the warrant and the agent's search warrant affidavit. The Second Circuit found that "[w]hile probable cause to arrest does not necessarily give rise to probable cause to search, Agent Garcia had stated in the affidavit that his ten year experience as a DEA agent had taught him that major drug traffickers frequently maintain at their homes large amounts of cash, drugs, books, ledgers and other documents evidencing their criminal activities." Id. at 838. The Second Circuit observed that "[a] number of cases have ruled that an agent's expert opinion is an important factor to be considered by the judge reviewing a warrant application" and, therefore, "should also be considered as a factor in contributing to objective good faith." Id. Considering an agent's expert opinion of drug traffickers' practices based on his ten years of experience as a factor contributing to objective good faith – an opinion which was explicitly articulated in the agent's search warrant affidavit – is sharply different from what Tanaka seeks to ask the Postal Inspectors at the upcoming hearing. In reaching its conclusion that the "extreme sanction of exclusion [wa]s inappropriate," the Second Circuit in Fama found that "[t]he circumstances, viewed in their totality, were fully consistent with an objectively reasonable belief by Agent Garcia that probable cause existed to search appellee's home." Id. Notably, the Second Circuit held that "[o]nce the warrant was issued, Agent Garcia had done everything he could to comply with the law." Id. (citing Leon, 468 U.S. at 920-21) (emphasis added). Similarly here, once the warrant was issued, Inspector Fraterrigo and the postal inspectors conducting the search at Amerindo

Hon. Kenneth M. Karas
June 28, 2006
Page 7

relied on that warrant issued by a neutral and detached magistrate judge[5] and did everything they could to comply with the law and act within the scope of the warrant.

District courts within the Second Circuit have similarly confined the Leon analysis to the four corners of the warrant and accompanying affidavit and what the officers did to execute the facially valid warrant. See, e.g., United States v. Sykes, 424 F. Supp. 2d 590, 603 (W.D.N.Y. 2006) (considering only the warrant and incorporated affidavit in deciding good faith under Leon); United States v. Barnes, 399 F. Supp. 2d 169, 182 (W.D.N.Y. 2005) (confining its analysis of good faith to search warrant application); United States v. Rollack, 90 F. Supp. 2d 263, 276-78 (S.D.N.Y. 1999) (analyzing only the face of the warrants to determine whether a search of a jail cell for mail and interception of inmate's incoming and outgoing mail fell under the good faith exception); United States v. Gotti, 42 F. Supp. 2d 252, 276-77 (S.D.N.Y. 1999) (considering only the face of the warrant, and particularly its "content and detail," in upholding the search under Leon and noting information that was withheld from magistrate only insofar as it was relevant to the question of whether a Franks hearing was appropriate); United States v. Burke, 718 F. Supp. 1130, 1141-42 (S.D.N.Y. 1989) (considering as evidence of good faith, inter alia, that three federal court magistrates and an AUSA had approved the warrant at issue, that the circumstances of the search revealed that the affidavits had in effect limited the scope of the warrants, that the affiants themselves had participated in the searches, and that the defendants had not claimed that the executing agents had in fact conducted an overbroad search).

None of the cases cited by Tanaka from other circuits supports his application to conduct this line of questioning. To the contrary, in those cases, the Court looked beyond the four corners of the warrant and the accompanying affidavit to uphold the search warrant in circumstances where the Court needed more information about the corroboration or reliability of information in the search warrant affidavit that had been provided by confidential informants or suspects to the affiant. See, e.g., United States v. Martin, 297 F.3d 1308, 1319 (11th Cir. 2002) (upholding a search based in part on evidence not recited in the warrant affidavit that officers had attempted to corroborate as much of informant's information as possible before applying for a search warrant to search an apartment for firearms); United States v. Danhauer, 229 F.3d 1002, 1006 (10th Cir. 2002) (upholding a search based in part on steps the affiant took to investigate the informant's allegations but had not recounted in the affidavit); United States v. Weeks, 160 F.3d 1210, 1212-13 (8th Cir. 1998) (upholding a search in part because the affiant had briefed the searching officers on details regarding the informant that the affiant had failed to include in his affidavit).

Furthermore, Tanaka's citations to cases decided in the context of Section 1983

---

[5] Tanaka does not allege that the magistrate judge "abandoned his detached and neutral role" in issuing the warrant to search Amerindo's offices at 399 Park Avenue. (6/23/06 Ltr. at 2 n.2).

Hon. Kenneth M. Karas
June 28, 2006
Page 8

actions are inapposite. The standard employed to judge the reasonableness of a police officer's actions in those civil cases should not be imported into Fourth Amendment jurisprudence. Whether an officer is entitled to qualified immunity in a civil lawsuit for an alleged violation of a defendant's constitutional rights is not the same question as whether a defendant is entitled to have relevant and probative evidence suppressed in a criminal context.[6] Section 1983 actions, while an important part of a system of laws designed to deter police misconduct, are merely about money damages. As the Supreme Court has noted, although "the exclusionary rule serves a necessary purpose, it obviously does so at a considerable cost to society as a whole, because it excludes evidence probative of guilt." Malley v. Briggs, 475 U.S. 335, 344 (1986). No doubt because of those costs, the Court stated in Leon, "suppression of evidence obtained pursuant to a warrant should be ordered . . . only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." Leon, 468 U.S. at 918. Tanaka cites no Second Circuit or Supreme Court case in which Section 1983 standards have been imported to determine whether evidence seized pursuant to a search warrant should be suppressed, and this Court should not do so here.

Moreover, the application of the principles established in a civil context into a criminal action may run afoul of the rules governing criminal discovery – rules that are quite different from those governing civil cases. For example, here, defendants are relying on Section 1983 case law to justify their broad inquiry into Inspector Fraterrigo's investigation, including "the full extent of the information provided by the two alleged victims." (6/23/06 Tanaka Ltr. at 4). The defendant is not entitled to that information under Fed. R. Crim. P. 16, and has failed to make the threshold showing necessary to obtain a Franks hearing. Tanaka should not be permitted to use this hearing as an opportunity to gain the advantage of discovery of such information months before trial.

## II.    Rule 26.2 Issues

The Government also writes to raise certain issues concerning the production of information to the defendants pursuant to Fed. R. Crim. P. 26.2. The Government raises these issues now in an effort to resolve them sufficiently in advance of the hearing to allow the Government to turn over such materials in a timely fashion and to avoid unnecessary interruptions of the hearing.

First, the Government does not intend to elicit from Inspector Fraterrigo or any other witness, details about the investigation including what she might have been told by any victims. Accordingly, the Government does not intend to turn over memoranda of interviews of

---

[6] Although Leon itself referred to the objective standard employed in Section 1983 cases, it did so to constrain the limits of the good faith inquiry, not to expand the inquiry as Tanaka seeks to do here. See Leon, 468 U.S. at 923 n.23.

Hon. Kenneth M. Karas
June 28, 2006
Page 9

victims ("MOIs"), nor does the Government intend to turn over any of Inspector Fraterrigo's testimony before the Grand Jury – none of which related to the execution of the search warrant, the service of the grand jury subpoena, or her assistance with a search conducted by the Metropolitan Police in the United Kingdom. Even were the Court to rule that the defendants may inquire into Inspector Fraterrigo's investigation prior to obtaining and executing the search warrant, the Government does not believe that it is required to turn over any MOIs or Grand Jury testimony. Rule 26.2 requires production of prior statements that relate to the subject matter of the witness's testimony on direct examination, not statements that relate to the subject of anticipated cross examination. See Fed. R. Crim. P. 26.2 (a) ("After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.").

Such materials are not discoverable under Fed. R. Crim. P. 16(a) and, even if any such material constituted Brady or Giglio – and the Government contends that it does not – no decision issued by the Supreme Court or the Second Circuit has found that Brady and Giglio apply in the context of a suppression hearing. Indeed, the weight of authority is that those rights apply only at trial. See United States v. Ruiz, 536 U.S. 622, 629 (2002) (holding that the Government need not disclose witness impeachment material prior to entering a plea agreement with a criminal defendant, and noting that "impeachment information is special in relation to the fairness of a trial, not in respect to whether a plea is voluntary") (emphases in the original); United States v. Coppa, 267 F.3d 132, 142 (2d Cir. 2001) (declining to require the production of exculpatory and impeachment information far in advance of trial, and stating that, "we have never interpreted due process of law as requiring more than that Brady material must be disclosed in time of its effective use at trial").

Finally, in reviewing Inspector Fraterrigo's e-mails (and drafts and deleted versions thereof) as the Court ordered the Government to do, see 6/01/06 Tr. 441, the Government located e-mails seeking the production by Detective Sergeant Shaw of his "information" and other documents presented to the U.K. courts or to Cadogan Tate. For the same reasons discussed above, the Government does not believe that it is appropriate to produce those e-mails. The Government does not intend to elicit testimony concerning that subject, and did not elicit such testimony from Detective Sergeant Shaw. Of course, if the Court would like to examine the relevant materials in camera, we will provide them to the Court.[7]

---

[7]At the June 1, 2006 hearing, the Government represented that it would produce a copy of an e-mail sent by Inspector Fraterrigo on or about November 2, 2005, to Detective Sergeant Shaw in which she indicated that the defendants were aware of the fact that the U.K. search had been conducted. The Government also represented that it would produce post-search e-mails related to the shipment of the seized documents to the United States. (See Tr. 435-36, 440-41).

Hon. Kenneth M. Karas
June 28, 2006
Page 10

### Conclusion

        For all the foregoing reasons, the Government respectfully requests that the Court preclude the defendants from pursuing the lines of inquiry described in the June 23, 2006 Tanaka Letter, and resolve the Fed. R. Crim. P. 26.2 issues raised by the Government in this letter.

        Respectfully submitted,

        MICHAEL J. GARCIA
        UNITED STATES ATTORNEY

By   /s/
        Deirdre A. McEvoy/Marc Litt
        Assistant United States Attorneys
        (212) 637-2309/2295

cc:     Jeffrey C. Hoffman, Esq.
        Glenn C. Colton, Esq.
        Steven G. Kobre, Esq.

---

In accordance with those representations, the Government will produce those e-mails. Nevertheless, the Government continues to maintain that the subjects of those e-mails were not elicited by the Government from Detective Sergeant Shaw, are not expected to be elicited during the direct examination of Inspector Fraterrigo and, therefore, are not required to be produced pursuant to Fed. R. Crim. P. 26.2. Likewise, they are not required to be produced under Fed. R. Crim. P. 16(a), they do not constitute either Brady or Giglio material and, even if they did, they need not be produced for this pre-trial suppression hearing.