Hoffman & Pollok, LLP
260 Madison Avenue
New York, NY 10016
(212) 679-2900
Fax: (212) 679-1844
Attorneys for Alberto Vilar
July 3, 2006

Hon. Kenneth M. Karas
Judge, U.S. District Court
United States Courthouse
500 Pearl Street – Rm. 2260
New York, N.Y. 10007-1312
Fax No: 212 805-7968

                Re*:*    *United States v. Alberto Vilar* - 05 Cr. 0621

Dear Judge Karas:

      I write on behalf of Alberto Vilar in order to join in co-defendant Tenaka's application regarding the scope of cross-examination of Inspector Fraterrigo. I further submit that the same arguments apply to Mr. Vilar's cross-examination of AUSA Litt. In examining the totality of the circumstances to determine whether government agents acted in good faith, the Court should consider information known to the prosecutor and to the affiant but not presented to the Magistrate.

      One of the good-faith inquiries under *United States v. Leon,* 468 U.S. 879, 923 (1984) is whether "the warrant was based on an affidavit so lacking in indicia of probable cause [here, as to the majority of items listed in the Rider] as to render official belief in its existence entirely unreasonable." Mr. Vilar's position is three-fold: the warrant was so lacking in probable cause that: 1) any searching agent's belief in its existence was unreasonable; 2) any federal prosecutor's belief in its existence was unreasonable, and; 3) any Magistrate's belief in its existence was unreasonable. Contrary to the government's representations about the defendants' position (Govt Letter dated 6/28/06 at p 7, fn 5), Mr. Vilar has argued and continues to argue that, in authorizing such a broad warrant, the Magistrate abandoned his detached and neutral role." The Magistrate did so in the context of an *ex parte* proceeding without any presentation of relevant legal precedent. It is fair to assume that the Magistrate acted at least in part in reliance on the good faith of a federal prosecutor.

      The inquiry into the reasonableness of "official belief" in probable cause should therefore include that of both the prosecutor and the searching agents. AUSA Litt testified at the hearing that he drafted the affidavit in support of the warrant and that it included information "developed with the assistance of the case agent." (Tr. 5/31/06 60, 177). AUSA Litt accompanied the law enforcement officer to the Magistrate and answered the Magistrate's question about the drawing of inferences. In every sense, Inspector Fraterrigo was *his* agent in conducting the search and she should be held to the same standard that he would be. Under the

Hon. Kenneth M. Karas
July 3, 2006
Page 2

principles set forth in *United States v. Leon,* 468 U.S. 897 (1984), a reasonably well trained federal prosecutor would or should have known that the law does not permit a search this broad based on the narrow set of allegations contained in the warrant application.

If the fact that non-lawyer personnel execute a search that was in every way orchestrated by a federal prosecutor triggers the good-faith exception, on the basis that a reasonably well-trained officer may not have known what a federal prosecutor knew or should have known, then the Fourth Amendment is meaningless.

The government speaks of the high cost to society of suppressing evidence. What about the high cost to the public if Constitutional Rights are decimated because the law does not require good faith on the part of government attorneys?

Suppression of evidence occurs less and less frequently, and not because our government officers have become more scrupulous. With each borderline case that hinges on the good faith exception, accountability is diminished. The next search is just as or even more unconstitutionally overbroad. The good-faith exception eviscerates the law because of a lack of diligent enforcement of Fourth Amendment principles. What Justice Brennan presaged in *Leon* has come to pass:

> But what the Court overlooks is that the deterrence rationale for the rule is not designed to be, nor should it be thought of as, a form of "punishment" of individual police officers for their failures to obey the restraints imposed by the Fourth Amendment. *See United States v. Peltier,* 422 U.S., at 556-557, 95 S.Ct., at 2327 (BRENNAN, J., dissenting). Instead, the chief deterrent function of the rule is its tendency to promote institutional compliance with Fourth Amendment requirements on the part of law enforcement agencies generally. [FN12] Thus, as the Court has previously *954 recognized, "over the long term, [the] demonstration [provided by the exclusionary rule] that our society attaches serious consequences to violation of constitutional rights is thought to encourage those who formulate law enforcement policies, and the officers who implement them, to incorporate Fourth Amendment ideals into their value system." *Stone v. Powell,* 428 U.S., at 492, 96 S.Ct., at 3051. It is only through such an institution wide mechanism that information concerning Fourth Amendment standards can be effectively communicated to rank-and-file officers.

*Leon,* 468 U.S. 897, 953-954 (Brennan, J., dissenting).

For purposes of potential future litigation, we submit that *Leon* should go the way of the mandatory sentencing guidelines; it should be overruled or at least extensively overhauled. In this court, in the context of this case, we submit that the good-faith inquiry must be extended to

Hon. Kenneth M. Karas
July 3, 2006
Page 3

the government official(s) who gathered the information and drafted the warrant application and presented it to the Magistrate. It is therefore appropriate to question AUSA Litt about the information he obtained from the alleged victims and other investors, and about Amerindo's institutional clients and the scope of Amerindo's business.

                              Respectfully submitted,

                              SUSAN C. WOLFE

Cc: AUSA Deirdre McEvoy
     Glenn Colton, Esq.
     Steven Kobre, Esq.