August 31, 2006
REVISED AND CORRECTED

Hon. Kenneth M. Karas
Judge, U.S. District Court
United States Courthouse
500 Pearl Street – Rm. 2260
New York, N.Y.  10007-1312
Fax No:  212 805-7968

Re:    *United States v. Alberto Vilar* - 05 Cr. 0621

Dear Judge Karas:

This letter is submitted in support of the defendant Alberto Vilar's request for a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674 (1978).   Mr. Vilar joins in the motion submitted by co-defendant Gary Tanaka and submits the following additional arguments.

Overview of the Applicable Law

A hearing is warranted upon a "'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and if the allegedly false statement was 'necessary to the finding of probable cause.'"  *Rivera v. United States,* 928 F.2d 592, 604 (2d Cir. 1991), *quoting Franks,* 438 U.S. at 155-56 (additional citations omitted).  The same standard applies where, instead of a false statement, the challenger alleges that the affiant, with reckless disregard for the truth, omitted material information. *Id., citing United States v. Campino,* 890 F.2d 588, 592 (2d Cir.), *cert. denied,* 494 U.S. 1068 (1990).

Although there is relatively little case law defining "reckless disregard," there are certain basic common threads.  The District Court in *Rivera,* 758 F.Supp. 250, 258 (S.D.N.Y. 1990)(Mukasey, J.), and several Circuit Courts have concluded that proof of "reckless disregard" requires proof that the affiant "entertained serious doubts about the truth of his allegations." *United States v. Whitely,* 249 F.3d 614, 621 (7th Cir. 2001)(citation omitted); *United States v. Schmitz,* 181 F.3d 981, 986-87(8th Cir. 1999).

With respect to omissions, the Second Circuit has stated that "[r]ecklessness may be inferred where the omitted information was 'clearly critical' to the probable cause determination." *United States v. Rivera,* 928 F.2d at 604.   The Third Circuit has

Page 2
August 31, 2006

opined that omissions "are made with reckless disregard if an officer withholds a fact in his ken that 'any reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Wilson v. Russo,* 212 F.3d 781, 788 (3rd Cir. 2000).

The Material and Misleading Omissions

In her affidavit in support of the search warrant, Inspector Fraterrigo made no distinction between Amerindo Investment Advisors Inc ("Amerindo U.S."), the regulated investment advisor, and the other "off-shore" Amerindo companies. In paragraph three of her affidavit, she listed all four of them (Amerindo U.S., U.K., Cayman, Panama) and then declared that they would "hereinafter [be] referred to collectively as "Amerindo." Affidavit in Support of An Application for Search Warrant, Cynthia M. Fraterrigo, dated May 25, 2006, at p. 2.

Fraterrigo then described the investments of two individual investors; Lisa Mayer, who knew her family's investments were managed off-shore, and Cates, whose investments were, according to a letter to the SEC, managed by Amerindo Panama. *Id.* at 4-5. Fraterrigo cited no evidence that Cates was a client of Amerindo U.S. [1] Fraterrigo also mentioned three other individuals whom Cates believed to be "investors with Amerindo, some of whom may have had trouble redeeming all or part of their investments . . . . " Fraterrigo did not identify through which company those investors *may* have invested. *Id.* at p. 5.

There was nothing in the affidavit nor in the complaints, however, that suggested that clients of Amerindo U.S. were being defrauded. By lumping Amerindo U.S., the regulated investment advisor, together with the off-shore companies, the government obfuscated the distinction between the companies and was able to sweep up the voluminous business records of Amerindo U.S. within the scope of the records sought.

In contrast to Fraterrigo's affidavit, the Vilar complaint attached to it provided a little more information about Amerindo U.S., including that it was a regulated investment advisor and made filings with the SEC. However, again, Inspector Fraterrigo withheld the necessary distinction between Amerindo U.S. and the other companies. Thus, in a prefatory paragraph of her affidavit, she reiterated that Amerindo U.S., U.K., Cayman and Panama would be "referred to collectively as 'Amerindo.'" Vilar Complaint at p. 3,

---

[1] The government alleged that Cates was defrauded in part because she claimed she was led to believe her investments were with Amerindo U.S. There was no evidence, however, that she was a client of Amerindo U.S., either through SEC filings or otherwise.

Page 3
August 31, 2006

¶3.  Fraterrigo then alleged that "Amerindo also historically has offered investment services for institutional clients and high net worth individuals through hedge funds, 'guaranteed fixed rate deposit accounts,' and other investment vehicles."  *Id.* at p. 3, ¶4.  This allegation falsely suggested that Amerindo U.S. offered or managed investments in "guaranteed fixed rate deposit accounts," one of the allegedly fraudulent investment vehicles.  Inspector Fraterrigo knew that was untrue, as she knew that the Mayer family had such investments that were not managed by Amerindo U.S.  She had no basis to believe the regulated investment advisor offered or managed investments in "guaranteed fixed rate deposit accounts."  In addition, the use of the word historically obscured the critical fact that Amerindo U.S. was currently servicing institutional clients whose voluminous records would be found on the premises.

With respect to the prospective SBIC Fund, it was just that – a prospective fund that, if it ever came to fruition, would presumably enter into an investment advisor arrangement with Amerindo U.S.  In its incipient stages, it was not a client or investment vehicle of Amerindo U.S.; it was a plan in the process of formulation by its prospective founders which Cates was allegedly invited to participate in.  As the government has repeatedly argued, Lily Cates was a longtime friend of and early investor with Mr. Vilar.  If other investors without any personal history with Mr. Vilar had had any trouble with their investments, they would have complained in a heartbeat.  Yet, there was no evidence of any such complaints.

Indeed, Counsel for Amerindo U.S., Eugene Licker, Esq., stated in an affidavit submitted with Mr. Tanaka's motion that he is "not aware of any client [of Amerindo U.S.] who has complained of any conduct like that described in the indictments of the principals."

As Mr. Licker also stated, Amerindo U.S. advised only institutional clients and mutual funds," not individuals.   The government knew this.  It stated in the MLAT request dated July 25, 2005 (GX13 admitted at the hearing on July 7, 2006), that Amerindo U.S. "provides investment advice and related services for numerous institutional clients and one publicly traded mutual fund" (no reference to individual clients). GX13 at p. 1-2.  It further alleged that Amerindo U.K. "handles off-shore accounts." *Id.*  It further alleged that an investor (presumably Cates), "through Amerindo Panama, invested $1 million in an entity called Rhodes Capital." *Id.* at 5   Nevertheless, the government lumped Amerindo U.S. together with the other companies, obscuring the critical distinctions that it handled different kinds of clients and was regulated by the SEC apparently without any history of complaints.

Page 4
August 31, 2006

As indicated in the Vilar complaint, "Amerindo" was a sizeable company that managed $1.2 billion in assets. Here, again, however, Inspector Fraterrigo did not specify that it was Amerindo U.S. that managed these assets, stating instead that the "collective" entity, Amerindo, did so. See Vilar Complaint at p. 3, ¶6. While Fraterrigo stated in ¶5 that "Amerindo U.S. has been a registered investment advisor since approximately 1985," the very next paragraph stated that the collective "Amerindo" entity, rather than "Amerindo U.S.," managed 1.2 billion in assets. This was demonstrably false, since the information came from Amerindo U.S.'s SEC filings. *Id.*

The Law As Applied to the Facts

From Inspector Fraterrigo's and AUSA Litt's review of SEC materials, which are specifically referred to in the complaint, they would have learned that the sizeable Amerindo U.S. company had its primary offices at 399 Park Avenue, the search location. The government must have anticipated that the volume of documents would be vast, having designated no less than 19 agents to the task. And the warrant requested authorization to search virtually every piece of paper that had writing on it. The government convinced the Magistrate to authorize such a massive search by lumping Amerindo U.S. together with the three other off-shore companies and failing to make clear that the Mayer and Cates investments were distinct from the business of Amerindo U.S.

That Inspector Fraterrigo had serious doubts that Amerindo U.S. was defrauding any of its clients is clear from the language she chose to use in her affidavit: "*there is reason to be concerned* that other investors are likewise being victimized by Vilar and Tanaka." Fraterrigo Affidavit at p. 6. She unhesitatingly acknowledged on cross-examination that there is a significant difference between "reason to be concerned" and probable cause and that if she had probable cause she would have used that phrase. Hrg Tr. July 10, 2006 at 18-19. While she may not have gone to law school, a law enforcement officer must be presumed to know the basic principles of the Fourth Amendment, under which they operate on a daily basis. Decades of Fourth Amendment jurisprudence have been devoted to refining the critical distinction between suspicion and probable cause. *See, e.g. Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed. 301 (1990)("reasonable suspicion is a less demanding concept than probable cause. . . . ") A police officer might have a reasonable suspicion or "reason to be concerned" upon observing a person waiting in a high-crime area, but she does not have probable cause to search or arrest that person. Inspector Fraterrigo knew she did not have probable cause to believe that other investors "were being victimized," yet she

Page 5
August 31, 2006

told the Magistrate, in a late-night session suggestive of some form of exigency, that she had "probable cause" to seize all the business records of Amerindo U.S.

Had Inspector Fraterrigo made it clear to the Magistrate that Amerindo U.S. advised institutional clients and a publicly traded mutual fund, in which neither the Mayers nor Cates made any investment, it would have been clear that there was no probable cause to seize the records of Amerindo U.S., the vast majority of records located on the premises.

In *United States v. Jacobs,* 986 F.2d 1231, 1233 (8th Circuit, 1993), the affiant told the Magistrate that a drug-sniffing dog "showed interest in the package," but withheld the fact, conveyed to the affiant by the handler, that the dog did not give a full alert. The Court of Appeals found the omission material and the remainder of the affidavit insufficient to support probable cause. Perhaps an astute Magistrate would or should have realized that "interest" is not an alert or a positive hit. Perhaps the Magistrate in this case should have recognized that "reason to be concerned" is not probable cause (and we so contend). That does not excuse, however, the omission of facts necessary to make the affidavit not misleading, *i.e.* the omission of a true description of the business of Amerindo U.S. separate and apart from the other entities with which it was lumped.

The defendants have made "a substantial preliminary showing" that Inspector Fraterrigo omitted material facts necessary to the finding of probable cause with reckless disregard for the truth. A *Franks* hearing should be granted.

                                            Respectfully submitted,

                                            Susan C. Wolfe, Esq.
                                            Hoffman & Pollok, LLP
                                            Attorneys for Alberto Vilar

Cc: AUSA Deirdre McEvoy
    AUSA Marc Litt
    Glenn Colton, Esq.
    Steven Kobre, Esq.