# Exhibit A

Case 1:05-cr-00621-RJS    Document 145-2    Filed 09/21/2006    Page 1 of 5

```
65VVVILH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

         v.                               05 CR 621 (KMK)

ALBERTO VILAR,
GARY TANAKA                               SUPPRESSION HEARING

              Defendants.

------------------------------x
                                          New York, N.Y.
                                          May 31, 2006
                                          10:05 a.m.

Before:

              HON. KENNETH M. KARAS,

                                          District Judge


                      APPEARANCES

MICHAEL J. GARCIA
     United States Attorney for the
     Southern District of New York
DEIRDRE McEVOY
MARC LITT
     Assistant United States Attorneys

HOFFMAN & POLLOK
     Attorneys for Defendant Alberto Vilar
JEFFREY C. HOFFMAN
SUSAN C. WOLFE

Attorneys for Defendant Gary Tanaka:

WILSON SONSINI GOODRICH & ROSATI
     GLENN CHARLES COLTON
         -AND-
KOBRE & KIM
     STEVEN GARY KOBRE
```

65VVVILH                Litt - direct

1   delete the thing that you typed, that that would register as a
2   modification to the document.  But I'm not -- I want to qualify
3   that by saying I'm not --
4           THE COURT:  You're not qualified as a computer expert,
5   okay.
6           THE WITNESS:  Computer expert.
7   BY MS. McEVOY:
8   Q.  Mr. Litt, what was your purpose in issuing the grand jury
9   subpoena on Amerindo on May 26, 2005?
10  A.  My purpose was to achieve the two objectives that
11  Mr. Esseks had outlined to me when I asked him the question
12  about whether it was appropriate to issue a grand jury
13  subpoena, and whether it would be a good idea to do so.
14  Q.  And what were those reasons?
15          THE COURT:  I mean he just went over those a minute
16  ago, all right.  So let's just move on.
17  Q.  At the time you issued the grand jury subpoena, were you
18  aware of any defects in the search warrant?
19  A.  No.
20  Q.  What, if any, approval process had the search warrant gone
21  through?
22  A.  Well, I had drafted it; Inspector Fraterrigo had reviewed
23  it; we had gone to Magistrate Judge Maas's home the night
24  before -- excuse me.  It had been shown to Mr. Esseks, who is
25  my supervisor, who was well aware of the investigation and the

1  information that had been developed over the course of the
2  approximately six weeks that we'd been investigating this case.
3  And so he was not coming to it fresh, but was very well
4  familiar with it.  And he had reviewed it and approved it.
5          And then we went to Magistrate Judge Maas from
6  approximately sometime between 9 and 9:30 on May 25, till
7  10:30, when he issued the warrant.
8          And I observed Magistrate Maas read the two criminal
9  complaints, the search warrant affidavit, and the search
10 warrant and rider in my presence during that approximately hour
11 to hour-and-15-minute time period.
12 Q.  Was your purpose in serving the subpoena to correct any
13 defects in the search warrant?
14 A.  No.
15 Q.  Did there come a time on May 26 when you served the grand
16 jury subpoena on Amerindo Investment Advisors, Inc.?
17 A.  Yes.
18 Q.  And how did you serve the subpoena?
19 A.  I served it by fax, to a fax number at Kirkpatrick &
20 Lockhart.
21 Q.  And for what reason did you serve it by fax to Kirkpatrick
22 & Lockhart?
23 A.  I recall during a conversation with Mr. Licker that
24 morning, and it may have been the first conversation, where he
25 asked the question, Are you going to serve a grand jury

1   Q.   There may have been some, you just don't know?
2   A.   To his chambers?  It's possible.
3   Q.   And there's no recording of those representations anywhere,
4   are there?
5   A.   You'd have to ask chambers.  I don't have any recording.
6   Q.   And you didn't ask to get a recording?
7   A.   No, I did not.
8   Q.   Who went with you to Magistrate Judge Maas's apartment?
9   A.   U.S. Postal Inspector Cynthia Fraterrigo.
10  Q.   Anybody else?
11  A.   Not that I'm aware of, no.
12  Q.   Is it your testimony that Magistrate Judge Maas took the
13  papers and read over them for over an hour before issuing the
14  warrants?
15  A.   At least approximately one hour.
16  Q.   What questions, if any, did he ask you or Inspector
17  Fraterrigo?
18  A.   I recall Magistrate Maas -- well, strike that.  About the
19  warrant?
20  Q.   About the warrant -- any of the three warrants you were
21  seeking, or any of the supporting papers, therefore.
22           MS. McEVOY:  Objection, your Honor, as to relevance.
23           THE COURT:  What's the relevance?
24           MR. COLTON:  The Court's already ruled that we have a
25  right to the information that was presented to the magistrate