**HOFFMAN & POLLOK LLP**
ATTORNEYS AT LAW
260 MADISON AVENUE
NEW YORK, N.Y. 10016
(212) 679-2900
FAX NO: (212) 679-1844

JEFFREY C. HOFFMAN
JOHN L. POLLOK
SUSAN C. WOLFE
WILLIAM A. ROME
LISA ROSENTHAL
JACQUELINE N. LAND

MICHAEL S. POLLOK
OF COUNSEL

ROBERT H. KIERNAN
(1973 - 1995)

November 16, 2006

Hon. Kenneth M. Karas
Judge, U.S. District Court
United States Courthouse
500 Pearl Street – Rm. 2260
New York, N.Y. 10007-1312
Fax No: 212 805-7968

Re:   *United States v. Alberto Vilar* - 05 Cr. 0621

Dear Judge Karas:

I am writing to request that the Court reconsider its decision to limit the *Franks* hearing in light of testimony given Wednesday by Agent Fraterrigo.

The search warrant application alleged that Lily Cates' investment in Rhodes Capital was never described to her, that she never received a private placement memorandum and her efforts to learn more about the investment were ignored or rejected. (Fraterrigo Affidavit at p. 4) At oral argument on October 25, 2006, the government stressed that the failure to provide Cates with information about Rhodes was an important indicia of fraud going back to 1987. (Tr. 10/25/06 at 25) Defense Exhibit J is a letter dated December 22, 1989 enclosing a financial report for Rhodes Capital and offering to discuss it with Ms. Cates. Given the government's undisputed possession of this document at the relevant time, which squarely contradicts an important allegation in the search warrant affidavit, the hearing should be expanded to include an inquiry into information Cates received about Rhodes Capital (which was in the government's possession prior to the warrant application).

The search warrant application further alleged that in February 2005 Cates attempted to redeem her entire investment portfolio but the defendants refused to move her investment to Baer Stearns as she requested. (Fraterrigo Affidavit at 5.) Despite creating the appearance of a continuum of fraudulent conduct from 1988 forward, and asking for a warrant to search all records and all clients for all time, it has already been demonstrated that Agent Fraterrigo knew Cates had no difficulty redeeming money from her investments before 2002. Indeed, Cates had redeemed twice as much money as she had invested. Despite creating the appearance that Cates got nothing in 2005 – as if her money had disappeared -- Agent Fraterrigo failed to disclose that Cates had successfully managed to transfer $3M to her Baer Stearns account in 2005. Although

HOFFMAN & POLLOK LLP

**Page 2**
**November 16, 2006**

Agent Fraterrigo testified that she was unaware of the transfer in 2005, the information was imparted to another agent, who recorded it in his notes, (Defense Exhibit C) and it was contained in a memorandum sent from Cates' attorney to AUSA Litt (Defense Exhibit AZ), who drafted Agent Fraterrigo's affidavit.  The search warrant affidavit specifically alleged that the "totality of circumstances" justifying the seizure of records of all other Amerindo investors included "investors being prevented from redeeming or transferring their multi-million dollar investments . . . ." (Fraterrigo Affidavit at p. 5, ¶F. Lily Cates **was not** prevented from **transferring** $3M of her investments to her Baer, Stearns account.

During the testimony, the Court noted that its decision granting a *Franks* hearing was limited to the issue of redemptions, rendering the information Cates received about her Rhodes investment and the fact she successfully obtained $3M in 2005 outside the scope of the hearing.  In light of the testimony cited above, we ask the Court to reconsider its decision to limit the scope of the hearing.  Given the information only disclosed to the defense a week before the hearing and Agent Fraterrigo's testimony on Wednesday, the integrity of the affidavit as a whole is in question.  Given Agent Fraterrigo's testimony that AUSA Litt drafted her affidavit and was aware of the redemptions, as well as documentary evidence that AUSA Litt received material information from Cates' attorney which was not disclosed, he is a necessary witness.  Agent Fraterrigo testified several times that she could not recall whether she saw a document or knew certain information.  The defendants should be able to inquire of Mr. Litt whether he spoke to Agent Fraterrigo about those matters or withheld the information from her.  As the defense has previously argued, the "good faith" inquiry must encompass, not only the agent-affiant, but also the prosecutor who drafted the application and accompanied the affiant before the Magistrate.

HOFFMAN & POLLOK LLP

**Page 3**
**November 16, 2006**

  We therefore request that the Court re-open the hearing to permit the areas of inquiry set forth above. Based on the record developed at the *Franks* hearing on Wednesday, we further submit that the Court should permit an even broader range of inquiry that: 1) encompasses the full scope of what the case agent and prosecutor knew prior to drafting the search warrant application, and 2) allows defense counsel to effectively challenge the witness' credibility, rather than just challenging their testimony on narrowly defined issues.

           Respectfully submitted,

           *Susan C. Wolfe*
           SUSAN C. WOLFE

Cc: AUSA Marc Litt
   Glenn Colton, Esq.