# Exhibit 1

Case 1:05-cr-00621-RJS     Document 161-2     Filed 11/21/2006     Page 1 of 6

    6896TAN6         Litt - cross

1     I assume, Mr. Hoffman, you are contemplating an
2  application for a Franks hearing?
3     MS. HOFFMAN:  Correct.
4     THE COURT:  It seemed to me that what you need to tell
5  me now, or you can think about it or canvass among yourselves
6  is what kind of a briefing schedule you want to have.  It may
7  be, Mr. Colton and Mr. Hoffman, that what you want to do is tee
8  up the Franks issue first, have me rule on whether or not there
9  should be a Franks hearing.  If there is no Franks hearing,
10  then we can brief the issues that have been laid out in the
11  hearing.  If there a Franks hearing then there can be one set
12  of posthearing briefing that will cover the Franks hearing and
13  this hearing.  I think that makes more sense than having you
14  all do a posthearing briefing now along with making an
15  application for a Franks hearing and then have a second set of
16  posthearing briefs.  I think that would be less sufficient.
17  Again, you can think about it overnight and canvass among
18  yourselves or you can tell me now.
19     MS. HOFFMAN:  I tend to agree with what your Honor
20  anticipates.
21     THE COURT:  That is that you would want to tee up the
22  Franks hearing first, have me rule on that.
23     MS. HOFFMAN:  Yes.
24     THE COURT:  The next question, Mr. Colton, do you have
25  a view on that?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

                                      321
     6896TAN6            Litt - cross
1        MR. COLTON:  I am only smiling, your Honor, because we
2    had talked among ourselves and had agreed for efficiency
3    purposes to go straight to -- basically this has been a mini
4    trial -- to summation which would be an interactive summation.
5        THE COURT:  I think there may very will be argument
6    here.  My only concern is that this is in effect been a bench
7    trial and I guest posttrial submissions all the time from your
8    colleagues on the civil side of the law.  They fight over
9    money.
10       MR. COLTON:  I was there once.
11       THE COURT:  So you know.  So you know, Mr. Colton.  I
12   know it is a pain in the rear, but I do think that given how
13   extensive this record is that is the most thorough way of
14   resolving.  There are so many subissues here and so many fault
15   lines here and this is a very fact intensive determination.
16   Obviously this credibility issue is beyond that.  There are a
17   lot of issues that I think have to be carefully argued.
18       I think from my standpoint I have to be careful and
19   consider and I think it is better for me to get it right for
20   you all and to obviously do the best I can to get it right
21   based on the record.  I still think we will haver argument.
22       MR. COLTON:  I think your Honor knows what my concern
23   is.
24       THE COURT:  I get the concern, believe me.  When there
25   are similar concerns in other cases, I take argument and I rule
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

6896TAN6           Litt - cross

1  from the bench, because I am very sympathetic to the concern
2  and always have been in this case and others.  The defendants
3  have their speedy trial rights vindicated.  When we have issues
4  as complex as this, searches in two countries involving
5  inspectors.  We had a lot of people testify.  There are some
6  novel legal issues and complicated legal issues.  I would
7  imagine that the defendants would like me decide this based on
8  a thorough record as I could because if I rule in their favor,
9  they are going to want to have that be a thorough ruling if the
10 government should appeal it or vice-versa.
11          In any event, I think if we are going to go with the
12 suggestion that we brief the Franks issue first, then it still
13 leaves open the question as to how extensive the briefing will
14 be on this issue.  I think we need to tee that up before we
15 figure out the form the postbriefs.
16          The question, Mr. Colton and Mr. Hoffman if --
17 assuming you are on board with that, Mr. Colton.  Are you
18 onboard with that?
19          MR. COLTON:  Can I have a moment?
20          THE COURT:  Yes.
21          MR. COLTON:  We are on board.
22          THE COURT:  So then do you want to tell me now when
23 you want to give me the submissions, or do you want to work it
24 out among yourselves?
25          MR. COLTON:  I think we can work it out here.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

323

6896TAN6          Litt - cross

1        THE COURT:  Fine.
2        MR. COLTON:  If your Honor wants to give us 10
3   minutes.
4        THE COURT:  I am happy to give you 10 minutes if you
5   want to talk about it now.
6        MR. COLTON:  Perhaps the easiest thing is to set it.
7        MS. HOFFMAN:  I would suggest three weeks, your Honor.
8   I think in view of the record --
9        MR. COLTON:  Are you saying the Franks hearing?
10       MS. HOFFMAN:  Correct.  That is obviously a very
11  significant issue.
12       THE COURT:  And it a fact-intensive issue.
13       MS. HOFFMAN:  Correct.  And obviously it could well be
14  that these issues are the dispositive issues to the resolution
15  of the case.  All that being the case, I think that would be
16  appropriate.
17       THE COURT:  Mr. Colton?
18       MR. COLTON:  I was going to say two, but it seems to
19  be quibbling.
20       THE COURT:  So that puts it August 30 for the defense
21  submission for Franks.
22       When did the government want to respond by?
23       MR. COLTON:  Just for the record, we may or may not do
24  a submission.
25       THE COURT:  I was suggesting a joint one.

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

324

6896TAN6                Litt - cross

1           MS. McEVOY:  The government would request three weeks.
2           THE COURT:  September 21.
3           And reply?
4           MS. HOFFMAN:  I would think a week.
5           THE COURT:  September 28.
6           What is going on with the privilege issues?
7           MS. MERGOLIS:  I can speak to that, your Honor.
8           THE COURT:  Good afternoon.
9           MS. MERGOLIS:  Good afternoon.  I believe they are
10   resolved is my understanding.  We don't have a representative
11   from the government privilege team here today.  As far as I can
12   tell the U.K. and U.S. are completely resolved and we don't
13   expect litigation on this issue.
14          THE COURT:  Obviously there is, as I think I mentioned
15   before -- presumably whatever it is that you all worked out
16   would cover what remains to potentially be produced by way of
17   the subpoena.  If I grant the motion to quash the subpoena,
18   then that is moot.  If I deny the motion to quash the subpoena
19   there could be the production of additional documents.  I
20   assume whatever you all have worked out will avoid litigation
21   on those materials as well, am I right on that?
22          MS. MERGOLIS:  No.  I was referring to the documents
23   that were produced to us by the government privilege team as
24   potentially privileged materials.  And that did not include
25   materials that have yet to be produced.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300