

**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
www.wsgr.com

November 22, 2006

**BY ECF AND FACSIMILE**

The Honorable Kenneth M. Karas
United States District Judge
United States Courthouse
Southern District of New York
500 Pearl Street, Room 920
New York, NY 10007

  Re: *United States v. Alberto Vilar and Gary Tanaka*, 05 Cr. 621 (KMK)

Dear Judge Karas:

  We represent Gary Tanaka in the above-entitled matter and, on his behalf, submit this reply to the Government's November 21, 2006, opposition to Defendants' request for a supplemental *Franks* hearing to explore certain discrete issues ("Government Opposition" or "Gov. Opp."). As an initial matter, it appears that the Government's opposition takes the wrong focus. Specifically, the Government appears to be arguing that the overall facts (regardless of whether included in the warrant application) support Agent Fraterrigo's allegations in the search warrant affidavit (a point with which the defense strenuously disagrees). However, at this stage, *i.e.*, evaluating whether a further *Franks* hearing should be granted, the focus should be on whether Agent Fraterrigo "with[held facts] within [her] ken that any reasonable person would have known [] was the kind of thing the judge would wish to know." *United States v. Harding*, 273 F. Supp.2d 411, 426 (S.D.N.Y. 2003) (internal quotations and citations omitted). As demonstrated below, there can be no serious dispute that Magistrate Judge Maas would have wanted to know that (1) despite Lily Cates' alleged verbal statements regarding Rhodes Capital, Agent Fraterrigo had in her possession documents that directly contradicted those statements; and (2) irrespective of how Lily Cates retrieved $3 Million dollars of her investment, that money had not disappeared or been stolen, but was in the very account in which Lily Cates believed it should be found.

**Defendants' Request For A Supplemental Franks Hearing Is Timely**

  The Government's contention that the issues implicated in the instant application should have been raised in Defendants' initial motion for a *Franks* hearing should be rejected. The Government's listing of a handful of documents among the over 125 million pages it seized and later made available to the defense after the searches at issue completely misses the point. It was not until November 8, 2006 – over two months after Defendants' original motion was filed and only one week before the initial *Franks* hearing took place – that the Government identified those documents that it had in its possession prior to applying for the Amerindo US warrant. Prior to

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
November 22, 2006
Page 2

this disclosure, Defendants could not confirm what Agent Fraterrigo knew but withheld when seeking the warrant. It is for this reason that the Court invited Defendants to write a letter requesting a supplemental hearing to address these issues. *See, e.g.*, Transcript from November 15, 2006 Hearing, p. 47.[1] Indeed, many of the documents relied on by the Government in support of its assertion that Defendants should have raised these issues earlier were seized either from Amerindo US or from the Cadogan Tate storage facility in the United Kingdom <u>after the application for the Amerindo US warrant was filed</u>. *See, e.g.*, Gov. Opp. Ex. 6-8.

In any event, the Government has failed to demonstrate that it has in any way been prejudiced by delay.[2]

### Defendants Are Entitled To A Supplemental Hearing To Pursue Misrepresentations Concerning Cates' Rhodes Capital Investment And Her Redemption Of $3 Million In 2005

Contrary to the Government's assertion, Defendants have satisfied the preliminary showing required to demonstrate that an additional *Franks* hearing is justified. With respect to Lily Cates' investment in Rhodes Capital, the Affidavit in support of the Amerindo US search warrant states: "Although [Cates'] account statements, which she received up until approximately 2002, reflected growth in the Rhodes investment, the investment was never described to her, she never has received a private placement memorandum, nor has she signed a subscription agreement for Rhodes, and her efforts to learn more about the investment were ignored or rejected by Vilar." GX 33 at ¶ 6.B. This statement is clearly contradicted by documentary evidence possessed and reviewed by Agent Fraterrigo prior to submitting the warrant application. In particular, on December 22, 1989, Cates received a report containing detailed information concerning Rhodes. The Government's attempt to downplay the significance of this document – in part, by maintaining it does not constitute a "description" of the Rhodes investment – is simply not credible and, in any event, the document speaks for itself. Moreover, other documents possessed by the Government prior to May 25, 2005 also support Defendants' contention that Cates in fact received information (including a Private Placement Memorandum) concerning her Rhodes investment.[3] Indeed, even the Government's own description of Cates' allegations as to Rhodes confirm that she was provided with information concerning the investment, and that the Government was aware of this prior to seeking the search warrant.[4] At the very least, therefore,

---

[1] The Court then set a schedule for submission of such a letter at the November 17, 2006 conference.
[2] The Government's suggestion that Defendants have not been diligent in these proceedings is entirely unfounded and undeserving of reply. *See* Gov. Opp. at 3.
[3] These documents, as well as the December 22, 1989 letter and attached report, are attached hereto.
[4] Although the portions of the interview notes cited by the Government in its letter were not provided to Defendants, the excerpts make clear that Vilar in fact described the investment to Cates. *See, e.g.*, Gov. Opp. at 5 ("VILAR told her about an investment, Rhodes Capital. He explained it was a partnership with other investors who trusted him with their money. He told her that he sold all the shares at $500,000 per share. VILAR realized that she did not understand

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
November 22, 2006
Page 3

Defendants have succeeded in making the necessary preliminary showing that Agent Fraterrigo intentionally or recklessly omitted from the warrant application material facts concerning Cates' Rhodes investment, such that further inquiry is justified.[5]

Similarly, Defendants have made the requisite showing with respect to Cates' redemption of $3,000,000 on or about February 28, 2005, less than three months prior to the search at Amerindo U.S. According to the warrant application, "[i]n approximately February 2005, Cates attempted to redeem her *entire investment portfolio* at Amerindo, including her SBIC investment described in the Vilar Criminal Complaint, Rhodes, *and any other investment with Amerindo*, but Amerindo and Vilar have refused to move her investment portfolio to [Bear Stearns] as requested." GX 33 at ¶ 6.B. (emphasis added). The clear implication of this allegation is that Cates has been unable to redeem *any* of her investments with Amerindo. What Agent Fraterrigo knew but failed to tell Magistrate Judge Maas, however, was that Cates in fact *was* able to redeem at least part of her investment, totaling over $3,000,000. Another intended implication of the warrant application was to allege that Defendants stole investor funds. Clearly, the fact that Lily Cates was easily able to locate $3,000,000 exactly where she expected to find it should not have been kept from Magistrate Judge Maas. In all, the omission of the $3,000,000 redemption was material and "the kind of thing the judge would wish to know."

### Limited Testimony From AUSA Litt Is Required

At the initial *Franks* hearing, Agent Fraterrigo testified that she could not recall whether she had seen certain documents or was aware of certain information prior to seeking the warrant – despite the fact that the Government acknowledged possessing the documents or information in question prior to May 25, 2005. Specifically, she testified that AUSA Litt received documents from a witness and her attorney that he did not provide to Agent Fratterigo. (Tr. 116-20). Thus, the testimony of AUSA Litt is necessary to determine what documents were available to Agent Fraterrigo prior to swearing to the search warrant affidavit and to determine what facts contained in those documents were provided to her. Of course, if the Government is willing to stipulate that

---

his explanation of the investment.") Clearly, that Cates may not have fully comprehended Vilar's explanation of the investment is vastly different than Vilar refusing to provide any information concerning the investment to Cates.
[5] As discussed in detail in Defendants' memorandum in support of their original Franks motion, the Rhodes allegations are material because they are one of only two indications in the entire warrant application of any misconduct prior to 2001. The Government appears to concede this in their opposition letter . *See* Gov. Opp. at 6.

3

Case 1:05-cr-00621-RJS    Document 164    Filed 11/22/2006    Page 4 of 4

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Kenneth M. Karas
November 22, 2006
Page 4

all documents in its possession (and all of the facts referred to therein) as of May 25, 2005 should be deemed to have been available to Agent Fraterrigo prior to submitting the warrant application, Mr. Tanaka will withdraw his request to question AUSA Litt on that issue.

            Respectfully submitted,

            WILSON SONSINI GOODRICH & ROSATI
            Professional Corporation

            Glenn C. Colton
            Jessica L. Margolis

cc:  Steven Kobre, Esq. (by fax)
   Marc Litt, Esq. (by fax)
   Jeffrey Hoffman, Esq. (by fax)

4