November 22, 2006

Hoffman & Pollok, LLP
Attorneys for Defendant Alberto Vilar
260 Madison Avenue
New York, NY 10016
(212) 679-2900
August 30, 2006


Hon. Kenneth M. Karas
Judge, U.S. District Court
United States Courthouse
500 Pearl Street – Rm. 2260
New York, N.Y.  10007-1312
Fax No:  212 805-7968

                    Re:    *United States v. Alberto Vilar* - 05 Cr. 0621

Dear Judge Karas:

        This letter is submitted in further support of the defendant Alberto Vilar's request for an expanded hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674 (1978) and it responds to the Government's letter dated November 21, 2006.

        The Government's argument about timeliness highlights the damage occasioned when it conducts a massively overbroad search, seizing untold numbers of physical records from offices in different time zones and millions of pages of data from two office computer systems.  While we accept the government's representation that it provided certain documents in discovery almost a year before the defendants' *Franks* submission, in the course of that year the defendants conducted, among other defense preparations, an attorney-client privilege review of the aforementioned documents in an abbreviated time period in a frantic effort to preserve their speedy trial rights.  In that time period, they also attempted to review approximately180 boxes of documents seized from the New York Amerindo office and 40 boxes of documents seized from the London office, in order to prepare for scheduled hearings and at the same time attempt to digest the information in preparation for trial.

Hon. Kenneth M. Karas
November 22, 2006
Page 2

Under such circumstances, it is not until the government's disclosure of 3500 material that any given document comes into its appropriate focus. *Cf. United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (providing a mass of documents through which a defendant must search to ferret out the necessary particulars does not satisfy, but instead augments the government's obligation to particularize the offense charged). If the government seized only documents they were entitled to and that were germane to their case, the forest would not have overwhelmed the trees. Moreover, while a large quantity of initial discovery was provided in August, 2005 (approximately 5000 pages) there was no way for the defendants to know, until the 3500 material was disclosed, whether the government had the documents in question *prior to* the search warrant application or acquired them thereafter, from the search materials or otherwise.

The fact that the import of certain documents did not become clear until the hearing does not excuse the government's misrepresentation to the Magistrate of a material fact in an *ex parte* proceeding, at a time when the information available to them was far more manageable than the avalanche of information that subsequently descended.

In attempting to explain and excuse its representations to Judge Mass regarding Rhodes Capital, the government relies solely on statements Cates allegedly made to Agent Golden *over fifteen* years after the investment, ignoring the plain language of a letter sent to Cates almost simultaneously with the investment, a letter that enclosed a financial report and offered to discuss it further with her.

According to Agent Golden's notes, Lily Cates claimed to have a learning disability and dyslexia, which is why she claimed she was puzzled when Mr. Vilar tried to explain the investment to her orally (the Magistrate was never even told that Vilar tried). Nevertheless, the Government faults the defendants for not sending her (if such is in fact the case) a typical prospectus that is incomprehensible to anyone but financial professionals. In writing, at the time of the investment, Cates was given a financial report and an offer to discuss the investment further. Instead, however, the government chose to tell the Magistrate only about Cates' allegation 15 years later that Vilar discouraged her from learning more about the investment. In light of the document, which was in the government's possession at the time of the application, which contradicts Cates' 15 year old memory, the allegation in the search warrant was blatantly misleading.

Similarly, to withhold from Judge Maas that Cates successfully retrieved a full quarter of her funds, an amount that was at least double the amount of her initial

Hon. Kenneth M. Karas
November 22, 2006
Page 3


investment, was blatantly misleading.  Agent Fraterrigo made the allegation that the defendants refused to redeem or transfer Cates' portfolio in order to obtain a warrant that far exceeded the scope of what the government had probable cause to seize.

Finally, it is simply common sense that the good faith inquiry should include the good faith of the prosecutor who drafted the affidavit, accompanied the affiant to the Magistrate and answered his questions, and who was *a*, if not *the*, repository of information provided in the warrant application.  The affiant and the prosecutor were in all respects joint actors with respect to the search warrant application.  If the good faith inquiry is limited to the affiant, then it gives the Government a strong incentive to withhold any potentially exculpatory information from the affiant in order to subsequently claim that he or she acted in good faith.

The Court should therefore grant an expanded *Franks* hearing encompassing, at least, the Rhodes Capital and Bear Stearns transfer information.  As we have argued, given the number of material misrepresentations the defendants have identified, a broader inquiry is warranted.

Respectfully submitted,



SUSAN C. WOLFE


Cc:  AUSA Marc Litt
     Glenn Colton, Esq.
     Steven Kobre, Esq.