**EXHIBIT F**

August 9 Hearing transcript.txt
                    163
689ztan1
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   -----------------------------x
 2
 3   UNITED STATES OF AMERICA
 3
 4        v.                    05 Cr. 621 (KMK)
 4
 5   ALBERTO VILAR                 Hearing
 5   GARY TANAKA,
 6           Defendant.
 6   -----------------------------x
 7                         New York, N.Y.
 7                         August 9, 2006
 8                         9:45 a.m.
 8   Before:
 9
 9        KENNETH M. KARAS
10                         District Judge
10
11   MICHAEL J. GARCIA
11   United States Attorney for the
12   Southern District of New York
12      One St. Andrew's Plaza
13      New York, N.Y. 10007
13   DEIRDRE A. McEVOY
14   MARC O. LITT
14      Assistant United States Attorneys
15
15   JEFFREY C. HOFFMAN, ESQ.
16   Attorneys for Defendant Vilar
16      Hoffman & Pollik, LLP
17      260 Madison Avenue, 22nd Floor
17      New York, New York 10016
18      (212) 679-2900
18
19   GLENN C. COLTON, ESQ.
19   Attorney for Defendant Tanaka
20      Wilson Sonsini Goodrich & Rosati (NYC)
20      12 East 49th Street, 30th Floor
21      New York, New York 10017
21      (212) 999-5804
22
22   STEVEN G. KOBRE, ESQ.
23   Attorney for Defendant Tanaka
23      Kobre & Kim LLP
24      800 Third Avenue
24      New York, New York 10022
25      (212) 488-1200
             SOUTHERN DISTRICT REPORTERS, P.C.
                        Page 1

August 9 Hearing transcript.txt

17   Q.  And in looking for these other possible victims other than
18   your experience in prior matters, which you stated in the
19   affidavit, isn't it accurate that you had no specific knowledge
20   or facts as to anyone other than the names you mentioned in the
21   affidavit having been defrauded?
22        MS. McEVOY:  Objection.
23        THE COURT:  I am almost speechless.  It is the same
24   question.  The point is she knows about certain alleged
25   victims.  She is referring from that there are others.  That is

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

202

6896TAN2        Fraterrigo - recross

1   the point.
2        MS. HOFFMAN:  Here is what I am getting at:  In her
3   generalized statement in the affidavit that what the magistrate
4   should rely on is probable cause in addition to specific
5   whatever the specific facts were that were in the affidavit,
6   that her general broad experience should also be relied on for
7   probable cause.  So there is something not specified in the
8   affidavit that is just sort of --
9        THE COURT:  Whatever it is, A, the affidavit is in
10   evidence; B, it was signed by a magistrate judge.  So I am not
11   sure where any of this is doing.
12        MS. HOFFMAN:  I am looking to see from a credibility
13   standpoint if she was truthful when she said that there were
14   other things without specifying what they were.
15        THE COURT:  I think you asked her that question and
16   she said yes, and then you can argue presumably that you don't
17   share her view.  But asking her again and again and again there
18   were no facts that supported every single client, or reason to
19   believe that every single client had been defraud, that she had
20   no specific information about other clients whose clients' list
21   were seized for example, she conceded that.
22        MS. HOFFMAN:  Fine.
23        THE COURT:  Mr. Hoffman, I am at a loss why this is
24   taking so long.  You had an evening to prepare a recross.
25        MS. HOFFMAN:  Frankly, I am trying to cut down

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

203

6896TAN2        Fraterrigo - recross

1   questions that I was going to ask.
2        THE COURT:  My point is the same.  That is what you
3   should have been doing last night.
4        MS. HOFFMAN:  I didn't know your rulings last night.
5        THE COURT:  These are foreseeable to all of the
6   interns in the back.  I mean that with all respect --
7        MS. HOFFMAN:  I appreciate that, your Honor.
8        THE COURT:  -- to all the interns in the back.
9   BY MS. HOFFMAN:
10   Q.  You also stated yesterday in answer to a number of

Page 23

August 9 Hearing transcript.txt
11   questions that you had reason to believe that clients could
12   have been defrauded and that was why you were clarifying your
13   error as you indicated yesterday when you said there was no
14   probable cause for certain things.  Do you also equate reason
15   to believe with probable cause, basically in your mind one in
16   the same?
17   A.  Yes.
18   Q.  Thank you.
19        When you instructed the inspectors at the meeting that
20   you described yesterday concerning their -- how they should
21   handle the --
22        THE COURT:  Are you talk U.K. or U.S.?
23        MS. HOFFMAN:  U.S. search.
24        THE COURT:  The briefing in the morning.
25        MS. HOFFMAN:  The briefing in the morning.
            SOUTHERN DISTRICT REPORTERS, P.C.
                 (212) 805-0300
                                      204
      6896TAN2          Fraterrigo - recross
1   Q.  The briefing in the morning, it is a fact, is it not, that
2   you did not tell them that paragraph 1 of Attachment A should
3   be in any way, shape or form limited by any of the other
4   paragraphs, correct?
5   A.  No, I did not.
6   Q.  It is also a fact, is it not, that you did not tell them
7   that they should equate when trying to understand the warrant
8   they were operating under probable cause with reason to
9   believe?
10       MS. McEVOY:  Objection, relevance.
11       THE COURT:  I agree.  Sustained.
12   Q.  Would it be accurate to say that you did not tell the
13   agents at the briefing prior to the U.S. search that they
14   should not take anything that was not helpful to the
15   investigation?
16   A.  No, I did not.
17   Q.  Would it be accurate to say that when you were asked
18   questions at the site of the search, during the search by
19   people conducting the search, you did not say to them in answer
20   to any of those questions, Do not take information unless it is
21   helpful to the investigation?
22   A.  No, I did not.
23   Q.  And would it be accurate to say when you answered questions
24   during the search of the other -- U.S. search of the other
25   individuals when they were searching, you did not say to them
            SOUTHERN DISTRICT REPORTERS, P.C.
                 (212) 805-0300
                                      205
      6896TAN2          Fraterrigo - recross
1   that paragraph 1 of the Attachment A is limited and should be
2   viewed as being limited by any of the other paragraphs?
3   A.  No.
4   Q.  You did not say that?
                         Page 24

August 9 Hearing transcript.txt

5   A.  No, I did not.
6          THE COURT:  Let's wrap this up, Mr. Hoffman.  It has
7   been a long recross.
8   Q.  You did say that you were asked questions by other
9   inspectors during the eight or so hours that you were on the
10  premises during the American search, correct?
11  A.  Yes.
12  Q.  Can you tell us to the best of your memory what inspector
13  asked you what question?
14         MS. McEVOY:  Objection, asked and answered.
15         THE COURT:  Way beyond the scope.
16  Q.  Do you remember being asked yesterday about all the
17  activities you did in the eight hours you were there as to why
18  you didn't have enough time to go through the red and black
19  notebooks?
20         MS. McEVOY:  Objection.
21         THE COURT:  Sustained.  It is not at all what she was
22  asked.
23  Q.  Do you remember being asked questions about going through
24  some red and black notebooks?
25  A.  Yes.
             SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

                                          206
        6896TAN2              Fraterrigo - recross
1   Q.  Do you remember saying there were 26 such notebooks that
2   you seized?
3   A.  Yes.
4   Q.  And do you remember saying that you went through just a
5   certain number of those?
6   A.  Yes.
7   Q.  And do you remember being asked about questions that I had
8   asked you on cross-examination concerning the time that it took
9   to do that?
10  A.  Yes.
11  Q.  And do you remember being asked yesterday if in fact what
12  you did during the eight hours you were there in addition to
13  going through those samples of those red and black notebooks?
14         MS. McEVOY:  Objection.
15         THE COURT:  That is not how she phrased it.  That is
16  not how the question was asked.
17  Q.  Do you remember being asked how long you were there?
18  A.  Yes.
19  Q.  You said about eight hours?
20  A.  Correct.
21  Q.  And do you remember explaining what you did during those
22  eight hours?
23         THE COURT:  Why don't you get to the punch line.
24         MS. HOFFMAN:  Okay.
25         THE COURT:  Just get to the punch line.
             SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300
                                       Page 25