**EXHIBIT G**

Transcript of Franks argument Decision.txt

1

6ap2vilm kjc

```
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2   UNITED STATES OF AMERICA,           New York, N.Y.
 3
 3       v.                  05 Cr. 621(KMK)
 4
 4   ALBERTO VILAR
 5   GARY TANAKA,
 5
 6           Defendants.
 6   ------------------------------x
 7
 7                       October 25, 2006
 8                       1:42 p.m.
 8
 9
 9   Before:
10
10               HON. KENNETH M. KARAS,
11
11                   District Judge
12
12
13                   APPEARANCES
13
14   MICHAEL J. GARCIA
14       United States Attorney for the
15       Southern District of New York
15   BY:  MARC O. LITT
16        DEIRDRE ANN McEVOY
16        Assistant United States Attorneys
17
17   HOFFMAN & POLLOK, LLP
18       Attorneys for Defendant Vilar
18   BY:  JEFFREY C. HOFFMAN
19        SUSAN C. WOLFE
19        JOANNA EFTYCHIOU-EVANS
20
20   WILSON, SONSINI, GOODRICH & ROSATI, P.C.
21       Attorneys for Defendant Tanaka
21   BY:  GLENN C. COLTON
22        JESSICA L. MARGOLIS
22
23       - and -
23
24   KOBRE & KIM, LLP
24       Attorneys for Defendant Tanaka
25   BY:  STEVEN G. KOBRE
```

Page 1

Transcript of Franks argument Decision.txt

18  anybody looking at the papers would reasonably think that.
19          THE COURT: One thing that wasn't clear from the
20  briefing is all of these letters that were attached as exhibits
21  to your affidavit, were these things that Inspector Fraterrigo
22  had beforehand or are these things came about as a result of
23  the search?
24          MR. LITT: No, these were in our possession
25  beforehand.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

4

6ap2vilm kjc

1           THE COURT: Beforehand.
2           There is at least, though -- I know that some of the
3   exhibits that were attached to Ms. Margolis' affidavit were
4   items that were found in the UK search. But every single one
5   of the letters that you cited were available to Inspector
6   Fraterrigo before she went to Judge Maas to get the search
7   warrant, or at least some significant quantity of them?
8           MR. LITT: A very significant quantity, yes.
9           THE COURT: You are not sure which ones were not
10  available.
11          MR. LITT: Without going back and looking at it and
12  itemizing it, I can't say that off the cuff.
13          THE COURT: Presumably part of Inspector Fraterrigo's
14  discussion with Ms. Cates and Ms. Mayer related to the contents
15  of these letters, I take it. Is that a fair assessment?
16          MR. LITT: Certainly the correspondence that they had
17  with the principals, yes. I can't say that she talked to them
18  about every single letter that I have cited, but --
19          THE COURT: No, I understand.
20          MR. LITT: -- the back and forth, yes.
21          THE COURT: And the notion is that she is trying to
22  find out what it is that each individual invested in and the
23  nature of the fraud that may have -- they may have suffered
24  from, is that right?
25          MR. LITT: That was certainly something that she was
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

5

6ap2vilm kjc

1   interested in, yes.
2           THE COURT: In paragraph 6(b) of Inspector
3   Fraterrigo's affidavit, it is alleged as follows: "Lilly
4   Cates, who is 'the victim,'" in quotes -- I am at page four of
5   the affidavit -- "described in the Vilar criminal complaint,
6   described to me an investment of $1 million that she made in or
7   about 1988 in an entity called Rhodes Capital. She received a
8   stock certificate for two shares of stock which was signed by
9   Vilar and Tanaka. Although her account statements, which she

Page 3

Transcript of Franks argument Decision.txt

```
10   received up until approximately 2002, reflected growth in the
11   Rhodes investment, the investment was never described to her.
12   She never has received a private placement memorandum nor has
13   she signed a subscription agreement for Rhodes, and her efforts
14   to learn more about the investment were ignored or rejected by
15   Vilar. In approximately February 2005, Cates attempted to
16   redeem her entire investment portfolio at Amerindo, including
17   her SBIC investment described in the Vilar criminal complaint,
18   Rhodes, and any other investment with Amerindo, but Amerindo
19   and Vilar refused to move her investment portfolio to Bear
20   Stearns."
21           Breaking that down, with respect to Rhodes, the fact
22   that she got a stock certificate and she got account statements
23   but apparently was never -- the investment was never
24   specifically described to her nor did she ever receive a
25   private placement memorandum and she didn't sign a subscription
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

6ap2vilm kjc

```
1    agreement, what's criminal about that?
2            MR. LITT: I don't know that that is in and of itself
3    necessarily criminal, but it is unusual for people to make
4    large investments and for investment advisors to present
5    clients with offerings of securities without giving them a
6    description of the document and a subscription agreement to
7    sign.
8            THE COURT: I understand it may be unusual, but you
9    don't get a search warrant because of unusual conduct, right?
10           MR. LITT: Well, that -- no, you don't get a search
11   warrant for unusual conduct standing by itself.
12           THE COURT: Of course not.
13           MR. LITT: But you get a search warrant when you have
14   criminal conduct and unusual conduct and you have individuals
15   that are engaging in lying to the investors, in failing to
16   provide them information about investments that they have
17   advised them to make.
18           THE COURT: Hold on. I just asked you what it was
19   about the Rhodes investment, as alleged in paragraph 6(b), that
20   is criminal, and you said it is not. So I want to make sure I
21   am clear on this. I am trying to understand what is it, if
22   everything that Cates says is true about Rhodes up until the
23   point of not getting her investment redeemed, I'm just talking
24   about not being given the details of the investment, not being
25   given a placement memo, not signing a subscription agreement,
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

6ap2vilm kjc

```
1    but she is getting account statements and apparently there is
```

Transcript of Franks argument Decision.txt

2   some growth, whatever that means, what is it that is criminal
3   about that?
4           MR. LITT: It is not necessary criminal, but it is
5   certainly indicia of fraud. Those are all things that one
6   would reasonably expect someone who is perpetrating a fraud to
7   do.
8           THE COURT: But if all you had was Rhodes, all you had
9   was Rhodes, do you think you have a basis to get a search
10  warrant for anything having to do with Ms. Cates?
11          MR. LITT: Rhodes, including the fact that when she
12  tried to transfer her investment to another brokerage house
13  they refused, and when she tried to redeem her investment they
14  refused? Yes.
15          THE COURT: So it's the refusal to redeem the
16  investment that is the basis for suggesting that there is a
17  crime committed here, is that right?
18          MR. LITT: With respect to Rhodes?
19          THE COURT: With respect to Rhodes. Up until there is
20  no redemption, there is no criminal conduct with respect to
21  Rhodes. I understand SBIC. I will get to that in a minute. I
22  am just talking about Rhodes.
23          MR. LITT: Well, there is certainly indicia that there
24  could have been fraud in the inducement, but it is not -- if
25  you are asking whether there is a case to be made based on
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                  8

6ap2vilm kjc

1   what's in this paragraph for fraud in the inducement for Rhodes
2   as a crime, the answer is no.
3           THE COURT: OK.
4           MR. LITT: But it is in -- each those pieces of
5   evidence is powerful evidence of indicia of fraud.
6           THE COURT: I have been around long enough to know
7   that magistrate judges review these things based on the
8   totality of the circumstances, so I get that. I am only
9   talking about Rhodes.
10          MR. LITT: OK.
11          THE COURT: And what makes Rhodes a crime is,
12  according to the affidavit, the refusal allegedly of Vilar and
13  Tanaka to redeem her investment in Rhodes in addition to the
14  other investments. I am just talking about Rhodes. Is that
15  right?
16          MR. LITT: Yes.
17          THE COURT: Now SBIC, I understand, is a whole
18  different ball game, because you allege in the complaint that
19  certain statements were made to Ms. Cates that were fraudulent
20  in terms of whether or not there was going to be government
21  approval for this type of investment and so on and so forth.
22  But I'm just talking about Rhodes.
23          With respect to Ms. Mayer, which is paragraph 6(a) --
                                Page 5

Transcript of Franks argument  Decision.txt

24    MR. LITT:  It's a family.
25    THE COURT:  The Mayer family, right, but it's based on
          SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300
                                                              9
6ap2vilm kjc

1   Ms. Mayer providing the information to Inspector Fraterrigo.
2   She says: "I have spoken to Lisa Mayer."
3       MR. LITT:  Yes.
4       THE COURT:  So that's the source of the information
5   she is about to give regarding the Mayer family investments
6   with Amerindo, correct.
7       MR. LITT:  Yes.
8       THE COURT:  She talks about the GFRDA's, which the
9   family invested in beginning in or about '87 and their
10  representation about how they are absolutely safe and liquid,
11  the bottom of page three there, that Vilar induced the Mayer
12  family, including the father and sister, to manage much of
13  their investment through an offshore account with PTC
14  Management Ltd.  And then in or about 2003, when the Meyers
15  attempted to redeem approximately 12 million invested in
16  GFRDA's, Amerindo, Vilar, Tanaka and Tanaka's wife all rebuff
17  their efforts and refuse to release the funds.  The next
18  sentence reads: "Ms. Mayer described years of begging Vilar to
19  release some of their investment to pay for the care of her
20  sick father who Vilar had known for some 30 years and was one
21  of Vilar's original investors and Vilar's rejection of those
22  requests."
23      Now, when I read that Ms. Mayer described years of
24  begging Vilar to release some of their investment, I'm thinking
25  many years, over a period of a long time.  I'm not thinking
          SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300
                                                              10
6ap2vilm kjc

1   back to 2003.  To the extent that there are redemptions on
2   these investments going up to, say, 2001, and there is a
3   renewal of the investment, how is one supposed to square that
4   fact with the statement that there were years of begging Vilar
5   to get redemptions that were rebuffed?
6       MR. LITT:  The years were from approximately 2003 to
7   2005.
8       THE COURT:  But why doesn't it say that?  Why doesn't
9   it say -- because this affidavit is sworn to in May of 2005.
10  So the most we are talking about here is two years, right?  Two
11  years.
12      MR. LITT:  Correct.
13      THE COURT:  Not years.  If I said to you I have been
14  doing this job for years and then it turned out I had only been
15  doing it for two years, which is true, I think those are very
                         Page 6