**EXHIBIT M**

IN THE MATTER OF THE CASE OF

UNITED STATES OF AMERICA

v VILAR & TANAKA

IN THE FEDERAL DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

---

**REPORT BY ENGLISH COUNSEL INSTRUCTED ON BEHALF OF MR TANAKA**

---

Clare Sibson
Hollis Whiteman Chambers
Queen Elizabeth Building
Temple
London
EC4Y 9BS

Tel:   020 75835766
Fax:   020 73530339
DX:    LDE 482

c.sibson@holliswhiteman.co.uk

IN THE MATTER OF THE CASE OF
UNITED STATES OF AMERICA v VILAR & TANAKA
IN THE FEDERAL DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REPORT BY ENGLISH COUNSEL
INSTRUCTED ON BEHALF OF
MR TANAKA

Professional Qualifications and Standing

1. I am a barrister qualified to practise in England and Wales. I have a Master of Arts degree from Cambridge University, having graduated in 1996 with a first class, double honours degree in law. My degree exempted me from the Common Professional Examination (which is the academic qualification that all candidates for entrance into either arm of the English legal profession are otherwise required to obtain). Therefore, after graduating from Cambridge, I moved immediately into the vocational aspect of my education. Between 1996 and 1997, I attended the Bar Vocational Course at the Inns of Courts School of Law in London. In October 1997, I was called to the "Degree of the Utter Bar" by the Honourable Society of the Middle Temple, which is one of four historic bodies empowered to admit candidates to the profession. From that time, I have been entitled to refer to myself as barrister-at-law.

2. From September 1997 until February 1999 I worked as a pupil or trainee barrister at Hollis Whiteman Chambers in Temple, London. Hollis Whiteman is a set of barristers specialising in criminal and regulatory law. In February 1998, I gained higher rights of audience, which entitled me to represent clients in all English courts of first instance and appeal. From that date onwards I was instructed to act on behalf of clients in my own name, appearing in the Magistrates' Court, the Crown Court, the High Court and the Court of Appeal.

3. In February 1999 I was offered a tenancy at Hollis Whiteman Chambers. The award of tenancy in Chambers is roughly equivalent to the award of partnership in a law firm (although tenancy typically occurs much earlier in a barrister's career than does partnership in a solicitor's). Since then I have maintained an independent practice in criminal law. My primary specialty is financial crime and financial regulation but I have experience prosecuting and defending criminal cases of all types and of all degrees of gravity. Often I work as sole counsel for a particular party, but in very large and serious cases I would be instructed as junior counsel, working together with a leader of more than twice my experience. Given that the report I am currently instructed to compile relates to the operation of warrants for entry and search of premises, I should point out that I have been junior counsel for the Crown in several large and complicated police investigations, where I have had special responsibility for reviewing all sensitive material, including the documentation and other material relating to applications for such warrants. In addition, in 2004 I was appointed to a panel which responded on behalf of the Criminal Bar Association to a consultation paper published by the Home Office in relation to police powers, including powers of search and seizure. In the course of my career so far, I have been involved in many high profile cases and in the last 12 months I have been instructed by the Financial Services Authority, by individuals facing prosecution by the Serious Fraud Office and by more than one international corporation under investigation for crime in the United Kingdom.

**Report**

4. I am instructed by Corker Binning Solicitors to report upon a series of specific issues relating to the law of search and seizure under the Police and Criminal Evidence Act 1984. I have not been made aware of the facts of the matter concerning Mr Tanaka in New York.

Condition Precedent for a section 8 Warrant

5. The Police and Criminal Evidence Act 1984 (PACE/the Act) consolidated most police powers of entry, search and seizure. I am asked to report upon the terms of section 8 of PACE, whereby a police office may apply to a magistrate (styled a "justice of the peace" in the Act) for a warrant authorising entry to and search of specified premises.

6. Section 8 reads:
   8.-(1) If on an application made by a constable a justice of the peace is satisfied that there are reasonable grounds for believing-
   [conditions (a) to (e) are then set out]
   he may issue a warrant authorising a constable to enter and search the premises.

7. The conditions set out in (a) to (e) of subsection 8(1) include that a serious arrestable offence (i.e. an indictable offence) has been committed (a), that there is material upon the specified premises which is likely to be of substantial value to the investigation of the offence (b), and that the material in question does not consist of or include items subject to legal privilege, or material which is otherwise excluded or special protected by the Act (d). However, the overriding condition precedent for obtaining a search warrant under this section is *not* that these conditions (a) to (e) must each be fulfilled. The overall condition precedent is that the magistrate must be satisfied that there are *reasonable grounds for believing* that each of conditions (a) to (e) is fulfilled.

Reasonable grounds for belief

8. The threshold test is therefore satisfaction of reasonable grounds for belief. "Reasonable grounds for belief" is not defined within the Act but it is clear that this threshold is relatively low. It is certainly well below the balance of probabilities. Taking as an example condition (a), the threshold test does not require a magistrate to be satisfied that it is *probable* that an indictable offence has been committed. All that is required is for the magistrate to form a

genuine, subjective belief[1] that the offence has been committed and, objectively speaking, for that belief to be justified on rational grounds. The belief does not need to be based upon evidence which would in due course be admissible in a criminal court to prove a charge. On the contrary, ordinarily a police officer would present his application based upon his own hearsay account of available information. By the same token, it is not unusual for the application to be based upon sensitive intelligence (for example, a tip-off by a police informant or the product of the interception of telecommunications) which intelligence will never itself be disclosed to the defence or used to prove the case. In practice, the reality is that unless the magistrate demonstrably forms his belief in any of conditions (a) to (e) based on some prejudice, or on some other completely fanciful thought process, the condition precedent that his belief must be reasonable based will relatively easily be fulfilled.

No named suspect required

9.  I should also point out that none of the conditions (a) to (e) in section 8(1) of PACE requires any degree of satisfaction that any particular person is responsible for the crime which is believed to have been committed. Unless the application is for an "all premises warrant" under section 8(1A)(b), the warrant will relate to specified premises, not to a specified person. Although in practice the grounds for believing that there exists on the premises material which is likely to be of substantial value to the investigation will often be based upon an identified suspect's association with the premises in question, this will not necessarily be the case.

Specificity of items to be searched and seized not necessarily required

10. In addition, there is no provision of statute or of case law which necessarily requires the material which is the target of the search to be described with any

---

[1] See by analogy with Siddiqui v Swain [1979] R.T.R 454, DC, where "reasonable grounds to suspect" under the Road Traffic Act 1979 was held by the High Court to import the further requirement that the constable in fact does suspect.

high degree of specificity when applying for a section 8 warrant. Neither does any item necessarily need to be specifically described or identified on the face of the warrant itself. For example, in investigations of wide-ranging frauds, it is common for the warrant to specify simply "all documents of the description set out below which are connected to or relate in any way to Company X or any companies in its group for the period from 1 January 2003 to the present day." There may well then follow a long list of general categories of business documentation. This formulation will be perfectly adequate provided the circumstances of the investigation and the information available to the magistrate justify a search of this width.[2] Having said that, the magistrate much exercise some caution: it is possible for a warrant to be rendered invalid because it is too general in its description of the object of the search.[3]

11. Whatever degree of specification appears on the face of the warrant, practical powers of seizure are widened further by the Criminal Justice and Police Act 2001.[4] Where it is impracticable to establish during the course of a search whether all items in a particular location fall within the terms of the warrant, section 50 of the 2001 Act entitles police to remove all the material which might reasonably be thought to contain such items, in order to sift through the material and determine that question at a later stage.

Special Procedure Material

12. I am asked to describe the nature of special procedure material as defined by section 14 of PACE.

13. Special procedure material is confidential material which is afforded an enhanced degree of protection from search and seizure under PACE. It is defined by section 14 as material (other than legally privileged or excluded material[5]) which is in the possession of a person who acquired or created the

---

[2] R v Home Secretary, Ex p Fininvest [1997] 1 WLR 743
[3] R v Reading Justices and others, ex p South West Meat Ltd. [1992] Crim.L.R. 672
[4] The relevant part of the 2001 Act came into force on 1 April 2003.
[5] Excluded material relates to confidential medical or quasi-medical documents, human tissue taken for diagnosis or treatment purposes and journalistic material.

material in the course of his/her occupation and who holds the material subject either to an express or implied undertaking to hold it in confidence, or to an obligation of secrecy/restriction on disclosure imposed by any enactment.

14. Applications for access to special procedure material are frequently made in relation to records held by banks and in relation to sale of real estate documentation held by solicitors. I am asked to report on whether an individual's social security number and bank account details are likely to fall within the definition of special procedure material. The answer is that this material will almost certainly fall within the definition to the extent that it is held by another person in a professional and confidential capacity. For example, A's national insurance card, which bears his national insurance number, will not constitute special procedure material so long at it remains in A's possession. However, documentation bearing A's national insurance number in the hands of A's accountant would in all probability constitute special procedure material. I am asked to comment specifically in relation to personal information provided by an individual to an investment advice company. It is highly likely that this information will be held by the company in confidence. Therefore material bearing this information in the possession of the company is highly likely to fall within the definition of special procedure material.

Condition Precedent for a Section 9/Schedule 1 Order

15. Police may obtain access to special procedure material for the purpose of a criminal investigation, but the application to do so must be made under section 9 and Schedule 1, rather than under section 8 of PACE. A Schedule 1 order does not amount to a warrant entitling the police to enter premises by force and search them. Instead, under paragraph 4 of Schedule 1, the court may make an order directed to the person in possession of the material either requiring him/her to produce it to a police officer for him to take away or, alternatively requiring him/her to allow the police officer to inspect the material.

16. The first important difference between a section 8 application for a warrant and a Schedule 1 application for a special procedure order is that a Schedule 1 application must be made to a circuit judge: a magistrate has no power to grant access to special procedure material. This is indicative of the greater degree of protection afforded to this type of material by the Act.

17. Secondly, the conditions precedent for the grant of access to special procedure material are different from the condition precedent under section 8 of PACE. Under Schedule 1 of the Act, the judge is empowered to make an order for access to the material if one of two alternative sets of conditions is fulfilled. The more important and more commonly used of the alternative sets of conditions is the first, which is contained in paragraph 2 of Schedule 1.

18. The conditions contained in paragraph 2 broadly equate to the conditions set out in section (a) to (e) of section 8(1) the Act, but with one important addition. In addition to the judge being satisfied that there are reasonable grounds for believing that an indictable offence has been committed, and that the material sought is likely to be of substantial value to the investigation etc, there is a requirement that:

> it is in the public interest having regard-
> (i) to the benefit likely to accrue to the investigation if the material is obtained; and
> (ii) to the circumstances under which the person in possession of the material holds it,
> that the material should be produced or that access to it should be given.

19. This additional requirement under Schedule 1 marks a significant difference between it and section 8 of the Act. It imposes upon the judge a duty to carry out a balancing exercise between two competing public interests: the public interest in favour of upholding the private nature of confidentially held material on the one hand; the public interest in favour of investigating crime on the other. Only if the public interest in favour of investigating crime outweighs the public interest in favour of confidentiality is the judge

empowered to order access. It may well be that in relation to information such as national insurance numbers, where the pubic interest in confidentiality is itself primarily an interest in preventing crime (specifically identity fraud), the scales will relatively easily come down in favour of disclosure to the police. With other types of information the scales may be more difficult to tip. Nevertheless, regardless of the specific type of material involved, this balancing exercise is a matter to which the judge is obliged to turn his mind in deciding whether to grant the application in relation to any special procedure material.

20. One further difference between the operation of 8(1) and the operation of Schedule 1 is to be found in paragraph 7 of the Schedule. A section 8 warrant may be granted where the police cannot communicate with the person who is able to grant access to the premises, where access to the premises has been denied, or where the purpose of the search may be frustrated or seriously prejudiced unless police are able to gain access to the premises immediately after arriving there. Section 8 applications are, therefore, routinely made ex parte, so as not to prejudice the efficacy of the subsequent search. There is no equivalent "element of surprise" provision under Schedule 1 of the Act. If police wish to obtain access to special procedure material, notice of their application must be served in advance upon the intended recipient, who will then have a right to make representations on the matter. If an order granting access to the material is in due course made, the recipient will be granted at least seven days in which to comply.

Mandatory Nature of Schedule 1

21. I have been asked to make clear whether the procedure set out in Schedule 1 of PACE is mandatory in circumstances where the police believe that the premises to be searched are likely to contain special procedure material. For most practical purposes, Schedule 1 will be mandatory in these circumstances. However, I would point out that section 8 might be available to police in circumstances where the material on the premises which is likely to be of substantial value to the investigation is anticipated to be completely separate

from the material which is likely to be special procedure material. For example, police may be interested in searching business premises in order to seize personal correspondence between an independent financial advisor and his wife in order to further an investigation into a conspiracy to pervert the course of justice. In such a situation, the mere fact that there will be other material in the office, relating to the financial advisor's clients, which is confidential and which falls within the definition of special procedures material, will not, in my view, prevent the police obtaining a search warrant under section 8, provided the warrant is limited to the material which is relevant to the investigation and which, by definition, it not special procedure material.[6] Having said that, in circumstances where the police and/or the magistrate believe that there is the real possibility of overlap between the material which is likely be of value to the investigation and the material which is special procedure material, then Schedule 1 will be mandatory and the magistrate will have no power to issue a warrant under section 8.

22. It follows that, if it can be established that the police were aware that there was a real possibility that material on the premises which was likely to have substantial value to the investigation (and therefore likely to fall within the terms of the section 8 warrant) would include special procedure material, but the police nevertheless sought and obtained a section 8 warrant (presumably failing to inform the magistrate of this possibility), then the execution of the warrant would probably be unlawful. In view of the draconian nature of powers of entry and search, defects in procedure or in the form of a warrant are capable of rendering execution unlawful, even where no bad faith can be established. If bad faith in obtaining the warrant can be established, then it is almost inevitable that the subsequent search will be found to be unlawful. There is a positive duty on police to make full disclosure of all relevant information to the court when applying for a warrant.[7] Failure to mention a fact which itself might invalidate the magistrate's power to issue the warrant at all would constitute good evidence of significant incompetence, if not bad

---

[6] My opinion is this regard is based upon the relationship between section 8(1)(b) and 8(1)(d) of PACE.
[7] R v Acton Crown Court, ex p Layton [1993] Crim.L.R. 458, DC

faith. In these circumstances, the chances of the subsequent execution's being unlawful must be high.

Items Subject to Legal Professional Privilege

23. There is no power under PACE to issue a warrant for search and seizure of items subject to legal professional privilege.

24. If, during the course of any PACE search, the police believe that there is a real possibility that they will encounter privileged material mixed up with non-privileged material, then the police are obliged to take precautions to ensure that the privileged items are not inadvertently read.

25. In such circumstances, the police will often take the precaution of instructing independent counsel, who has played no previous part in the investigation, and who will play no further part in the investigation, to assist them in the search. Counsel's role will be to sift the material, identifying and removing all items subject to legal professional privilege. Counsel will be bound by his/her usual professional duties of confidentiality vis-à-vis the individual who holds the privilege in the material in question. Counsel will be obliged to protect this privilege by refraining from disclosing any privileged material or information to the police.

26. The terms of the Criminal Justice Act 2001 are again relevant here. As discussed above, section 50 of the 2001 Act entitles police to remove from premises items which are not covered by a warrant in order to sift through them and separate that which they are entitled to seize from that which they are not entitled to seize at a later time. This power only arises when it is genuinely impracticable to conduct such an exercise on the premises themselves. The power granted by section 50 includes a power to remove items subject to legal professional privilege for the purpose of this sifting exercise. Section 54 of the same Act imposes a duty to return any items which are subject to privilege as soon as reasonably practicable. However, regardless whether the sifting process occurs at the searched premises or

elsewhere, the same obligation exists on police to take precautions to ensure that the legally privileged material is not inadvertently read. Again, delegation of the sifting task to independent counsel is an established method of exercising caution.

Effect of Defects; Effect of Bad Faith

27. As set out in paragraph 22 above in relation to special procedure material, generally speaking, defects in the procedure used to obtain a warrant and defects in the form of a warrant itself are capable of leading to the warrant's being invalid and to any subsequent execution of the warrant being unlawful. This is especially so when it can be shown that a police officer made a materially false statement when applying for the warrant: unless the misstatement was made in good faith and would not have affected the decision to issue the warrant one way or another, the misstatement would stand a good chance of invalidating the warrant. Where actual bad faith can be shown, that is, where it can be shown that the reason the police officer made a positive misstatement, or omitted to mention a relevant fact, was in order to circumvent the law and obtain a warrant which might not otherwise be granted, then it almost inevitably follows that the warrant will be invalid and subsequent execution of the warrant unlawful. In circumstances where the misstatement or material non-disclosure was connected to the protection which is afforded to material subject to legal professional privilege, then the likelihood of the execution's being unlawful is increased even further. The English courts are especially vigilant in protecting legal professional privilege in view of the special status of the privilege as a corner stone of the legal system itself.

28. If I can be of any further assistance in this matter, please do not hesitate to contact me.

Clare Sibson                                                                9 March 2006

Hollis Whiteman Chambers
Queen Elizabeth Building
Temple
London
EC4Y 9BS