Approved: /s/ Marc Litt
MARC LITT
Assistant United States Attorney

05 MAG   939

Before:   HONORABLE FRANK MAAS
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :    SEALED
                                  :    COMPLAINT
         -v-                      :
                                  :    Violations of
                                  :    18 U.S.C. §§ 1343 and 2
GARY ALAN TANAKA,                 :
                                  :    COUNTY OF OFFENSE:
         Defendant.               :    NEW YORK
                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   CYNTHIA M. FRATERRIGO, being duly sworn, deposes and says that she is a Postal Inspector with the U.S. Postal Inspection Service and charges:

COUNTS ONE THROUGH THREE

   From on or about November 6, 2003, through on or about April 13, 2005, in the Southern District of New York and elsewhere, GARY ALAN TANAKA, the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, representations and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice; to wit, on or about the dates set forth below, TANAKA caused wire transfer instructions and funds to be sent by means of facsimile transmissions, wire, and radio communications in interstate and foreign commerce as described below as part of a scheme to convert investor funds to his own personal use for the purchase of thoroughbred racehorses:

GOVERNMENT EXHIBIT 33 B   S2 05 Cr. 621 (ID)   3501-I

| Count | Date | Description | Horse's Name |
|---|---|---|---|
| ONE | November 6, 2003 | Instruction sent by facsimile from London to New York State, causing $500,000.00 to be wired from New York, New York to Germany | Fruhlingssturm |
| TWO | August 6, 2004 | Instruction sent by facsimile from London through Manhattan, New York, causing $125,000.00 to be sent by wire to Wachovia Bank. | Agata |
| THREE | April 13, 2005 | Instruction sent by facsimile from London through Manhattan, New York, causing $550,000.00 to be sent by wire from Pittsburgh, through New York City, to Switzerland | Don Incauto |

(Title 18, United States Code, Sections 1343 and 2).

The bases for my knowledge and for the foregoing charges are, in part, as follows:

1.  I have participated in the investigation and I am familiar with the facts and circumstances of the charged offenses. Because this affidavit is being submitted for a limited purpose, I have not included details about every aspect of this investigation. Where conversations or statements of others are related herein, they are related in substance and in part.

2.  In the course of my investigation, I have interviewed witnesses, reviewed documents, and spoken with colleagues who have spoken with witnesses and reviewed documents.

2

## Background on the Defendant and the Amerindo Entities

3.  According to Amerindo's website (www.amerindo.com), and a document filed with the Securities and Exchange Commission in or about May 2003, GARY ALAN TANAKA, the defendant, is, along with his Partner (the "Partner") one of the original founders of Amerindo Investment Advisors Inc. ("Amerindo U.S."), a California corporation, and is a shareholder, officer and director of Amerindo U.S. According to an SEC filing dated on or about September 4, 2002, TANAKA and his Partner were then also all of the shareholders, directors and officers of Amerindo Investment Advisors (Cayman) Limited ("Amerindo Cayman"), Amerindo Investment Advisors (U.K.) Limited ("Amerindo U.K."), and Amerindo Investment Advisors (Panama), Inc. ("Amerindo Panama"). (Amerindo U.S., Amerindo Cayman, Amerindo U.K. and Amerindo Panama are hereinafter referred to collectively as "Amerindo.") One or more of the Amerindo entities serves as the investment advisor to Amerindo Technology D – a mutual fund which, according to Morningstar.com, currently has approximately $99 million in assets. According to the Amerindo website, "Since 1980, Amerindo's principals have worked together exclusively in the specialized area of investing in emerging growth companies in technology, health sciences, and biotechnology."

4.  According to investors who have entrusted funds with GARY ALAN TANAKA, the defendant, and Amerindo, documents issued by Amerindo, and a Brokerage Firm used by Amerindo, TANAKA and his Partner in connection with their investment advisory services business, Amerindo also historically has offered investment services for institutional clients and high net worth individuals through hedge funds, "guaranteed fixed rate deposit accounts," and other investment vehicles. According to the Amerindo website (www.amerindo.com), as of May 25, 2005, inquiries concerning private equity investments were directed to Amerindo U.S., located at 399 Park Avenue, 22nd Floor, New York, New York 10022. The Amerindo website provides a list of three private equity professionals including TANAKA ("Co-Founder, Executive VP, Portfolio Manager; Investment Committee Member"). The Amerindo website also describes TANAKA as being a Director-Founder and Principal of Amerindo Investment Advisors Inc. from 1985 to the present, a Principal of Amerindo Advisors (U.K.) Limited from 1988 to the present, and Founder and Portfolio Manager of Amerindo Investment Advisors, Inc. (Panama) from 1986 to the present. Individuals who have known TANAKA for more than a decade have informed me that TANAKA resides in London, where he works for Amerindo as its chief trader.

5.  According to documents obtained from the Securities and Exchange Commission, Amerindo U.S. has been a registered investment adviser since approximately August 1985.

6.  According to a document filed by Amerindo with the SEC on or about July 15, 2004, Amerindo then had approximately $1.2 billion of assets under management.

3

<u>Defendant's Use of Investor Funds To Purchase Thoroughbred Horses</u>

7.  According to published reports, and interviews with two individuals who have known GARY ALAN TANAKA, the defendant, for more than approximately one decade, TANAKA is a major figure in thoroughbred horse racing, owns numerous thoroughbred horses, and races his horses in the United States, and other countries around the world. TANAKA bought his first horse in 1992, and in 2002 his "stable ranked eighth nationally with 155 starts, 19 wins and earnings of $4,107,818."

8.  I have examined certain records of the Brokerage Firm related to accounts held in the names of various Amerindo entities and funds, including: Amerindo Management Inc., Sub A/C M26 ("AMI"); Amerindo Technology Growth Fund Inc. ("ATGF I"); Amerindo Technology Growth Fund II, Inc. ("ATGF II"); and, Techno Raquia, SA (collectively, the "Amerindo Brokerage Accounts"). Each of the Amerindo Brokerage Accounts was established by Amerindo and its principals for the named ~~Panamanian~~ entities, each of which purports to be Panamanian. GARY ALAN TANAKA, the defendant, was authorized to trade securities in each of the Amerindo Brokerage Accounts during the relevant time period.

9.  On or about February 28, 2003, GARY ALAN TANAKA, the defendant signed a document submitted to the Securities and Exchange Commission ("SEC") in which he represented that he had no "direct or indirect record or beneficial interest in any client account managed by Amerindo or any affiliate of Amerindo, other than [his] interest[] in fees payable to Amerindo and of Amerindo and its affiliates and their respective director and/or indirect interest in the registered mutual fund managed by Amerindo, and the same is true of [his] spouse[] and any and all of [his] offspring or other dependents and, to the best of [his] knowledge, any other employee of Amerindo."

10. According to a representative of the Brokerage Firm, on or about May 23, 2005, GARY ALAN TANAKA, the defendant, told that representative, among other things, that the beneficial owners of the AMI Account and the ATGF II Account were identical, and that those common beneficial owners were off-shore Panamanians. Over the course of several conversations with that Brokerage Firm representative concerning the ownership of the AMI and ATGF II Accounts, TANAKA did not state that he was a beneficial owner of either account.

11. On or about May 18, 2005, an Amerindo employee based in London sent an e-mail to the Brokerage Firm which stated, in part, "[the Amerindo Brokerage Accounts] are all part of the same 'larger' account. They are all the same entity, all registered at the same address, all have the same beneficial owner, and at some time or another in the past ten years, funds and stocks have always been free and indeed have been moved from one account to another." On or about May 24, 2005, the same Amerindo employee sent another e-mail to the Brokerage Firm which stated, in part, "[the ATGF II and AMI Accounts] have the same registered address, the same beneficial owner, and have always been treated, and indeed are, part of the same account. . . ."

12.     I have reviewed numerous letters of authorization ("LOAs") maintained by the Brokerage Firm in connection with the activities in the Amerindo Brokerage Accounts between approximately 2001 and the present. The LOAs generally provided instructions to the Brokerage Firm, which is located in New York, New York, to move funds between Amerindo Brokerage Accounts and to effect redemptions by "equity partners" in the Amerindo Brokerage Accounts. The LOAs that I reviewed generally consisted of a form letter that: (a) was printed on the stationery of Amerindo Investment Advisers Inc.; (b) bore business addresses in San Francisco and London; (c) bore the signature of "Gary Tanaka, Vice President"; (d) identified the Amerindo Brokerage Account from which the transfer was to be made; (e) provided specific instructions identifying the financial institution and account number to which the transfer was to be made; (f) included a "reference" line, apparently to further specify the purpose of the transaction; and (g) stated, "This wire transfer represents redemption by the above referenced equity partner."

13.     The LOAs from the Amerindo Brokerage Accounts include dozens of instructions to transfer a total of more than approximately $15 million in funds to a business checking account established in the name of Amerindo . . . (the "Amerindo Business Checking Account"). Those LOAs identify the recipient account holder as "Amerindo Investment Advisors Inc." and the reference line on those LOAs generally reads "London." I have reviewed certain bank records for the Amerindo Business Checking Account. Based on the activity reflected in those account statements, including the descriptions of the wire transfer debits to that account, those records appear to show that the Amerindo Business Checking Account has largely been used for seemingly legitimate business expenses including taxes, payroll, rent, and the like.

14.     The LOAs from the Amerindo Brokerage Accounts also show tens of millions of dollars of redemptions by what appears to be a private trust corporation located in Nassau, Bahamas.

15.     The LOAs also reflect the purchase of several thoroughbred racehorses by GARY ALAN TANAKA, the defendant using client funds in which, as set forth above in ¶¶ 9 and 10, he has disavowed any interest. Specifically:

    a.     An LOA dated on or about June 29, 2001, signed by GARY ALAN TANAKA, the defendant, instructs the Brokerage Firm to wire transfer approximately $993,710.00, from ATGF I to an overseas bank account held by a UK corporation, with a "reference" to "Riddlesdown/V.C./L.Q. That LOA states, "This wire transfer represents a redemption by the above referenced equity partner." According to the internet site www.niallocallaghan.com/winthismeet6.htm, a horse named Riddlesdown, owned by "Gary Tanaka" won a race at Churchill Downs on or about May 11, 2002.

    b.     An LOA dated on or about December 4, 2001, signed by TANAKA, instructs the Brokerage Firm to wire transfer approximately $787,500.00 from ATGF I to the same overseas bank account described in paragraph 15(a), above, with a reference to "Distant Valley." That LOA states, "This wire transfer represents a redemption by the above

referenced equity partner." According to an owner profile included in a publication of the Del Mar Thoroughbred Club for 2003, TANAKA then owned a horse named "Distant Valley." An undated news archive posted at www.thoroughbredtimes.com likewise describes "Gary Tanaka" as the owner of a horse named "Distant Valley" who won a race at Churchill Downs and whose trainer is "Niall O'Callaghan."

            c.       An LOA dated on or about November 6, 2003, signed by TANAKA, instructs the brokerage firm to wire transfer approximately $500,000.00 from ATGF II to a bank account in Germany, with a reference to "Fruhlingssturm." According to information posted on the internet at www.racingpost.co.uk, a horse named "Fruhlingssturm" owned by "Gary A Tanaka" finished first in a July 8, 2004 race in England. According to information posted on the internet at www.racingbetter.co.uk, a horse named "Fruhlingssturm" owned by "Gary Tanaka" is entered in the Vodafone Rose Bowl Heritage Handicap Stakes scheduled for June 3, 2005.

            d.       An LOA dated on or about August 6, 2004, signed by TANAKA, instructs the Brokerage Firm to wire transfer approximately $250,000.00 from ATGF II to a domestic bank account owned by an entity whose name suggests a connection to thoroughbred horses, with a reference to "Agata." That LOA states, "This wire transfer represents an investment by the above referenced equity partner." Another LOA dated on or about August 6, 2004, signed by TANAKA, instructs the brokerage firm to wire transfer approximately $125,000.00 from the AMI Account to the same bank account described in the preceding sentence, with a reference to "Agata." That LOA states, "This wire transfer represents a redemption by the above referenced equity partner." Information found on the website for Santa Anita Park, www.santaanita.com, reveals that a horse named "Agata" owned by "Gary A. Tanaka," was scheduled to run in the ninth race on February 26, 2005. According to results posted at www.drf.com, a horse named "Agata" owned by "Tanaka Gary A." won the third race at Santa Anita Park on Thursday, April 14, 2005.

            e.       Two LOAs dated on or about April 13, 2005, signed by TANAKA, instruct the Brokerage Firm to wire transfer a total of approximately $750,000.00 from the AMI Account to an overseas bank account, with a reference to "Don Incauto." One of those LOAs states, "This wire transfer represents a redemption by the above referenced equity partner." The other LOA states, "This wire transfer represents redemption by the above referenced equity partner." According to information posted on the internet on or about April 13, 2005, at www.thoroughbredtimes.com, "Owner Gary Tanaka has purchased multiple Group 1 winner Don Incauto to race in the United States under the care of Southern California-based trainer Darrell Vienna. . . . Don Incauto, who won two Group 1 races in his native Argentina earlier this year, is scheduled to ship to the United States on May 18 Vienna said." A representative of the Brokerage Firm informed me that the funds used to effect the wire transfers described in this subparagraph were derived from trades in stock options that were originally conducted in ATGF II in or about February, 2005, and which were subsequently canceled and re-booked in the AMI Account at the request of Amerindo approximately six weeks later, and which yielded a net profit of approximately $1.27 million in or about March, 2005.

WHEREFORE, deponent prays that a warrant be issued for the arrest of the above-named individual and that he be arrested and imprisoned, or bailed, as the case may be.

_____
CYNTHIA M. FRATERRIGO
UNITED STATES POSTAL INSPECTOR
U.S. POSTAL INSPECTION SERVICE


Sworn to before me this 25th day of May, 2005

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK