UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **DECLARATION** |
| -v.- | : | S2 05 Cr. 621 (KMK) |
| ALBERTO WILLIAM VILAR, a/k/a, "Albert Vilar," and GARY ALAN TANAKA, | : : | |
| Defendants. | : | |

------------------------------------------------------------x

MARC LITT, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1. I am an Assistant United States Attorney in the Office of Michael J. Garcia, United States Attorney for the Southern District of New York, attorney for the United States of America. I was the Assistant United States Attorney responsible for this matter during the time period relevant to defendants' motion to quash a grand jury subpoena served on Amerindo Investment Advisors Inc. ("Amerindo U.S.") on or about May 26, 2005 (the "Subpoena"). This declaration is submitted in support of the Government's opposition to the defendants' motion.

2. The contents of this declaration are based on my recollections of the events described herein. The recollections of Eugene Licker, Esq., outside counsel for Amerindo U.S., which are reported in paragraph 10, *infra*, are based on conversations that I had with Mr. Licker on or about December 15, 2005, and February 8 and 9, 2006.

3. On May 26, 2005, a group of U.S. Postal Inspectors executed a search warrant at the Amerindo U.S. office on the 22nd floor of 399 Park Avenue, New York, New York. At some point that morning, I received a telephone call from either Inspector John Feiter or Inspector Cynthia Fraterrigo in which I learned that Eugene Licker, Esq. was Amerindo U.S.'s

outside counsel, that he was present at the scene of the search, and that he wanted to speak with me. In a subsequent telephone conversation with Mr. Licker, he informed me that he would accept a grand jury subpoena on behalf of Amerindo U.S. He also told me that Amerindo U.S. wanted to cooperate with the Government in its investigation. Mr. Licker promised to implement policies and procedures that would prevent the company's documents from being destroyed.

    4.    Early that afternoon, I faxed the Subpoena to Amerindo Investment Advisors Inc. care of Mr. Licker at his office at the law firm of Kirkpatrick & Lockhart Nicholson Graham LLP. According to the fax stamp on the copy of the Subpoena attached as an exhibit to defendants' motion, the subpoena was received at approximately 1:37 p.m.

    5.    I spoke with Mr. Licker on at least two further occasions on May 26, 2005 concerning numerous subjects including the Subpoena. During one such telephone call, Mr. Licker informed me that the Postal Inspectors had not yet completed their search, and that it would take a significant amount of time for them to do so. He reiterated his promise to ensure that no documents or other evidence would be destroyed, and informed me that the Government's interests were protected by the Subpoena. He stated, in substance, that collecting any additional documents through the grand jury subpoena process would be in everyone's best interest. I recall that Mr. Licker made three points in that regard: first, he, the Amerindo employees and the U.S. Postal Inspectors (all of whom had experienced a long and stressful day) would be able to go home; second, it would be less disruptive to the company; and third, the Government would be able to get more efficiently "what it really wanted" through the company's cooperation with the grand jury subpoena process. Based on Mr. Licker's representations about document preservation, and cooperation, including compliance with the Subpoena, I agreed to

inform the search team that it could terminate its search because the company had agreed to get the Government the documents it was seeking through the grand jury subpoena process. I did so in the evening hours of May 26, 2005.

6. The Government initially agreed to postpone Amerindo's compliance with the Subpoena so that Mr. Licker and certain Amerindo employees could assist the Government in other ways with its investigation. In or about July or August, in response to my inquiries, Mr. Licker informed me that associates at his firm and Amerindo employees were reviewing documents to find materials responsive to the Subpoena. Mr. Licker informed me that it was a large task that would take weeks to complete. In September, I asked Mr. Licker when Amerindo U.S. would be in a position to produce documents responsive to the Subpoena. He informed me that they had completed the review of some portion of Amerindo's documents, and that they were arranging to have those responsive documents copied and/or imaged. Mr. Licker expected to begin producing the documents to the Government on a rolling basis in a matter of weeks.

7. In or about mid-October, after Mr. Licker and his associates had completed the first steps of privilege review of documents seized from Amerindo U.S. on behalf of the company and the defendants, I again asked Mr. Licker when the company would be producing documents in response to the Subpoena. Mr. Licker informed me that he had documents ready to be produced, but mentioned that he felt that he had to consult with the defendants prior to producing the documents. In early November, in response to a request for the responsive documents, Mr. Licker informed me that he was still awaiting instructions from the defendants.

8. In the dozens of conversations that I have had with Mr. Licker since May 26, 2005, Mr. Licker never indicated to me that the Subpoena was overbroad or unduly burdensome,

3

and never sought to narrow its terms or discuss the meaning of any of the descriptions of the documents sought by the grand jury. In nearly every conversation I have had with Mr. Licker, he has pledged the cooperation of Amerindo U.S. with the Government's investigation. At no time has Mr. Licker indicated that Amerindo U.S. would not comply with the Subpoena.

9. The first time that the Government was made aware that there was any issue with respect to the Subpoena was on December 14, 2005, at the start of the hearing on defendants' motions to suppress, when Mr. Vilar's counsel indicated that Mr. Vilar would be moving to quash the Subpoena.

10. On or about December 15, 2005 and again on or about February 8 and February 9, 2006, I had telephone conversations with Mr. Licker in which he informed me, in substance, that beginning within one week after the arrests of the defendants, he had conversations with defendants' counsel during which he informed them of the existence of the Subpoena and the fact that he was cooperating with the Government on behalf of Amerindo U.S. Specifically, according to Mr. Licker, during the first week following the defendants' arrests, Mr. Licker told both Susan Necheles, Esq. and Vic Rocco, Esq. (or his partner, Kevin Toner, Esq.), who were at the time acting as defense counsel for Mr. Vilar and Mr. Tanaka, respectively, about the Subpoena and the fact that Amerindo U.S. was cooperating with the Government. Mr. Licker also recalled having telephone conversations with current counsel for Mr. Tanaka, Glenn C. Colton, Esq., and Steven G. Kobre, Esq., in June and July 2005, and communicating the same information to them during one or more of those telephone calls. Finally, Mr. Licker recalled conveying the same information to Jeffrey C. Hoffman, Esq., although he could not recall when that conversation occurred.

I declare, under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:   February 10, 2006
         New York, New York

                                              _____
                                              Marc Litt
                                              Assistant United States Attorney
                                              (212) 637-2295