**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW YORK**

-----------------------------------------------------------x

**UNITED STATES OF AMERICA,**                    :

       **-against-**                                      :          **O5 Cr. 621 (KMK)**

**ALBERTO WILLIAM VILAR and**                :
**GARY ALAN TANAKA,**

                                 :

             **Defendants.**

-----------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT ALBERTO WILLIAM VILAR'S**
**APPLICATION FOR SUPPRESSION OF THE**
**DERIVATIVE FRUITS OF AN UNLAWFUL SEARCH**
**AND SEIZURE AND FOR RELATED RELIEF**


IVAN S. FISHER
251 East 61st Street
New York, New York 10065
(212) 486-0001
*Attorney for Defendant*
*Alberto William Vilar*

Of Counsel:

WILLIAM J. DAVIS (WD0362)
Scheichet & Davis, P.C.
767 Third Avenue - 24th Floor
New York, New York 10017
(212) 688-3200

# TABLE OF CONTENTS

*Page*

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    1.    The Prior Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    2.    The Government's Access to and Opportunity to Exploit the Unlawfully Seized Materials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT

    POINT ONE

    BECAUSE EVIDENCE DERIVED FROM THE ITEMS THAT WERE ILLEGALLY SEIZED PURSUANT TO INVALID PORTIONS OF THE SEARCH WARRANT MUST BE SUPPRESSED, THIS COURT SHOULD DIRECT THE GOVERNMENT TO DISCLOSE INFORMATION CONCERNING ITS UTILIZATION OF THE SEIZED EVIDENCE TO OBTAIN ADDITIONAL PHYSICAL AND TESTIMONIAL EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.    The Law: Unless the Government Can Satisfy its Burden of Establishing Dissipation of the Taint Arising Out of the Constitutional Violation, Any Evidence Derived from the Unlawful Seizure is Inadmissible . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1.    Testimony Derived From an Unlawful Search . . . . . . . . . . . . . . . 10

        2.    Physical Evidence Derived From an Unlawful Search . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    B.    Pursuant to *Brady v. Maryland*, the Government Should Be Directed to Disclose Information Concerning Any Use of the Unlawfully Seized Documents in Connection with the Acquisition of Additional Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Page*

POINT TWO

THE DETERMINATION WHETHER, AND TO WHAT EXTENT,
EVIDENCE SHOULD BE SUPPRESSED BECAUSE IT IS TAINTED BY
THE UNLAWFUL SEIZURE SHOULD BE MADE BEFORE TRIAL . . . . . . . 25

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

**Cases**                                                              *Page*

*Alderman v. United States*, 394 U.S. 165 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . 10, 20-24

*Brady v. Maryland*, 373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 23-24

*Brown v. Illinois*, 422 U.S. 590 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

*Giles v. Maryland*, 386 U.S. 66 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Mosby v. Senkowski*, 470 F.3d 515 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Murray v. United States*, 487 U.S. 533 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Nardone v. United States*, 308 U.S. 338 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . 9-10, 11

*Nix v. Williams,* 467 U.S. 431 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920) . . . . . . . . . . . . . . 8-9, 10

*Smith v. Black*, 904 F.2d 950 (5th Cir.1990),
    vacated on other grounds, 503 U.S. 930 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*State ex rel. Rasmussen v. Tahash*, 272 Minn. 539, 141N.W.2d 3, 13-15 (1965) . . 19, n.2

*United States v. Bagley*, 473 U.S. 667 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Barton*, 995 F.2d 931 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Birrell*, 269 F.Supp. 716 (S.D.N.Y. 1967) . . . . . . . . . . . . . . . . . . 25, n.5

*United States v. Ceccolini*, 435 U.S. 268 (1978) . . . . . . . . . . . . . . . . . . 10-12, 13, 15, 16

*United States v. Eng,* 997 F.2d 987 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. George*, 975 F.2d 72 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cases*                                                                    *Page*

*United States v. Karathanos*, 531 F.2d 26 (2d Cir.),
  *cert. denied*, 428 U.S. 910 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Leon*, 468 U.S. 897 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

*United States v. Leonardi*, 623 F.2d 746 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. O'Brien*, __ F.Supp.2d.__ , 2007 WL 2241817
  (W.D.N.Y. August 1, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Oguns*, 921 F.2d 442 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Ramirez-Sandoval*, 872 F.2d 1392 (9th Cir. 1989) . . . . . . . . . . . . . . . 16

*United States v. Roberts*, 656 F.Supp. 929 (S.D.N.Y. 1987) . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Tane*, 329 F.2d 848 (2d Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wong Sun v. United States*, 371 U.S. 471 (1963) . . . . . . . . . . . . . . . . . . . . . 8, 10, 11, 24

**Rules**

Federal Rules of Criminal Procedure, Rule 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25-27

*Other Authorities*

Advisory Committee Notes to 1974 Amendments to Rule 12 . . . . . . . . . . . . . . . . . 19, n.2

Advisory Committee Notes to 1975 Amendments to Rule 12 . . . . . . . . . . . . . . . . . . . 26

Advisory Committee Notes to 1983 Amendments to Rule 12 . . . . . . . . . . . . . . . . . . . 26

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW YORK**
-----------------------------------------------------------x

UNITED STATES OF AMERICA,                    :

        -against-                         :          O5 Cr. 621 (KMK)

**ALBERTO WILLIAM VILAR and**                :
**GARY ALAN TANAKA,**

                                :

            **Defendants.**

-----------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT ALBERTO WILLIAM VILAR'S**
**APPLICATION FOR SUPPRESSION OF THE**
**DERIVATIVE FRUITS OF AN UNLAWFUL SEARCH**
**AND SEIZURE AND FOR RELATED RELIEF**


## INTRODUCTION

This memorandum is respectfully submitted in support of defendant Alberto

William Vilar's application for relief related to his motion to suppress all fruits derived

from the government's unlawful seizure of a vast quantity of documents and other

materials, including computer records, from the offices of Amerindo Investment

Advisors, Inc. ("Amerindo U.S.") at 399 Park Avenue, 22nd Floor over the course of

approximately 12 hours on May 26, 2005.

As we will show, in view of this Court's prior determination that a substantial

portion of the materials seized during the government's search of those premises were

obtained pursuant to invalid portions of a search warrant (the "Warrant"), this Court

should suppress not only the materials that were seized in reliance on the invalid portions

of the Warrant, but also the evidence that was derived from the government's use and

exploitation of the unlawfully seized materials.

In order to ensure meaningful fact-finding and adjudication of this issue, we urge

this Court to direct the government to provide substantial disclosure concerning its use of

the seized material to obtain subsequent physical and testimonial evidence that it intends

to offer at trial.  We believe that such disclosure is not only necessary to safeguard Vilar's

constitutional rights, but that it will serve the interest of this Court by enabling the parties,

in advance, to define and narrow the contours of what could otherwise be an extremely

cumbersome taint hearing.  The present indictment alleges fraud with regard to only two

investment products – the SBIC Venture Fund LP and the Guaranteed Fixed Rate Deposit

Account Program – and documents related to those allegations have not been suppressed.

Thus, while there are specific areas as to which substantial questions of taint will be

presented, we anticipate that few, if any, taint issues will be presented in connection with

the bulk of the evidence relevant to the charges in the indictment; on the contrary, it is

likely that the majority of such evidence will either consist of or be derived from evidence

that this Court did not suppress.

Thus, with the government's cooperation, we believe it will be possible, prior to a

hearing, for the defense to determine that much of the government's trial evidence need

not be challenged in connection with the taint inquiry. Given that it is now more than two

years since the superseding indictment was filed, the government is surely in a position to

identify the evidence it intends to offer at trial. If the government does so (as

contemplated by Fed. R. Crim. Pro. 12(b)(4), *see* p. 18-19, n. 2, *infra*), it will make it

possible for the defense, notwithstanding the daunting amount of documents seized in this

case, to limit the focus of the taint inquiry to manageable proportions.

Our primary concern is that unlawfully seized materials may have been utilized to

identify and locate witnesses about whom the government had no prior or independent

knowledge. That concern is heightened by our recognition that, while Amerindo's

customers earned millions of dollars from their investments during the 1990's, they

suffered sizeable losses following the subsequent collapse of the dot.com market, which,

unsurprisingly, prompted a number of investors to voice complaints that are included

among the suppressed documents. To the extent that the government may seek to call

such disgruntled investors as trial witnesses (either with regard to its case-in-chief, or in

support of allegations offered pursuant to Rule 404(b)), we will ask this Court to

determine whether unlawfully seized correspondence, trading records, or other documents

enabled the government to locate those witnesses and obtain their testimony.[1] We are

also concerned that suppressed materials – including documents relating to allegedly

---

[1]The Amerindo Brokerage accounts that were not suppressed under this Court's Order would not
be included in the taint inquiry.

fraudulent conduct that is not charged in the indictment – may have been utilized to induce former employees of Amerindo to testify as government witnesses.

Because suppressed materials may have played a role in securing and/or developing the testimony of many of the witnesses that will be called by the government, Point One of this memorandum discusses the legal standard applicable to determining whether such testimony must be suppressed because it is tainted by a Fourth Amendment violation. That Point also sets forth in detail the pre-hearing disclosure that, as discussed above, we believe is necessary both to permit meaningful litigation of the taint issue and to substantially streamline the hearing and the issues this Court will be called upon to decide. Additionally, as shown in Point Two, this Court's determination of the extent to which the government's evidence is tainted by the unlawful seizure should be made prior to trial.

## STATEMENT OF FACTS

### 1.    The Prior Proceedings

Vilar previously challenged, *inter alia*, the legality of the government's search of the Amerindo USA offices. On the day before the search, United States Magistrate Frank Maas signed the Warrant, which had been prepared by the government and supported by an affidavit of the government's case agent, United States Postal Inspector Cynthia Fraterrigo. Beginning at 8:15 am on May 26, 2005, and continuing until after 8:00 pm that evening, a team of federal agents performed a massive search of the five-room

business premises of Amerindo U.S. that resulted in the seizure and inventory of 170 cartons of materials.

In an Opinion and Order issued on April 4, 2007, *United States v.Vilar*, available at 2007 WL 1075041, this Court held that "[t]he search ultimately authorized by the warrant . . . was more extensive than what was supported by the warrant application." *Id*. at *20. This Court found that the Warrant was overbroad in three respects: (1) because it failed to restrict the scope of authorized seizures to documents relating to the specific funds, accounts, and individuals as to which the Warrant application established probable cause based on an alleged connection to fraudulent activities; (2) because it authorized seizure of documents related to a number of investments as to which the affidavit failed to establish probable cause to believe they would contain evidence of wrongdoing; and (3) because the Warrant did not restrict the search to documents relating to the time period covered by the showing of probable cause, but permitted the seizure of documents that could have preceded the initiation of the alleged fraud by more than a decade. *Id*.

This Court also concluded that the Warrant was defective because it was insufficiently particularized, as required by the Fourth Amendment. *Id*. at *21-23, citing, e.g., *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992), and *United States v. Roberts*, 656 F.Supp. 929, 935 (S.D.N.Y. 1987). As this Court found, the Warrant was deficient both because it failed to alert the officers executing the Warrant to the particular crimes that were the subject of the investigation and because it contained a "catch-all"

provision that permitted unrestricted seizure of "all '[c]orporate records' concerning any of the Amerindo entities . . . ." This Court determined that, because of its "patent lack of particularity," this provision "left unacceptably broad discretion to the officers executing the search" and authorized a "'general exploratory rummaging in a person's belongings.'" *Id*. at *23, quoting *Roberts*, 656 F.Supp.2d at 935.

This Court rejected the government's argument that the evidence seized pursuant to the Constitutionally deficient provisions of the Warrant should be admitted pursuant to the "good faith" doctrine announced in *United States v. Leon*, 468 U.S. 897 (1984), 2007 WL 1075041, at *23-24. It accepted, however, the government's contention that the Constitutionally defective portions of the Warrant could be severed from the portions that were valid. *Id*. at *31-32. Consequently, this Court held that paragraphs 2, 7, 8, and 16B were valid in their entirety, and that portions of paragraphs 1, 5, 6, 9, 10, 11, and 16A were valid. *Id*. at *32. Apart from the items seized pursuant to the severed portions of the Warrant, this Court ruled that all other items seized pursuant to the Warrant must be suppressed. *Id*. at *34.

### 2. The Government's Access to and Opportunity to Exploit the Unlawfully Seized Materials

As the hearing conducted by this Court in connection with the suppression motion made clear, the investigation of the Amerindo entities and the defendants has been conducted by a large team of government investigators and prosecutors. For nearly two years, from May 26, 2005, until April 4, 2007, these agents and prosecutors had

6

unfettered access to the enormous quantity of materials that, pursuant to this Court's order, have now been suppressed. As this Court's Opinion noted, the unlawfully seized materials contained documents that, notwithstanding the government's failure to demonstrate sufficient probable cause to support their seizure, "may be relevant to the investigation." *Id*. at 33. Under these circumstances, it is reasonable to infer that, in developing its case against the defendants, the government has actively followed leads derived from the unlawfully seized evidence and has secured additional evidence, in the form of physical exhibits and information as well as testimony of witnesses, through exploitation of the illegally seized materials.

# ARGUMENT

## POINT ONE

**BECAUSE EVIDENCE DERIVED FROM THE ITEMS THAT WERE ILLEGALLY SEIZED PURSUANT TO INVALID PORTIONS OF THE SEARCH WARRANT MUST BE SUPPRESSED, THIS COURT SHOULD DIRECT THE GOVERNMENT TO DISCLOSE INFORMATION CONCERNING ITS UTILIZATION OF THE SEIZED EVIDENCE TO OBTAIN ADDITIONAL PHYSICAL AND TESTIMONIAL EVIDENCE**

A.   **The Law: Unless the Government Can Satisfy its Burden of Establishing Dissipation of the Taint Arising Out of the Constitutional Violation, Any Evidence Derived from the Unlawful Seizure is Inadmissible**

Under longstanding principles of Fourth Amendment jurisprudence, evidence derived from a Constitutional violation must be suppressed as the "fruit of the poisonous tree," unless the taint of the constitutional violation has been "dissipated." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). The "taint" doctrine originated in *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920), in which, following a district court's determination that documents had been unlawfully seized from the Silverthornes, federal prosecutors obtained grand jury subpoenas requiring the Silverthornes to produce the very same documents. Writing for the Court, Justice Holmes invalidated the subpoenas, explaining that:

> The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not

8

> be used at all. Of course this does not mean that the facts thus
> obtained become sacred and inaccessible. If knowledge of
> them is gained from an independent source they may be
> proved like any others, but the knowledge gained by the
> Government's own wrong cannot be used by it in the way
> proposed.

*Id*. at 392.

Expanding upon that decision, Justice Frankfurter, in *Nardone v. United States*,

308 U.S. 338 (1939), wrote that:

> [t]o forbid the direct use of methods [that are unlawful] . . .
> but to put no curb on their full indirect use would only invite
> the very methods deemed "inconsistent with ethical standards
> and destructive of personal liberty."

*Id*. at 340, quoting the Court's earlier opinion in *Nardone v. United States*, 302 U.S. 379,

384 (1937).  *Nardone* thus recognized the need to permit the defense to make inquiry into

the government's use of illegally-gathered evidence.  At the same time, it recognized that

the government should be given an opportunity to demonstrate "attenuation" between

later-obtained evidence and the primary illegality:

> Sophisticated argument may prove a causal connection
> between information obtained through illicit wire-tapping and
> the Government's proof. As a matter of good sense, however,
> such connection may have become so attenuated as to
> dissipate the taint.

*Id.* at 341.

Addressing the practical approach by which a court should determine whether

evidence derived from an illegal seizure can nonetheless be admitted, *Nardone* held that,

9

once a defendant makes a preliminary showing that evidence to be used against him was a "fruit of the poisonous tree," the government bears the burden of "convinc[ing] the trial court that its proof had an independent origin." *Id.  See also Alderman v. United States*, 394 U.S. 165, 183 (1969)(once the defendant goes forward with evidence demonstrating taint, the government "has the ultimate burden of persuasion to show that its evidence is untainted"); *United States v. O'Brien*, __ F.Supp.2d. __, 2007 WL 2241817, *15 (W.D.N.Y. August 1, 2007) ("The government must prove dissipation [of the taint] by a preponderance of the evidence").  The question before this Court is "'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun*, 371 U.S. at 488, quoting J. Maguire, Evidence of Guilt, 221 (1959). To dissipate the taint of the primary illegality, the government must show either that the subsequently-acquired evidence was derived from an "independent source," *Silverthorne*, 251 U.S. at 392, that it would have been "inevitably discovered," *Nix v. Williams*, 467 U.S. 431 (1984), or that the taint has been sufficiently "attenuated," *Nardone*, 302 U.S. at 341.

### 1.    Testimony Derived From an Unlawful Search

In *United States v. Ceccolini*, 435 U.S. 268 (1978), which applied the "attenuation" doctrine to a witness's testimony, the Court accepted the government's argument that the particular evidence in that case – a store owner's testimony that the

10

witness's employee took policy bets at the witness's flower shop – was sufficiently

attenuated from a police officer's unlawful seizure of an envelope containing money,

about which the officer (without mentioning the contents of the envelope that he had

unlawfully opened) had questioned the owner during a visit to that shop. Significantly,

however, the Court rejected the government's broad argument that the "taint" analysis

contemplated under *Wong Sun* and *Nardone* should not be applied to a witness's

testimony. Instead, it prescribed a multifaceted test for analyzing whether a witness's

testimony was sufficiently "attenuated" to be admissible, and it carefully limited its

holding to "a case such as this, where . . . unlike *Wong Sun* the witness was not a putative

defendant." *Id*. at 275.

    *Ceccolini* focused on the following factors: (1) the length of time between the

illegality and the witness's decision to testify; (2) whether the witness's identity had been

known before the illegal search; (3) whether the witness had "come forward and offer[ed]

evidence entirely of [his] own volition"; (4) whether "the illegality which led to the

discovery of the witness . . . play[ed] any meaningful part in the witness' willingness to

testify," including whether illegally-obtained evidence was used in his questioning; and

(5) the extent to which exclusion would serve the purposes of the exclusionary rule. *Id*. at

275-76. In upholding the admissibility of the store owner's testimony in *Ceccolini*, the

Court noted that the witness was not accused of criminal activity, and had told the police

that she was "studying police science in college and would be willing to help." *Id*. at 272.

The Court emphasized that the witness's decision to testify "was an act of . . . free will *in no way* coerced or even induced by official authority." *Id*. at 279 (emphasis supplied). The evidence discovered during the police officer's brief, spontaneous search of the envelope at the flower shop was not "used in questioning" the witness. *Id*. A substantial period of time elapsed between the search and the initial contact with the witness, and the latter's identity and relationship to the defendant had been "well known" to investigators prior to the search. *Id*. Finally, there was not "the slightest evidence to suggest" that the investigator who improperly searched the envelope had been looking for "tangible evidence bearing on an illicit gambling operation" or to identify a witness; thus, "application of the exclusionary rule in this situation could not have the slightest deterrent effect . . ." *Id*. at 279-80.

The principles discussed in *Ceccolini* continue to govern the determination whether evidence acquired following a Fourth Amendment violation is sufficiently "attenuated" to be deemed admissible. As the Second Circuit Court of Appeals recently observed:

> The attenuation doctrine allows introduction of evidence obtained after an unlawful arrest when "the causal link" between a Fourth Amendment violation and a subsequent confession, identification, or other form of evidence is "so long or tortuous that suppression of the evidence is unlikely to have the effect of deterring future violations of the same type." [citation omitted]

*Mosby v. Senkowski*, 470 F.3d 515, 521 (2d Cir. 2006). Applying *Ceccolini*, as well as

*Brown v. Illinois*, 422 U.S. 590 (1975), and the leading New York case on attenuation, the

Court found no such "causal link"in *Mosby* , a state habeas corpus case in which the

defendant had been arrested in his home, without a warrant, for a sale of crack cocaine to

a police informant and, while in a police car, a neighbor happened to pass by and identify

him as "Florida," the name of a person who had reportedly committed a double homicide

five days earlier. Assuming the illegality of the warrantless arrest, the Court held that it

was sufficiently attenuated from a later confession to the homicides in view of the facts

that (1) the police did not begin questioning Mosby until five hours after his arrest; (2)

Mosby had received *Miranda warnings*; (3) the police questioning about the homicides

was not prompted by the illegal arrest, but by the entirely coincidental discovery of

Mosby's possible connection to the homicides, which were entirely unrelated to the

reason for his arrest; and (4) because suppression of his statement would not be likely to

deter future police misconduct in view of the fact that the police "could not have foreseen

the fortuitous chain of events that connected Mosby to the homicides," which they were

not even investigating at the time of his arrest. *Id*. at 522-23.

Prior to *Ceccolini*, the Second Circuit Court of Appeals had held that the testimony

of a witness whose identity had been learned through an illegal wiretap was inadmissible

in view of the fact that the witness had been "unwilling to testify or even admit to making

any unlawful payments until possession of the wiretap [incriminating him] was revealed

by the Assistant District Attorney." *United States v. Tane*, 329 F.2d 848, 853 (2d Cir.

1964). The Court rejected the government's argument that the witness's decision to

testify was "an intervening voluntary act," observing instead that "[t]he road from the tap

to the testimony may be long, but it is straight." *Id*.

Similarly, in *United States v. Karathanos*, 531 F.2d 26 (2d Cir.), *cert. denied*, 428

U.S. 910 (1976), the Court upheld suppression of the trial testimony of illegal aliens who

had been identified and arrested during the search of the defendant's restaurant.

Rejecting the government's contention that the decision to testify had been "voluntary,"

the Court reasoned that:

> In the present case, there is a close connection between
> the initial illegal search and the testimony which the
> government seeks to use at trial. The purpose of the search, as
> described in the application for the warrant, was to seize the
> illegal aliens; it is these same aliens who are now the
> government's prospective witnesses. Once the aliens were
> arrested, the INS agents had obtained considerable leverage
> over them, since it was within the government's discretion to
> prosecute and deport them, or to allow them to leave the
> United States voluntarily. *See* 8 U.S.C.§ 1252(b). If deported,
> the aliens would be permanently ineligible to receive visas to
> re-enter the country, see 8 U.S.C. § 1182(a)(17), while
> voluntary departure at one's own expense carries no similar
> penalty of permanent exclusion. The government concedes
> that the aliens' testimony was prompted by the use of this
> leverage; their agreement to testify came only after a promise
> to allow them to voluntarily depart without prosecution. In
> these circumstances, we think their decisions to testify cannot
> accurately be characterized as intervening 'act(s) of free will'
> of sufficient independence 'to purge the primary taint of the
> unlawful invasion.' *Wong Sun v. United States*, *supra*, 371
> U.S. at 486, 83 S.Ct. at 417. The testimony is the not

14

> unpredictable result of the influence which the government possessed over the aliens once they had been arrested during the initial illegal search, and if such reasonably foreseeable fruits of the search were deemed admissible, it might help induce similar future searches without probable cause in the hope that they would uncover aliens who could be similarly prompted to testify.

*Id*. at 35.

Notably, following the Supreme Court's decision in *Ceccolini*, the Second Circuit did not question or disavow its earlier holdings in *Tane* and *Karathanos*. On the contrary, in *United States v. Leonardi*, 623 F.2d 746, 751 (2d Cir. 1980), the Court cited those cases for the proposition that the exclusionary rule applies to "the testimony of witnesses whose identities and knowledge of the matters under investigation are revealed as a result of the illicit intrusion of law enforcement authorities." The Court ruled that testimony of an accomplice-witness whose personal effects had been found during an illegal search of the defendant's property was admissible *only* because the witness's cooperation was "truly the product of that individual's free will, *unaffected by the illicit search*." *Id*. at 752 (emphasis supplied). The Court based that conclusion on findings that the witness's "existence, identity and potential value as a witness were established prior to the [illegal] seizure," he already had been fully inculpated by another witness in the bank robberies at issue, and an arrest warrant was outstanding, he had been caught in an additional robbery while in possession of a gun used in the earlier bank robberies; and the illegally-obtained evidence at most tended to corroborate the independent information establishing his

involvement in the crimes. *Id*. at 752-53.  *See also United States v. Ramirez-Sandoval*,

872 F.2d 1392, 1398, n.6 (9ᵗʰ Cir. 1989)(even where government officials did not overtly

exert leverage based on illegally-seized evidence to convince a co-defendant/witness to

cooperate, the witness may have been affected by "subtle pressure" and, consistent with

*Ceccolini*, "[s]uch testimony is unlikely to be the 'act of . . . free will in no way coerced

or even induced by official authority'" [citing *Karathanos*, 531 F.2d at 35]).

### 2.    Physical Evidence Derived From an Unlawful Search

The cases discussed above, where the evidence that is the subject of the taint

inquiry is a witness's testimony, impose a lower burden on the government than cases

involving physical evidence that is derived from items seized pursuant to an unlawful

search.  *See Ceccolini*, 435 U.S. at 278 ("since the cost of excluding live-witness

testimony often will be greater, a closer, more direct link between the illegality and that

kind of testimony is required").  To demonstrate that physical evidence obtained

subsequent to an unlawful search is not tainted by the unlawfully obtained evidence, the

government has the burden of proving by a preponderance of the evidence either that the

evidence was obtained by means of an "independent source" or that its discovery was

"inevitable."  With regard to the "independent source" exception, the government's

burden is to show, by a preponderance of the evidence, that the later search was "in fact a

genuinely independent source of the information and tangible evidence."  *Murray v.*

*United States*, 487 U.S. 533, 542 (1988).  This would not be the case "if the agent's

*decision*" to seek a subsequent warrant was "prompted by what they had seen during the initial entry" or if information from the illegal entry affected the issuance of a subsequent warrant. *Id*. (emphasis supplied).

Application of the "inevitable discovery" exception requires a district court "to determine, viewing affairs as they existed at the instant before the unlawful search, *what would have happened* had the unlawful search never occurred." *United States v. Eng*, 997 F.2d 987, 990 (2d Cir. 1993)(internal citation omitted)(emphasis in original). The necessary proof "involves no speculative elements but focuses on *demonstrated historical facts capable of ready verification or impeachment* and does not require a departure from the usual burden of proof at suppression hearings." *Id.* at 859 (emphasis in original).

Additionally, in determining whether the taint has been sufficiently dissipated, one of the factors a court is to consider is the "purpose and flagrancy" of the primary illegality. *Brown*, 422 U.S. at 604. *See also United States v. Oguns*, 921 F.2d 442, 447 (2d Cir. 1990)(in determining whether consent to search was tainted by an earlier, illegal entry into the defendant's apartment, court should consider "the purpose and flagrancy of the official misconduct"). In the present case, this Court has previously concluded that the Warrant pursuant to which the search of the Amerindo U.S. offices was conducted suffered from a "patent" lack of particularity, 2007 WL 1075041, at *23, and "indeed is so broad that a 'well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id*. at 24, quoting *Leon*, 468 U.S. at 922 n. 23.

17

Moreover, the purpose of the unlawful search was to obtain evidence that would support the very charges for which Vilar is now under indictment. Surely, therefore, the "purpose and flagrancy" of the misconduct here militates against a finding that the initial taint has been dissipated.

Accordingly, unless the government introduces evidence sufficient to satisfy its burden of proving that the evidence – both in the form of physical materials and in the form of witness testimony – that it acquired subsequent to the unlawful seizure of thousands of documents from the offices of Amerindo U.S. is not tainted by the initial illegality, all such evidence should be suppressed.

**B.      Pursuant to *Brady v. Maryland*, the Government Should
Be Directed to Disclose Information Concerning Any Use
of the Unlawfully Seized Documents in Connection with
the Acquisition of Additional Evidence**

In order to facilitate adjudication of the present application, the defense seeks disclosure of information and documents that are relevant to this Court's taint inquiry and that are in the exclusive possession of the government. Accordingly, we request that this Court direct the government, pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963), as well as Fed. R. Crim. Pro. 12(b)(4)[2], to promptly make the following disclosures:

---

[2]Rule 12(b)(4) provides that, at arraignment, or "as soon thereafter as practicable," the government "may notify the defendant of its intent to use specified evidence at trial in order to afford the defendant an opportunity to object before trial under Rule 12(b)(3)(C)" and that the defendant may request such disclosure. In the accompanying commentary, the Advisory Committee indicates that this Rule reflects the view that early disclosure promotes better administration of criminal justice. The Committee quoted with approval a court's observation that "'the pretrial consideration of other evidentiary problems, the resolution of which is needed

1.      Identify all agents or prosecutors who had access to the unlawfully seized materials;

2.      Identify all agents or prosecutors who read or otherwise reviewed the unlawfully seized materials;

3.      Identify any documents that were unlawfully seized that were segregated from documents to be reviewed by government agents and prosecutors, and that were not in fact reviewed;

4.      Identify all documents obtained subsequent to the May 26, 2005, search, that the government contemplates offering into evidence at trial; specify any such documents that were mentioned or otherwise referenced in any document that was illegally seized;

5.      Identify all individuals, including but not limited to former employees and customers of Amerindo U.S., who were contacted or interviewed subsequent to the May 26, 2005, search and whom the government contemplates calling as trial witnesses; as to all such potential witnesses, specify any use by a government prosecutor or agent of information derived directly or indirectly from the unlawfully seized documents[3], including, for example, customer correspondence, complaints, and/or account records to refresh the witness's recollection or to persuade the witness to assist in the investigation and prosecution of the present case;

---

to assure the integrity of the trial when conducted, will be most useful and . . . this court encourages the use of such procedures [prompt disclosure of evidence the government intends to introduce at trial] whenever practical."  Advisory Committee Notes to 1974 Amendments to Rule 12, quoting *State ex rel. Rasmussen v. Tahash*, 272 Minn. 539, 553-556, 141 N.W.2d 3, 13-15 (1965).

[3]The scope of materials that will be deemed "unlawfully seized" for purposes of these requests will, of course, depend in part on the Court's ruling with regard to the admissibility of documents that the government sought by means of a subpoena; as indicated in our Notice of Motion, we join in the application of co-defendant Gary Tanaka to suppress those documents.

6.    Disclose any subpoenas issued to obtain documents or other materials that were mentioned or referenced in the unlawfully seized materials;

7.    Disclose any internal notes, correspondence, or memoranda relating to use of the suppressed material in connection with the government's ongoing investigation;

8.    With regard to items that were unlawfully seized from computers, specify all particular files and documents that were accessed by government agents or prosecutors, and identify any use made of those files or documents in acquiring other evidence or communicating with witnesses; and

9.    Disclose any other information relevant to the question whether evidence to be presented at trial is tainted by the illegal seizure.

We also request that the government be directed, at the same time, to disclose any other-act evidence that it intends to offer into evidence pursuant to Fed. R. Crim. Pro. 404(b). For the reasons that follow, we submit that such disclosure is essential to securing the defendant's due process right to litigate his present Fourth Amendment claim, and that prompt disclosure will assist this Court by greatly reducing the issues to be addressed at a taint hearing.

As discussed in the preceding subsection, while the government has the ultimate burden of demonstrating by a preponderance that its evidence is untainted, and therefore admissible, the defendant has the initial burden of going forward with "specific evidence" of taint. *Alderman*, 394 U.S. at 183. Because the enormity of the amount of materials seized and reviewed by government agents and prosecutors over the course of more than

20

two years, combined with the government's unquestionable interest in developing its case against Vilar, gives rise to the ineluctable inference that the seized materials led to the discovery of other materials and were used to refresh the recollections of potential witnesses and to encourage them to testify, we submit that we have satisfied that burden.

In any event, however, this Court should not make a final determination as to the sufficiency of the defense's initial showing until we have had an opportunity to supplement that showing following the governmental disclosures sought in the present papers.  To facilitate meaningful litigation of the taint issues, as well as to provide further "specific evidence" regarding the manner in which trial evidence has been tainted, it is *critical* that the government disclose materials and information in its exclusive possession that are relevant to these issues.

As the *Alderman* Court recognized, in the context of a claim of taint arising from an unlawful wiretap, disclosure to the defense is essential to a defendant's ability to litigate taint issues.  In order to enable the defendants in *Alderman* to present evidence to the district court that would enable it to resolve whether any evidence to be introduced at trial grew out of the conversations that were unlawfully overheard, the Supreme Court directed the government to disclose "any surveillance records which are relevant to the decision of this ultimate issue."  *Id*. at 181.

In response to the government's suggestion that *in camera* submission of the relevant evidence would suffice, the Court reasoned that it would be impractical to leave

21

the task of determining possible connections between unlawfully seized evidence and the government's ultimate trial evidence to such a review by the court:

> Unavoidably, this is a matter of judgment, but in our view the task is too complex, and the margin for error too great, to rely wholly on the in camera judgment of the trial court to identify those records which might have contributed to the Government's case.

*Id*. at 182.  In directing this disclosure, the Court was guided by the principle that adversary proceedings designed to enforce Fourth Amendment rights must be "more than a formality" and that the defendants should not be "left entirely to reliance on government testimony."  *Id*. at 183. The Court recognized that the need for disclosure to ensure meaningful adversarial testing that will fulfill the goal of:

> *attaining justice* . . . is nowhere more evident than in those cases, such as the ones at bar, where an issue must be decided on the basis of a large volume of factual materials, and after consideration of the many and subtle interrelationships which may exist among the facts reflected by these records.

*Id*. at 183-84 (emphasis supplied).

While the present case, unlike *Alderman*, involves documentary evidence rather than electronic surveillance, the practical difficulties arising from the scope and volume of unlawfully seized materials at issue here are even more daunting than in *Alderman*. Because the large quantity of materials that this Court has determined were unlawfully seized were in the possession of a team of government agents and prosecutors for nearly two years prior to this Court's suppression order, there has been an extraordinary

opportunity for the government to exploit that evidence throughout the continuation of its

investigation.

Since the knowledge of which agent or prosecutor utilized these documents, and in

what manner, is possessed exclusively by the government, it is clearly incumbent on the

prosecution to divulge the information we are now seeking if the defense is to have any

ability to obtain a fair adjudication of the taint issues posed by the present case.  As

Justice Fortas observed:

> A criminal trial is not a game in which the State's function is
> to outwit and entrap its quarry. The State's pursuit is justice,
> not a victim. *If it has in its exclusive possession specific,
> concrete evidence which is not merely cumulative or
> embellishing and which may exonerate the defendant or be of
> material importance to the defense* – regardless of whether it
> relates to testimony which the State has caused to be given at
> the trial – the State is obliged to bring it to the attention of the
> court and the defense.

*Giles v. Maryland*, 386 U.S. 66, 100 (1967) (Fortas, J., concurring) (emphasis supplied).

The Supreme Court held in *United States v. Bagley*, 473 U.S. 667, 682 (1985), that

*Brady* requires disclosure of evidence when there is "a reasonable probability that, had

the evidence been disclosed to the defense, the result of the proceeding would have been

different."  *See also United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1995) (applying

the due process principles announced in *Brady* to a suppression hearing); *Smith v. Black*,

904 F.2d 950, 965-66 (5th Cir.1990), vacated on other grounds, 503 U.S. 930

(1992)(*Brady* requires disclosure of information that could affect the outcome of a suppression hearing).[4]

Because the information possessed exclusively by the government is crucial to Vilar's ability to present evidence that will enable this Court to reach a fair determination as to whether documents or testimony the government will seek to introduce at trial was "come at by exploitation of that [the unlawful seizure] or instead by means sufficiently distinguishable to be purged of the primary taint," *Wong Sun*, 371 U.S. at 488, this Court should direct the government to make the disclosures requested by the defense. As in *Alderman*, the requested disclosure will "avoid an exorbitant expenditure of judicial time and energy and will not unduly prejudice others or the public interest." 394 U.S. at 184.

Indeed, providing this material in advance of a taint hearing will enable the parties to narrow the subject matter at issue. At this taint hearing, only witnesses with directly relevant knowledge of the taint issues will be called and questioned as to the limited, relevant inquiry. Thus, directing the government to comply with our discovery request is not only essential in order to guarantee Vilar's right to due process in litigating a suppression issue with the potential to have a significant impact on the scope of evidence that may be admitted at trial, but will serve the interest of this Court, as well as the parties, in conducting an efficient hearing.

---

[4]The Second Circuit does not appear to have addressed the specific issue whether *Brady* applies to evidence that would affect the outcome of a suppression hearing.

**POINT TWO**

**THE DETERMINATION WHETHER, AND TO WHAT
EXTENT, EVIDENCE SHOULD BE SUPPRESSED
BECAUSE IT IS TAINTED BY THE UNLAWFUL
SEIZURE SHOULD BE MADE BEFORE TRIAL**

It has been suggested that the determination concerning the admissibility of

evidence that constitutes tainted fruit of the unlawful seizure conducted on May 26, 2005,

should be deferred until after trial.  Because there is no "good cause" for such a deferral,

and because doing so would be highly prejudicial to the defendants, this Court should

resolve the taint issue prior to trial.

Rule 12(d) of the Federal Rules of Criminal Procedure provides that:

> The court must decide every pretrial motion before trial unless
> it finds good cause to defer a ruling. The court must not defer
> ruling on a pretrial motion if the deferral will adversely affect
> a party's right to appeal.[5]

In the present case, the government cannot demonstrate "good cause" for such deferral.

On the contrary, postponing a ruling on the admissibility of evidence that the defense

contends is tainted by an unlawful search would be highly prejudicial to the defendants,

and would disserve this Court's interest in judicial economy.

---

[5]Although there are older cases, such as *United States v. Birrell*, 269 F.Supp. 716 (S.D.N.Y. 1967), suggesting that a district court has "broad discretion" in determining whether to conduct a suppression hearing before or after trial, *id*. at 725, those cases were decided under an earlier version of Rule 12 that did not limit the courts' authority to defer a ruling on a pretrial motion to cases in which there is "good cause" for such a deferral.

25

In the notes regarding the amendment that added the provision quoted above to

Rule 12[6], the Advisory Committee commented that:

> The Committee modified subdivision (e) to permit the court to
> defer its ruling on a pretrial motion until after the trial only for
> good cause. Moreover, the court cannot defer its ruling if to
> do so will adversely affect a party's right to appeal. The
> Committee believes that the rule proposed by the Supreme
> Court could deprive the government of its appeal rights under
> statutes like section 3731 of title 18 of the United States
> Code. Further, *the Committee hopes to discourage the
> tendency to reserve rulings on pretrial motions until after
> verdict in the hope that the jury's verdict will make a ruling
> unnecessary*.

Advisory Committee Notes to 1975 Amendments to Rule 12, Note B. Committee Action

(emphasis supplied).  In a subsequent note, the Committee further explained that:

> under the current version of rule 12 this [leaving suppression
> issues "open" for resolution after the trial has commenced] is
> not possible; subdivision (b) declares that motions to suppress
> "must" be made before trial, and subdivision (e) says such
> motions cannot be deferred for determination at trial "if a
> party's right to appeal is adversely affected," which surely is
> the case as to suppression motions.

Advisory Committee Notes to 1983 Amendments to Rule 12.  Thus, deferral of the taint

hearing in the present case would be contrary to the requirement of Fed. R. Crim. Pro.

12(d), and to the purposes underlying that requirement.

Additionally, as discussed in the August 17, 2007, letter to this Court of Jessica L.

Margolis, Esq. on behalf of co-defendant Gary Tanaka (the reasoning of which we join in

---

[6]The amendment was initially designated as subdivision (e), but became subdivision (d) as a
result of subsequent amendments.

and adopt by reference), pretrial resolution of the taint issues in the present case is particularly vital in view of the vast amount of materials at issue and the enormous impact that admission of tainted materials would have on the trial; resolving these issues prior to trial will ultimately serve the interest of this Court and the parties in avoiding unnecessary expenditure of time both during trial and in preparation for trial.

Moreover, it would be particularly unfair and prejudicial to the defendants, who have already been subject to the burdens of the present investigation and prosecution for more than two years, to face the prospect of being subjected to a *lengthy retrial* following a post-conviction determination that the tainted fruits of an unlawful search were admitted at their first trial.  Such a retrial would also impose an unnecessary burden on this Court, jurors, and other resources of the criminal justice system.

For all of these reasons, this Court should conclude that, as required under the Federal Rules of Criminal Procedure, the taint issues arising from the unlawful search conducted on May 26, 2005, should be resolved prior to trial.

## CONCLUSION

For the reasons discussed above, this Court should grant the relief requested in

Vilar's notice of motion.

New York, New York
August 20, 2007

Respectfully submitted,

/s/
IVAN S. FISHER (IF8706)
251 East 61st Street
New York, New York 10065
(212) 486-0001
*Attorney for Defendant*
*Alberto William Vilar*

Of Counsel:

WILLIAM J. DAVIS (WD0362)
Scheichet & Davis, P.C.
767 Third Avenue - 24th Floor
New York, New York 10017
(212) 688-3200

28