# EXHIBIT B

```
689ztan1

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA

 4              v.                            05 Cr. 621 (KMK)

 5   ALBERTO VILAR                            Hearing
     GARY TANAKA,
 6              Defendant.
     ------------------------------x
 7                                            New York, N.Y.
                                              August 9, 2006
 8                                            9:45 a.m.
     Before:
 9
              KENNETH M. KARAS
10
                                              District Judge
11   MICHAEL J. GARCIA
     United States Attorney for the
12   Southern District of New York
          One St. Andrew's Plaza
13        New York, N.Y.  10007
     DEIRDRE A. McEVOY
14   MARC O. LITT
          Assistant United States Attorneys
15
     JEFFREY C. HOFFMAN, ESQ.
16   Attorneys for Defendant Vilar
          Hoffman & Pollik, LLP
17        260 Madison Avenue, 22nd Floor
          New York, New York  10016
18        (212) 679-2900

19   GLENN C. COLTON, ESQ.
     Attorney for Defendant Tanaka
20        Wilson Sonsini Goodrich & Rosati (NYC)
          12 East 49th Street, 30th Floor
21        New York, New York  10017
          (212) 999-5804
22
     STEVEN G. KOBRE, ESQ.
23   Attorney for Defendant Tanaka
          Kobre & Kim LLP
24        800 Third Avenue
          New York, New York  10022
25        (212) 488-1200
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

689ztan3                          Litt - cross

1              MS. McEVOY:  Objection to the characterization.
2              THE COURT:  I mean, what -- I don't understand, are
3    you asking him whether or not what he said at that
4    December 14th conference was the truth?
5              MR. HOFFMAN:  Correct.
6              THE COURT:  Okay.  Was that the truth, Mr. Litt, what
7    you said back then?
8              THE WITNESS:  I believe that to be true at the time,
9    yes.
10             THE COURT:  Is it still true?
11             THE WITNESS:  I need to see the -- all the words.
12             THE COURT:  All right, all right.  Go ahead,
13   Mr. Hoffman.
14             (Document provided to the witness by Mr. Hoffman)
15             THE COURT:  Page eight and page nine, right, Mr.
16   Hoffman?
17             MR. HOFFMAN:  Those are the only two pages there.
18             THE COURT:  Okay.
19             (Pause while witness reviews document)
20   A.  My current recollection, and I testified about this on May
21   31st, my current recollection differs from this in that I now
22   do not believe that I was on the train.  I believe the
23   conversation, yes, occurred toward the end of the day.  I
24   believe it occurred sometime in the afternoon or early evening
25   but I was not on the train.  And I can, if you'd like, go

689ztan3           Litt - cross

1   through everything that Mr. Licker said, which is -- I mean the
2   gravamen of it is in this paragraph.
3   Q.  Okay.
4   A.  It's slightly different, but I testified to that on May
5   31st.
6   Q.  So in answer to the Court's question as to whether the
7   statements made on that date -- I just don't have it in front
8   of me -- were accurate, is that it was accurate other than that
9   you don't believe you're on the train; is that correct?
10  A.  It was accurate at the time, and the substance, the
11  gravamen of the conversation, that is, that Mr. Licker got on
12  the phone with me and suggested, and here's what he said; it's
13  been a long day, my people are tired, your people are tired, we
14  want to go home, I have your subpoena, I've agreed -- we've
15  agreed to preserve the documents.  I don't really think you
16  want all this stuff anyway, so why don't you stop the search,
17  and we have the subpoena, and we'll proceed that way instead.
18  Q.  Okay.  And so when you say in this statement on
19  December 14th, 2005 that, in this conversation that occurred
20  late in the day, but you may not have been on the train, that
21  Mr. Licker said, and I think it would be for Amerindo and more
22  efficient for you if you give us the subpoena, is that what you
23  still believe today he said at that time?
24  A.  No.  And what I said --
25           THE COURT:  You weren't sure if he -- whether he

689ztan3                    Litt - cross

1   already had the subpoena.  You read earlier --
2           MR. HOFFMAN:  Yes.
3           THE COURT:  -- left whether or not he had the subpoena
4   open.
5   BY MR. HOFFMAN:
6   Q.  Is that correct, your statement?
7   A.  Well, the words speak for themselves.  But what I said
8   right after that was words to the effect of, and I'm not even
9   sure whether or not he already had the subpoena or not.
10  Q.  Okay.
11  A.  As I sit here today, I believe, quite firmly, that he had
12  the subpoena because it was faxed to him at approximately 1:27
13  and our conversation occurred several hours later.
14  Q.  So would it be accurate to say that when you made the
15  statement that we just went over on December 14th, at that
16  time -- my only question is -- you did not know whether or not
17  Mr. Licker was requesting the subpoena in the evening hours?
18  A.  Well --
19          MR. COLTON:  I'm going to object to that question
20  because it was so vague, that I don't want the record to be --
21          THE COURT:  Yeah, I agree, I agree, I agree.  It is a
22  vague question.
23  Q.  When you stated on December 14th that Mr. Licker either
24  already had the subpoena or may have gotten it earlier in the
25  day --