November 2, 2007

**By ECF**

Hon. Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    United States v. Vilar
               05 Cr. 621 (RJS)

Dear Judge Sullivan:

      On behalf of defendant Alberto W. Vilar, we are writing in reply to the government's memorandum ("Govt. Mem.") in opposition to our motion to suppress the derivative fruits of an unlawful search, and for related relief. In its memorandum, the government urges the Court to conclude that, notwithstanding the government's access to a substantial quantity of unlawfully-seized materials over a period of over two years, during which a team of prosecutors and agents were actively pursuing their investigation of Vilar and others, the defense should be denied a reasonable and timely ability to litigate the question whether those materials tainted evidence that the government intends to offer at trial. As we will show, the government's effort to forestall meaningful exploration of the taint issues created by the seizure previously determined to be unlawful not only misconstrues precedent, but, if successful, would vitiate the fundamental Fourth Amendment protection afforded by the exclusionary rule, and would deprive Vilar of his constitutional right to due process.

Hon. Richard J. Sullivan
November 2, 2007
Page 2

### 1. Vilar is Entitled to a Taint Hearing

In our opening memorandum ("Vilar Mem."), we suggested that, by directing the government to make pertinent disclosures prior to a hearing, the Court would be able to streamline the procedure by which the Constitutional taint issues in the present case would be litigated. In introductory remarks concerning the judicial economy that we believe will flow from the pre-hearing discovery we seek, we noted that, while "substantial" taint issues would be presented, we did not expect those issues to affect the "majority" of the evidence the government is likely to offer at trial. Vilar Mem., p. 2. Through an artful sleight of hand, the government attempts to parlay those comments into an "admission that defendants will be unable to meet their initial burden of showing that a 'substantial portion' of the Government's evidence against them is 'tainted.'" Govt. Mem., p. 7.

The government's misguided effort hinges on reading the language surrounding the holding of *Nardone v. United States*, 308 U.S. 338 (1939) – that a defendant must be given an opportunity to prove that a "substantial portion" of the case against him is tainted, 308 U.S. at 341 – as if it meant that, unless a defendant can show (prior to a hearing or to receiving discovery related to the issue) that the *majority* of the evidence the government seeks to offer against him is tainted, the government is free, without any judicial scrutiny whatsoever, to offer evidence derived from a violation of the Fourth Amendment. Such a reading turns the exclusionary rule on its head. For the better part of the last century, that rule has meant that *any* evidence derived from an illegal seizure is inadmissible, unless the government can establish an independent source or other dissipation of the Constitutional violation. *See Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920); *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). Contrary to the government's suggestion, our candid observation that issues of taint will not apply to a great deal of the government's evidence can in no way be understood as a concession that the "portion" of the case that we contend *is* tainted is not "substantial," and certainly offers no basis upon which the Court can abdicate its duty to ensure that the evidence the government intends to offer at trial does not constitute "fruit of the poisonous tree."

It bears noting that the *Nardone* case was decided by the Supreme Court *after* a jury trial at which the petitioners had been convicted (for the second time – their earlier convictions had been reversed by the Supreme Court's prior decision in *Nardone v. United States*, 302 U.S. 379 (1937)). Consequently, as a practical matter, if the most the petitioners in *Nardone* could show was that an "insubstantial" amount of the evidence used to convict them was tainted, it would hardly be worth the effort to litigate the taint

issue and then undergo yet another trial. Given this context, it is particularly illogical to read the Supreme Court's statement that the petitioners in *Nardone* must be given an opportunity to show that a "substantial portion" of the case against them was tainted to mean that – without even the slightest bit of discussion – the Court intended to transform the exclusionary rule from a rule requiring suppression of any evidence derived from an unlawful search into a rule that requires suppression only when the amount of tainted evidence can be characterized as "substantial" – an amorphous term that the *Nardone* Court made no effort to define. Accordingly, this Court should reject the government's attempt to read a radical revision of the exclusionary rule into *Nardone* and its progeny, just as it should reject its strained effort to turn our comments about the practical effect of the procedure we propose into the "death knell" [Govt. Mem., p. 7] of our motion.

The government's memorandum also implies, erroneously, that, unless the Court is convinced *prior to a hearing* that the defense has met its "initial burden," it should summarily deny our motion. Govt. Mem., p. 7. The very cases on which the government relies, however, make clear that references to the "initial burden" that must be satisfied by the defense in connection with a taint inquiry relate to the burden the defense must satisfy *at* a hearing, not before one is conducted. Thus, in *Nardone*, the "only question" presented for review was "'whether the (trial) judge improperly refused to allow the accused to examine the prosecution as to the uses to which it had put the information'" that the Supreme Court had previously determined was acquired unlawfully. 308 U.S. at 339. Based solely on the showing "that wiretapping was unlawfully employed," *id*. at 341, the Court held that the defendants were entitled to pursue such an inquiry, and it therefore reversed the petitioners' convictions and remanded for "further proceedings." *Id*. at 341.

Similarly, in *Alderman v. United States*, 394 U.S. 165, 183 (1969), the discussion of the burden that the defense must satisfy in order to trigger the government's "ultimate burden of persuasion to show that its evidence is untainted" was framed by the presupposition that, because there had been illegal wiretapping, there would have to be a taint hearing. Indeed, the government had conceded that a hearing was required, *see id*. at 176, and the issue before the Court related only to the "standards and procedures" applicable to such a hearing. *Id*. at 167. The necessity of a hearing is also recognized in *United States v. Apple*, which the government cites at page 4 of its memorandum, and which expressly states that:

> *At* the taint hearing, the claimant has the burden of coming forward with specific evidence demonstrating taint.

Hon. Richard J. Sullivan
November 2, 2007
Page 4

915 F.2d 899, 906 (4th Cir. 1990)(emphasis supplied). In the other cases cited by the government with regard to the "initial burden" to be borne by the defense, it was similarly recognized that, where the prosecution has obtained evidence unlawfully, a taint hearing must be conducted. *See United States v. Sapere*, 531 F.2d 63, 63-64 (2d Cir. 1996)(connection between wiretap and obtaining of other evidence was explored at a five-day hearing); *United States v. Sacco*, 563 F.2d 552, 557 (2d Cir. 1977)(court determined taint issue after a hearing); *United States v. Sand*, 541 F.2d 1370, 1375 (9th Cir. 1976)(questions of taint were raised at a hearing). Although the court in *United States v. Birrell*, 269 F. Supp. 716 (S.D.N.Y. 1967), determined that it could *defer* a hearing until after trial – a conclusion that, for the reasons discussed in our opening memorandum and in Section 3, *infra*, should not be followed in the present case – it did not hold that a motion to suppress evidence on the ground that it is tainted by a prior illegal search can be summarily disposed of without a hearing.[1]

      The only case relied on by the government in which a court held that an allegation of taint could be resolved without a hearing is *United States v. Mullen*, 451 F. Supp.2d 509 (W.D.N.Y. 2006). In that case, however, the defendant had "failed to demonstrate any primary illegality . . . ," *id*. at 541. In the present case, of course, the "primary illegality" has unequivocally been established by Judge Karas's prior decision. Thus, consistent with the cases on which the government itself relies, there is no question that Vilar is entitled to a taint hearing, and that such a hearing is the forum in which the Court must determine whether the defense has gone forward with sufficient proof to trigger the government's obligation to assume the "ultimate burden of persuasion."

---

[1] The government's discussion of the *Birrell* Court's rejection of the supposedly "analogous" argument that "'the Government's free access to [a] large collection of unlawfully seized records, over a considerable period of time, *should immunize the defendant from criminal prosecution*,'" Govt. Mem., pp. 6-7, quoting *Birrell*, 269 F.Supp. at 724 (emphasis supplied), is utterly irrelevant, since we have never suggested that the government's access to unlawfully seized materials "immunizes" Vilar from prosecution, or made any remotely "analogous" argument; on the contrary, as made clear in our opening memorandum, we agree with the proposition that such access "'would not preclude [the government] from prosecuting the defendant on the basis of *completely independent, untainted evidence*." *Birrell*, *id* (emphasis supplied). The issue in our present application concerns the means by which the Court will ensure that the evidence offered against Vilar satisfies that Constitutional standard, and the Court should not be swayed by the government's effort to portray our argument as something it is not.

### 2. The Court Should Direct the Government to Provide the Discovery Requested by Vilar

In light of the fact that, as shown above, there must inevitably be a hearing to determine whether evidence the government will seek to introduce at trial was derived from the illegal search of the Amerindo U.S.A. offices, the Court should direct the government to make the disclosures requested by Vilar even if, *arguendo*, they were not required by *Brady v. Maryland*, 373 U.S. 83 (1963), or the rules of discovery.[2] As reflected in the passage from *Alderman* quoted in the government's memorandum at page 10, at a hearing, Vilar will have:

> . . . the right to cross examine the appropriate officials in regard to the connection between those records [of unlawfully obtained evidence] and the case made against him . . .

394 U.S. at 185. Thus, if the disclosures we are seeking are not made prior to a hearing, we will have a right to seek the very same information through questions posed to "appropriate officials" at a hearing. Particularly because of the likelihood that meaningful responses to those questions will require those officials to review numerous notes and memoranda concerning the extensive investigation that occurred in this case subsequent to the unlawful seizures, extracting the pertinent information solely through cross-examination would surely be cumbersome and time-consuming. Pre-hearing disclosure of that information would therefore serve the interests of the Court and the parties by streamlining the hearing and avoiding the need for interruptions while witnesses refresh their recollections concerning the details of the investigation. Accordingly, even assuming *arguendo* that this were solely a matter of the

---

[2] The government concedes that compliance with at least one portion of our requests (that the government identify all documents obtained subsequent to the May 26, 2005, search that the government contemplates offering at trial) is required by Fed. R. Crim. Pro. 16. Govt. Mem., p. 18. Clearly, therefore, disclosure of that information should be made immediately.

Hon. Richard J. Sullivan
November 2, 2007
Page 6

Court's discretion, it would be a sound exercise of that discretion to direct the government to provide the discovery we seek.[3]

Moreover, the Court should reject the government's broad contention that "*Brady* does not give rise to any pretrial remedy." Govt. Mem., p. 16. Contrary to the government's suggestion, neither *United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001), nor any other case provides the government with blanket relief from the due process obligation to disclose material information prior to trial. *Coppa* held only that the timing of *Brady* disclosures "depend[s] on the materiality of that evidence . . . as well as the particular circumstances of the case." 267 F.3d at 146. While a disclosure relevant to a defendant's ability to defend against the government's charges at trial may be timely if made after the trial has commenced – provided that it is made "in time for its effective use," *id*. – the disclosures we seek bear on a suppression issue that, under Fed. R. Crim. Pro. 12, is necessarily raised prior to trial (and, for the reasons discussed in Section 3, *infra*, and elsewhere, must be resolved prior to trial). The government has pointed to no case holding that, where there is a reasonable probability that the disclosures will affect the outcome of a suppression hearing, *see United States v. Bagley*, 473 U.S. 667, 682 (1985) – which is surely the case here – the government can withhold that information without violating a defendant's constitutional right to due process. In our opening memorandum, we cited cases from other Circuits holding that *Brady* applies to suppression hearings, *see* Vilar Memo, pp. 23-24, and the government has offered no persuasive reason why this Court should be the first in this Circuit to reach a contrary conclusion.

The government's assurance that it "intends to scrupulously comply with the constitutional limitations placed on its use of the suppressed materials and evidence derived from the suppressed materials" [Govt. Mem., p. 16] misses the point. The issue to be resolved at this juncture is not what the government *intends* to do now that Judge Karas's decision has put it on notice that a significant portion of the materials it seized in May of 2005 were obtained pursuant to a constitutionally defective search, but what use has already been made of those materials during the nearly two-year period between the search and the Court's suppression ruling. Thus, the government's assurance about its

---

[3]The Court should also recognize that the government's alarmist characterization of our discovery requests as an effort to "rummage through the Government's work product" [Govt. Mem., p. 8] is unfounded. We seek no such thing. On the contrary, our requests are carefully focused on issues relevant to determining whether evidence the government will seek to introduce at trial is the derivative product of an unlawful search.

Hon. Richard J. Sullivan
November 2, 2007
Page 7

current intentions provides no basis for it to avoid disclosures that are relevant to resolving the taint issue that has arisen as a result of its acquisition of evidence pursuant to a Constitutionally defective search warrant.

      **3.**      **The Taint Hearing Should be Held Prior to Trial**

As discussed in our opening memorandum, Rule 12(d) of the Federal Rules of Criminal Procedure expressly provides that a court "must" decide pretrial motions before trial unless it finds "good cause" to defer a ruling, and that it "must not" defer such a decision if doing so will "adversely affect a party's right to appeal." The government, which acknowledges that its right to appeal would be adversely affected if a ruling excluding evidence were made after Vilar is placed in jeopardy by the commencement of a trial, Govt. Mem., p. 31, n.14, offers no reason at all why the mandatory provisions of Rule 12(d) should not be followed in this case. Contrary to the implication of the government's argument, nothing in Rule 12(d) suggests that the government is free to disregard an adverse effect on its own appellate rights in connection with a taint hearing. Moreover, although the government claims that the "vast majority of courts that have considered the question of when to hold such 'taint' hearings . . . have concluded that any such hearings should be deferred until after the trial is completed," Govt. Mem., p. 19, not a single one of the cases cited by the government addresses the constraints on a trial court's "discretion" imposed by the "must not defer" language of the current version of Rule 12(d).[4]

---

[4] Only one of the cases cited by the government discusses Rule 12 at all, and that case, the unpublished opinion in *United States v. Corrao*, 1993 WL 63018 (E.D.N.Y. March 1, 1993), refers only to the provision of then-Rule 12(E) authorizing deferral when a court finds "good cause;" *Corrao* does not make any reference to the provision that a court "must not defer a ruling on a pretrial motion if the deferral will adversely affect party's right to appeal." It should also be noted that, notwithstanding the government's claim that the "vast majority" of courts have concluded that taint hearings should be deferred, taint hearings were conducted prior to trial in at least two of the cases cited at pages 4 and 6 of the government's memorandum with regard to the applicable burden of proof. *See Sapere*, 531 F.2d at 64 (five-day hearing was held prior to defendant's plea); *Sand*, 541 F.2d at 1375 (appellant's claim that hearing was improperly deferred was inaccurate because hearing was held prior to trial). The opinions in *United States v. Sacco*, 563 F.2d 552 (2d Cir. 1977), and *United States v. Apple*, 915 F.2d 899 (4th Cir. 1990), do not indicate when the hearings were conducted.

Hon. Richard J. Sullivan
November 2, 2007
Page 8

      Indeed, the case on which the government places the greatest reliance, *United States v. Birrell*, 269 F. Supp. 716 (S.D.N.Y. 1967), *see* Govt. Mem., pp. 23-27, was decided eight years before the 1975 amendment to Rule 12(d) that introduced the current limitations on a trial court's authority to defer determination of a pretrial motion. Plainly, therefore, nothing in that case speaks to the Court's obligation to render a pretrial decision on a motion under the current law.[5] Similarly, even assuming that it has become "routine" for courts in this District, without any indication that they have taken Rule 12(d) into consideration, to defer taint hearings, *see* Govt. Mem., p. 21, quoting *United States v. Francisco*, 06 Cr. 791 (SAS), 2007 WL 2265147 at *3 (S.D.N.Y. Aug. 6, 2007), that fact surely does not provide a principled reason for ignoring the express mandate of the Rule where, as here, a defendant has called it to the Court's attention.[6]

---

    [5]The government's heavy reliance on *Birrell* is also somewhat ironic in light of the fact that, as the government notes, "[t]he hearings did not resolve the issues raised because Judge Herlands, who presided over the hearings, died before rendering a decision." Govt. Mem., p. 26, n.12. Thus, while the decision of the trial court in that case may offer a rationale for deferring a taint hearing, the case itself powerfully illustrates the wisdom of the adage that "justice delayed is justice denied."

    [6]Although it is of no great consequence, the government is mistaken in its assertion that "[t]he wording of Rule 12(d) has not changed . . . since the operative language [of the 1975 amendment] became effective on December 1, 1975." In fact, an intervening version of the Rule (which was then denominated Rule 12(e)) was worded as follows:

> A motion made before trial shall be determined before trial unless
> the court, for good cause, orders that it be deferred for
> determination at the trial of the general issue or until after verdict,
> but no such determination shall be deferred if a party's right to
> appeal is adversely affected.

Quoted in *United States v. Jarrett*, 705 F.2d 198, 205, n.10 (7th Cir. 1983). While this language has the same substantive effect as the current language, the current wording of Rule 12(d) – providing that the court "must not defer" a ruling if deferral will adversely affect a party's appellate rights suggests a legislative intent to articulate the restriction on a court's authority to defer a decision in a more forceful manner.

Hon. Richard J. Sullivan
November 2, 2007
Page 9

On the contrary, under Rule 12(d), the Court "must not defer" its ruling on the present motion even if it were to find "good cause" for doing so. Moreover, notwithstanding the government's claim that deferral will not prevent the defendants from "vindicating" their rights, a post-trial proceeding would be overwhelmingly prejudicial to the defendants in that, at that juncture, the only "remedy" for a determination that evidence was improperly admitted would be a new trial; particularly given the anticipated length and expense of a single trial in the present case, it would be extraordinarily unfair to place Vilar in a position in which his "vindication" would require that he subject himself to a second trial. Furthermore, the government's lamentations about the prospect of permitting the defense to conduct a "fishing expedition" or giving it a "preview" of the government's case are entirely overblown and certainly do not justify deferring resolution of the taint issue in this case, in which the indictment, the previous hearings, and the large quantity of documents disclosed pursuant to Rule 16 have already provided a "roadmap" of the evidence, and the identity of the government's likely witnesses is largely – if not entirely – known to the defense. To the extent that the government nonetheless would prefer to avoid showing its hand prior to trial, the marginal loss of the ability to do so is hardly an unfair price to pay for conducting the unlawful search that has made a taint hearing necessary.

Thus, in addition to being required pursuant to the mandatory command of Rule 12(d), pretrial resolution of the taint issue that arises from the government's unlawful search is consistent with the balance of equities. Accordingly, this Court should readily conclude that the hearing to which Vilar is entitled should be conducted prior to trial.

Respectfully,

Ivan S. Fisher
*Attorney for Defendant*
*Alberto W. Vilar*