Oral Argument is Requested

# United States District Court
# For the Southern District of New York

UNITED STATES OF AMERICA,

- against -

ALBERTO WILLIAM VILAR
and GARY ALAN TANAKA,

*Defendants.*

**DEFENDANT ALBERTO WILLIAM VILAR'S
MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION TO PRECLUDE EVIDENCE
TAINTED BY THE ILLEGAL SEARCH  OF
AMERINDO'S OFFICES IN THE UNITED STATES**

Docket No. S3 05 Cr. 621 (RJS)
[Filed Electronically]

**Herald Price Fahringer (HF 3827)**
**Erica T. Dubno (ED 3099)**
Fahringer & Dubno
120 East 56th Street, Suite 1150
New York, New York 10022
(212) 319-5351

Counsel for Alberto William Vilar

July 31, 2008

## Table of Contents

Table of Authorities ..................................................................................... ii

Introduction ............................................................................................ 1

Procedural History .................................................................................. 3

"Given an Illegal Search, Evidence that Has Been
Come at By Exploitation of that Illegality is Tainted
and Must be Excluded from Use at Trial" - Judge
Sullivan .................................................................................................. 7

"Out, Damned Spot! Out, I Say!" ............................................................ 9

All Exhibits Derived from the New York Search,
Dated Prior to May 26, 2000, Should be Precluded ................................. 15

The Government Should be Precluded From Calling
Witnesses at Trial whose Identity and Testimony
Was Obtained as a Result of the Illegal Search of
Amerindo's Offices ................................................................................. 17

The Defense Renews its Prior Objections ................................................ 20

Conclusion ............................................................................................. 23

# Table of Authorities

Go-Bart Importing Co. v. United States,
    282 U.S. 344, 51 S. Ct. 153 (1931)....................................................................3

Nix v. Williams,
    467 U.S. 431, 104 S. Ct. 2501 (1984)................................................................8

United States v. Alberto Vilar,
    No. 05 Cr. 621, 2007 WL 1075041 (S.D.N.Y. 2007)........................................4

United States v. Vilar,
    530 F. Supp. 2d 616 (S.D.N.Y. 2008)..........................................................7, 8,
    17

Wong Sun v. United States,
    371 U.S. 471, 83 S. Ct. 407 (1963)..................................................................7

## Introduction

Alberto William Vilar moves to preclude tainted evidence.[1] As the trial looms large on the horizon, our worst fears have been realized. It is now apparent that the government's immense armory of 3,204 exhibits -- numbering 43,364 pages -- and an almost endless column of 78 witnesses are largely tainted by the unlawful search of Amerindo's New York offices.

Since the defective warrant, which has already been found to violate Alberto Vilar's Fourth Amendment rights, is being exploited to obtain other trial evidence, we urge that virtually everything that followed the massive seizure was poisoned by that "primary illegality."

---

[1] This submission, which was specifically authorized by the Court's scheduling order of May 5, 2008, is in support of the Defendant's motion to suppress and/or preclude tainted evidence. See also Rules 12(b) and 41(h) of the Federal Rules of Criminal Procedure.

The presiding metaphor attached to this rule of exclusion is the celebrated "forbidden fruit of the poisonous tree." And, the moral imperative that underlies this doctrine is that the government should not be permitted to profit from its unlawful actions. In other words, by making official misadventures unprofitable, further misconduct is deterred. Here, unless the Defendant's motion is granted -- and the Court inoculates him from this poisoned evidence _now_ -- it will, like sickle cell anemia, spread throughout the trial and infect every tissue of the case.

To reduce the facts relevant to this application to a manageable level, we have adopted a narrative strategy that addresses only those facts material to the specific issues identified by the Court. We have devoted especially close attention to the search of Amerindo's New York offices because it infected a large body of evidence brutally derived from that illegality.

## Procedural History

It all began on Thursday, May 26, 2005 at 8:15 a.m., when a detachment of postal inspectors converged on the offices of Amerindo Investment Advisors, Inc. ("Amerindo") at 399 Park Avenue in New York City. For 12 straight hours, they engaged in an oppressive search of enormous proportions pursuant to a flawed and overbroad search warrant. The taskforce of agents confiscated 170 boxes of materials, as well as millions of documents electronically stored in computers.

In effect, this became an "all-papers" or general search and seizure, uniformly condemned by our courts.[2] As a consequence, on August 12, 2005, Alberto Vilar and Gary Tanaka moved to suppress the evidence seized from this illicit search, and the resultant search of Amerindo's offices in London, as well as pursuant to an overbroad grand jury subpoena issued on May 26, 2005 as a direct result of the improper New York search.

---

[2] See Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S. Ct. 153, 158 (1931) (general searches are "deemed obnoxious to fundamental principles of liberty").

On April 4, 2007, after holding a <u>Franks</u> hearing, Judge Kenneth M. Karas suppressed, in part, the evidence seized in New York. In a 120-page decision he found that the warrant authorized a far "more extensive seizure than was justified by the supporting document" (Karas Dec. at 37).[3] For example, the court and government recognized that there was <u>no probable cause</u> indicating that the Defendants did anything illegal with respect to Rhodes Capital investments (Karas Dec. at 38, citing Tr. 10/25/06 at 5-8; Karas Dec. at 64).

The court also held that the search of Amerindo's New York offices was fatally overbroad because any allegations of wrongdoing in the warrant application only extended back to 2001, but the warrant itself contained <u>no time limitation</u>! (Karas Dec. at 38). This is particularly egregious since Amerindo has been a registered investment advisor since 1985 -- a <u>full 16 years</u> before any misconduct alleged in the application.

---

[3] <u>See</u> <u>United States v. Alberto Vilar</u>, No. 05 Cr. 621, available at 2007 WL 1075041 (S.D.N.Y. 2007).

Significantly, Judge Karas observed that the allegations touched on a mere "fraction" of Amerindo's $1.2 billion in assets (Karas Dec. at 39). And, we attach special importance to the fact that the government has never contested that "some portion of these assets, if not a <u>substantial majority of them, were managed lawfully</u>." <u>Id.</u> (emphasis supplied).

Since the warrant authorized the seizure of a "virtually unlimited body of documents," it "left unacceptably broad discretion to the officers executing the search." <u>Id.</u> at 44.[4] As a consequence, the Court found that paragraphs 3, 4, 12, 13, 14 and 15 had to be stricken from the warrant in their <u>entirety</u> (Karas Dec. at 61). The Court also noted that <u>portions</u> of paragraphs 1, 5, 6, 9, 10, 11, and 16A were <u>not</u> supported by adequate probable cause. <u>Id.</u>[5]

---

[4] Judge Karas also found that since it was not objectively reasonable for the federal agents to have relied on a warrant that authorized the seizure of all Amerindo records without restriction, the good-faith exception to the defective warrant doctrine did not apply (Karas Dec. at 44-47).

[5] An outline of the paragraphs stricken by Judge Karas and their contents is below:

Paragraph 3:    documents concerning Rhodes Capital.

Crucial portions of the grand jury subpoena that was issued in the midst of the illegal search were also too broad, imprecise or beyond the scope of the investigation (Karas Dec. at 91). Thus, the Court completely excised from the subpoena Paragraphs II.M, II.N, and II.O, which called for the production of all bank account statements, copies of checks, and documents for "any current or former Amerindo client that had a direct or indirect interest in the Amerindo Brokerage Accounts." Similarly, the Court found that Paragraphs II.U and II.V, which sought all

---

Paragraph 4:    client lists, files, correspondence and other documents reflecting the identities of and communications with Amerindo Brokerage Accounts.

Paragraph 12:   brokerage accounts maintained by Amerindo at any broker-dealer other than Bear, Stearns & Co. Inc.

Paragraph 13:   bank statements and other documents relating to movement of funds into or out of Amerindo Brokerage Accounts.

Paragraph 14:   records relating to the running and supervision of the operations of the investment advisory businesses of Amerindo.

Paragraph 15:   documents reflecting information about Amerindo employees who had responsibility for any Amerindo client with interest in the Amerindo Brokerage Accounts.

6

documents related to broad categories of Amerindo clients, were improper. Id.[6]

**"Given an Illegal Search, Evidence that Has Been Come at By Exploitation of that Illegality is Tainted and Must be Excluded from Use at Trial" - Judge Sullivan**

In a subsequent decision issued on January 17, 2008, this Court held, "given an illegal search, evidence that 'has been come at by exploitation of that illegality' is 'taint[ed]' and must be excluded from use at trial." United States v. Vilar, 530 F. Supp. 2d 616, 641 (S.D.N.Y. 2008) (emphasis supplied), quoting Wong Sun v. United States, 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963).

---

[6] Over strong objection by the defense, the Court believed that even though the search of Amerindo's offices in London was based, in part, on information obtained during the New York search, insufficient evidence was produced to show that the allegations in the London search request were tainted by the New York search (Karas Dec. at 120).

Furthermore, the Court stressed that the Defendants "need not satisfy an initial evidentiary burden in order to have the opportunity to demonstrate taint." 530 F. Supp. 2d at 642. Thus, the burdens borne by both sides in this controversy are: once the defendant has made a preliminary showing that certain evidence is tainted, the government must prove either that (1) the challenged evidence was not obtained by exploitation of the initial illegality; or (2) that it was obtained through means that are far enough removed from the original illegality as to be "purged" of the taint.

To meet this burden, the government must show that the connection between the challenged evidence and the illegal search is so attenuated as to completely dissipate the taint. Or, if the government can establish an independent source for the evidence, which is separate and apart from the unlawful search, the prosecution may prevail. Finally, the government may demonstrate that it inevitably would have discovered the evidence without the search.[7]

---

[7] See <u>Nix v. Williams</u>, 467 U.S. 431, 104 S. Ct. 2501 (1984).

8

**"Out, Damned Spot! Out, I Say!"**

Here, we submit that the government will be unable to meet its burden because, in reality, the evidence was truly derived from the "primary illegality" of the unconstitutional search and the derivative overbroad subpoena. And, as with Lady Macbeth's famous complaint[8], we urge that the taint from that illegality simply cannot be washed away.

On July 9, 2008, the government, by order of the Court, released a DVD containing 3,204 exhibits -- totaling 43,364 pages of documents. The government also supplied a listing of 78 witnesses to be called at trial. We will show that these exhibits and witnesses are deeply tainted by the illegal search of Amerindo's New York offices.

_____

[8] William Shakespeare, Macbeth, act V, sc. i, at 38, 39, 66.

9

However, at the outset, many of the documents on the government's exhibit list do not contain any indication as to how they were obtained by the prosecution.[9] Since these documents have absolutely no identifying demarcation in the "Bates Number" column, the defense is not able to tell where these records came from.[10] But, the defense has a good faith basis to believe that most of them were taken directly from Amerindo's New York offices during the search, or derived from information obtained as a result of the seizure.

For example, Exhibit 490 is a letter from Tara Colburn that was apparently faxed to Alberto Vilar in New York on February 3, 2003. Similarly, Exhibit 486 is a letter to Ms. Colburn sent from Amerindo's offices in New York. There is no indication in the exhibit list as to how the prosecution obtained this document. However, the inventory to the search warrant executed on May 26, 2005, indicates that a

_____

[9] See, e.g., Exhibits 301-555, 733-737, 751-1168, 1251-1360, 1609-1610, 1612-1614, 1616-1617, 1620-1803, 3204-3212, 3300(1)-3300-(89), 3301(1)-3301(83), 3396-3398, 4001-4503, 4701-4798, 5021-5023, 5101, 5201-5709, and 7001-7203.

[10] The defense seeks an index or guide from the government as to the abbreviations used in the Bates Number column of its exhibit list.

file labeled "Tara Colburn" was seized from cabinet H-1 of
Amerindo's New York offices. A copy of the relevant page of
the search inventory is attached as Exhibit A.

Those records, and all other documents relating to
Tara Colburn, were either obtained from the New York office
or as a result of the improper seizure of the "Tara
Colburn" file, which put the prosecution on notice that she
was a client. Significantly, Judge Karas struck Paragraph 4
of the warrant, which authorized the seizure of

> [c]urrent and former client lists,
> client files, investment brochures,
> marketing materials, investment
> advisory agreements, copies of
> correspondence sent to or received from
> clients including redemption requests
> received from clients, and other
> documents concerning or reflecting the
> identities and communications with
> clients who have investments in the
> Amerindo Brokerage Accounts (emphasis
> supplied).

Similarly, the Court struck Paragraph II.D of the subpoena, which tracked that language verbatim. As a consequence, we submit that <u>all</u> evidence and exhibits relating, in any way, to Tara Colburn should be precluded and/or suppressed as either direct evidence or the tainted proceeds of the New York search.[11]

The government should also be precluded from introducing any testimony or other evidence relating to Ms. Colburn at trial. This includes, without limitation, the calling of certain witnesses such as Nicholas Ciriello, who was Ms. Colburn's lawyer and has been identified as a witness by the government.

Our objections relating to the Colburn evidence is illustrative only. In fact, the defense urges that the New York search put the government on notice of Amerindo's other clients as well. Significantly, Judge Karas found that there was <u>insufficient</u> probable cause in the search

---

[11] This includes, but is not limited to, Exhibits 475-493, 1151-1168, and 4403. Furthermore, all documents relating to Tara Colburn that were obtained either through the London search or the subpoena are equally tainted by the primary illegality in New York. <u>See</u>, <u>e.g.</u>, Exhibits 2183-2194, 2216 and subdivisions, 2217, 3060, 3259, 3331 and subdivisions, 3388, 3410, 3436, 3439, and 4805.

warrant affidavit to justify the seizure of any client files, with the exception of Lily Cates and the Mayers (Karas Dec. at 38).

Similarly, documents such as Exhibits 1801 through 1803, relating to litigation between Bombo Sports & Entertainment LLC and Alberto Vilar, should be suppressed as fruit of the illegal search. Attached, as Exhibit B, is an inventory page indicating that the agents seized folders of correspondence and legal documents relating to Bombo Sports & Entertainment in the room designed as "Room L" of Amerindo's New York offices.

The defense also objects to documents whose sources have been identified in the exhibit list but are still tainted because they were derived from the unlawful search. These include, but are not limited to, exhibits obtained from Wilmington Trust (Exhibits 51-53)[12]; JP Morgan Chase (Exhibits 75-83); and Citibank (Exhibits 5051-5065).[13]

---

[12] Attached, as Exhibit C, is an inventory page indicating the seizure of Wilmington Trust check registers from the New York office.

[13] The identification of specific exhibits in this submission is not intended to limit the Defendant's

Significantly, Judge Karas suppressed all evidence seized pursuant to Paragraph 13 of the warrant, which related to

> [b]ank account statements, brokerage account statements, transaction records, wire transfer instructions and records, copies of checks sent to or received from clients, notes, ledgers, cash receipt journals, deposit tickets and records, and other documents reflecting or relating to movements of funds into or out of the Amerindo Brokerage Accounts.

Similarly, the Court revised the subpoena to eliminate Paragraph II.M, which called for the production of the same records. It is, therefore, improper for the government, which learned of the accounts and statements through the illicit search, to offer at trial the tainted fruit of its illegal actions.

---

suppression motion to those particular records. Rather, that particularization is illustrative only of the tainted evidence and by no means exhaustive.

14

Furthermore, the documents obtained from the Internal Revenue Service (Exhibits 8001-8015) should be barred because, in reality, the prosecution learned of Alberto Vilar's tax issues through records seized during the New York search. <u>See</u>, <u>e.g.</u>, Inventory page attached as Exhibit D detailing documents seized relating to an IRS audit. There was no authorization for the seizure of these tax records, nor were they covered by the subpoena.

### All Exhibits Derived from the New York Search, Dated Prior to May 26, 2000, Should be Precluded

The warrant and subpoena were also fatally overbroad because they lacked <u>any</u> temporal limitations. As underscored by Judge Karas, even though the allegations of wrongdoing date back no later than 2001, "[n]owhere in the Warrant or the attached Rider are the seizures limited in any way to a specific time frame" (Karas Dec. at 14-15, 38). Thus, the search violated the particularity requirement, which stands as a central premise of the Fourth Amendment (Karas Dec. at 44).

The subpoena was equally disabled by its failure to narrowly tailor its terms. As a consequence, the Court limited production of certain records to May 26, 2000, which was five years before the subpoena was issued (Karas Dec. at 97). Nevertheless, the government's exhibit list contains tainted records, derived directly from the New York search, that fall outside those strict time limitations and should be suppressed.[14]

The government's exhibits also include many tainted documents that do not seem to come within the ambit of the redacted search warrant or revised subpoena.[15] Therefore, unless the government can establish that these records were not contaminated by the illegal New York search, they should be precluded from exploiting them, in any way, at trial.

---

[14] See, e.g., Exhibits 2092, 2094, 2095, 2098, 2102, 2103, 2104, 2126, 2197-2203, 2205-2211, and 2234.

[15] See, e.g., Exhibits 734-735, 1401-1411, 2014-2018, 2213, and 2218-2219.

16

**The Government Should be Precluded From Calling Witnesses at Trial whose Identity and Testimony Was Obtained as a Result of the Illegal Search of Amerindo's Offices**

Evidence acquired pursuant to the grand jury subpoena also should be excluded.[16] The defense renews all of its objections to the subpoena. Sadly, in our judgment at least, when it became apparent that the search of the New York office was suspect, a subpoena was obtained in an effort to shore up the search.

Additionally, although the Court found that the prosecution had not reviewed seized evidence when the subpoena was prepared[17], to preserve the record in this matter, we urge that the federal agents had been searching through Amerindo's files and records for more than five hours before the subpoena, which added <u>eight new paragraphs</u>

---

[16] It is our understanding that Government Exhibits 2001 through 2258, bearing Bates Numbers with the letters "USR", refer to documents produced pursuant to the subpoena.

[17] <u>See</u> 530 F. Supp. 2d at 627.

17

(II.S through II.Z) to the sweeping text of the warrant, was faxed to defense counsel.[18]

The Defendant's grave concern over the scope of the search warrant and subpoena is particularly important now that we have received the government's lists of witnesses and exhibits. This is, in large measure, because it is clear that the government is now seeking to introduce testimony through a number of individuals whose identities must have been obtained through the illegal search of Amerindo's offices in New York.

These witnesses include, but are not limited to, the following former Amerindo employees: Carlos Castellanos, Daniel Chapey, Anthony Ciulla, Diane Cooper, Mathew Fitzmaurice, Joaquin Garcia-Larrieu, Jillian Greene, Robert Griffin, Susan Kim, Vanessa Laybourn, Darren Leavitt, David Mainzer, Albert Murray, Johanna Olsher, Kristen Robisch,

---

[18] The warrant only had 18 paragraphs whereas the subpoena, which tracked the language of the warrant for its first 18 paragraphs, contained additional clauses at the end that relate to items found at Amerindo's offices in New York, such as records concerning all current and former employees (see Paragraph II.Y).

Maxine Rye, Michael Sandifer, Michael Shattner, Dana Smith, and James Stableford.

There was no information relating to these employees in the search warrant application or the subpoena. Rather, the government learned their identities through records that they seized, which went well beyond the bounds of a proper search. See Inventory pages attached collectively as Exhibit E, indicating the seizure of confidential employee records.

Significantly, Judge Karas struck, in its entirety, Paragraph 15 of the search warrant, which authorized seizure of

> [d]ocuments reflecting information about any current or former Amerindo employee who had any contact with, or responsibility for the management of, redemptions from, or preparation of account statements for, any current or former Amerindo client that had a direct or indirect interest in the Amerindo Brokerage Accounts.

19

And, the Court also found that Paragraph II.O of the subpoena, which called for the same information, must be excised in its entirety.[19] Thus, all of this tainted evidence was obtained in direct violation of Alberto Vilar's rights guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

### The Defense Renews its Prior Objections

Finally, we are conscious of the prior rulings rendered in this case regarding the Defendants' suppression motions. However, to protect the record, Alberto Vilar reasserts and reaffirms all objections and issues previously raised and/or asserted by him or his co-Defendant, Gary Tanaka, concerning any evidence related to the search of Amerindo's offices in New York. We also now know that vital evidence was withheld from the Magistrate

---

[19] The only provision of the subpoena that, arguably, might authorize disclosure of the employees' identities is Paragraph II.Y, which, as modified, called for "[d]ocuments and records concerning all current and former employees of Amerindo" since May 26, 2000. The files seized by the government, as evidenced in Exhibit E, included records relating to terminated employees. However, since there are no dates included in the government's witness list, there is no way for the defense to know how or when the prosecution acquired this information.

concerning substantial repayments made to Lily Cates and the Mayers of their investments.

We urge, most respectfully, that the overbroad and faulty search warrant also prompted the obtaining of a subpoena. And, even as revised by the Court, the subpoena was defective and unjustified.

The defense also renews its objections to the admission of evidence from Amerindo's offices in London.[20] This is especially true since that search was, as previously urged, obtained in reliance upon evidence that was seized in New York pursuant to the constitutionally defective warrant.

Furthermore, this brief is limited to taint issues. Therefore, Alberto Vilar specifically reserves the right to object to the admissibility of the government's exhibits and other evidence on all other grounds including, but not limited to, relevance, privilege, hearsay and prejudice.

---

[20] The government, in its letter of July 15, 2008, indicates that Exhibits 3001-3489, 4601-4642, 4801-4840, and 4901-4999, consisting of approximately 16,000 pages, were obtained from the search of Amerindo's London offices.

In addition, the sheer volume of the government's exhibits -- comprising more than 43,000 pages of material -- served on defense counsel at the same time as the government's applications regarding privilege, 404(b) evidence, and Rule 15 depositions in London, have prevented the defense from providing any greater specificity regarding the tainted records in this case by the deadline set by the Court.[21] As a consequence, we most respectfully reserve our right to supplement these submissions regarding taint.

The Fourth Amendment safeguards the rights of Americans to be secure from unreasonable searches and seizures. And, due process protects defendants from enduring a trial that is overwhelmed by documents, records and witnesses that were obtained in violation of those carefully guarded constitutional rights. A rigid attachment to these principles is essential to ensure that defendants,

---

[21] The prosecution concedes that it did not narrowly tailor its exhibit list. And, instead, "multiple copies of key documents (including certain correspondence, account statements and internal memos) appear separately on the Government's exhibit list because they were obtained from multiple sources." See Letter from AUSA Marc Litt to the Court, dated July 15, 2008, at 3, n.3.

such as Alberto Vilar, are not forced to suffer from a trial that is tainted by the fruits of an unlawful search.

## Conclusion

For all these reasons, the government should be precluded from admitting into evidence at trial or otherwise exploiting in any way tainted evidence derived from the illegal search of the Amerindo offices in New York; a hearing should be conducted to investigate the claims raised by Alberto Vilar; the government should be directed to specify which documents were seized during the search of Amerindo's New York offices; and the Court should grant such further relief as is justified under all the circumstances of this case.

23

Alberto Vilar expressly joins in any and all motions of his co-Defendant Gary Tanaka to the extent that they are not inconsistent with the relief sought herein.

Dated:     New York, New York
           July 31, 2008
                        Respectfully submitted,


                        /s/_____
                        **Herald Price Fahringer (HF 3827)**
                        **Erica T. Dubno (ED 3099)**
                        Fahringer & Dubno
                        120 East 56th Street, Suite 1150
                        New York, New York 10022
                        (212) 319-5351

                        Counsel for Alberto William Vilar

24