Oral Argument is Requested

# United States District Court
# For the Southern District of New York

UNITED STATES OF AMERICA,

- against -

ALBERTO WILLIAM VILAR
and GARY ALAN TANAKA,

*Defendants.*

**MEMORANDUM IN SUPPORT OF DEFENDANT ALBERTO VILAR'S
MOTION TO PRECLUDE EVIDENCE OFFERED UNDER RULE 404(b) AND
EVIDENCE CLAIMED TO BE INEXTRICABLY INTERTWINED WITH THE
CHARGED CONSPIRACY**

Docket No. S3 05 Cr. 621 (RJS)
[Filed Electronically]

**Herald Price Fahringer (HF 3827)**
**Erica T. Dubno (ED 3099)**
Fahringer & Dubno
120 East 56th Street, Suite 1150
New York, New York 10022
(212) 319-5351

Counsel for Alberto William Vilar

July 31, 2008

# Table of Contents

Table of Authorities ........................................................................................ii

Introduction ............................................................................................... 1

The Admission of 404(b) Evidence Should Await the
Completion of the Defendants' Case ........................................................ 3

The 404(b) Evidence Should be Excluded From the
Defendants' Trial ...................................................................................... 7

The Government's Proof Fails to Show that the
Defendants' Alleged Conduct was Knowing and
Intentional .............................................................................................. 11

The Government's Proof Does Not Explain the
Relationship of Trust Between the Defendants ......................................... 13

The Second Circuit's Strong Admonition of the
"Danger of Unfair Prejudice Associated With the
Use of Similar Acts Evidence" Requires that this
Evidence be Excluded ............................................................................. 14

The Prejudice Far Outweighs Any Probative Value ............................................. 16

The Indictment is Fatally Defective where Multiple
Conspiracies Relating to Distinct Investments
Concerning Alleged Victims 1, 2, 3, 4, and 5, are
Impermissibly Joined as a Single Conspiracy Under
Count One ............................................................................................... 19

Conclusion................................................................................................ 23

# Table of Authorities

Huddleston v. United States,
    485 U.S. 681, 108 S. Ct. 1496 (1988)..........................................................................15

Kotteakos v. United States,
    328 U.S. 750, 66 S. Ct. 1239 (1946)..........................................................................19

States v. Garcia,
    291 F.3d 127 (2d Cir. 2002)........................................................................................11

United States v. Aminy,
    15 F.3d 258 (2d Cir. 1994)..........................................................................................11

United States v. Benedetto,
    571 F.2d 1246 (2d Cir. 1978)..................................................................................4, 14

United States v. Colon,
    880 F.2d 650 (2d Cir. 1989)..................................................................................4, 5,
                                                                                                    6, 14,
                                                                                                    15, 16,
                                                                                                    17

United States v. D'Amato,
    39 F.3d 1249 (2d Cir. 1994)........................................................................................21

United States v. Figueroa,
    618 F.2d 934 (2d Cir. 1980)........................................................................................15

United States v. Nachamie,
    101 F. Supp. 2d 134 (S.D.N.Y. 2000)..........................................................................7

**Introduction**

As authorized by the Court's scheduling order of May 5, 2008, Defendant Alberto Vilar offers this submission in support of his motion to preclude extrinsic evidence and in opposition to the government's letter of July 9, 2008, seeking to admit evidence of uncharged conduct at trial under cover of Rule 404(b) and on the grounds that it is "inextricably intertwined" with the conspiracy charge.[1]

Specifically, the government seeks to introduce proof relating to alleged (1) false statements made by Alberto Vilar to the Internal Revenue Service; (2) fraud concerning Elizabeth Knope's Rhodes Investment; (3) fraud concerning Lily Cates' Rhodes Capital Investment; and (4) misappropriation of $175,000 from Lily Cates' Amerindo-managed account at Bear Stearns.

---

[1] Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" (emphasis supplied).

However, as developed below, the Court should preclude the admission of this evidence because it is <u>not</u> "inextricably intertwined" with the conduct charged in the indictment and its prejudice far outweighs any probative value it may have. Moreover, for reasons set forth here, admissibility of this evidence should await the trial when its legal propriety can be better evaluated.

### The Admission of 404(b) Evidence Should
### Await the Completion of the Defendants' Case

When the ancient mapmakers reached the end of the earth, as it was then known, they wrote, "beyond here are dragons." Thus, seamen were left to speculate as to what dangers lay beyond the edge of the world. This dramatic metaphor is apt because the prosecution has ventured out into the dark world barred by 404(b). And, the dragons that dwell in any suspected wrongdoings that lie beyond the reaches of the indictment, which have never been scrutinized by a grand jury, are equally perilous.

Put more simply, the prosecution attempts to go outside the boundaries of the indictment by dragging into this case inadmissible and highly prejudicial evidence under the guise of "prior similar acts." However, such volatile accusations, which are uncharged, are bound to ignite the jurors' deepest prejudices and distract them from the allegations contained in the indictment.

3

And, it is for just this reason that Rule 404(b) <u>bars</u> such inflammatory evidence unless a defendant first triggers that evidence by asserting a defense contained in the rule. However, at this point in time, the government's concerns are conjectural. Until Alberto Vilar raises any of the defenses cataloged in Rule 404(b), it would be highly prejudicial to admit the uncharged crimes enumerated in the prosecutor's letter.

As recognized by the Second Circuit, the peril connected with the admission of 404(b) evidence is compounded when it is presented in the government's case-in-chief -- before its admissibility is properly evaluated. As a consequence, the Second Circuit has insisted that the admission of similar act evidence, offered to prove intent, should await the conclusion of the defendant's case. <u>See United States v. Colon</u>, 880 F.2d 650 (2d Cir. 1989); <u>United States v. Benedetto</u>, 571 F.2d 1246 (2d Cir. 1978).

The cogency of this rule derives from the acknowledgment that a trial judge can only evaluate the government's right to this volatile evidence after hearing the defendant's proof. As such, the timing of the Court's decision achieves paramount importance for several reasons.

First, the admissibility of similar act evidence is tied directly to the form of defense interposed by the defendant. Second, postponing the admissibility of such evidence is justified because of the strong likelihood of influencing the manner in which the defendant will mount his defense. Of course, a defendant's constitutional right not to testify at trial or to offer any proof based upon his presumption of innocence is fundamental.

Therefore, if the government is permitted to taint the trial with the dangerous 404(b) evidence in its case-in-chief, this may well effectively preempt the Defendant's constitutional right to remain silent because of an understandable feeling that he must testify to rebut the uncharged conduct. See, e.g., Colon, 880 F.2d at 661.[2] In

---

[2] There, the Court reasoned that it is "plausible that [the defendant] might not have testified if admission of the evidence had been delayed" and "[w]e cannot know what

5

Colon, the Second Circuit observed that had the defendant "not felt the need to battle against the similar acts evidence from the start, [he] might have been able to present a coherent defense that would have precluded the admission of the evidence." 880 F.2d at 662.

The same is true for Alberto Vilar, who has an absolute right to structure his defense without being hamstrung by the premature admission of 404(b) evidence. And, at the end of the trial, the Court may well agree that there is no basis for the admission of this evidence. As a consequence, we urge that, at the very least, a decision to admit this evidence should await the trial.

---

course the trial would have taken had the district court properly delayed any reference to the damaging similar acts evidence until after the defense presented its case." Id.

6

### The 404(b) Evidence Should be Excluded From the Defendants' Trial

If the Court elects to rule on the admissibility of the 404(b) evidence before trial, we submit that there is no basis for its admission under the circumstances of this case. Recognizing the severe limitations placed on such evidence, the prosecution struggles to have it admitted under several theories.

Specifically, the government urges that this proof is needed (1) to show that the charged conduct was knowing and intentional; (2) to establish a relationship of trust between Alberto Vilar and Gary Tanaka; and (3) to show that the uncharged act is "inextricably intertwined" with the charged conduct and is "necessary to complete the story of the charged crime."

Finally, the government asserts that the evidence is offered to rebut any defense by either Defendant that the other acted on his own in relation to the charged fraud (Litt's Letter, dated July 9, 2008, at 4). However, the prosecution fails to specify which statutory justification applies to the particular proof they seek to place in evidence. This scattergun approach does not satisfy the

7

strict requirements of 404(b). See <u>United States v.</u>
<u>Nachamie</u>, 101 F. Supp. 2d 134, 137 (S.D.N.Y. 2000) (the
government bears the burden of demonstrating the
admissibility of uncharged crimes).

For instance, the prosecution seeks to introduce,
during its case-in-chief, a letter from Alberto Vilar,
dated April 20, 2004, to the Internal Revenue Service, in
which it is claimed Mr. Vilar stated that Amerindo was
previously awarded a license by the Small Business
Administration (Litt's Letter, at 3). The prosecution urges
that this statement is false and should be admitted to show
that <u>two years earlier</u> -- in <u>2002</u> -- Mr. Vilar allegedly
made a similar assertion to induce Lily Cates to invest $5
million in an Amerindo SBIC. <u>Id.</u>

However, despite the government's urging, Mr. Vilar's
statement in 2004, concerning his income tax, is not, in
any way, intertwined with the charged conduct. Nowhere in
the indictment is there any allegation that Mr. Vilar
committed any offense involving the IRS. Thus, this
explosive proof will simply inject a new and inflammatory
element into the case -- namely that Defendant Vilar has
not paid his taxes and, thus, owes the federal government

8

money. <u>Nothing could be more prejudicial</u> in the eyes of tax paying jurors.

It is at once apparent that this perilous proof is <u>not</u> necessary to complete the story of the alleged crimes on trial. In fact, it is hard to imagine how a purported false statement made to the Internal Revenue Service two years later is necessary to put a mail and wire fraud conspiracy in context. Here, the indictment speaks loudly for itself.

Similarly unpersuasive is the government's assertion that Amerindo's alleged failure to disburse requested funds to Lily Cates and Elizabeth Knope from an Amerindo managed Rhodes Capital Investment account is inextricably intertwined with this case (Litt's Letter, at 1-2). Notably, the Rhodes Capital Investment is not included in the indictment and, in fact, is a completely separate investment vehicle than that charged. And, perhaps most importantly, Judge Karas found that there was no probable cause to search Amerindo's offices in New York for records relating to Rhodes! (Karas Dec., dated April 4, 2007, at 38, 64).

Furthermore, the prosecution offers no proof that these funds were misappropriated, other than the claim that they were not remitted upon request. However, this by itself is not proof of any illegality. Thus, there is no basis for the government's assertion that these business dealings constitute prior bad acts, much less that they are "inextricably intertwined" with the present charges.

In any event, we urge that proof pertaining to the Rhodes investment account is entirely improper where Judge Karas specifically suppressed all evidence relating to that investment vehicle, which was seized during the impermissible search of the Defendants' New York office. And, even if acquired pursuant to the ensuing grand jury subpoena, we urge this evidence is still inadmissible where the overbroad and faulty search warrant prompted the obtaining of a subpoena, which, even as revised by the Court, was defective and unjustified.

10

### The Government's Proof Fails to Show that the Defendants' Alleged Conduct was Knowing and Intentional

Moreover, the government's proof does not tend to show that the Defendants' alleged conduct was knowing and intentional. Certainly a person's statement to the Internal Revenue Service, claimed to be false, has absolutely nothing to do with an assertion that the individual defrauded investors by failing to make investments as intended by the clients.

This is especially so where Mr. Vilar's statement to the IRS was made <u>two years</u> after Ms. Cates elected to invest in an SBIC. Thus, the subsequent statement cannot possibly have any bearing on a claim that Mr. Vilar intended to defraud Ms. Cates in 2002, as claimed in the indictment.

Similarly, the Defendants' alleged transfer of funds from Lily Cates' Bear Stearns account and the alleged failure to remit funds requested by Ms. Cates and Ms. Knope from their respective Rhodes investments do not demonstrate an intent to defraud. This is because the mere transfer of

11

funds or failure to remit, does not, by itself, establish a criminal intent.[3] This is even more apparent here, where there is no allegation that the Defendants engaged in any improper conduct regarding the Rhodes funds. Moreover, since the indictment charges Mr. Vilar with defrauding Ms. Cates out of $5 million, proof relating to $175,000 is irrelevant or, at the very least, cumulative.

In addition, the conduct relating to the Bear Stearns account and the Rhodes Investment funds arose out of concededly different investment vehicles from the one charged in the indictment. Therefore, the prosecution has failed to identify any similarities between the conduct charged in the indictment and the alleged prior bad acts, which is indispensable for their admissibility under the "intent" prong of 404(b).[4]

_____

[3] The record will establish that substantial sums of money were returned to Lily Cates and other clients.

[4] See United States v. Aminy, 15 F.3d 258, 260 (2d Cir. 1994) (evidence of another act should not be admitted as proof of the defendant's knowledge or intent unless the other act is "sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge [or intent] inference advocated by the proponent of the evidence"). And if, as here, the other act evidence fails to provide a reasonable basis for inferring intent,

This evidence is also not relevant to prove any of the other discrete matters enumerated under Rule 404(b). Rather, this is merely an attempt by the prosecution to insinuate into the trial allegations of the Defendants' "bad character." Since the government has not indicated <u>how</u> the uncharged conduct is allegedly inextricably intertwined with the charges in the indictment, and because this proof will be exceedingly prejudicial, it should be precluded.

### The Government's Proof Does Not Explain the Relationship of Trust Between the Defendants

Finally, the government has failed to sustain its burden to demonstrate how the evidence sought to be admitted explains the "relationship of trust between defendants Vilar and Tanaka" (Litt's Letter, at 4). Indeed, we fail to see how Defendant Vilar's statement to the IRS has any connection to his relationship with Mr. Tanaka. As such, this proof is not admissible on that ground.

---

it should be rejected as irrelevant. <u>Id.</u> <u>See also</u> <u>United States v. Garcia</u>, 291 F.3d 127, 137 (2d Cir. 2002) (the government may not "offer, carte blanche, any prior act of the defendant in the same category of crime. The government must identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act").

13

The proof relating to the Bear Stearns account also does not implicate the Defendants' relationship with each other. The government simply states that $175,000 was transferred from Lily Cates' account and used to "pay down a margin call in an Amerindo trading account" (Litt's Letter, at 1). However, there is no mention, anywhere, of how the Defendants' "relationship" plays any part in this alleged conduct. Similarly vague are the allegations relating to the Rhodes investment. The government has failed to demonstrate how the alleged failure to timely disburse funds from an investment implicates the Defendants' relationship.

### The Second Circuit's Strong Admonition of the "Danger of Unfair Prejudice Associated With the Use of Similar Acts Evidence" Requires that this Evidence be Excluded

The Second Circuit has repeatedly expressed "concern about the danger of unfair prejudice associated with the use of similar acts evidence." See Colon, 880 F.2d at 656. The Circuit's acute alarm rests on the obvious: there is an irresistible human tendency to believe that "if he's done it before, he'll do it again." See United States v. Benedetto, 571 F.2d 1246, 1248-49 (1978) (the true danger is that once the jury learns of a defendant's collateral

14

serious criminal conduct, it will "impermissibly infer that he is a bad man likely to have committed the crime for which he is being tried") (emphasis supplied).

As a result, the Second Circuit has cautioned trial judges that in determining whether to admit such hazardous evidence, they must "exercise great care to ensure that juries are not permitted to conclude that because a defendant has committed a similar offense before, he or she therefore has a criminal propensity sufficient to justify conviction in the case at hand." Colon, 880 F.2d at 656. And, because of the perils that surround what many consider to be the most devastating evidence of all, there is a remarkably high rate of reversals of convictions where such uncharged crime evidence is admitted against a defendant.[5]

---

[5] See, e.g., Colon, 880 F.2d at 662 ("the district court's admitting of the evidence during the government's case-in-chief was reversible error); United States v. Mohel, 604 F.2d 748, 751 (2d Cir. 1979); United States v. Gilan, 967 F.2d 776 (2d Cir. 1992). This list is illustrative only and by no means exhaustive.

15

## The Prejudice Far Outweighs Any Probative Value

In considering whether certain evidence is admissible under the narrow precepts of Rule 404(b), a trial judge must determine whether the <u>danger of unfair prejudice</u> outweighs any probative value of the evidence in view of the availability of other means of proof and other factors appropriate for assessing the decision required by Rule 403.[6] <u>See</u> <u>Huddleston v. United States</u>, 485 U.S. 681, 688, 108 S. Ct. 1496, 1500 (1988). Evidence is prejudicial when it tends to have some adverse effect on a defendant beyond tending to prove the fact or issue that justified its admission. <u>See</u> <u>United States v. Figueroa</u>, 618 F.2d 934, 943 (2d Cir. 1980).

The harm from the presentation of hazardous proof, such as Mr. Vilar's alleged false statement to the IRS, cannot be overstated. The jury is bound to speculate as to whether he owed taxes to the Internal Revenue Service. And, jurors typically view evidence that one has lied to or

---

[6] Federal Rule of Evidence 403 provides, in pertinent part, that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues ... or needless presentation of cumulative evidence."

cheated the IRS with great alarm.

As such, testimony relating to Mr. Vilar's trouble with the IRS will undoubtedly inflame the jurors and make it impossible for them to render an unbiased verdict. This uncharged act is even more prejudicial in light of the charge in the indictment that Victim No. 1 was defrauded by allegations that her funds were invested in an SBIC venture.[7]

In addition, the prejudice regarding the alleged misappropriation of Ms. Cates' funds from the Bear Stearns account and the alleged failure to remit clients' funds from the Rhodes investment will also be devastating to the Defendants. Here, there is a grave risk that the jury will not be able to separate the charged conduct from the uncharged acts.

---

[7] See Colon, 880 F.2d at 656 (the trial court must determine whether the evidence (1) is offered for a proper purpose; (2) is relevant to an issue in the case; and (3) satisfies the probative-prejudice balancing test).

17

And if, as we urge, it is error to receive in evidence this alarming proof, there is absolutely no way that such a critical error could ever be deemed harmless. Rather, the profound prejudice from the admission of such highly prejudicial proof will likely doom Alberto Vilar to conviction and deny him the right to due process. No measure of instructions can salvage this prejudice if the trial is infected with this lethal proof.[8] Thus, given the minimal probative value of this evidence, and the realization that the prejudice to the Defendant is immeasurable, the proof should be excluded.

Finally, the prosecutor's application ought to be rejected under the restraining force of Rule 403. The uncharged crimes were not done in furtherance of any conspiracy and, certainly, they are not inextricably intertwined with the evidence regarding the charged offenses. The taint from those uncharged crimes will bleed into the trial so heavily that it will be uncertain whether

---

[8] See Colon, 880 F.2d at 655 (conviction reversed even though the district court instructed the jurors, on two occasions, that the evidence could not be considered as a reflection on the defendant's character or propensity to commit the charged crime, but rather only as evidence of intent, knowledge or motive).

18

the Defendant was convicted of conduct that was the subject

of the grand jury's indictment or the 404(b) evidence.

### The Indictment is Fatally Defective where Multiple Conspiracies Relating to Distinct Investments Concerning Alleged Victims 1, 2, 3, 4, and 5, are Impermissibly Joined as a Single Conspiracy Under Count One

The government's 404(b) evidence, which intends to

broaden the scope of the proof at trial, also triggers

certain <u>jurisdictional</u> issues, which can be raised at any

time. The top-heavy, as well as monstrous and sprawling,

conspiracy contained in Count One is jurisdictionally

defective because it alleges at least <u>five separate</u>

<u>conspiracies</u> in a <u>single</u> count, covering a time period of

19 years!

This is in direct defiance of the admonitions

contained in <u>Kotteakos v. United States</u>, 328 U.S. 750, 66

S. Ct. 1239 (1946), and Rule 7 of the Federal Rules of

Criminal Procedure. This is especially so where Victims 1,

2, 3, 4, and 5, all acted through a distinct transaction,

at different times and places, as well as under

dramatically dissimilar circumstances.

19

This jurisdictional issue is gravely compounded by the prosecutor's avowed intention to pour into this overly broad conspiracy count other uncharged wrongful conduct because it is claimed that these acts are "inextricably intertwined" with the conspiracy. We urge, most respectfully, that under no circumstances imaginable, can all these distinct forms of alleged criminal conduct be considered an integral part of a single conspiracy.

Moreover, whether other conduct is "inextricably intertwined" with the charged conduct is for the <u>grand jury</u> to determine -- not the prosecutor. Otherwise the prosecutor becomes the charging force in place of the grand jury, and that is constitutionally intolerable. Thus, because Count One is jurisdictionally defective, it should be dismissed.

Another issue of <u>jurisdictional</u> concern involves Counts 2 through 12, which have been rendered defectively duplicitous because virtually all of the <u>conspiracy</u> allegations -- more than 41 paragraphs of allegations in Count One -- have been incorporated into <u>each</u> of the

20

substantive counts of the indictment.[9] Of course, a conspiracy and a substantive charge cannot co-exist in a single count.[10] This means, for example, that the substantive mail and wire fraud counts now have five victims in each count!

This will present dramatically serious issues at the time of trial, including the jury charge and the receiving of a verdict. Prosecutors court calamity when indictments are so loosely written as to harbor multiple charges within a single count. As a consequence, the incorporated conspiracy allegations have gravely disabled Counts 2 through 12, rendering them fatally and jurisdictionally defective.

---

[9]  These paragraphs include subparts designated by a, b, c, etc. All the overt acts have been incorporated in each of the substantive counts, including the false statement charged in Count 12.

[10]  Fed. R. Crim. P. 7(c)(1), which authorizes the incorporation by reference of certain allegations, does not authorize the drafting of duplicitous counts whereby a defendant is effectively charged with two distinct criminal acts within a single count.

And, finally, each and every one of the investments identified in the indictment is governed by an agreement, which, although oral in most cases, contained the terms of the investment. Therefore, any contentions regarding refunds of the investments are regulated by contractual law and cannot be considered criminal under the governing law of the Second Circuit. See United States v. D'Amato, 39 F.3d 1249, 1261 n.8 (2d Cir. 1994).

## Conclusion

Today, more than ever, defendants are terrorized by the manifest dangers that accompany evidence of other crimes, wrongs or acts variously branded as "bad acts," "uncharged crimes" or "similar act evidence." Recruited from outside the realm of the indictment, this lethal proof carries with it an enduring prejudice for the defense.

Here, the Court should deny preclude the extrinsic evidence that the government seeks to admit pursuant to its 404(b) letter of July 9, 2008, and grant such other relief as may be relevant under the circumstances, including a hearing. In addition, Alberto Vilar expressly joins in any and all motions and arguments of his co-Defendant, Gary Tanaka, to the extent that they are not inconsistent with the relief sought herein.

Dated:     New York, New York
           July 31, 2008

                    Respectfully submitted,

           /s/ _____
               Herald Price Fahringer, Esq. (HF 3827)
               Fahringer & Dubno, Esq. (ED 3099)
               120 East 56th Street, Suite 1150
               New York, New York 10022
               (212) 319-5351

                         23