UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

────────────────────────────────

UNITED STATES OF AMERICA

   -v-

ALBERTO WILLIAM VILAR and
GARY ALAN TANAKA,

                       Defendants.

No. 05 Cr. 621 (RJS)
MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

     Defendants Alberto William Vilar ("Vilar") and Gary Alan Tanaka ("Tanaka") have moved to exclude certain evidence of "other acts" or allegedly inextricably intertwined conduct that the Government intends to introduce in its case-in-chief at trial in this matter, which is now scheduled for September 22, 2008. For the following reasons, Defendants' motions are denied in part, and decision on the remaining portions is deferred.

## I. BACKGROUND

     The Court presumes the parties' familiarity with the facts and procedural history of this action, and, therefore, recites only those facts necessary to resolve the instant motion. In addition, in the "Discussion" section of this Memorandum and Order, the Court recites certain additional facts relevant to specific portions of this opinion.

     The charges in the Superseding Indictment stem from Defendants' alleged involvement in a conspiracy, spanning nineteen years, to defraud investors whom Amerindo advised. Among other things, the Government intends to introduce evidence to show that Defendants persuaded their victims, including Lily Cates ("Cates"), to invest in a variety of investment instruments, including the Amerindo SBIC Investment Fund LP ("SBIC" Investment) and the Guaranteed Fixed Rate Deposit Account Program ("GFRDA" Investment). The Government alleges that, rather than

investing the money as promised, Defendants instead diverted the funds to their own use, and made numerous misrepresentations to the victims to conceal their fraud.

In order to prove the charges alleged, the Government intends to introduce evidence to show that in 2003, as part of the conspiracy, Defendants fraudulently transferred funds from Cates's account at Bear Stearns (the "Cates Account") into another Amerindo-controlled Bear Stearns account (the "2003 Transfer"); the Government alleges that those funds were later transferred to an account controlled by Defendant Vilar.

The Government, in its July 9, 2008 notice of evidence of extrinsic acts (the "Notice"), expressed its intention to introduce, as direct evidence of the conspiracy, evidence pertaining to an alleged 2004 fraudulent transfer from the Cates account to an Amerindo-controlled account (the "2004 Transfer"), as well as evidence pertaining to another investment Cates made in an investment vehicle called Rhodes Capital Group, Ltd. (the "Rhodes Capital Investment"). (Notice at 1-2.) In addition, the Government gave notice of its intention to introduce evidence of certain misstatements allegedly made by Defendant Vilar to the IRS (the "IRS Statements"). (Notice at 3-4.) Defendants move to exclude the proffered evidence, and the Government now seeks an *in limine* order admitting the other acts evidence, arguing that evidence of the 2004 Transaction and the Rhodes Capital Investment is admissible as these events are inextricably intertwined with the charged crimes. (Gov't Mem. at 9, 14-15.) The Government also urges that the 2004 Transaction, the Rhodes Capital Investment, and the IRS Statements be deemed admissible under Rule 404(b) as evidence of the Defendants' relationship of trust, to rebut any defense by either Defendant that the other Defendant acted on his own, and as evidence of Defendants' knowledge, intent, or absence of mistake with respect to the conduct charged in the indictment. (Gov't Mem. at 11-19.)

Defendants move to exclude the evidence of the 2004 Transfer, the Rhodes Capital Investment, and the IRS Statements on several grounds. Defendants argue that this evidence is not inextricably intertwined with the charged conduct and is inadmissible under Rule 404(b) as well as unfairly prejudicial under Rule 403 of the Federal Rules of Evidence.[1] Defendant Tanaka further asks that, should this Court find the IRS Statements to be admissible, the jury be given a limiting instruction directing it to consider the IRS Statements only against Defendant Vilar.

## II. DISCUSSION

### A. Legal Standard

The Second Circuit has repeatedly held that "'evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'" *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997)); *see also United States v. Towne,* 870 F.2d 880, 886 (2d Cir. 1989). In such circumstances, the evidence of uncharged conduct is appropriately treated as "'part of the very act charged,' or, at least, proof of that act." *United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007) (quoting *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992)). Evidence that is inextricably intertwined with charged conduct must nonetheless satisfy the balancing test set forth

---

[1] The Notice, in addition to the three categories of evidence described above, included a fourth category related to transactions with an Amerindo client by the name of Elizabeth Knope. (Notice at 2.) In its opposition to the instant motion, the Government indicated that it no longer intends to present that evidence; consequently, the Knope evidence is not discussed in this opinion. (Gov't Mem. at 17 n.2.)

in Federal Rule of Evidence 403. *See United States v. Graziano*, 558 F. Supp. 2d 304, 320 (E.D.N.Y. 2008) (applying Rule 403's balancing test to evidence deemed inextricably intertwined).

Even if not relevant as intrinsic evidence, evidence of other acts may be admissible pursuant to Rule 404(b) of the Federal Rules of Evidence. Although Rule 404(b) provides generally that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith," such evidence " may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). The Second Circuit has adopted an "inclusionary" approach to Rule 404(b) evidence, "allowing the admission of such evidence for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test" of Rule 403. *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994). Should evidence be deemed admissible under Rule 404(b), "upon request, the district court must give an appropriate limiting instruction to the jury." *United States v. Pitre*, 960 F.2d 1112*,* 1119 (2d Cir. 1992).

B.  Analysis

1. The 2004 Transfer

In the instant case, the Court is persuaded that evidence of the 2004 Transfer is inextricably intertwined with, and necessary to complete the story of, the charged conspiracy.

As an initial matter, the 2003 and 2004 Transactions bear strong similarities to one another. The third Superseding Indictment alleges that in September of 2003, the Defendants transmitted a letter of authorization ("LOA") bearing Cates's forged signature to Bear Stearns, directing the brokerage to transfer $250,000 from the Cates account to an Amerindo-controlled Bear Stearns

account. (Indict. ¶ 28.) The indictment further alleges that shortly thereafter, Defendants transmitted another LOA to Bear Stearns, this time transferring $250,000 from the Amerindo-controlled account to a personal account at Wilmington Trust Bank belonging to Defendant Vilar (*Id.* ¶ 29), and that those funds were spent in part on Defendant Vilar's personal expenses. (*Id.* ¶ 30.) With regard to the 2004 Transfer, the Government seeks to introduce evidence that in August of 2004, the Defendants caused a wire instruction bearing Cates's forged signature to be sent to Bear Stearns, directing the transfer of $175,000 to another Amerindo-controlled trading account. (Gov't Mem. at 7.) The fraudulently transferred $175,000 was then used to pay down a margin call in the Amerindo account. (*Id.* at 8.) Contrary to Defendants' contention (*see* Vilar Mem. at 12), the 2003 and 2004 Transfers are similar along a number of dimensions. First, they involve the same victim; second, each of the transfers employed the same means, including the forging of Cates's signature; and third, the two transfers are relatively close temporally. These facts militate in favor of admissibility. *See, e.g.*, *United States v. Chen Xiang*, No. 02 Cr. 271(RCC), 2003 WL 21180400, at *3 (S.D.N.Y. May 20, 2003) (finding that evidence of certain similar uncharged conduct was necessary background to charged robberies, where both involved "the conspiracy to commit and the commission of extortions, robberies or burglaries with several accomplices, and the use of firearms during the commission of those crimes").

Furthermore, the Government has proffered that, in the course of communication with Cates and her attorney about the 2004 Transfer, Defendants made a number of misrepresentations concerning the charged crimes, and that those misrepresentations form a crucial part of the evidence to be used at trial. (Gov't Mem. at 9-10.) Further, other communications between Cates or her representatives and Amerindo about the charged crimes, including the SBIC Investment, touched on

the 2004 Transfer, as do documents relating to the charged crimes. (*Id.* at 10.) On the basis of these proffered facts, and assuming the Government could properly lay the foundation for such evidence at trial, the Court finds that the 2004 Transfer is inextricably intertwined with and necessary to complete the story of the charged conduct. *See, e.g.*, *United States v. Chan*, No. 97 Cr. 1053 (PKL), 2002 WL 46994, at *3 (S.D.N.Y. Jan. 14, 2002) (finding prior acts inextricably intertwined where the "proffered evidence regarding defendant's [prior acts] overlaps with evidence the government intends to introduce in order to prove defendant's guilt with respect to the charges in the indictment").

Defendants' contention that the 2004 Transfer, even if inextricably intertwined, should nonetheless be excluded under Rule 403 is without merit. (*See* Vilar Mem. at 16-19.) The Court concludes that, contrary to Defendants' contention, evidence of the 2004 Transfer is probative of the circumstances surrounding the charged conduct, and further, would not be unfairly prejudicial. Where, as here, the conduct at issue is no "more sensational or disturbing" than the crimes charged, there is no prospect of unfair prejudice resulting from the introduction of the other act evidence. *United States* v. *Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990), *cert. denied*, 499 U.S. 940 (1991); *see also Chen Xiang*, 2003 WL 21180400, at *3 (finding no unfair prejudice where the "proffered evidence does not involve conduct that is any more inflammatory than the charged offenses" and "the charged and uncharged crimes are largely identical in plan and execution"). Consequently, exclusion of evidence related to the 2004 Transfer pursuant to Rule 403 is not warranted.

2. The Rhodes Capital Investment

The Court likewise finds that evidence of the Rhodes Capital Investment is necessary to complete the story of, and is inextricably intertwined with, the charged crimes.

The Superseding Indictment alleges that, as part of the conspiracy to defraud, Defendants induced victims, including Cates, to invest in certain investment vehicles, then "failed to redeem the investments upon the investors' requests." (Indict. ¶ 6; *see also id.* ¶ 34 (stating that "[i]nstead of redeeming the GFRDA investments upon certain GFRDA investors' requests . . . [Defendants] discouraged certain of the [investors] from redeeming their GFRDA investments").) The proffered Rhodes Capital Investment evidence shows that in 1989, Cates invested $250,000 in Rhodes Capital. (Gov't Mem. at 14.) Beginning around 2004, Cates or her representatives made several requests for a disbursement of $250,000 from Cates's Amerindo portfolio, including, on one occasion, that the money be disbursed specifically from her Rhodes Capital account. (*Id.*) In each case, Defendants allegedly refused to disburse the funds, despite having represented to Cates and other investors that the Rhodes Capital Investment had been largely liquidated. (*Id.*) As discussed in more detail in Part II(B)(1), *supra*, evidence of similar acts is often deemed necessary to complete the story of the charged crimes. *See Chen Xiang*, 2003 WL 21180400, at *3. Here, as part of the charged conspiracy, Defendants are alleged to have failed to redeem investments upon request.

Further, the Government submits that much of the correspondence between Cates's representative and Defendants pertaining to the SBIC Investment also contains references to Cates's request for a $250,000 disbursement from her Rhodes Capital account, (Gov't Mem. at 7), and that Cates's account statements from Defendants, which the Government intends to introduce, include references to both the Rhodes Capital Investment and other investments implicated in the charged

crimes. (*Id.* at 15).  Under these circumstances, the Court finds that the Rhodes Capital Investment evidence is both inextricably intertwined with the charged crimes as well as sufficiently similar to them so as to be "necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 44.

As with the 2004 Transfer, Defendants' contention that the Rhodes Capital Investment should be excluded pursuant to Rule 403 is unfounded.  Both the Rhodes Capital Investment and the charged crimes involve Defendants' failure to redeem funds entrusted to them by clients.  The conduct relating to the Rhodes Capital Investment is thus no "more sensational or disturbing" than the charged conduct, and as such is not unfairly prejudicial. *See Roldan-Zapata*, 916 F.2d at 804.

### 3. The IRS Statements

Finally, the Government seeks to offer evidence that, in an April 2004 letter to the IRS, Defendant Vilar made certain misrepresentations regarding the SBIC Investment and Amerindo's application for and receipt of a Small Business Administration ("SBA") license. (Gov't Mem. at 17-18.)  According to the Government, the statements made to the IRS were very similar to misrepresentations made by Defendants to Cates in 2003 in connection with the SBIC Investment. (Indict. ¶ 26.)  Accordingly, the Government asserts that Vilar's statements to the IRS should be admitted to demonstrate his knowledge and intent of the charged conspiracy pursuant to Rule 404(b). *United States v. Nachamie*, 101 F. Supp. 2d 134, 140 (S.D.N.Y. 2000).  Defendants disagree, and argue that the evidence of the IRS Statements, even if probative, should be excluded as unfairly prejudicial pursuant to Rule 403. (*See* Vilar Mem. at 16-19, Tanaka Mem. at 5-6.)

The Court is not persuaded, based on the parties' submissions to date, that it can make a determination regarding whether the probative value of the proffered IRS Statement evidence is substantially outweighed by the risk of unfair prejudice.  Accordingly, a decision on the admissibility

of the IRS Statements is premature at this time. The Court will hear oral argument from the parties on the issue of the IRS Statements, and at that time will make a further determination.

## III. CONCLUSION

For the foregoing reasons, Defendants' request to exclude evidence of the 2004 Transfer and the Rhodes Capital Investment is DENIED. The Court reserves decision on Defendants' request to exclude the IRS Statements until oral argument is heard.

SO ORDERED.

Dated:   New York, New York
         September 4, 2008

>
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE