UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

ALBERTO WILLIAM VILAR and
GARY ALAN TANAKA,

Defendants.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  8|26|10

No. 05 Cr. 621 (RJS)
MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

On April 7, 2010, the Court entered orders imposing forfeiture on Defendants Alberto
Vilar and Gary Tanaka in the amount of $54,351,159. These orders of forfeiture followed (1)
Defendants' sentencings on February 5, 2010, at which time the Court announced that it was
imposing forfeiture as part of Defendants' sentences and ruled on nearly all of the issues in
dispute, and (2) the entry of judgments shortly thereafter indicating that the Court would
announce the exact amount of forfeiture following the submission of proposed orders.

Now before the Court is the government's motion to amend the forfeiture judgments to
include substitute property. Other than his prior objections to the imposition of forfeiture,
Tanaka has no objection to the government's motion. Vilar, however, argues that the Court's
original imposition of forfeiture did not comply with the Federal Rules of Criminal Procedure
and that there is no valid forfeiture judgment to amend. He has thus cross-moved to vacate the
post-conviction restraining order entered on October 26, 2009.

Although the Court concludes that it had authority to enter forfeiture orders on April 7,
it also concludes that it inadvertently erred in imposing forfeiture in the amount sought by the
government after ruling at sentencing that it would impose forfeiture in a lesser amount.

Accordingly, the Court will reserve its decision on both motions and direct the parties to address whether the forfeiture judgments may be validly amended pursuant to Federal Rule of Criminal Procedure 36.

## I. Procedural History

On August 15, 2006, a grand jury returned a twelve-count superseding indictment containing forfeiture allegations pursuant to 18 U.S.C. § 981(a)(1)(C), § 18 U.S.C. § 982, and 28 U.S.C. § 2461. On November 19, 2008 — after a nine-week trial — the jury returned a verdict finding Vilar guilty of all twelve counts and Tanaka guilty of counts one, three, and four: conspiracy, securities fraud, and investment-adviser fraud. Recognizing that forfeiture would be a component of each Defendant's sentence, the government on October 22, 2009 moved for the entry of a post-conviction restraining order. On October 26, 2009, with the consent of Vilar and Tanaka, the Court entered the order.

Sentencing proceeded on February 5, 2010, at which time the Court ruled on nearly all of the disputed issues pertaining to forfeiture; it thus directed the parties to submit proposed orders of forfeiture for its review. As the Court explicitly reserved its ruling on a small number of issues pertaining to forfeiture, it indicated in both Defendants' judgments that it was imposing forfeiture in an "amount to be determined by a separate order." It also issued an order on February 8, 2010 directing the parties to submit proposed orders of restitution and forfeiture by March 1, 2010, intending that the parties would each state their divergent views regarding the two issues on which the Court had not ruled.

The Court received proposed orders from the government on March 1, 2010, and it received letters from Defendants on March 4, 2010 (Tanaka) and March 5, 2010 (Vilar), raising

2

certain objections to the government's orders. On April 7, 2010, the Court entered the proposed orders in substantially the form sought by the government.

On April 12, 2010, Vilar submitted a motion pursuant to Federal Rule of Criminal Procedure 35(a), arguing that the money-laundering laws do not permit a district court to impose an *in personam* forfeiture judgment. By Order dated April 13, 2010, the Court denied the motion.

## II. Discussion

Vilar contends that the forfeiture order imposed on April 7, 2010 is a nullity because (1) a district court must determine the precise amount of a forfeiture judgment at the sentencing hearing and include that figure in the judgment, and (2) the Court did not find a sufficient nexus between the offenses of conviction and the property to be forfeited. As explained herein, the Court finds that it had authority to order forfeiture on April 7. Nevertheless, having closely reviewed the record as it pertains to forfeiture in this matter, the Court further finds that it incorrectly calculated the forfeiture amount in its August 7, 2010 Order, insofar as it failed to ensure that the written judgment reflected the oral sentence.

### A. Failure To Specify Forfeiture Amount at Sentencing and in the Judgment

Vilar first contends that there is no valid forfeiture judgment to amend because a district court must determine the precise amount of a forfeiture judgment at the sentencing hearing and include that figure in the judgment. For this proposition, he relies on decisions holding that a court has no jurisdiction to create a new forfeiture award following sentencing. *See, e.g., United States v. Petrie*, 302 F.3d 1280, 1284 (11th Cir. 2002) (holding, in a case where the Court did not mention forfeiture at sentencing and the judgment merely stated that the

3

defendant "was subject to" forfeiture, that the district court lacked jurisdiction to enter a forfeiture order six months later); *United States v. Pease*, 331 F.3d 809, 811 (11th Cir. 2003) (holding, in a case where the judgment "was entirely silent as to forfeiture," that the district court could not later amend the judgment to include forfeiture pursuant to Federal Rule of Criminal Procedure 36).[1]

This case presents a different factual predicate, as the Court was explicit that it was imposing forfeiture both orally and in the judgment, and it spent considerable time with the parties discussing the parameters of the forfeiture order that it intended to enter. The Court's procedure in imposing forfeiture — to which no party objected until months later — finds support in the 2009 Amendments to the Federal Rules of Criminal Procedure. Specifically, the Rules provide:

> If, before sentencing, the court cannot identify all the specific property subject to forfeiture *or calculate the total amount of the money judgment*, the court may enter a forfeiture order that:
>
>   (i)  lists any identified property;
>
>   (ii) describes other property in general terms; and
>
>   (iii) states that the order will be amended under Rule 32.2(e)(1) when additional specific property is identified *or the amount of the money judgment has been calculated*.

Fed. R. Crim. P. 32.2(b)(2)(C) (emphasis added). Rule 32.2(e)(1) then provides that

> On the government's motion, the court may *at any time* enter an order of forfeiture or amend an existing order of forfeiture to include property that

---

[1] *Pease* represented the minority view of the Circuits even prior the 2009 amendments to the Federal Rules of Criminal Procedure. *See United States v. Quintero*, 572 F.3d 351, 353 (7th Cir. 2009); *United States v. Bennett*, 423 F.3d 271, 277-81 (3d Cir. 2005); *United States v. Mitchell*, 70 F. App'x 707, 713-16 (4th Cir. 2003); *United States v. Hatcher*, 323 F.3d 666, 672-74 (8th Cir. 2003). The 2009 amendments adopt the majority view that a district court's failure to include a forfeiture award in the judgment may be corrected under Rule 36 "at any time." *See* Fed. R. Crim. P. 32.2(b)(4)(B); *see also United States v. Holder*, No. 08 Cr. 143 (AAT), 2010 WL 478369, at *3 (M.D. Tenn. Feb. 4, 2010).

> (A) is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered.

Fed. R. Crim. P. 32.2(e)(1) (emphasis added). The amended rules also provide that a district court may correct its failure to include the forfeiture order in the judgment "at any time" under Rule 36. *See* Fed R. Crim. P. 32.2(b)(4)(B).

In this case, the Court both orally and in the judgment indicated that forfeiture was being imposed, and at sentencing, it discussed the parameters of the award while reserving only on two issues. Other than the distinguishable cases noted above, Vilar has cited no authority suggesting that the procedure was improper. In following this procedure without objection, counsel for both defendants and the government clearly believed that it was not.

Even if it were assumed that the Court erred by failing to calculate the precise amount of the forfeiture order at sentencing, moreover, Vilar is mistaken to presume that this error would entirely deprive the Court of the authority to order forfeiture and thus grant him a multimillion-dollar windfall. *See, e.g., Young v. United States,* 489 F.3d 313, 316 (7th Cir. 2007) (holding that a district court's failure to incorporate the forfeiture order in the judgment did not affect its validity because of the Circuit's "disagreement with the conclusion that a failure to incorporate the order of forfeiture into the judgment of conviction undermines a criminal forfeiture"); *United States v. Yeje-Cabrera,* 430 F.3d 1, 14 (1st Cir. 2005) (suggesting that a violation of Rule 32.2 would only result in vacatur of the forfeiture where "the violation bespoke a lack of notice and opportunity for the defendant and third parties to object to a proposed forfeiture," but not where, as in that case, "the portion of Rule 32.2 which was violated . . . is largely a housekeeping rule and does not itself go to any fundamental rights of defendants"); *United*

*States v. Mitchell*, 70 F. App'x 707, 714-15 (4th Cir. 2003) ("[T]he failure to incorporate the forfeiture order into the judgment of conviction and sentence was simply a ministerial error that did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.").

The conclusion that any failure to include the precise amount of the forfeiture award in the judgment does not affect the subsequent forfeiture order's validity is buttressed by the Supreme Court's recent decision in *Dolan v. United States*. 130 S. Ct. 2533 (2010). In *Dolan*, the district court imposed restitution under the Mandatory Victims Restitution Act beyond the ninety-day window provided by the statute. *See* 18 U.S.C. § 3664(d)(5). The Supreme Court held that "[t]he fact that a sentencing court misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution." *Id.* at 2539. Rather, the Court explained, a defendant who will be harmed by a delay in the imposition of restitution "can usually avoid additional delay simply by pointing to the statute and asking the court to grant a timely hearing." *Id.* at 2542. To hold otherwise, the Court noted, would inappropriately limit "a judge who (currently lacking sufficient information) wishes to leave open, say, the amount of a fine, or a special condition of supervised release. In the dissent's view, the entry of any such judgment would immediately deprive the judge of the authority to later fill in the blank." *Id.²*

---

² The *Dolan* opinion implicitly recognizes that its analysis applies to both restitution and forfeiture, as the following direct quotation makes clear:

> [P]rovisions to which the dissent refers are silent about whether restitution can or cannot be ordered after an initial sentencing. See, *e.g.*, §§3551(b), (c) ("A sanction authorized by [criminal *forfeiture* and restitution statutes] may be imposed in addition to the [rest of the] sentence").

*Dolan*, 130 S. Ct. at 2543 (emphasis added).

Here, the Court left the blank unfilled after consulting with the parties about its planned procedure and clearly indicating at sentencing that it was imposing forfeiture as part of Defendants' sentences. Accordingly, the forfeiture order entered on April 7, 2010 is not a "nullity."

### B. The Size of the Forfeiture Order

Although the April 7 forfeiture orders are not rendered nullities because they were entered after sentencing, in reviewing the transcript of sentencing and the forfeiture orders entered on April 7, the Court concludes that it committed an inadvertent clerical error in imposing the forfeiture orders in the form provided by the government.

Both in its pre-sentencing submissions and at sentencing, the government sought forfeiture in the amount of $80,473,840. As explained on page 92 of the government's October 2009 sentencing memorandum, $69,795,881 of the total amount pertained to the following investors:

| Investor | Amount |
|---|---|
| Mayers | $5,800,000 |
| Crain | $400,000 |
| Dextra Holdings Ltd | $25,000,000 |
| Tara Colburn | $1,000,000 |
| Lynx/Brafah Bird | $6,000,000 |
| Paragon Ventures | $6,000,000 |
| Worldwide Tops Ltd. | $10,000,000 |
| Pelican Trust | $1,500,000 |
| Just Capital | $3,700,000 |
| Binna Holdings | $7,500,000 |
| Nemo Holdings | $2,000,000 |
| R.J. Ulrich | $631,906 |
| Marianne Kaye | $99,975 |
| Hrytsyk/Pavlovskyy | $30,000 |
| Graciela Lecube-Chavez | $74,000 |
| Robert Cox | $60,000 |
| **Total** | **69,795,881** |

7

In addition to that total, the government sought $5 million pertaining to the SBIC securities fraud scheme of which Lily Cates was a victim, $425,000 pertaining to a theft from Cates's Bear Stearns account, and $5,252,959 pertaining to other money-laundering offenses. This yielded the total of $80,473,840.

At Vilar's sentencing, the Court spent considerable time discussing forfeiture and ruled on virtually all of the disputed issues. Critically, with respect to the table reproduced above, the Court indicated that it would impose forfeiture only in connection with the investments of the individuals who testified at trial and for whom the government was seeking restitution: namely, the Mayers, Tara Colburn, Graciela Lecube-Chavez, and Robert Cox. It also indicated that it would impose forfeiture in connection with the money-laundering offenses and the frauds perpetrated against Cates. The Court was equally clear that it would not impose forfeiture in connection with investors who did not testify at trial, including Dextra Holdings and the clients of Stephen Gray:

THE COURT:     All right. With respect to forfeiture, the government submitted a table at page 92 of its October sentencing memorandum, October 2, which I will say candidly I found a little bit difficult to follow. But it argues at least in that submission for a total of $69,795,881, plus then additional sums related to I guess the money laundering counts.

...

I recognized the names of the Mayers, Tara Colburn, Ms. Lecube-Chavez. Mr. Cox, and I recognize some of the other names, but there wasn't a lot of testimony on these, and what the government has provided is really just sort of an exhibit number from the trial and maybe a sort of random transcript cite. So for Dextra, for example, they're not seeking restitution, nor have I included their loss in calculation of loss under 2B1.1, and yet the government is seeking $25 million on the nose for forfeiture.

8

(Sentencing Tr. at 28:6-29:4.) After the government sought to justify forfeiture with respect to the non-testifying victims listed in the table reproduced above, the Court was clear that it was rejecting the argument and would not impose such forfeiture:

| THE COURT: | I understand the argument, but I'm not inclined to grant forfeiture on all of these. [For m]ost of them there was limited testimony, if any, or [at most] exhibits that made passing reference to these entities along with other entities |
| --- | --- |
| | So, I will find forfeiture basically in the same amount as the restitution, for the amount of dollars that were invested by the victims that I heard from at trial, which is the Mayers, Tara Colburn, Graciela [Lecube-Chavez], Robert Cox, and Li[ly] Cates. |
| | ... |
| MR. LITT: | Sorry to interrupt, but there is the issue of the money laundering which doesn't relate to any of the other investors. |
| THE COURT: | The money laundering of the — |
| MR. LITT | The money laundering judgment of forfeiture, \$5,252,959. And then there is the \$425,000. |
| THE COURT: | Yes, the \$425,000 I think is appropriate for Ms. Cates; the \$5,252,959, which is related to Ms. Cates, correct? |
| | ... |
| | So, that I will include. So, the forfeiture attributable to Ms. Cates, or that you have argued in connection with Ms. Cates, will be part of the forfeiture order. |

(*Id.* at 30:24-32:3.) In formally imposing sentence on Vilar, the Court said, "I'm going to impose forfeiture for — it's a little different amount [than restitution] because the money laundering counts I think add additional currency or an additional forfeiture amount to it. So, I will issue that order after today, but it's in the neighborhood, it's over \$22 million." (*Id.* at 67:1-5.)[3] Having ruled on the forfeiture issues, the Court asked "the government to send to me

---

[3] In indicating that the forfeiture order would exceed \$22 million, the Court incorrectly presumed that the amounts atributable to the Mayers would he nearly identical for restitution

and to [the] defense a proposed forfeiture order that I can use and tweak if necessary." (*Id.* at 69:23-25.)

The discussion of forfeiture was more limited at Tanaka's sentencing, but the Court clearly indicated that Tanaka would be treated no worse than Vilar. Thus, in formally imposing sentence on Tauaka, the Court indicated that the forfeiture amount "will be in the neighborhood of $20 million, but it could be more or less, depending on how we resolve a couple of issues." (*Id.* at 150:12-14.) Those "couple of issues" were a clear reference to two issues discussed earlier in the proceeding, where the Court indicated that it was reserving decision with respect to: (1) whether it would impose $5 million of forfeiture pertaining to a money laundering count of which Tanaka was acquitted, and (2) whether it would impose $175,000 of forfeiture pertaining to a forgery of Lily Cates's signature. (*See id.* at 97:10-15.)

The judgments, which were signed on February 8, 2010 (Vilar), and on February 9, 2010 (Tanaka), indicated that the Court was imposing forfeiture "in an amount to be determined by a separate order." An additional order, also entered on February 8, 2010, directed the parties to submit proposed orders of restitution and forfeiture by March 1, 2010, "reflecting the Court's legal conclusions as stated at Defendants' sentencings."

The Court received proposed orders from the government on March 1, 2010. Notwithstanding the Court's instructions, however, the forfeiture orders proposed by the government did not reflect the Court's rulings at sentencing. Rather, where the Court ruled that it would not impose forfeiture in connection with the victims listed in the table reproduced

---

and forfeiture. As the government's March 1, 2010 submission made clear, this is not the case: the government sought restitution for the Mayers in the amount of $12,960,347.88 (prior to interest), but only $5.8 million of forfeiture.

above who did not testify at trial, the government's proposed order did precisely that. Although it omitted the $25 million of forfeiture that the government had previously sought in connection with Dextra Holdings, it still included $36.7 million of forfeiture pertaining to Worldwide Tops, Paragon Ventures, Birma Holdings, Just Capital, Nemo Holdings, Pelican Trust, and Lynx Investments — all forfeiture that the Court had ruled at sentencing it would not impose.

After the government submitted its proposed orders, the Court on March 4, 2010, received a letter from Tanaka objecting in certain limited respects. With respect to the forfeiture orders, Tanaka argued (1) that imposing forfeiture in connection with clients of Stephen Gray who were paid in full would violate the Eighth Amendment, and (2) that forfeiture should not be imposed in connection with the SBIC fraud, as Tanaka argued that he was acquitted of that offense. On March 5, 2010, the Court received a letter from Vilar simply indicating that he "joins in all the objections raised in [Tanaka's] letter of March 4 apart from" the objections pertaining to acquitted conduct, which were not applicable. Critically, neither Defendant objected to the proposed orders on the grounds that the Court had already ruled that it would not impose forfeiture in connection with the clients of Stephen Gray who did not testify at trial.

Focusing only on the objections that the parties did raise, the Court issued a Memorandum and entered the forfeiture orders in substantially the form requested by the government on April 7, 2010. It inadvertently erred in failing to ensure that the orders included only forfeiture that the Court had ruled at sentencing that it would impose. Thus, the Court's

11

entry of a forfeiture order exceeding what it indicated it would impose at sentencing was error, and the parties will be directed to address how the error should be corrected.[4]

## III. Conclusion

For the reasons stated above, the Court finds that it (1) had authority to enter forfeiture orders on April 7, 2010, but (2) erred in entering the orders in the form sought by the government. A proper forfeiture award would have been $36.7 million smaller, as it should not have included amounts pertaining to the investments of the clients of Stephen Gray addressed above.

Counsel for the government, Vilar, and Tanaka shall confer, and they shall advise the Court by joint letter whether the forfeiture orders entered against the Defendants may only be corrected on appeal, or whether they may be corrected pursuant to Federal Rule of Criminal Procedure 36, which provides that "after giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment [or] order." Fed. R. Crim. P. 36; *see also United States v. Werber*, 51 F.3d 342, 347 (2d Cir. 1995) ("Rule 36 authorizes a district judge, at any time, to amend the written judgment so that it conforms with the oral sentence

---

[4] The parties' dispute as to the exact size of the forfeiture award may be at least somewhat academic, insofar as Defendants concede that the assets subject to the restraining order should eventually benefit investors who are not included in the restitution order. (*See* Sentencing Tr. at 7:8-12 ("MR. COLTON: [T]here is no objection by Mr. Tanaka to take all of the value that was in those accounts and having them forfeited to the government based on the government's representation that they would be used to repay investors."; *id.* at 36:9-16 ("MR. MARKS: The money was always there, invested, and he never had any intention of ultimately taking the money away from them. . . . The money just remained at JP Morgan Chase and various places where they could have got their hands on it, and thankfully they will be able to when the government starts liquidating these assets that have been frozen for all of these years.").)

pronounced by the court."). The joint letter shall be received by September 10, 2010. The

Court will defer its resolution of the pending motions while this issue is addressed.[5]

SO ORDERED

Dated:       August 25, 2010
             New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

_____  ___  _____

[5]  Although the Court will not enter the government's proposed order amending the forfeiture judgment at this time, it intends to grant the motion in the amount of $17,651,159, which represents the amount imposed by the April 7 forfeiture order less the amounts that the Court ruled at sentencing that it would not impose.  In light of the government's essentially uncontested declaration that it "will not be able to locate or collect the direct proceeds of the defendants' offense to satisfy the Money Judgments because the proceeds are no longer held in an identifiable form, have been transferred by the defendants to third parties, and/or placed beyond the jurisdiction of the Court," the Court is bound to issue such an order. *See United States v. Rosario,* 111 F.3d 124 (2d Cir. 1996) (holding that "there is no requirement under 21 U.S.C. § 853(p) that the government demonstrate that substitute assets are traceable to criminal activity" and that "[t]he criminal forfeiture order entered against appellant under § 853 was an *in personam* forfeiture, reaching any of appellant's assets, including criminal proceeds under § 853(a), or if those assets were not available, any other assets belonging to appellant of equal value."); *see also United States v. Alamoudi,* 452 F.3d 310, 314 (4th Cir. 2006) ("Section 853(p) is not discretionary; rather, the statute mandates forfeiture of substitute assets when the tainted property has been placed beyond the reach of a forfeiture." (internal quotation marks omitted)); *United States v. Candelaria-Silva,* 166 F.3d 19, 42 (1st Cir. 1999) ("To obtain an order forfeiting property as a substitute asset, the government need only comply with the requirements of § 853(p). In particular, substitute assets may he forfeited if the government shows that, as a result of any act or omission of the defendant, the forfeitable property (1) cannot be located upon the exercise of due diligence; or (2) has been transferred or sold to, or deposited with, a third party." (internal quotation marks and alterations omitted)).

13