UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA       :

   v.                              :      05 Cr. 621 (RJS)

ALBERTO WILLIAM VILAR and       :
GARY ALAN TANAKA,
                                :
            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

SECURITIES AND EXCHANGE         :
COMMISSION,
                                :      05 Civ. 5231 (LTS)
           Plaintiff,
                                :
   v.
                                :
AMERINDO INVESTMENT ADVISORS,
INC, *et al.*,                    :

           Defendants.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

     In an effort to determine whether "negotiations toward consensual arrangements for distributions to investors could be productive at this juncture," the Court directed the government to provide specific information regarding "the universe of available assets and claimants." The Court directed the government to inform it as to the current value of each asset subject to the substitute asset

forfeiture order, and the most recent account balance for each investor-claimant. This responds to the DOJ's and the SEC's (referred to collectively as "the Government") submissions dated February 21, 2012.

In its over 100 pages in response, the Government provides little that it hasn't submitted before. To the extent the Government provides anything that serves to move any settlement/distribution process forward, it is the recognition that (1) no investor has an interest in any particular asset (which supports our proposal for a pooling of the identified account assets and a pro rata distribution to the investors based on the valuation of the qualifying investor's interest at (or as near as possible) to the date Amerindo stopped functioning) and (2) with respect to ATGF investors, the appropriate mechanism for determining the value of their claim is to multiply the number of shares held by the investor by a uniform net asset valuation ("nav"). (The Government took this approach at sentencing, and while it did not say so explicitly at the time, implicit in its approach then was application of the most currently available nav.)

As for the current value of each substitute asset, the government simply resubmits its December 30, 2011 letter in which it essentially claimed to be "unable to value" anything other than the cash in certain bank accounts.[1] Still left

---

[1] The Government also references two "additional Amerindo assets" - "Approximately $846,660.12 being held by Morgan Stanley in the United Kingdom" and "Approximately $1 million being held by Citi" – of which it was purportedly unaware at the time it filed the

without any approximation of value are eleven forfeited entities and all of the non-public securities that the government has had in its custody and control since (at least) the entry of the order of forfeiture of substitute assets in 2010.

As for the Court's request for a listing of potential investor-claimants and their most recent account balances, the government's submission is lacking in analysis and, in many ways, adds to the confusion rather than elucidates. Thus, to the extent that Exhibit B, the government's chart of "all of the known potential investor claimants", is intended to add anything new, here are some of its problems:

- **It identifies at least 18 individuals and entities – nearly 30% of its list of "Victim/Investors"- but either provides no information whatsoever about them**, **or the only information is the word "no" in the columns labeled "Victim included in Court's Restitution Order" and "Fully Paid"**. Included in this group are: Alberto Noguerol, Michael Federov, Philip Hjeltner, Bamont Trust Company Limited, Bombo Sports, John Burke, Lachezar "Lucky" Christov, Bryan Harvey, Herb Chain, Roger C. Hill, Earl Ledwell, Dreyfus Bank, Lombard Odier Darier Hentsch & Cie, Victoria Moran, Marty Myer/Bow Street, Quiltier & Co., Robert Sayko, Michael Walsh. Each of these is listed as a "Victim/Investor", but there is no indication of the kind of investment, the amount of investment, the amount of so-called "loss", or the account number, and no back-up documentation is identified in the "Comment" section.[2]

---

December 2011 letter. We have requested additional information concerning these assets and, respectfully, reserve the right to comment about them once we learn more.

[2] Entry # 17 for "Victim Claimant" Imagineers LLC/Don Walsh is similarly un-illuminating. There is an entry reflecting a purported investment in ATGF and reference to some sort of statement or correspondence dated August 17, 2004, but no amounts, no account numbers, and no explanatory comments.

3

Why these individuals and entities are included or how these listings facilitate a settlement is a mystery. Their inclusion suggests that the government has not made any recent efforts to identify actual investor-claimants or to determine the size of their claims. Indeed, Vivian Shevitz recognized the name "Herb Chain," and with one call ascertained that he once provided services to Amerindo, but was never an investor.

- **Several individuals are identified as having outstanding claims because they purportedly were not "Fully Paid" when, in fact, the evidence at trial showed the opposite.** Though the chart lists losses of $400,000 for Crain (GFRDA), $631,906 for R.J. Urich (GFRDA+ $4012.60 interest), and $99,975 for Marianne Kaye (GFRDA), the evidence at trial showed that each was fully redeemed. Thus, there was evidence of a wire transfer to Crain on 11/22/99 for $464,612.67 (T. 4908), a $631,906.06 transfer to Urich on 10/2/00 (DXMC-2), and a $110,123.56 wire transfer to Kaye on 1/18/01 reflecting repayment of $99,975 in principal and $10,148.56 in interest (DXMG-1).

- **Several individuals are listed with claims, but the figures on the chart are not supported with either an account statement or any other documentation**. The supposed back up for "ATGF losses" attributable to [#4] Anthony Gibbs ($384,202.36), [#39] Republic Nominees ($69,049.64), and [#42] Sweetland Trust ($3,699,445) is the Government's sentencing letter of February 3, 2010 (erroneously dated by the Government "February 3, 2009"). However, this letter merely listed these numbers without providing any substantiation (and we believe all of these have been fully repaid).[3] (Robert Ffyffe [#40] is listed as having a $9000 claim with an indication of 8/28/03 as the "Date of Last Statement or Correspondence", but there is no indication of his having invested in any "Investment Product.")

---

[3] To make matters even more opaque, inexplicably, "Republic Nominees" is listed twice in Exhibit B: once [#39], as having a $69,049.64 ATGF loss, and once [#62] where the Comment is "No account balance information is available."

4

- **The Government has changed the methodology it used at sentencing for calculating expected claims in connection with ATGF investors, and, as a result, the figures it now labels as "losses" are misleading.** At sentencing, the Government estimated the holdings of the ATGF investors based on their number of shares in ATGF and the net asset valuation announced on March 31, 2005: $19.9766/share. (See Exhibit E (February 3, 2010 letter at p. 6-7 & n. 7, and the exhibits attached thereto). [4] In its recent submission, however, it apparently identifies as "ATGF Losses" [and thus suggests that the ATGF investors have claims in this amount] based on whatever amount was shown in the latest available account statement or piece of correspondence for that investor. (The amounts shown on the various account statements were calculated using the effective net asset valuation on the date of the statement.)  Because the effective net asset valuation decreased between the time of most of the last statements and March 31, 2005, there is a discrepancy between the numbers on the chart and the numbers advanced by the Government at sentencing, and, consequently, many of the "loss" figures on the chart appear to be inflated.[5]

Moreover, the Government's chart does not identify the number of ATGF shares assigned to each ATGF "Victim/Investor."  Having this information, agreeing upon a cut-off date, and identifying the net asset

---

[4] Why the Government chose this net asset valuation is unclear.  It was in possession of at least one account statement that was more current – one dated April 30, 2005 -- where a lower net asset valuation figure ($19.5988) had been employed.  See February 21, 2012 submission, Exhibit C, Account Statement for Mrs. Marilyn Walsh.

[5] For example, at sentencing, the Government estimated that the Heitkoenig ATGF Account (with 90,000 shares) was worth $1,797,984.  Now, using $21.8052/share (the net asset value on the investor's May 31, 2004 statement) instead of the $19.9776 net asset value, the Government suggests that Heitkoenig's ATGF "loss" is $1,962,468 -- almost $200,000 higher.  Similarly, in February 2010, using $19/9766/share, the government valued ATGF investor Ronald Salvitti's holdings at $1,837,723.94.  The latest chart lists the ATGF "loss" for Dr. Salvitti at $2,013744.94.  Paul Marcus's "losses" are also higher than set forth in 2010. ($4,283,212.77 (apparently based on the $20.0978/share nav on the July 31, 2004 statements attached as Exhibit D to the February 10, 2010 letter) as compared to $4,261,730.45 in 2010.  For Robyn Sayko, using the nav on her last statement makes her stated "loss" about $10,000 more than if the lower March 31, 2005 or April 30, 2005 nav figure were used.

5

valuation Amerindo used closest to that cut-off date would facilitate the ability to calculate the total potential ATGF-related claims.

- **There appears to be double-counting and/or counting of an investor who has been dead since 1995.** The Government has listed as a "Victim/Investor" both "Cele Kohl" to whom "ATGF losses" of $901,741.18 are attributed, as well as Marilyn and Donald P. Walsh who are listed with $144,495.48 of "ATGF losses" and $77,411.04 in "GFRDA losses". The Walsh holdings, however, appear to have been inherited from Kohl, and, apparently, the Kohl account ceased to exist after Kohl died in 1995. Thus, Kohl's listing is supported with a *1995* account statement (included as Exhibit C to the February 21, 2012 submission).[6] The Walsh listing is based on an April 2005 account statement for Marilyn Walsh (showing 7,372.67 shares of ATGF valued at $144,495.48, and $77,411.04 in "Amerindo Fixed Rate Deposit Account") (Exhibits C to the February 21, 2012 submission). However, the list also references for the Walsh account Exhibit F to the February 21, 2012 submission. This is a letter from Donald Walsh to the Court dated January 26, 2010. In that letter, Mr. Walsh explained that he had an ATGF account in his wife Marilyn's name since 1995, and that the money in the account ($220,000 according to the last statement received prior to Mr. Vilar's arrest) was "[his] share of the inheritance that [his] mother, Cecilia Kohl, left to [him] and to [his] siblings."[7]

- **Some entries are inscrutable.** The government identifies for supposed "Victim/Investor" Zanzuri the following: in column E, under "GFRDA Losses", $1,092,313.52; in column F, under "Short Term/Fund/ Rhodes/Cash/Misc", $17,153.31; and in both columns G and I, under the headings "Actual Losses" and "Losses Plus Prejudgment Interest", "$1,109,466.83." These entries are followed by a reference in Column J to a document dated "4/27/05" (whether it

---

[6] The account statement shows a total account balance of $901,714.18 – the number assigned to "ATGF Losses" on the government's chart. Actually, however, on the account statement, Kohl's holdings are not just ATGF. The statement shows 24,228.9 shares of ATGF valued at $575,592.08, and $325,122.09 in Rhodes Capital and dividends.

[7] We understand that two others on the government's list, Patricia Kabara and Robin Sayko are siblings of Donald Walsh.

is an account statement or correspondence we do not know) and the comment in column N, "This includes a 600K redemption from on or about 04/27/05." We do not understand this comment. Is the government saying that the "loss" figures (and hence any potential claim by Zanzuri) should be reduced by $600,000, or that the "600 K" redemption amount is already reflected in the loss figures?[8]

- **The Government is still careless with numbers**. For example, with respect to Investor Ariadna Sanchez-Weir, the chart misstates and overstates "Interest" by $3000; it states, "$3**9**,961.93". The back-up for this is apparently the last account statement, dated 3/31/2003. That document (attached as Exhibit B to the Government's February 3, 2010 letter to the Court in connection with sentencing, [Exhibit E to its February 21, 2012 submission]) shows interest of $18,961.93 and $18,000, which, added together, yields $3**6**,961.93, not $3**9**,961.93.[9]

---

[8] The government also identifies "Dextra Holdings, Ltd." as a "Victim/Investor" with purported "Actual Losses" of $19,744.431.18; the word "other" is included in column L entitled "Fully Paid" without any explanation or supporting documents. In connection with sentencing, the Government maintained that an entity identified as "Dextra Mgt. Ltd." had a GFRDA valued at $19,744,431, but that it was foregoing any claim to funds. (The Government stated (without further explanation): "Dextra has since undergone a corporate reorganization and is not now seeking restitution." (Exhibit E, letter of February 3, 2010, at 9 and n.9); in actuality, this investment was fully redeemed.) Additionally, while the $19,744.431.18 figure apparently was taken from one of the exhibits attached to the government's sentencing letter (Exhibit M), there is no indication in that exhibit that the investor was "Dextra Holdings, Ltd." or "Dextra Mgt. Ltd." Rather, the documents in Exhibit M refer to a "Dextra Bank & Trust Co. Ltd.", a bank in Georgetown, Grand Cayman, British West Indies, and "Dextra Mgt. Ltd." acting as some sort of a transfer agent for an investor identified as Graphic Enterprises Ltd. (See also, GX3363-2, the Graphic Enterprises agreement with Amerindo dated May 1, 1998).

[9] Another mistake, though concededly minor, appears with respect to the Metropolitan Opera. The chart uses a "loss" number of "$2,463,1**6**1.43" based on Exhibit E, the government's February 10, 2010 letter. The number used in Exhibit E (which reflects a calculation based on the number of shares attributed to the Opera using the $19.9766/share nav), was $2,463,1**3**1.43." While we believe there would be many issues if, in fact, the Metropolitan Opera were to assert a claim based on Vilar's gifted shares of ATGF, we do not discuss them here.

7

We offer a few more insights that, we hope, will underscore the reasonableness of the approach we proposed in our submission filed on January 27, 2012. In particular, we want to say something about how the government's numbers impact our proposal to vacate not only the forfeiture orders, but also the restitution order, and something about the Mayers' "hardship" request for the immediate distribution of $1.8 million.

According to the government's chart, even without including Dextra, the potential investor claims add up to roughly $61.4 million. While we believe that several of the listings in the chart are not legitimate or are overstated [10], a significant point is that the total includes over $13 million in compound interest that the Court ordered as part of the restitution that it awarded to the 5 investors who were selected by the government to testify at trial. Apart from the legal challenges to the compound interest that we have raised on appeal, including the prejudgment interest restitution amount in the base amount for calculating investor pro rata shares would amount to an inordinate, unjustifiable preference for the testifying investors.

Indeed, the $13 million in court-awarded interest is more than *20%* of the government's total loss figure. Taking the Mayers as an example, (according to

---

[10] While this is not be the place to resolve challenges to particular potential claims, and while we reserve the right to make other challenges after claims are actually made and documented, we believe that the "losses" attributed to the following are invalid in whole or in part: Jim Charles, Maria Dichov, LeCube-Chavez, Zanzuri, Jordan Family, Hrytsyk/Pavlovsky.

Exhibit A to the Government's March 1, 2010 letter to the Court in connection with restitution) their "principal" loss is purportedly $11 million. If the prejudgment interest awarded in connection with the restitution is *not* counted in the total "loss", the total investor loss would be $48.4 million, and the Mayers would be assigned about 23% of the pot. However, if the compounded interest figures are included in both the total loss figure as well as the Mayers' individual "loss" amount, the Mayers would get nearly 30% of the pot. This preference is not fair to the other investors.

Finally, with respect to the Mayers' "hardship" request, we find troubling the conflicting positions taken by the Mayers – and the Government -- with respect to the return of the Mayers' principal investments. On their tax returns, the Mayers treated all payments from Amerindo as return of principal first, and claimed to have fully recovered their investments by the end of 2004; they were thus treating payments from Amerindo as ordinary income only in or after 2004, and not paying any tax on earlier distributions.[11] In the hardship requests in this Court, however, the Mayers take the opposite tack and claim that they have not received the return

---

[11] In August 2005, for example, Herbert Mayer reported to the IRS that he had received $792,063 from Amerindo in 2004, and Debra reported receipt of $105,902. (GX 9210, 9211) They both explained that all distributions received from Amerindo *prior* to 2004 were reported "as a return of capital," and that it was not until some time in 2004 that all of their capital investment had been recovered. It was for this reason, they explained, that, in 2004, they treated the amount they received from Amerindo as a partial return of capital (i.e., Herbert stated "$274,170" represented "investment recovery"; Debra treated $36,658 this way) and the rest ($517,893 for Herbert and $69,244) as ordinary income.

of any of their principal investment -- some $11 million. (See, Letter of Patrick Begos, dated January 19, 2012, at p. 2. The Mayers have taken the same position in connection with their civil suit in state court, where they are also represented by Mr. Begos. See e.g., Affidavit of Lisa Mayer, dated November 10, 2010, ¶ 26 "The only money we have received from Amerindo since January 1, 2004 are: interest payments in 2004 totaling $1,003,867.26"…)

At trial, (apparently not wanting their witness Lisa Mayer to appear a tax cheat) the Government fully supported the Mayers' tax treatment of the Amerindo payments in 2004 and earlier; thus, the prosecutor argued to the jury that the Mayers' tax returns were entirely proper, the Mayers were not "lying" when they failed to declare payments from Amerindo as income and treated years and years of payments as a "recovery" of their investment, and that, by approving their tax treatment of the payments, the Government had not given the Mayers any "deal" with respect to their taxes (T. 5491-2). After trial, the Government (like the Mayers) flip-flopped. At sentencing and now, it counts the full amount shown on the Mayers' last account statement as "principal." (See, Letter to Court from AUSA Marc Litt, dated March 1, 2010, Exhibit A: this is the source of the figures adopted by the Court in its restitution order and by the Government in connection with its chart of supposed "losses" (Exhibit B, to the February 21, 2012 submission).)

Having argued that the Mayers properly avoided tax on the millions of dollars they recouped from Amerindo before 2004 by treating those payments as return of principal, it is indeed strange for the Government to maintain here that the Mayers' still have a claim to the return of their principal.  The Government may have suborned tax fraud by the Mayers in order to beef up its trial witness; or, it may have given the Mayers a tax-free gift -- at the expense of the federal fisc and at the expense of the integrity of the jury trial.

We appreciate that the Court appears to want to stay out of the tax code thicket.  (In Attachment A to the Court's January 13, 2012 order, for example, the Court wrote with respect to distributions to the investors, " The recipient of the distribution is solely responsible for any and all tax consequences of receipt of the distribution, however it may be characterized.")  However, we caution the Court to tread cautiously in approving any "hardship requests" to the Mayers so that it does not unwittingly promote a perjury fraud on the state and federal courts or exacerbate the Mayers' murky tax situation.

The defendants remain hopeful that the Court can help to facilitate the return of funds to the investors. Again, we urge the Court to vacate the forfeiture order and the restitution orders, and send this case to the Magistrate Judge so that the evaluation and claim process can begin.

Dated: Portland Maine
       February 29, 2012

_____/s/_____
Vivian Shevitz

_____/s/_____
Jane Simkin Smith