UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

United States of America,

    Appellee,                                                  05 cr 621 (RJS)

v.

Alberto William Vilar, AKA Alberto Vilar,
Gary Alan Tanaka
                                                        MOTION
                                                        TO PRECLUDE
    Defendants-Appellants.                    GOVERNMENT
                                                        FROM FORFEITURE
                                                        DISCUSSIONS
                                                        THAT EXCLUDE
                                                        DEFENDANTS,
                                                        AND TO SUGGEST
                                                         THAT DEFENDANTS
                                                        MANAGE UK
                                                        PENSION TRUST
                                                        FUNDS

_____

    VIVIAN SHEVITZ, under penalty of perjury, hereby declares:

1.    I am counsel to Alberto Vilar (CJA) in this Court and on appeal, and to Gary Tanaka in this Court in the criminal case and in the civil SEC case.

2. By Order dated June 14, 2012, this Court -- using the caption in both the criminal case and the SEC case (05 cv 5231 (RJS)) -- ordered the prosecutor "handling the forfeiture aspects of this action" to respond to the "request[ for] assistance" by way of a letter from Huw Davies, the Trustee of the Amerindo Advisers (UK) Ltd Retirement Benefits Scheme" dated May 11, 2011, regarding

1

Davies' need to "fullfill[] the Adviser's legal responsibilities in relation to the pension scheme."

3. On July 12, 2012, AUSA Sharon Levin wrote to Mr. Davies stating that "[t]he Government" received the letter and was "unable to propose a resolution." Levin asked for Mr. Davies to contact her to "talk" and stated she was "hopeful that together we may be able to come up with a proposed resolution."

4. This motion seeks an order precluding the government to take action excluding the defendants. The defendants have interests in ALL the assets. They have an interest in and a right to participate in sentencing. The government has already admitted the forfeiture is invalid, but, without undertaking any management itself, it is still acting as if defendants have no interests in managing and maintaining the forfeited properties.

5. Several times in the case now, one of the major investors, Paul Marcus, speaking for himself and other investors who have been "out" of their funds (for seven years now) specifically asked the Court (in 2006 (in connection with the suppression/Franks hearing) and again at Tanaka's sentencing in 2010) (as quoted or paraphrased below), [1] for defendants to *continue* managing the funds, because of

---

[1] Marcus wrote in an affidavit submitted in 2006: "I would like Mr. Tanaka and Mr. Vilar to continue managing my investments. I have spoken at length with other investors and have been told that they, too, want Mr. Tanaka and Mr. Vilar to continue managing their money as soon as possible. Those investors include Alfred Heitkonig, Dr. Ron Silvatti and Mrs. Jordan." (Declaration of Paul Marcus, Ex. N to Margolis Dec., Document 138-15, 05cr621 (RJS).)

their expertise and the *continuing* confidence in which Mr. Marcus held them and their business skills and integrity.

6. The government's objection is based on the notion that defendants should not be allowed to manage investors' funds since they were convicted of offenses relating to their management of investor funds.

7. This rationale does not carry the day with regard to the UK pension fund are limited. ALL beneficiaries of the fund, I understand, are very interested in having

---

At Mr. Tanaka's sentencing on February 7, 2010, Marcus told the Court that, though the tech stocks had "tanked" in 2000-02, Tanaka had "brought it back because of his ability, his knowledge of the field. He didn't desert the investors. He didn't throw in the towel like so many others; he stayed with it. I don't know that he got any fees. I'm not sure. I do know that by 2005 we were on the way to recovering our investment. As a matter of fact, we just about were even."

Unfortunately, the government shut down Amerindo, put them out of business. .... I am saying that there was a pot of money, there were assets out there, and it stopped trading. And what went from about $25 a share, we don't know what value it went to. But had it been invested, had it been operated, it probably would have been parallel with the NASDAQ, which has increased from 2005 to now about 25 to 33 percent. So, therefore, I would guess that our ATGF investments would have gone up as well."

Marcus told the Court that Tanaka had affirmatively hired David M. Ross Associates, whose report was submitted by Mr. Tanaka at his sentencing, to find those assets, recover them, and monetize them for the benefit of the investor victims not mentioned in the trial. Marcus expressed confidence and stated: "We're dependent on Mr. Tanaka's ability and his interest and his willingness to locate those assets" ; and then he asked the Court to put Mr. Tanaka on probation. "[N]o one at this point is looking out for those investors who haven't made major claims, who haven't brought 25 charges. We need your help. Our families, our grandchildren will need your help, and if you could find it in your heart – " The judge apparently realized for the first time at sentencing that money had not been managed nor made available to the "victims." He observed that it's now 2010, and asked whether Marcus had made efforts to get the government or the SEC or to Bear Stearns to release it. Mr. Marcus said that there would be a pile of documents from him on AUSA Litt's desk.

defendants manage the funds in that account – before they become entirely worthless.

8. We thus move for an Order allowing defendants to assist Davies in dividing the pension fund into four parts, as required by UK law, and then to actively manage those pension funds, in that no beneficiary objects, and the government should have no reason to object either.

9. Though the government facilely included the UK pension fund on the "substitute asset" list, it is – as Mr. Davies' letter makes clear – a totally separate entity. Further, as Mr. Tanaka (tried to) explain in the SEC case while he was acting *pro se* (not out of choice, but because his motion for an appointed attorney was denied and he was DEEMED *pro se),* that investment was funded entirely on a standalone basis: with operating funds from the Amerindo UK, which had its own separate investors who paid fees, as well as income from management services, and which reported and paid UK taxes regularly.

10. This matter came up in 2012 during the discussions in this court over how to "loosen" funds for the investors.  In a letter to Judge Swain dated March 19, 2012 from SEC counsel Neal Jacobson, the SEC stated (letter p3 n.4): "The Commission staff cannot confirm Mr. Tanaka's assertion that the Bear Steams account held in the name of the Trustees of the Amerindo Advisors (UK) Ltd. Retirement Benefits scheme is a 15-year segregated, stand-alone pension plan that does not contain any investor funds. However, if Mr. Tanaka's assertion is correct then the Commission

4

staff could consider-continuing negotiations over the disposition of that account in the context of a global settlement."

11. Obviously, Mr. Tanaka and Mr. Vilar are not in possession of the documents that prove the point. But the government, which *has* had access to these documents, should have known this.

12. It is unlawful and contrary to the demands of UK Pension law for the government to continue to hold onto these funds or to require a "global settlement" to release them.

13. For the moment, the Court should allow the defendants to manage this pool of funds, and to divide them – with Mr. Davies - into funds for the benefit of the four beneficiaries consistent with UK pension law.

Dated: July 13, 2012

        ___/s/_____
        Vivian Shevitz
        Attorney for Defendant-Appellant
        ALBERTO VILAR
        401 Cumberland Ave. - Apt. 609
        Portland, Maine 04101
        914-763-2122
        Vivian@shevitzlaw.com