UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-13-13
```

UNITED STATES OF AMERICA,

-v-

ALBERTO WILLIAM VILAR and
GARY ALAN TANAKA,

Defendants.

No. 05 Cr. 621 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

On August 30, 2013, the Court of Appeals for the Second Circuit affirmed Defendants' convictions and remanded the case for resentencing consistent with the Court of Appeals' decision. The Court is now in receipt of the five attached letters from the government and Defendant Vilar addressing representation issues and Defendants' release status. The Court cannot adequately address Defendants' release status without proper representation. Therefore, the Court will first address the representation issues. Once those issues have been resolved, the Court will hold a conference to address Defendants' release status. In the interim, Defendants' conditions of release shall continue unchanged.

I. REPRESENTATION ISSUES

Counsel for Vilar, who has previously appeared as counsel for both Defendants, requests that she be appointed as CJA counsel for Defendant Tanaka while continuing to represent Defendant Vilar. This raises two issues. First, simultaneous representation of co-defendants creates a possibility of a conflict of interests that must be addressed. Second, Counsel is not a member of the CJA panel. These issues will be addressed in turn.

### A. Simultaneous Representation

Although simultaneous representation of two co-defendants can save money and time, as Counsel points out in her letter, and can have strategic advantages, *see Holloway v. Arkansas*, 435 U.S. 475, 482–83 (1978), it also creates a possibility of a conflict of interest, *see United States v. Curcio*, 680 F.2d 881, 885 (2d Cir. 1982). This possibility of conflict is constitutionally permissible only if the defendants "make knowing and intelligent decisions to waive the right to representation by an attorney of undivided loyalty." *Id.* at 884. The Court must ensure that Defendants are aware of the dangers of joint representation and have had adequate opportunity to consider the issue and weigh their options. *Id.* at 888–91. Accordingly, IT IS HEREBY ORDERED THAT the parties shall appear on Friday, September 27, 2013, at 2:00 p.m. for a hearing to ensure that Defendants understand the dangers of joint representation and to evaluate the knowingness and voluntariness of their choice. The Court will arrange for CJA counsel to be present at the hearing for the purpose of advising Defendants on the waiver and potential conflicts. IT IS FURTHER ORDERED THAT the parties shall submit any suggested questions for the Court to ask Defendants at the hearing no later than September 20, 2013.

### B. CJA Appointment

Pursuant to the Southern District's *Revised Plan for Furnishing Representation Pursuant to the Criminal Justice Act* § VII(D), Counsel, who is not a member of the CJA Panel, may be appointed as CJA counsel only if (1) the Court makes a finding that there "is good cause shown which renders it in the interests of justice" to appoint Counsel, and (2) the Chief Judge of the District consents. Accordingly, IT IS HEREBY ORDERED that by September 20, 2013, Counsel shall submit a letter to the Court, no more than three pages and copying the government, explaining what good cause renders it in the interests of justice for the Court to appoint her as CJA counsel. The government shall submit any response by September 24, 2013.

2

## II. BAIL CONDITIONS

"Even though the mandate has not issued, this Court 'retains jurisdiction over the person[s] of the defendant[s] at least for the limited purpose of reviewing, altering[,] or amending the conditions under which the[e] court released the defendant[s].'" *United States v. Sattar*, No. 02 Cr. 395 (JGK), 2009 WL 4038461, at *1 (S.D.N.Y. Nov. 18, 2009) (quoting *United States v. Black*, 543 F.2d 35, 37 (7th Cir. 1976)); *accord United States v. Catino*, 562 F.2d 1, 4 (2d Cir. 1977). Defendants bail conditions are set forth in this Court's Orders of October 5, 2012 (Doc. No. 543) and October 16, 2012 (Doc. No. 547). In particular:

> (6) Defendants' travel shall be restricted to their district of residence, except that they shall be allowed to travel for court appearances, in which case Defendants shall provide advance notice to Pre-Trial Services as to the date(s), time, duration, and mode of travel necessary to attend said court appearances; other modifications, for such purposes as obtaining medical care, may be made upon Defendants' request and the Court's approval;
>
> (7) Defendants shall be subject to a curfew requiring them to return to their homes every night by 11:00 p.m. and not leave again before 7:00 a.m. the following morning; and
>
> (8) Defendants shall be subject to strict supervision by pretrial services with electronic monitoring.

(Doc. No. 543). Defendant Tanaka's curfew may be adjusted by Pretrial Services to accommodate his medical needs. (Doc. No. 547.) Pending review at a future bail conference, Defendants shall continue to abide by these bail conditions.

SO ORDERED.

Dated: September 13, 2013
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

3



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 30, 2013

**BY ELECTRONIC MAIL**

The Honorable Richard J. Sullivan
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

    Re:   **United States v. Vilar and Tanaka,**
           **No. S3 05 Cr. 621 (RJS)**

Dear Judge Sullivan:

    The Government respectfully submits this letter in connection with the captioned case. Today, the U.S. Court of Appeals for the Second Circuit affirmed the defendants' convictions in all respects and remanded the matter for resentencing. In light of that decision, the Government respectfully requests that the Court hold a conference to address the defendants' release status and set a schedule for resentencing.

                                 Respectfully submitted,

                                 PREET BHARARA
                               United States Attorney

               By:   _____
                      BENJAMIN NAFTALIS / JUSTIN ANDERSON
                      Assistant United States Attorneys
                      (212) 637-2456 / -1035

cc: Defense Counsel (by email)

**Vivian Shevitz**
Attorney at Law
46 Truesdale Lake Drive
South Salem, New York 10590
(914) 763-2122
Vivian@shevitzlaw.com

September 3, 2013

Hon. Richard J Sullivan (by email)
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   RE: *United States v. Vilar and Tanaka,* 05 cr 621 (RJS)

Dear Judge Sullivan, Mr. Naftalis, and Mr. Anderson:

  I write in response to Mr. Anderson's letter asking for a conference to schedule resentencing and discuss release status. I agree that we should have a conference soon, but as you know from previous correspondence, I am scheduled to move my office and residence from Portland, Maine to South Salem, New York in the next two weeks. Movers are coming on September 16th. Though I move out on the 16th, the movers will not arrive with our property (including cartons and cartons of files, and computers) until September 17th. Meanwhile I am in the process of packing and making logistical arrangements.

  One matter that should be on the discussion list is CJA counsel for Gary Tanaka. I already appeared for Gary Tanaka in this Court but it was *pro bono,* only for bail pending appeal issues (a limited matter, so I did not then seek CJA appointment); and also represent him in the Court of Appeals for bail and also in the Mandamus proceedings. I think it would make sense for me to represent Mr. Tanaka on remand (which will to a great extent be the same as for Mr. Vilar, thus obviating double billing by some new counsel who would have a long way to go to get "up to speed.") I do not believe there are unwaivable

conflicts, and the two defendants already waived a conflict when I began to represent Mr. Tanaka in the SEC case as well.

Alternatively I suggest that the Court appoint another counsel, but of course the problem is that there is a lot to learn, and it will take someone a *long time* to get up to speed. I therefore have spoken with a colleague with familiarity with the case, Julia Pamela Heit, who has informally assisted as Mr. Tanaka appealed, and is willing to "sign on" pursuant to the CJA for resentencing. She was a Legal Aid Society attorney and then supervisor from 1967 to 1974 in the Criminal Appeals Bureau, was a private independent practitioner from 1974 to present handling State and Federal matters, and is a member of the bar of this Court. She is also a long-time member of the Second Circuit CJA panel -- and most importantly is conversant with issues in this case.

Mr. Tanaka has no other counsel in the district court; Dershowitz & Eiger, appellate counsel, have never appeared in the district court and are not Mr. Tanaka's counsel in the district court. Appointment of Ms. Heit will obviate concerns of theoretical conflict and she will be able to move on relatively quickly.

The Court of Appeals already accepted Mr. Tanaka's *forma pauperis* application in allowing the Mandamus petitions filed without a fee. I ask to be authorized to represent Mr. Tanaka as a CJA appointment on resentencing remand; Mr. Tanaka and Mr. Vilar have both waived a potential conflict and for the most part their claims and defenses are the same. Alternatively the Court should appoint Julia Pamela Heit, who is willing to serve, as Mr. Tanaka's counsel, so that she can advance any unique positions for Mr. Tanaka.

I also renew my request to add Jane Simkin Smith as co-counsel. In February 2012, I had moved the Court for appointment as Jane Simkin Smith as co-counsel for Mr. Vilar. The Court declined (DOC 513, filed 2/9/12) without prejudice to renewal on the basis that there may be no need for further litigation. I now move for the appointment of Ms. Smith as co-counsel in this action because there will be significant litigation in a *de novo* resentencing proceeding. (Ms. Smith is already also appointed in the Court of Appeals pursuant to the CJA).

     I also ask for leave to add another lawyer to assist at a lower rate than the "full" CJA rate. There will be document reviews among other things and for some tasks it would be cost-effective to work with a less experienced associate, who need not have full knowledge of this case. Previously the Court of Appeals had approved CJA appointment of an associate of Susan Wolfe, Ms. Joanna Eftichiyou, at a lesser-than-full CJA rate. Ms. Eftichiyou is no longer in the area. I hope to "recruit" an associate (perhaps a "solo" colleague available at the moment) and propose a CJA rate of $85/ hour for work of an associate satisfactory to our needs. While I appreciate that CJA funds are scarce, it will be impossible to litigate this whole case timely alone, or with only Ms. Smith, in that her time is limited because she is involved in a case in the Eastern District (previously an authorized death penalty case) with trial starting imminently. An associate can be assigned work that will speed the process while Ms. Smith will participate in writing papers as she has been doing in the appeal.

     If Ms. Heit is appointed to represent Mr. Tanaka, I'm sure we can apportion the work between us as well, since most issues are the same between the two defendants.

     I ask that conditions of release remain the same. And I ask that a conference to be scheduled not before September 25, 2013.

                                    Very truly yours,
                                          /s/
                                    Vivian Shevitz

Cc:  Justin Anderson (email)
       Benjamin Naftalis (email)
       Jane Simkin Smith (email)
       Nathan Dershowitz (email)



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 4, 2013

**BY ELECTRONIC MAIL**

The Honorable Richard J. Sullivan
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

    Re:    **United States v. Vilar and Tanaka,**
           **No. S3 05 Cr. 621 (RJS)**

Dear Judge Sullivan:

    The Government respectfully submits this letter in response to Alberto Vilar's September 3, 2013 letter. In that letter, Vilar requested a postponement of a conference in this matter until a date no sooner than September 25, 2013. The Government opposes such a lengthy delay and respectfully requests a prompt conference, so that counsel for Tanaka can be appointed and the defendants' release status can be addressed. The Second Circuit explicitly contemplated that bail proceedings would occur before this Court upon the issuance of its opinion in the matter. *See United States v. Vilar*, No. 10-521, slip op. at 54 n.40. The Government is unaware of any good reason to delay addressing this matter.

    In connection with the question of bail, it is likely that at resentencing, the defendants will face the same substantial Guidelines range that they faced at the initial sentencing.[1] In its decision, the Second Circuit rejected defense counsel's challenges to the loss calculation methodology, *id.* at 49 n.34, and explicitly stated that the losses of Lily Cates and the Mayer family, among others, are within the scope of the defendants' criminal liability, *id.* at 19-22.

    Taking the losses of Cates ($9.8 million) and the Mayer family ($11.1 million) alone (Vilar PSR ¶ 79; Tanaka PSR ¶ 79), they constitute a loss of $20.9 million. In light of that conservative estimate, the applicable Guidelines enhancement for loss is unlikely to differ from that which applied at the defendants' initial sentencing – that is, a 22 level enhancement pursuant to U.S.S.C. § 2B1.1(b)(1)(L). (Vilar PSR ¶ 86; Tanaka PSR ¶ 86 (both referring to Section 2B1.1(b)(1)(K) in the 2008 Edition, as an apparent typographical error)). Accordingly, there is

---

[1] Vilar's Guidelines range was 262 to 327 months, and Tanka's was 210 to 262 months. (Vilar PSR ¶ 144; Tanaka PSR ¶ 133).

Hon. Richard J. Sullivan
September 4, 2013
Page 2 of 2

no reason to believe that the defendants will face a more lenient advisory range under the Guidelines when the parties return for resentencing.

    In light of the Second Circuit's decision affirming the defendants' convictions and the significant sentences they face upon resentencing, the Government respectfully requests that bail be revoked and that a conference be held promptly so that this matter can be resolved.

                                    Respectfully submitted,

                                    PREET BHARARA
                                  United States Attorney

By:                       _____
                        BENJAMIN NAFTALIS / JUSTIN ANDERSON
                        Assistant United States Attorneys
                        (212) 637-2456 / -1035

cc: Defense Counsel (by email)

Vivian Shevitz
Attorney at Law
46 Truesdale Lake Drive
South Salem, New York 10590
(914) 763-2122
Vivian@shevitzlaw.com

September 4, 2013

Hon. Richard J Sullivan (by email)
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *United States v. Vilar and Tanaka,* 05 cr 621 (RJS)

Dear Judge Sullivan,

  I write in response to Mr. Anderson's letter asking to revoke bail on the sole rationale that the government thinks it will prove the same "losses" at a sentencing, and he does not want to delay to get the defendants back to jail. Despite the government's position after this nine-year journey, the last 12 months during which we have been waiting for an appellate opinion, it is impossible for me to be at any conference earlier than September 25.

  More importantly the mandate has not issued. There are rehearing and *en banc* petitions to consider before it does. The Court of Appeals did not call for an expedited hearing nor revoked bail, though it could have.

  Additionally, when considering bail, there are a few things to think about, however: First, this is a *de novo* resentencing ordered. There is no reason to conclude that "losses", under the government's definition, will or should in fact drive the sentence, especially when the notion of "losses" is belied by facts.

In 2010, when Mr. Tanaka's expert David Ross sent figures showing the presence of "all the money", while this Court agreed with the prosecutor's assessment then that the money was "irrelevant" to losses, the Court indicated it *is* relevant to 3553 factors. Yet no one argued those factors nor spoke about the fact that "losses" in fact did not happen.

Since the time of sentencing even the SEC Receiver reluctantly concluded that there is enough in the "investor asset" pots to cover *all* Panama client claims. The government's understandings in 2010 were different, and wrong. We intend to argue all this at a *de novo* resentencing.

While defendants' "Guideline range" was high, Mr. Tanaka already served 2 ½ years' time, and Mr. Vilar almost 4 years. The government's automatic reaction that "the same" time ought to, or *will*, be imposed, after consideration of 3553 factors that were deemed "irrelevant" at the prior sentencing, should be re-examined.

Further, no one factored into that analysis in 2010 that defendants lost their entire legitimate business, Amerindo US, by virtue of the execution of a search warrant that was unconstitutional. A Monitor told the Court in December 2005, that there was no wrongdoing nor losses at Amerindo US. Yet the government accomplished a total "forfeiture"-by-destruction of the business of Amerindo US, its large net worth (buyout negotiations with Bear Stearns in the neighborhood of $40 million) as an ongoing successful investment manager with its attendant large annual cashflow ($10 million annually), on the basis of an accusation that the court ruled unconstitutional.

Though the government raised the issue in the Court of Appeals, the Court did not "side" with the government's request that it rule that the search was constitutional. While the Court may have upheld the admissibility of documents under the inevitable discovery rationale, the *fact* of this loss should be factored into any calculation of the propriety of any punishment.

There are substantial issues still at play that are *still* likely to cause reversal or a substantially reduced sentence.

As to haste, now after all this, almost ten years after the "offense" and arrests, defendants aren't going anywhere (except on pre-approved travel). Their pre-trial officers, while never making recommendations, can, I am sure, confirm compliance with conditions of release. If the panel had thought that there was a concern about "flight" or thought that there was no further "substantial litigation" in this case, they would have revoked bail already.

The government's request to revoke bail is a mean-spirited, ill-considered, tactic to put additional pressure on us when it is not needed and without respect for the *de novo* nature of resentencing and 18 USC 3553. And it is premature in that the mandate has not issued.

I surely regret having this untimely disruptive move to contend with. Defendants' bail should be continued while we litigate *all* the sentencing factors – not just "loss" figures based on restrictive Guidelines concepts that no longer control sentencing. Maybe "time served" would be "sufficient but not greater than necessary." The Court of Appeals counseled *thought* about this, not "reaction."

There is no cause to expedite a remand or bail considerations. I again ask the Court to schedule a conference for a date after September 25, 2013.

Very truly yours,

/s/
Vivian Shevitz

Cc: Justin Anderson (email)
 Benjamin Naftalis (email)
 Jane Simkin Smith (email)
 Nathan Dershowitz (email)



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 4, 2013

**BY ELECTRONIC MAIL**

The Honorable Richard J. Sullivan
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

    Re:    **United States v. Vilar and Tanaka,**
             **No. S3 05 Cr. 621 (RJS)**

Dear Judge Sullivan:

    The Government respectfully submits this letter in response to Alberto Vilar's September 4, 2013 letter. In that letter, Vilar states that it is premature to consider the defendants' release status because the mandate has not issued. For the reasons set forth below, the Court has the power now to revoke the bail for defendants and to order them to surrender.

    Because the mandate has not yet issued, the defendants' appeals technically remain pending. But numerous decisions specifically recognize the authority and discretion of a district court to revoke bail after the issuance of an appellate opinion but before the issuance of the mandate. In *United States v. Krzyske*, 857 F.2d 1089 (6th Cir. 1988), the Sixth Circuit reviewed the pertinent authorities and recognized that a district court has the authority to revoke a defendant's bail following the rejection of the defendant's appeal on the merits in an appellate opinion, but before the mandate had issued. *Id.* at 1091. A previous Sixth Circuit panel had agreed, noting that "[t]he order to vacate appellant's bonds and rearrest them is not related to or governed by the issuance of the mandate of this court." *United States v. Elkins*, 683 F.2d 143, 145 (6th Cir. 1982) (affirming jurisdiction and discretion of district court to revoke bail upon issuance of appellate opinion affirming convictions). District courts have ruled similarly. *See, e.g., United States v. Nissenbaum*, No. CRIM.A 00-570, 2001 WL 34082287 (E.D. Pa. Mar. 26, 2003) (revoking bail even though mandate stayed pending petition for writ of certiorari to United States Supreme Court, because "there is little chance the Supreme Court will grant certiorari to hear this case"); *United States v. Cocivera*, No. CRIM. A. 94-365, 1997 WL 9795, at *1 n.1 (E.D. Pa. Jan. 9, 1997) ("the fact that the Third Circuit has not issued a mandate does not negate this court's jurisdiction"); *United States v. Sullivan*, 631 F. Supp. 1539, 1541 (E.D. Pa. 1986) (district court has "the power to revoke bail under 18 U.S.C. § 3143(b), before the circuit court's mandate is issued"). *Accord* David G. Knibb, *Federal Court of Appeals Manual* § 34:15 (5th ed.) ("[W]hen a criminal conviction is upheld on appeal, in the interim before receipt of the mandate

Hon. Richard J. Sullivan
September 4, 2013
Page 2 of 2

the district court may conduct a sentencing hearing, revoke bail, or order a convicted defendant to commence his sentence.") (footnotes omitted).

For the reasons set forth above, and in its August 30th and September 4th letters to the Court, the Government opposes a lengthy delay and respectfully requests a prompt conference, so that counsel for Tanaka can be appointed and the defendants' release status can be addressed.

    Respectfully submitted,

    PREET BHARARA
    United States Attorney

By:    /s/ Benjamin Naftalis
    _____
    BENJAMIN NAFTALIS / JUSTIN ANDERSON
    Assistant United States Attorneys
    (212) 637-2456 / -1035

cc: Defense Counsel (by email)