*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 20, 2013

**By ECF and E-Mail**

The Honorable Richard J. Sullivan
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York  10007

>   Re:   **United States v. Vilar and Tanaka,**
>         **S3 05 Cr. 621 (RJS)**

Dear Judge Sullivan:

      The Government respectfully submits this letter in connection with the September 27, 2013 hearing, pursuant to Federal Rule of Criminal Procedure 44(c) and *United States* v. *Curcio*, 680 F.2d 881 (2d Cir. 1982), to address the apparent conflict of interest arising from the proposed representation of co-defendants Alberto Vilar and Gary Tanaka by Vivian Shevitz, Esq. This representation creates an apparent conflict for at least two reasons.  *First*, Ms. Shevitz has previously argued that Vilar's trial attorney was ineffective for not arguing comparative guilt between Vilar and Tanaka. Joint representation, however, would impair Ms. Shevitz's ability to make precisely that argument.  *Second*, Ms. Shevitz and Tanaka appear to have developed an intimate, romantic relationship, with Tanaka and Ms. Shevitz living together since the fall of 2012.  This relationship, by all appearances, would impair Ms. Shevitz's duty of loyalty to Vilar and cloud her judgment with respect to Tanaka.

      To aid in the Court's evaluation of this apparent conflict, ensure that the defendants understand the nature of the conflict, and obtain knowing and voluntary waivers of the conflict, if appropriate, the Government has prepared a list of proposed questions for the Court's consideration and possible use at the *Curcio* hearing.

**I.   Background**

      As the Court well knows, the trial of Vilar and Tanaka on Indictment S3 05 Cr. 621 (RJS), began on September 22, 2008, and concluded on November 19, 2008, when the jury convicted Vilar on all 12 counts and convicted Tanaka on Counts One (conspiracy), Three (securities fraud), and Four (investment adviser fraud).  On February 8, 2010, Vilar was sentenced principally to 108 months' imprisonment and three years' supervised release.  On February 10, 2010, Tanaka was sentenced principally to 60 months' imprisonment and three

Hon. Richard J. Sullivan
September 20, 2013
Page 2 of 11

years' supervised release.  Vilar and Tanaka were represented at trial and at sentencing by attorneys other than Ms. Shevitz.

Thereafter, on March 22, 2010, Ms. Shevitz was appointed, pursuant to the Criminal Justice Act ("CJA"), to represent Alberto Vilar for his criminal his appeal.[1]  On June 28, 2010, this Court appointed Ms. Shevitz and Ms. Wolfe to represent Vilar in post-conviction forfeiture matters.  Vilar filed his brief on appeal on October 6, 2011; the Government filed its response on March 26, 2012, and argument was held be the Second Circuit on August 21, 2012.  In October 2012, both Vilar and Tanaka were granted bail pending appeal.

On August 30, 2013, the Second Circuit issued its Opinion, which affirmed the judgments of conviction of both Vilar and Tanaka in all respects, except for the sentences; and remanded the case to this Court so that Your Honor could sentence the defendants *de novo*.

## II.   Applicable Law

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel, which includes "the right to representation by conflict-free counsel." *United States* v. *Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002).

District courts have two separate obligations where there is a possible conflict of interest.  *First*, the district court has an "inquiry obligation" when it is apprised of the possibility of a conflict of interest, under which it must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States* v. *Levy*, 25 F.3d 146, 153 (2d Cir. 1994).  *Second*, if the district court finds after some inquiry that the defendant's attorney suffers from an actual or potential conflict, the district court then has a "disqualification/waiver" obligation, under which it is required either to disqualify the attorney if the conflict is sufficiently severe, or, if the conflict may be waived, to conduct a *Curcio* hearing to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict from the defendant.

It appears that Ms. Shevitz's proposed representation would create an actual conflict of interest.  *See Armienti* v. *United States*, 313 F.3d 807, 811 (2d Cir. 2002) ("An actual conflict between a lawyer and his client exists when, during the course of the representation, the attorney's and defendant's interests' diverge with respect to a material factual or legal issue or to a course of action." (internal quotation marks omitted)).  Conflicts "such as an attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable." *United States* v. *Perez*, 325 F.3d 115, 125 (2d Cir. 2003).  However, "such a conflict might require a defendant to abandon a particular defense or line of questioning," and the defendant must "seek the legal advice of independent counsel and make an informed

---

[1] Three additional CJA attorneys – Jane Simkin Smith, Esq., Susan C. Wolfe, Esq., and Joanna Eftichyiou, Esq. – were also appointed pursuant to the CJA to assist Ms. Shevitz in representing Vilar on appeal.

Hon. Richard J. Sullivan
September 20, 2013
Page 3 of 11

judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel." *Id*. (quoting *United States* v. *Fulton*, 5 F.3d 605, 613 (2d Cir. 1993)). If the defendant "can rationally opt to retain counsel of his choice despite a conflict, the court conduct[s] a *Curcio* hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation." *Id*.[2]

Whether the defendant has knowingly and intelligently waived a conflict is a Sixth Amendment concern. Separately, even where the Sixth Amendment is satisfied, this Court has "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession." *Wheat* v. *United States,* 486 U.S. 153, 160 (1988); *see also, e.g.*, *United States* v. *Jones,* 381 F.3d 114, 119 (2d Cir. 2004).

### III.   Relevant Ethical Standards

#### A.  Rule 1.9(a) – Duties to Former Clients

The New York Rules of Professional Conduct may call for Ms. Shevitz to obtain written consent from Vilar before representing his criminal co-defendant, Tanaka. New York Rule of Professional Conduct 1.9(a), which parallels Model Rule of Professional Conduct 1.9(a), provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0. Comment 3 to Rule 1.9 states: "Matters are 'substantially related' for the purposes of this Rule if they involve the same transaction or legal dispute or if, under the circumstances, a reasonable lawyer would conclude that there is otherwise a substantial risk that confidential factual

---

[2] Judge Kaplan has observed that

> The Second Circuit has considered a number of different factors in determining whether a conflict can be waived including, among other things, (1) whether disqualifying the defendant's chosen counsel would create "real prejudice" to the defendant based on the length of the representation and/or counsel's familiarity with the case, (2) whether there is a possibility that the attorney could be called as a witness at the defendant's trial or implicated in the defendant's alleged crimes, (3) whether the continued representation would conflict with the attorney's own personal financial or liberty interests, as opposed to the interests of a current or former client, (4) whether, if the conflict concerns the interests of another client, the attorney's relationship with the other client is continuing or has been terminated, (5) whether any other current or former client affected by the conflict has initiated or joined in the motion to disqualify defendant's chosen counsel; and (6) the availability of measures that might limit the dangers posed by the conflict, such as restricting an attorney's cross-examination of a former client.

*United States* v. *Stein*, 410 F. Supp. 2d 316, 328 (S.D.N.Y. 2006) (international citations omitted).

Hon. Richard J. Sullivan
September 20, 2013
Page 4 of 11

information that normally would have been obtained in the prior representation would materially advance the client's position in the subsequent matter."

> **B. Rules 1.8(j) – Current Clients:  Specific Conflicts of Interest Rules – Sexual Relations with Clients**

Rule 1.8 of the New York Rules of Professional Conduct also set forth examples of specific conflicts of interest for current clients.  In relevant part, Rule 1.8(j), states:

> (j)    (1) A lawyer shall not:
>
>> (i)  as a condition of entering into or continuing any professional representation by the lawyer or the lawyer's firm, require or demand sexual relations with any person;
>>
>> (ii) employ coercion, intimidation or undue influence in entering into sexual relations incident to any professional representation by the lawyer or the lawyer's firm; or
>>
>> (iii) in domestic relations matters, enter into sexual relations with a client during the course of the lawyer's representation of the client.
>
> (2) Rule 1.8(j)(1) shall not apply to sexual relations between lawyers and their spouses or to ongoing consensual sexual relationships that predate the initiation of the client-lawyer relationship.

The commentary to Rule 1.8 cautions:

> A client's sexual involvement with the client's lawyer, especially if the sexual relations create emotional involvement, will often render it unlikely that the client could rationally determine whether to consent to the conflict created by the sexual relations. If a client were to consent to the conflict created by the sexual relations without fully appreciating the nature and implications of that conflict, there is a significant risk of harm to client interests. Therefore, sexual relations between lawyers and their clients are dangerous and inadvisable. Out of respect for the desires of consenting adults, however, paragraph (j) does not flatly prohibit client-lawyer sexual relations in matters other than domestic relations matters. Even when sexual relations between a lawyer and client are permitted under paragraph (j), however, they may lead to incompetent representation in violation of Rule 1.1.

* * *

> Sexual relationships between spouses or those that predate the client-lawyer relationship are not prohibited. Issues relating to the exploitation of the fiduciary relationship and client dependency are diminished when the sexual relationship existed

>prior to the commencement of the client-lawyer relationship. However, before proceeding with the representation in these circumstances, the lawyer should consider whether the lawyer's ability to represent the client will be materially limited by the sexual relationship and therefore constitute an impermissible conflict of interest. *See* Rule 1.7(a)(2).

Comments 17 & 18 to Rule 1.8.

## IV. Discussion

As noted in its September 16, 2013 letter to the Court, with respect to joint representation, Ms. Shevitz has previously acknowledged that Vilar and Tanaka have antagonistic defenses. Representing Vilar on appeal, Ms. Shevitz argued that Tanaka's defense at trial was "to blame things on Vilar," and she faulted Vilar's trial counsel for not shifting the blame back to Tanaka by showing that "only Tanaka could authorize the transfer of . . . funds between commingled accounts and decide what and when to pay [Amerindo's clients]." (Br. 43). There is no reason to believe that Vilar and Tanaka have any less incentive to argue comparative culpability at sentencing than they did at trial. But an attorney representing both Vilar and Tanaka would be unable to argue relative culpability while simultaneously maintaining a duty of loyalty to both clients. Ms. Shevitz's belief that it was *ineffective* under the Sixth Amendment for prior counsel to fail to argue relative culpability appears to be irreconcilable with her application for joint representation, which would preclude her from making precisely that argument.

Ms. Shevitz's application to continue representing Vilar in proceedings before this Court also raises concerns. In October 2012, the Government learned, based on its review of Tanaka's prison communications, that Tanaka and Ms. Shevitz had apparently developed a relationship that was personal and romantic in nature.[3] After Vilar and Tanaka were granted bail pending appeal, Tanaka resided and, according to the assigned Pretrial Services officer, continues to reside with Ms. Shevitz. Ms. Shevitz's personal relationship with Tanaka raises serious questions about her ability to represent Vilar with undivided loyalties, particularly in light of her belief that it is in Vilar's interest to argue that Tanaka had greater culpability for the offense.

In light of the above, Ms. Shevitz way be unable to make certain arguments on behalf of either (or both) Vilar and Tanaka for fear that they may prejudice Tanaka or Vilar, respectively. Further, it may be that Ms. Shevitz is curtailed from making certain arguments on behalf of Vilar

---

[3] In October 2012, a Bureau of Prisons employee at FCI Terminal Island, where Tanaka was then incarcerated, alerted this Office that Tanaka may have been seeking an "emergency" passport to travel to Canada. In an effort to assess Tanaka's risk of flight in connection his bail application, Government attorneys not involved in the prosecution of this case obtained and reviewed emails that Tanaka sent through the Bureau of Prisons email system. Those emails did not reveal a risk of flight, but did reveal the personal nature of Tanaka's relationship with Ms. Shevitz. The appeal had at that time been fully submitted, argument having taken place on August 21, 2012. Accordingly, there was no basis at that time to conduct further inquiry into this matter.

Hon. Richard J. Sullivan
September 20, 2013
Page 6 of 11

because such arguments, if made, may violate attorney-client privilege between Tanaka and Ms. Shevitz or conflict with the personal, romantic relationship between Tanaka and Ms. Shevitz.

   Accordingly, in advance of the September 27, 2013 *Curcio* hearing, the Government attaches a set of proposed questions to aid the Court with its inquiry of Vilar and Tanaka to determine whether each defendant understands the nature of the potential conflict occasioned by Ms. Shevitz's appearance on behalf of both; whether Vilar and Tanaka wish to waive all conflicts arising from the joint representation; whether any such waiver is knowing and voluntary; and whether the Court would accept any such waiver. The Government further requests that any waivers, if appropriate, be in writing and include an agreement to forgo any claims of ineffective assistance of counsel arising from the conflict.

            Respectfully submitted,

            PREET BHARARA
            United States Attorney

By: _____
   BENJAMIN NAFTALIS / JUSTIN ANDERSON
   Assistant United States Attorneys
   (212) 637-2456 / -1035

cc: Vivian Shevitz, Esq.
   Joshua Dratel, Esq.

Hon. Richard J. Sullivan
September 20, 2013
Page 7 of 11

## THE GOVERNMENT'S PROPOSED *CURCIO* INQUIRY

**Introductory Topics To Establish Competence** (Vilar and Tanaka)

1. Age

2. Education

3. Current medications

4. Alcohol, drugs, medications within past 24 hours

5. Any interference with ability to understand what is happening

**Circumstances of Representation** (Vilar only)

1. Are you currently represented by Ms. Shevitz? In what matters?

2. How is Ms. Shevitz being compensated in those matters (*e.g.*, fee, contingency, etc.)?

3. Have you been satisfied with Ms. Shevitz's representation?

    a. How long has Ms. Shevitz represented you? How long have you known Ms. Shevitz?

    b. Have you retained counsel or had counsel appointed for you in other criminal or civil matters? [If yes, the Government respectfully requests that the Court ask: In connection with what matters? Has Ms. Shevitz represented you in connection with these other matters?]

4. What is your understanding of Ms. Shevitz's role in representing you in this case?

**Conflicts of Interest**

    A.    **Questions for Vilar:**

        1. Has Ms. Shevitz informed you that she seeks to represent your criminal co-defendant Gary Tanaka?

        2. Do you understand that the fact of Ms. Shevitz's representation could lead her to have loyalties divided between yourself and Mr. Tanaka?

        3. Are you aware that Ms. Shevitz has previously stated that your attorney at trial was ineffective for failing to argue that Tanaka is more to blame for this offense than you are? Are you aware that Ms. Shevitz's

    representation of Tanaka while also representing you will likely impair her ability to make that argument?

4. Are you aware that Ms. Shevitz is having an intimate, romantic relationship with Tanaka? Are you aware that Ms. Shevitz's relationship with Tanaka might impair her duty of loyalty to you because of her feelings for your co-defendant?

5. Let me give you some other examples of the ways in which Ms. Shevitz's representation of Mr. Tanaka could adversely affect her representation of you in this case or your appeal:

  a. Are you aware that Ms. Shevitz may have information from Mr. Tanaka that may be helpful in defending you, but that she may be absolutely prohibited from using it to defend you because of the attorney-client privilege?

  b. Similarly, do you understand that, should Mr. Tanaka testify or make statements against you, Ms. Shevitz may not use any information that she knows from Mr. Tanaka to cross-examine him or rebut those statements, even if Ms. Shevitz believes that such cross-examination or arguments would be helpful to you? In fact, do you understand that, although the Court may permit another lawyer to cross-examine Mr. Tanaka on your behalf, it is possible that Ms. Shevitz will not be able to cross-examine Mr. Tanaka at all?

  c. Are you aware that, if you have information about Mr. Tanaka, your attorney might have an incentive not to elicit that information during a proffer, meeting, or settlement discussion with the Government, which could be to your detriment?

6. Do you understand that the greatest danger is in the inability to foresee all the conflicts that may arise?

7. Do you understand that the Court, having presided at many trials in this Courthouse, believes that representation by an attorney with a conflict of interest may be ill-advised?

8. Describe in your own words your understanding of the conflict of interest arising in this situation.

**B. Questions for Tanaka:**

1. Are you aware that Ms. Shevitz seeks to continue representing your criminal co-defendant Alberto Vilar before this Court? Are you further

        aware that she seeks to represent you at the same time that she continues to represent Vilar?

2. Do you understand that the fact of Ms. Shevitz's representation could lead her to have loyalties divided between yourself and Mr. Vilar?

3. Are you aware that Ms. Shevitz has previously stated that an attorney was ineffective for failing to argue that you were more to blame for this offense than Vilar was?  Are you also aware that your trial counsel argued that Vilar was more to blame than you were?  Do you recognize that Ms. Shevitz's joint representation of you and Vilar will likely impair her ability to make any arguments about relative culpability for the offense?

4. Let me give you some other examples of the ways in which Ms. Shevitz's representation of Mr. Vilar could adversely affect her representation of you in this case or your appeal:

    a. Are you aware that Ms. Shevitz may have information from Mr. Vilar that may be helpful in defending you, but that she may be absolutely prohibited from using it to defend you because of the attorney-client privilege?

    b. Similarly, do you understand that, should Mr. Vilar testify or make statements against you, Ms. Shevitz may not use any information that she knows from Mr. Vilar to cross-examine him, even if Ms. Shevitz believes that such cross-examination would be helpful to you?  In fact, do you understand that, although the Court may permit another lawyer to cross-examine Mr. Vilar on your behalf, it is possible that Ms. Shevitz will not be able to cross-examine Mr. Vilar at all?

    c. Are you aware that, if you have information about Mr. Vilar, your attorney might have an incentive not to elicit that information during a proffer, meeting, or settlement discussion with the Government, which could be to your detriment?

5. Do you understand that a client's romantic involvement with his attorney will often render it difficult for the client to separate his personal feelings about his attorney from the serious business of providing a competent defense to criminal charges?

6. Do you understand that an attorney is supposed to provide independent, dispassionate representation and advice?  Do you further understand that a sexual relationship between an attorney and client may cause that attorney's judgment to be clouded by her personal feelings toward her client such that she fails to provide unbiased and dispassionate advice?

    7.    As a condition of entering into or continuing any professional representation, has Ms. Shevitz required or demanded sexual relations with you or any person?

    8.    Has Ms. Shevitz employed coercion, intimidation or undue influence in entering into sexual relations incident to any professional representation of you?

    9.    Have you discussed how you might compensate Ms. Shevitz, now or in the future, in this matter (*e.g.*, fee, contingency, etc.)?

    10.    Do you understand that the greatest danger is in the inability to foresee all the conflicts that may arise?

    11.    Do you understand that the Court, having presided at many trials in this Courthouse, believes that representation by an attorney with a conflict of interest may be ill-advised?

    12.    Describe in your own words your understanding of the conflict of interest arising in this situation.

**C.  Right to Conflict-Free Representation (Vilar and Tanaka)**

    1.    Do you understand that, in every criminal case, including this one, the defendant is entitled to the assistance of counsel whose loyalty to him is undivided, and who is not subject to any force or consideration that might in any way intrude upon the attorney's loyalty to his client's interests?

    2.    Have you received any inducements, promises, or threats with regard to the choice of counsel in this case?

    3.    [If the defendant has ever paid, or has had a third party pay, Ms. Shevitz for any legal services he provided to the defendant, the Government respectfully requests that the Court ask: Are you paying Ms. Shevitz's fee or is someone else paying Ms. Shevitz's to represent you?  If someone else is paying, who is paying Ms. Shevitz?  Do you understand that, because Ms. Shevitz is being paid by a third party, Ms. Shevitz may be influenced by this third party in connection with her representation of you, that is, Ms. Shevitz may be influenced to advise you to do things that are in the third party's best interests and not in your best interests? *See Amiel* v. *United States*, Docket No. 98-2135, 2000 WL 378880 (2d Cir. Apr. 13, 2000).]

    4. Please confirm that the Court has given you an opportunity to think about what you have been told – especially about the hazards of the conflict of interest – and to talk it over with counsel other than Ms. Shevitz. [Please state his/her name.] Do you still wish to continue with [or accept] Ms. Shevitz as your attorney.

**D. Right to Effective Assistance of Counsel (Vilar and Tanaka)**

    1. What is your understanding of the right to "effective assistance of counsel?"

    2. Do you understand that you are under no obligation to accept Ms. Shevitz's offer of representation, even if you cannot afford an attorney? If you are unable to pay for an attorney, the Court can appoint qualified, unbiased counsel to represent you. Would you like the Court to do so?

    3. (*Vilar only*) Do you understand that you have the right to object to Ms. Shevitz's proposed representation of Tanaka based on your privileged communications with her and the knowledge she derived from her prior representation of you?

    4. (*Tanaka only*) Do you understand that you can object to Ms. Shevitz's proposed representation of Vilar based on knowledge she acquired through her personal, romantic relationship with you?

    5. It is important that you understand that no one can predict with any certainty the course that this case will take or how this conflict may affect it. Do you agree to waive any post-conviction argument, on appeal or otherwise that, by virtue of Ms. Shevitz's representation of you, you were denied effective assistance of counsel by Ms. Shevitz?

    6. Is there anything that the Court has said that you wish to have explained further?