*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 4, 2013

**BY ELECTRONIC MAIL & ECF**

The Honorable Richard J. Sullivan
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

    Re:    <u>United States v. Vilar and Tanaka</u>,
             No. S3 05 Cr. 621 (RJS)

Dear Judge Sullivan:

      The Government respectfully submits this letter in support of its application to revoke the captioned defendants' bail pending re-sentencing.

**I.    Applicable Law**

      Defendants "found guilty beyond a reasonable doubt at trial of felony crimes . . . [have] no substantive constitutional right to bail pending sentencing." *United States* v. *Abuhamra*, 389 F.3d 309, 317 (2d Cir. 2004). The relevant statute likewise creates no general expectation of post-verdict liberty, establishing instead a presumption in favor of detention. *See* 18 U.S.C. § 3143(a); *see also* S.Rep. No. 225, 98th Cong., 1st Sess. 26 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3209 ("Once guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of sentence or appeal."); *Abuhamra*, 389 F.3d at 318 (observing that "feder'al law disfavors release on bail" after a guilty verdict).

      Under Section 3143(a), a defendant seeking bail pending sentencing must "be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." It is the defendant's burden to "rebut this presumption." *Abuhamra*, 389 F.3d at 319.

**II.    Discussion**

      **A.    This Court Has Jurisdiction to Revoke Bail**

      The Second Circuit explicitly contemplated that bail proceedings would occur before this Court upon the issuance of its opinion affirming the defendants' convictions on all counts. *See United States v. Vilar*, No. 10-521, 2013 WL 4608948, *27 n.40 (2d Cir. Aug. 30, 2013). Further, as this Court has already determined, while the mandate has yet to issue, "this Court

Hon. Richard J. Sullivan
October 4, 2013
Page 2 of 3

'retains jurisdiction over the person[s] of the defendant[s] at least for the limited purpose of reviewing, altering[,] or amending the conditions under which the court released the defendant[s].'" *United States* v. *Sattar*, No. 02 Cr. 395 (JGK), 2009 WL 4038461, at *1 (S.D.N.Y. Nov. 28, 2009) (quoting *United States* v. *Black*, 543 F.2d 35, 37 (7th Cir. 1976)); *accord United States* v. *Catino*, 562 F.2d 1, 4 (2d Cir. 1977).

### B.   The Defendants Cannot Satisfy their Burden under the Statute

This Court has already made factual findings establishing that the defendants present a risk of flight. In a May 21, 2012 Order, the Court stated the following in connection with the defendants' prior application for bail pending appeal:

> [A]ny risk of Defendants' flight that previously existed is now magnified by the fact that each is serving a substantial sentence—Tanaka has been sentenced to 60 months imprisonment, and Vilar to 108 months. Moreover, despite Vilar's assertion that he has no way to flee, the fact remains that he has ties abroad and has lived abroad in the past. Similarly, there is no dispute that Tanaka has family abroad—including his young son and his wife Renata, who was identified at trial as an unindicted co-conspirator. Thus, the Court is not persuaded by Defendants' assertion that they have no incentive to flee because of their interest in "vindicating the incredible wrong done to them."

May 21, 2012 Order at 2.[1]

The Court made those findings while the defendants had strong hopes that their convictions would be vacated on appeal. Since that time, the defendants' convictions have been affirmed on all counts and in all respects.

Upon the issuance of the mandate, the parties will return to the Court for the defendants' resentencing. Those proceedings are unlikely to be materially different from the prior sentencing proceedings because the Second Circuit has already rejected the defendants' arguments pertaining to sentencing. Specifically, the Second Circuit rejected the defendants' challenges to the loss calculation methodology, *Vilar*, 2013 WL 4608948, at *25 n.34, and explicitly stated that the losses of Lily Cates and the Mayer family, among others, are within the scope of the defendants' criminal liability, *id.* at *9-11. Taking the losses of Cates ($9.8 million) and the Mayer family ($11.1 million) alone (Vilar PSR ¶ 79; Tanaka PSR ¶ 79), they constitute a loss of $20.9 million.

In light of that conservative estimate, the applicable Guidelines enhancement for loss is unlikely to differ from that which applied at the defendants' initial sentencing—that is, a 22 level enhancement pursuant to U.S.S.C. § 2B1.1(b)(1)(L). (Vilar PSR ¶ 86; Tanaka PSR ¶ 86 (both

---

[1] The Second Circuit granted the defendants' application for bail pending appeal, but it did not question this Court's factual findings, much less find them clearly erroneous.

Hon. Richard J. Sullivan
October 4, 2013
Page 3 of 3

referring to Section 2B1.1(b)(1)(K) in the 2008 Edition, as an apparent typographical error)).[2] Accordingly, there is no reason to believe that the defendants will face a more lenient advisory range under the Guidelines when the parties return for resentencing.

    That the defendants face substantial terms of imprisonment is undeniable. Vilar has characterized the applicable Guidelines range as a "death sentence for someone [his] age." Randy Wyrick, *Alberto Vilar's lawyer accused of dating co-defendant*, The Aspen Times, Sept. 24, 2013, http://www.aspentimes.com/news/8258493-113/vilar-shevitz-tanaka-prosecutors. Vilar likewise called the "nine year sentence [that was actually imposed] . . . also a death sentence." *Id.* Faced with the strong likelihood that the defendants will be sentenced to terms of imprisonment no less severe than those previously imposed, the defendants have a strong incentive to flee.

    The defendants' international contacts and resources have not diminished with time. In fact, a member of Vilar's family—and victim of Vilar's crimes—reports that, "upon gaining his freedom," Vilar plans to "leave this country for Switzerland to be with his true family." Sept. 25, 2013 Email of John Burke to the Court. It is also apparent from Tanaka's need to reside with counsel for Vilar that he is without family or other resources in this country and has no significant ties to or reason to remain within the United States. Lastly, the defendants face material monetary penalties, in light of their criminal convictions, and ongoing (and potential) civil litigation with the SEC, defrauded investors, and others.

    Strong ties abroad, the near certainty of further incarceration, in addition to related civil litigation, here provide the defendants with a powerful incentive to flee prior to sentencing. In light of these facts, the defendants cannot demonstrate by clear and convincing evidence that they do not pose a flight risk. Accordingly, the Government respectfully requests the revocation of their bail.

    Respectfully submitted,

    PREET BHARARA
    United States Attorney

By:    /s/
    BENJAMIN NAFTALIS / JUSTIN ANDERSON
    Assistant United States Attorneys
    (212) 637-2456 / -1035

cc: Defense Counsel (by email)

---

[2] At the previous sentencing, Vilar's Guidelines range was 262 to 327 months, and Tanaka's was 210 to 262 months. (Vilar PSR ¶ 144; Tanaka PSR ¶ 133). There is no reason to believe that a different range will apply at resentencing.