UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-25-13
```

UNITED STATES OF AMERICA

-v-

ALBERTO VILAR and GARY TANAKA,

Defendants.

No. 05 Cr. 621 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

Now before the Court is Defendants' motion seeking funds under the Criminal Justice Act of 1964, Pub. L. 88-455, 78 Stat. 552 (codified as amended at 18 U.S.C. § 3006A) ("CJA"), *nunc pro tunc* to pay for representation in a related civil case, *Mayer v. J.P. Morgan Securities, LLC*, 12 Civ. 5240 (RJS). (Doc. No. 568.) For the reasons set forth below, the motion is denied.

I. BACKGROUND

Defendants were indicted in 2005 on charges including conspiracy to commit securities fraud, investment advisor fraud, mail fraud, wire fraud, and money laundering. (Doc. Nos. 7, 16, 133.) After a jury trial in 2008, Defendant Vilar was convicted on all counts and Defendant Tanaka was convicted on three out of twelve courts. *United States v. Vilar*, Nos. 10-521-cr (L), 10-580-cr (CON), 10-4639-cr (CON), 2013 WL 4608948, at *3 (2d Cir. Aug. 30, 2013). Those convictions have since been upheld on appeal. *Id.* at *1.

There are two ongoing civil cases before this Court related to the criminal case. The first, *SEC v. Amerindo Investment Advisors, Inc.*, No. 05 Civ. 5231 (RJS), is a parallel civil enforcement action brought by the Securities and Exchange Commission. The second, *Mayer v. J.P. Morgan Securities, LLC*, 12 Civ. 5240 (RJS), is a state action, brought by one family of

defrauded investors, that was removed to this Court. In *Mayer*, Lisa and Debra Mayer are attempting to execute on accounts held by J.P. Morgan a state court judgment they obtained against Defendants and their companies. (*Mayer* Doc. No. 1 Ex. A.) J.P. Morgan, in turn, brought a third-party interpleader action against the many claimants to the accounts, including Defendants. (*Mayer* Doc. No. 19.)

Since May 2010, Defendant Vilar has been represented in the criminal case by Vivian Shevitz. (Doc. No. 446.) On June 29, 2010, the Court appointed Ms. Shevitz as CJA counsel for Defendant Vilar. (Doc. No. 456.) Ms. Shevitz also represented Defendant Tanaka in this case from May 2012 to September 2013, but was never appointed as CJA counsel for him. Defendants now seek an order authorizing payment of CJA funds to Ms. Shevitz for her work in *Mayer*. (Doc. No. 568.)

## II. DISCUSSION

Federal courts may distribute public funds only as authorized by statute. *See United States v. Wattanasiri*, 141 F.3d 1152, at *2 (2d Cir. 1998) ("[T]he expenditure of public funds is proper only when authorized by Congress." (citing *United States v. MacCollom*, 426 U.S. 317, 321 (1976) (plurality opinion))). The only statute relevant to this motion is the CJA. Therefore, the motion entirely turns on whether the CJA permits payment for work in cases like *Mayer* – that is, civil cases involving a criminal defendant's property rights. The Court holds that it does not.

### A. The CJA

The CJA exists to implement the Sixth Amendment right to counsel. *See United States v. Parker*, 439 F.3d 81, 90–91 (2d Cir. 2006). Since 1938, the Sixth Amendment has been interpreted to require the federal government to provide counsel to indigent defendants charged with federal crimes. *See Johnson v. Zerbst*, 304 U.S. 458, 467–68 (1938); *cf. Gideon v.*

*Wainwright*, 372 U.S. 335 (1963) (extending the same requirement to state governments). The CJA helps meet that requirement by establishing a system for courts to appoint and pay private attorneys in certain situations, all of which involve a party's personal liberty. *See* 18 U.S.C. § 3006A(a)(1), (2); *cf. Alabama v. Shelton*, 535 U.S. 654, 657 (2002) (stating that the right to counsel applies if and only if a criminal defendant is subject to imprisonment).

The Sixth Amendment, however, by its terms, is limited to "criminal prosecutions." U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e.") There is thus no Sixth Amendment right to counsel in civil cases. *See Turner v. Rogers*, 131 S. Ct. 2507, 2516 (2011); *but see id.* at 2520 (noting that the Due Process Clause of the Fourteenth Amendment might require appointed counsel in some civil cases). As such, the CJA generally does not provide for appointment of counsel in civil cases. But, in some circumstances, the CJA extends beyond the minimum required by the Sixth Amendment. For instance, the CJA allows for appointment of counsel in federal habeas corpus cases, which are technically civil, and requires appointment of counsel in certain cases involving involuntary civil commitment or hospitalization. *See* 18 U.S.C. § 3006A(a)(2)(B) (habeas corpus); *id.* § 3006A(a)(1)(F) (hospitalization and civil commitment). Moreover, where an attorney has been appointed in a proceeding covered by the CJA, that attorney can be paid for representing her or his client in "ancillary matters appropriate to the proceedings." *See id.* § 3006A(c).

B. Application

As noted above, *Mayer* is a civil case involving an attempt under state law to execute a state court judgment against assets in which Defendants claim an interest. Such a case, standing

alone, would not be covered by the CJA.[1] Therefore, Defendants can obtain CJA funds for their counsel in *Mayer* only if that case is an "ancillary matter[] appropriate to the proceedings" for which she was appointed.

The CJA refers to "ancillary matters appropriate to the proceedings" but does not elaborate on what matters qualify. 18 U.S.C. § 3006A(c). The Second Circuit, however, has held that "'ancillary matters' refers to those involved 'in defending the principal criminal charge.'" *United States v. Reddick*, 53 F.3d 462, 464 (2d Cir. 1995) (quoting *Miranda v. United States*, 455 F.2d 402, 404–05 (2d Cir. 1972)); *accord United States v. Garcia*, 689 F.3d 362, 364 (5th Cir. 2012). Under that reading, a matter is ancillary to a criminal case if it is outside the criminal proceedings but nonetheless helpful to the criminal defense. *Cf. United States v. Davis*, 400 F. App'x 538, 540 (11th Cir. 2010) ("[Ancillary matters] are those procedural mechanisms employed within the context of a federal action to insure the protection of a person's rights *in that action*." (emphasis in original) (internal quotation marks omitted)). This interpretation fits with the limited available legislative history, which includes the House Report on the amendment adding the "ancillary matters" language to section 3006A(c). According to that report,

> Many times remedies technically outside the scope of the trial proper may be necessary to insure that the rights of the person are fully protected . . . such as using a habeas corpus ad testificandum to secure the presence or testimony of witnesses, or filing an application under 18 U.S.C. 4344 regarding compentency [sic] to stand trial. . . . [T]he express inclusion of "ancillary matters appropriate to the proceedings" [in § 3006A(c)] will insure that the attorney who spends time and effort *to protect a right considered valuable in defending the principal criminal charge* can be compensated under the act.

---

[1] Defendants assert that 18 U.S.C. § 3006A(a)(1)(H), which requires appointment of counsel whenever a person "is entitled to appointment of counsel under the sixth amendment to the Constitution," authorizes payment in this case because the "Sixth Amendment requires representation where the litigation affects and is dependent on the criminal penalty." (Doc. No. 570 at 5.) Defendants cite no authority for this claim, likely because none exists. As explained above, the Sixth Amendment right to counsel applies only in criminal cases. *See Turner v. Rogers*, 131 S. Ct. 2507, 2516 (2011).

4

H.R. Rep. 91-1546 (1970), *reprinted in* 1970 U.S.C.C.A.N. 3982, 3989 (emphasis added).

Efforts to protect a defendant's property rights in a related civil case do not satisfy that standard. Nothing done to protect a defendant's property rights is helpful or even relevant to defending the criminal case. Indeed, were the rule otherwise, it would create a truly perverse incentive: a defendant who is criminally prosecuted and sued civilly would have a right to appointed counsel in the civil case, but a defendant who is sued civilly only would have no right to appointed counsel. The happenstance of a criminal prosecution should not provide such a windfall.

This rule is supported by the *Guide to Federal Judicial Policy* (the "Guidelines"), which has been cited by the Supreme Court in interpreting the CJA. *See In re Berger*, 498 U.S. 233, 234–35 (1991) (per curiam). Under section 210.20.30(d) of the Guidelines,

> The scope of representation in the ancillary matter should extend only to the part of the ancillary matter that relates to the principal criminal charge and to the *correlative objective sought* to be achieved in providing the representation (e.g., a CJA defendant in a criminal stock fraud case should be represented by CJA counsel at the defendant's deposition in a parallel civil fraud action for the limited purpose of advising the defendant concerning the defendant's Fifth Amendment rights).

7A *Guide to Federal Judicial Policy* § 210.20.30(d), http://www.uscourts.gov/FederalCourts/ AppointmentOfCounsel/CJAGuidelinesForms/vol7PartA/vol7PartAChapter2.aspx (emphasis in original). That section limits CJA representation in ancillary matters to work that helps the defense in the principal criminal charge. Indeed, the example given appears tailor-made for this case. Where there is a parallel civil action related to a criminal case, the CJA counsel may do work in the civil case only to protect the defendant's rights in the criminal matter. Work to protect the defendant's property rights, on the other hand, is outside of CJA representation.

Section 210.20.30(e) of the Guidelines similarly supports this rule. That section states that "[r]epresentation in an ancillary matter is compensable as part of the representation in the

5

principal matter for which counsel has been appointed and is not considered a separate appointment for which a separate compensation maximum would be applicable." *Id.* § 210.20.30(e). That section assumes that all work in ancillary matters will be "part of the representation in the principal [criminal case]." Work in a separate matter can only be part of the criminal representation, however, if that work advances the goals of the criminal representation – in other words, if the work is helpful to the criminal defense.

The Court therefore holds that work to protect a defendant's property rights in a related civil case is not an "ancillary matter appropriate to the [CJA] proceedings." Under that holding, application to this case is simple. The only interest Defendants' have in *Mayer* is protecting their property rights. Thus, any work their counsel has done or could do is not compensable under the CJA.

### III. CONCLUSION

Accordingly, IT IS HEREBY ORDERED THAT the motion is DENIED. The clerk of the court is respectfully directed to terminate the motion pending at docket number 568.

SO ORDERED.

Dated:   October 25, 2013
         New York, New York

                                          RICHARD J. SULLIVAN
                                          UNITED STATES DISTRICT JUDGE