UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 05 cr 621 (RJS) |
| v. | : | DECLARATION AND MEMORANDUM |
| ALBERTO VILAR  and GARY TANAKA | : | IN SUPPORT OF |
| | : | RECUSAL OF |
| Defendants. | | JUDGE SULLIVAN |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Vivian Shevitz, under penalty of perjury, hereby declares:

1. I am CJA counsel to Alberto Vilar and counsel (without pay) for Gary Tanaka in the district court.

2. I make the declaration in support of defendants' motion for recusal of Judge Richard Sullivan on the basis of an appearance of partiality requiring recusal, in accordance with the holding of the Second Circuit in its October 31, 2013 motion decision in *Ligon v. City of New York* and *Floyd v. City of New York*, 13-3123 and 13-2088, *removing* Judge Shira Scheindlin from those cases (*sua sponte*) because of "impropriety and the appearance of impropriety" in an alleged misuse of the Court's `related case rule" and "media interviews" and "public statements" that to the panel

demonstrated actual partiality.  The panel concluded that "in the interest, and appearance, of fair and impartial administration of justice" the cases must be assigned at random to a different judge.

3. In this case (pending almost a decade where the forfeiture has just been ordered vacated) Judge Sullivan has *twice* violated the "related case" rule, the same Local Rule cited by the *Ligon* panel.

4. Local Rule 13(b) states (Emphasis added):  "(b) **Criminal cases are not treated as related to civil cases or vice versa**."

5. Judge Sullivan first related *SEC v. Amerindo*, 05 cv 5231 (previously before Judge Laura Taylor Swain) to himself (*because* he had the criminal case and there was substantial overlap); then he related *Mayer v. JP Morgan*, 12 cv 5240, to his criminal case (and without ever notifying the defendants in this case.)

6. <u>SEC v. Amerindo</u>:  By order dated March 19, 2012 in cases *combined* with the criminal case by Judge Sullivan to give Amerindo Panama's clients opportunities to be heard about how "substitute assets" in the criminal case should be distributed (to *them*, non-parties) (DOC 516, 05 CR 621 *and* 05 cv 5231 (now RJS)), Judge Sullivan transferred to himself for all purposes the

"civil" SEC Action "in light of the substantial overlap between these two case".  He wrote in that Order that he would resolve the government's then-pending motion for a final order of forfeiture in the criminal case, as well as defendants' motion for a stay of forfeiture pending appeal.[1]

7. Judge Sullivan "took" the "related" SEC case (in March 2012) only after present counsel began to represent Gary Tanaka and made a motion in that case, before Judge Swain, to dismiss on the ground that the "enforcement" proceedings were violative of the defendants' Constitutional rights.

---

[1] On February 9 2012 (DOC 513 criminal case) Judge Sullivan denied appointment of Jane Simkin Smith as CJA co-counsel to help defend "forfeiture" because it was "by no means clear at this time that there will be a need for an additional lawyer in this action going forward." He "noted" that the "forfeiture" litigation "overlaps" with the civil litigation in "a related civil case", citing "the SEC action," writing in footnote 1:

> [1] It should be noted that the "forfeiture aspect of the case" overlaps significantly with a related civil case, *Securities and Exchange Commission v. Amerindo Investment Advisors Inc., et al.*, No. 05 Civ. 5231 (LTS) (the "SEC Action"), in which Mr. Vilar is already represented by separate, retained counsel.

He then shifted the litigation over releasing the "substitute assets" to the forced "discussions" in the SEC Action where counsel has had to respond to parties and non-parties without being paid and without being allowed to file motions.  The Court allowed for the possibility of a new request for co-counsel  "pending the outcome of discussions which may result in a joint resolution of the SEC Action **and the forfeiture aspects** of this case."  (DOC 513) (bolded emphasis added).  He shifted the litigation to the civil case, refused to release restraints on assets in the criminal case, refused to allow the defendants to manage the assets (*their* Panamanian-held funds), and denied a stay of the forfeiture in the criminal case and denied a stay in the civil case at the same time.

8. The motion for summary judgment was made on March 9, 2012, ten days *before* Judge Sullivan transferred the case to himself (on March 19, 2012 (DOC 516 3/19/13). (In that March 19, 2012 Order Judge Sullivan recognized in a footnote (p. 2 n.1) the pendency of Mr. Tanaka's summary judgment motion and Mr. Vilar's motion to dismiss).

9. The first thing Judge Sullivan did after transferring the SEC case to himself as "related" and "overlapping" was to *deny* the pending motions on the basis of Judge Sullivan's individual rule, which required a "pre-motion letter" prior to making a civil motion. (Order 3/23/12, DOC 221 (""This case was reassigned to my docket on March 20, 2013. ... Rule 2.A of the Court's Individual Practices [requires] a [prior] pre-motion letter setting forth the basis of the contemplated motion. "Accordingly it is HEARBY ORDERED that Defendants' motions are denied without prejudice" and that if they wanted to make the motion they would have to do it again under Judge Sullivan's rules. (Judge Swain had not herself objected on any Individual-rule-preclusion-of-motion ground; the SEC itself (March 14, 2012 letter to Judge Swain) sought to delay

the motion and file an amended amended complaint, not dismiss the motion entirely, as Judge Sullivan did.)

10. In the same March 21, 2012 Order rejecting defendants' motions to dismiss based on Judge Sullivan's individual rules, Judge Sullivan noted the SEC's letter of March 14, 2012 "reserv[ing] its right to seek leave to amend the amended complaint ..." Judge Sullivan *told* the SEC to "file any motion ... such as a motion to amend or a motion for summary judgment based on collateral estoppel" and cited cases supporting the position that a "criminal conviction ... constitutes estoppel" – for the SEC to use when it filed its invited motion). (See DOC 221 *SEC* Action, denying the motion for summary judgment ("without prejudice," directing defendants to re-file "[s]hould [they] wish to renew their motion." and directing the SEC's attention to cases to support its motion for summary judgment based on collateral estoppel).

11. Meanwhile, in the criminal case, the government confessed error in its appeal brief as to the forfeiture order. It had to do so in light of the fact that Judge Sullivan ruled on August 26, 2010

(DOC 462) that he had "inadvertently erred" in imposing a forfeiture $36.7 million too high by "enter[ing] the proposed order in substantially the form sought by the government" instead of the amount stated orally at the sentencing hearing. Though the Court "chastised" not only defense counsel (who failed to "note" the discrepancy) but also the prosecutor for failing to comply with the "court's instruction" to file a proposed order that "reflect[ed] the Court's rulings at sentencing" (instead submitting an order that escalated the numbers), and stated in a footnote (DOC 462 ECF p.13 n.5) that he intended to order forfeiture of the "correct" sum of $17,651,159, Judge Sullivan again relied on the same prosecutor's "form" for the substitute asset forfeiture order entered November 9, 2010 (DOCS 463 and 464), and entered a "substitute asset forfeiture" number with the same excessive $36.7 amount of "forfeiture" ordered "inadvertently" previously. The Appellate prosecutor confessed error.

12. The government did not bring that appellate concession to this Court's attention while the "forfeiture" discussions were being conducted by the "combined" courts then Judge Sullivan himself.

Defendants did so. Then (DOC 518, 4/6/12) Judge Sullivan ruled that, "[i]n light of the government's position that a final order of forfeiture should not be entered at this time" the Court was denying the government's motion for a final order of forfeiture "without prejudice."

13. At the same time Judge Sullivan *denied* defendants' motion in the criminal case to stay the forfeiture of substitute assets and then permitted and facilitated the SEC in confiscating the rights to manage and control those assets. It forced "summary judgment" litigation so that it could appoint a Receiver and denied a stay in that "civil" SEC case; the only way to protect "substitute assets" has been to litigate in this "civil" case.

14. Litigation in this SEC case is, as this Court finally ruled on October 25, 2013 (DOC 613 criminal case), not recompensable for defendants' counsel under the CJA Act because it is "only" about property rights (and in this one court's opinion not sufficiently "ancillary" to the criminal forfeiture case though the Court accepted it for itself as a "related case" to "the forfeiture aspects" (DOC 613, October 25, 2013).

15. Judge Sullivan has never ruled on *why* he rejected Defendants' numerous requests in the "related" case that *someone (the DOJ, the SEC or its appointed Receiver, or the Court itself)* direct JP Morgan to credit interest it withheld and to reverse amounts on portfolio assets designated as" abandoned," or confiscated while still private securities on Amerindo Panama accounts; he has never said *why* he has allowed an SEC Receiver to withhold claims and other documentary information (such as where the Amerindo Panama assets "collected" by the government are held, how much, and their current status) -- as if defendants should have no opportunity to be heard in the *civil* case, (presumably because they are "fraudsters" as he found in the "related" criminal case) who deserve punishment above all (and are *so* dangerous that their rights to "information" should be cut off as the Receiver and the SEC demand.)

16. Judge Sullivan has never commented on the showing in the *civil* case (before the case was "related" to Judge Sullivan) that the government had destroyed Amerindo US on the ground that there would be losses in the millions, and that the SEC had installed a

Monitor without defendants' being served with Notice or being given an opportunity to be heard, and even so the SEC's Monitor concluded in December 2005 that defendants ran their US advisory business, Amerindo US (the only entity in which the SEC has a legitimate interest), "squeaky" clean -- or why a court should not consider the draconian destruction of their businesses on any issue, be it the sentence in the criminal case or "equities" in the SEC case.

17. *Mayer v. JP Morgan v. the Defendants (and their Clients):* As a result of restraints (*de facto* from Day One 2005) on all defendants' assets and the destruction of their main revenue source at Amerindo US, the Mayers and their lawyer Patrick Begos obtained a judgment in State court and got a stay of enforcement lifted *ex parte*. That case had been stayed pending the criminal case at the instance of AUSA Litt who personally interceded by appearance in the State court judge's chambers at some point, so I understand.

18. In the criminal case pending sentencing and forfeiture, on November 23, 2009 this Court Ordered that $150,000 be removed

(from a designated restrained Amerindo Panama account – the Court itself selected the Techno Raquia account) to give to an advance redemption payment to a specific client, the Mayers, adopting the government's position that "Herbert, Lisa and Debra Mayer (the "Mayer Family") have represented that they have no means to meet their day to day necessary living and medical expenses and therefore have requested that certain monies be released from the Post-conviction restraining order so that they can be transferred to them to meet those expenses."  (DOC 369).

19.     With this "win" of $150,000 Patrick Begos accelerated the State court litigation.  After obtaining judgments that create a windfall,[2] the Mayers, without giving notice to Alberto Vilar or Gary Tanaka, levied on JP Morgan and named the United States as holder of the "substitute assets" it wants released.  Sharon Levin, Chief Asset Forfeiture, of the US Attorney's office removed the case to this Court and "related" it to the criminal case.  (See

---

[2] Putting aside that the Mayer family flat out avoided filing or paying any taxes for 18 years-and surely for longer before they came to Amerindo Investment Advisors, Inc, this Court ruled that they should get paid by way of "restitution" almost double the amount of their last balance, some $11 million. There State court judgment gave them even more.  This family of tax cheats could get paid more than double the $11 million due on their account.. No one has commented on the stunning denial of Notice (discussed in DOC 618, responding to the Begos' (non-party) letter in the criminal case) occasioned by the Mayers and their stealth litigation tactics.

12cv5241, docket entry 7/5/12 "CASE REFERRED TO Judge Richard J. Sullivan as possibly related to 1:05-cr-00621.")

20. This Court accepted the case as "related". *See* Docket entries 7/18/12 ("CASE ACCEPTED AS RELATED. Create association to 1:05-cr-00621-RJS. Notice of Assignment to follow").

21. The day before the case was accepted as related Judge Sullivan signed an order (DOC 5, 7/17/12) extending JP Morgan's and the Government's time to answer or move. Defendants had no notice.

22. The Court never required or gave notice to defendants in this criminal case or in that civil case about the acceptance of the case as related or about the pendency of the case.

23. Nevertheless it issued rulings (about which we were unaware) setting deadlines that were **tied** to the court's appointment of a receiver in the SEC "related" case.

| | | |
|---|---|---|
| 07/05/2012 | 1 | NOTICE OF REMOVAL from Supreme Court, County of New York. Case Number: 652201-12. Document filed by United States of America. (Attachments: # 1Exhibit A part 1, # 2 Exhibit A part 2, # 3 Exhibit A part 3)(lmb) (Entered: 07/11/2012) |
| 07/05/2012 | | CASE REFERRED TO Judge Richard J. Sullivan as possibly related to 1:05-cr-00621. (lmb) (Entered: 07/11/2012) |
| 07/05/2012 | | Case Designated ECF. (lmb) (Entered: 07/11/2012) |
| 07/12/2012 | 2 | NOTICE OF APPEARANCE by Andrea Likwornik Weiss on behalf of J.P. |

|            |    | Morgan Securities LLC (Weiss, Andrea) (Entered: 07/12/2012) |
|------------|----|---|
| 07/12/2012 | 3  | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent JPMorgan Chase & Co., Corporate Parent J.P. Morgan Broker-Dealer Holdings Inc. for J.P. Morgan Securities LLC. Document filed by J.P. Morgan Securities LLC.(Weiss, Andrea) (Entered: 07/12/2012) |
| 07/12/2012 | 4  | NOTICE OF APPEARANCE by Adam David Weiss on behalf of J.P. Morgan Securities LLC (Weiss, Adam) (Entered: 07/12/2012) |
| 07/17/2012 | 5  | STIPULATION AND ORDER TO EXTEND RESPONDENTS J.P. MORGAN SECURITIES LLC AND UNITED STATES OF AMERICA'S TIME TO ANSWER: It is hereby stipulated by and between the attorneys for petitioners Lisa Mayer and Debra Mayer, and for respondents J.P. Morgan Securities LLC ("J.P. Morgan") and the United States of America ("the Government"), that the time for J.P. Morgan and the Government to answer, or to make any motion addressed to the Petition for Payment to Judgment Creditors, or Delivery of Property Not In Possession of Judgment Debtors, be and the same hereby is, extended to and including August 10, 2012.SO ORDERED. (Signed by Judge Richard J. Sullivan on 7/17/2012) (ama) (Entered: 07/17/2012) |
| 07/18/2012 |    | CASE ACCEPTED AS RELATED. Create association to 1:05-cr-00621-RJS. Notice of Assignment to follow. (pgu) (Entered: 07/18/2012) |
| 07/18/2012 |    | CASE ACCEPTED AS RELATED. Create association to 1:05-cr-00621-RJS. Notice of Assignment to follow. (pgu) (Entered: 07/18/2012) |
| 07/18/2012 | 6  | NOTICE OF CASE ASSIGNMENT to Judge Richard J. Sullivan. Judge Unassigned is no longer assigned to the case. (pgu) (Entered: 07/18/2012) |
| 07/18/2012 |    | Magistrate Judge Kevin Nathaniel Fox is so designated. (pgu) (Entered: 07/18/2012) |
| 07/26/2012 | 7  | NOTICE OF APPEARANCE by Patrick Walter Begos on behalf of Debra Mayer, Lisa Mayer (Begos, Patrick) (Entered: 07/26/2012) |
| 07/27/2012 | 8  | ORDER: Respondents' time to respond to the Petition is extended until further Order of the Court. Upon receipt of the submissions regarding the appointment of a receiver in the SEC Action, the Court will direct the parties in this action as to how to proceed. (Signed by Judge Richard J. Sullivan on 7/27/2012) (ft) (Entered: 07/27/2012) |
| 11/07/2012 | 9  | SUPPLEMENTAL PETITION FOR PAYMENT TO JUDGMENT CREDITORS, OR DELIVERY OF PROPERTY NOT IN POSSESSION OF JUDGMENT DEBTORS.Document filed by Lisa Mayer, Debra Mayer.(ft) (Entered: 11/13/2012) |
| 11/15/2012 | 10 | ORDER. IT IS HEREBY ORDERED THAT Respondents shall answer Petitioners' Petition and Supplemental Petition for Payment to Judgment Creditors, not in Possession of Judgment Debtors by December 5, 2012. IT IS |

|  |  |  |
|---|---|---|
|  |  | FURTHER ORDERED THAT Petitioners may submit a reply no later than December 17, 2012. (Replies due by 12/17/2012.) (Signed by Judge Richard J. Sullivan on 11/14/2012) (rjm) (Entered: 11/15/2012) |
| 11/15/2012 |  | Set/Reset Deadlines: Gary Tanaka answer due 12/5/2012; Alberto Vilar answer due 12/5/2012. (rjm) (Entered: 11/15/2012) |
|  |  |  |

24.    Defendants were first notified of the government's involvement in this case, and of the pendency of the case, on November 5, 2012, when we were sent a document from Sharon Cohen Levin that she did not object to releasing funds from the restraining order (in the criminal case).  We wrote to the Court on November 14, 2012 but it ignored our letter.  I think that the letter was not filed in any case though I put the caption of all three "related" cases in the "subject".  On November 18, 2012 investor Heitkoenig wrote to the Court also alarmed that he did not know about the Mayer "turnover" action previously.

25.    In the meantime, the Court issued an order in that "turnover" case on 11/15/2012 (DOC 10, 05 cv 5240) – referring to "directions" it had given to "respondents" in that case previously, in July 2012, ("direct[ing] Respondents to refrain from any action until further order from the Court)," and noting that on November 5, 2012 it had received a letter from the government advising that

it "has no objection to modifying the restraining order entered in *United States v. Vilar, et al.*, 05 Cr. 621 (RJS) to allow for the turnover of [substitute assets] to Petitioners [the Mayers]".

26. In the next part of that Order the Court *instructed* the parties how to proceed on an execution of judgment under the CPLR. Defendants were not notified of this Order.

27. Since then the Court has ruled (DOC 613) that defendants are not entitled to CJA funds to defend even after they were named as third party defendants by JP Morgan in an interpleader action and even though this Court "related" the case to the criminal case under "forfeiture" and criminal "penalty" jurisdiction:

> In the matter of the Application of Lisa Mayer and Debra Mayer
> Assigned to: Judge Richard J. Sullivan
> Related Cases: 1:05-cr-00621-RJS-1
>                 1:05-cr-00621-RJS-2
> Case in other court: State Court - Supreme, 652201-12
> Cause: 28:1442 Notice of Removal
>
> Date Filed: 07/05/2012
> Jury Demand: None
> Nature of Suit: 690 Forfeit/Penalty: Other
> Jurisdiction: U.S. Government Defendant

28. The Court has also refused to release any of defendants' funds, or to make sure the assets are evaluated, or to allow

defendants to manage even the U.K. Pension Fund – remedies we have sought in the civil case where we have reminded the Court that the source of the government's authority over the assets is the vacated substitute asset forfeiture order.

29.     Despite the vacatur of the substitute asset forfeiture order by the Court of Appeals, the Court refused to reconsider Orders directing the SEC receiver (whose job description keeps changing) to move forward spending and taking "substitute assets" and hiring other professionals as he wishes to do what the defendants could do themselves:  get moneys liquidated and paid out to private clients of their Panamanian company.

30.     Defendants filed a mandamus petition in both the criminal case and the SEC case.  The Second Circuit denied mandamus on the ground that the District Court would do its job and there might be remedies at the end of the case, but stayed the distribution of substitute assets in the SEC case.

31.     At the conference in the SEC case on October 25, 2013, this Court (surprisingly for a presiding judge) indicated it was *unaware* that the Court of Appeals had granted a stay of

distribution of substitute assets in the SEC case and assured that it would not do anything until it could. Yet it continues to authorize the taking of the substitute assets to distribute them in the "civil" case.

32. Besides an appearance of partiality here, we submit there is actual partiality. This Court, the presiding judge over a criminal trial, has allowed "understandings" from the criminal case that have not budged to drive the case. It refuses to (re)consider anything counsel says about facts that have emerged casting doubt on the process and on the appropriate result. It treats the defendants as if the worst of dangerous criminals (who would have warranted an anonymous jury) because they deigned to write a letter to their own investors stating that they are prepared, as had always been so, to return their May 25, 2005 balances.

33. We learned at the October 25, 2013 SEC case conference that the Court itself reviewed and evaluated the letter Mr. Tanaka and Mr. Vilar wrote to their own clients, intending to possibly cite them for contempt and issue a "gag order" on their talking to their own clients. (The SEC Receiver tried to "order"

defendants to cease communicating with their clients, and to shut down an email address created for communication. I refused).

34. The Court did not allow comment from the defendants nor posted the letter on the docket to inform the parties (or make a record for the appeals court) as to "information" it is "considering" (bearing on all three cases in which Judge Sullivan presides over defendants' rights) in determining bail and summary judgment motions and in deciding how to dispose of defendants' hard-earned funds and the funds of their Panama clients.

35. Instead the Court made "findings" on an *ex parte* basis that the defendants were "cute" and intended to "mess with the receiver." (Tr.30).

36. With due respect the Court has never ruled on our objections that the SEC, its receiver, and the Court, are "messing" with assets that are not forfeited and as to which the government has no rightful claim.

37. Our motion for reconsideration of the March 11, 2013 Order granting partial summary judgment and of the Order appointing the Receiver, and again seeking a stay of the Receiver's "messing"

with "substitute assets" as to which the government confessed error on the criminal appeal (filed on March 25, 2013 (DOC 276)) has never been ruled on.

38. These failure and refusals to rule are indicia of partiality and conflicting agendas in the civil and criminal cases. The SDNY "related case" rule precludes "relation" of criminal cases to any civil case just to avoid conflicted rulings.

39. Judge Sullivan violated ethical rules in taking civil cases to forward the agenda of criminal punishment or impose remedies consistent with the government's aim to punish more.

40. This Court should recuse itself under the directive of *Ligon v. City of New York*, *supra* (2d Cir. Motion Order October 31, 2013, 13-3123), citing the Code of Conduct for United States Judges, Canon 2 ("A judge should avoid impropriety and the appearance of impropriety in all activities."), and Canon 3(C)(1) ("A judge **shall disqualify himself** or herself in a proceeding in which the judge's impartiality might reasonably be questioned.")

41. This case has been going on for almost ten years. The government wants to jail these men further, to take away all their

assets and to do so without telling the defendants what the claims are or how they were arrived at, leaving it to an SEC Receiver whom the Court has insulated from challenge. The Court is allowing this to happen in "related" civil cases where the defendants *cannot* defend properly because they have no funds to do so and Judge Sullivan would not release any or even the right to manage and control the investments, which are dissipating.

42. Further conduct of this Court dealing with defendants and their assets, and their claims in this regard – not about "just property" but about Due Process and penalties imposed unfairly and for offshore conduct – is a continuing violation of this Court's rules, has prevented fair development of this case on the merits, and requires recusal under the Second Circuit's recent ruling. Judge Sullivan's impartiality "might reasonably be questioned" and the Court should – and per the *Ligon* panel *must* -- recuse itself in this criminal case *and* in the "related" civil cases.

Dated: November 7, 2013

\_\_\_/s/_____
Vivian Shevitz