Dapgvilc                    Conference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    UNITED STATES OF AMERICA
3
              v.                        05 CR 621 (RJS)
4
    ALBERTO VILAR and GARY TANAKA,
5
              Defendants.
6
    ------------------------------x
7
                                   New York, N.Y.
8                                  October 25, 2013
                                   2:45 p.m.
9

10  Before:

11              HON. RICHARD J. SULLIVAN,

12                                   District Judge

13
                       APPEARANCES
14

15  PREET BHARARA
        United States Attorney for the
16      Southern District of New York
    JUSTIN ANDERSON
17  BENJAMIN NAFTALIS
        Assistant United States Attorneys
18
    VIVIAN SHEVITZ, ATTORNEY AT LAW
19      Attorney for Defendant Vilar

20  FISHER & BYRIALSEN & KREIZER
        Attorney for Defendant Tanaka
21  JANE FISHER-BYRIALSEN

22

23

24

25

Dapgvilc                     Conference

1          (In open court)

2          MR. ANDERSON:  Justin Anderson and Ben Naftalis for

3     the government.

4          THE COURT:  For the defendants, let's begin with

5     Mr. Vilar.

6          MS. SHEVITZ:  Vivian Shevitz.

7          THE COURT:  Mr. Vilar, good afternoon.  And for

8     Mr. Tanaka.

9          MS. FISHER-BYRIALSEN:  Jane Fisher-Byrialsen.

10         THE COURT:  Good afternoon, Ms. Fisher-Byrialsen.

11    Mr. Tanaka, good afternoon.

12         We're here in connection with the government's request

13    that I revisit the bail decision in light of changed

14    circumstances.  Just so we all remember where we've been on

15    this, I denied bail to Mr. Vilar after sentencing.  So, at that

16    point, pending sentencing, he was detained.  I found he was a

17    risk of flight.  Mr. Tanaka was allowed to remain on bail with

18    certain conditions.  After sentencing, I then denied requests

19    for bail pending appeal.

20         Some time later, quite some time later, after the

21    defendants were serving their sentences, there was a renewed

22    motion for bail pending appeal.  I denied those requests with

23    respect to each of the defendants finding that the defendants

24    had failed to demonstrate, by clear and convincing evidence,

25    that they were not a flight risk.  I also found that there was

Dapgvilc                        Conference

1    not a sufficient series of health issues that would merit bail

2    being granted pending appeal.  That's the standard for bail

3    pending appeal.  That decision was then appealed to the

4    circuit, and the circuit reversed, and they ordered the

5    defendants be bailed, so they were bailed and have remained on

6    bail since.

7         Now there have been some changed circumstances.  The

8    circuit didn't really get into the issue of risk of flight very

9    much, but I don't think one can read the opinion and not

10   conclude that implicitly they found that the standard had been

11   met, that neither defendant -- let me put it the other way,

12   that the defendants had established, by clear and convincing

13   evidence, that they were not a risk of flight; otherwise,

14   there's no way that the circuit could have granted bail.

15        The changed circumstances now are that the appeal has

16   come down from the circuit.  The convictions have been upheld.

17   The case has been remanded for sentencing in light of Morrison,

18   which was a legal decision from the Supreme Court after the

19   sentencing in this case, but is controlling law.  But based on

20   the circuit's decision, it seems clear to me, without

21   prejudging what the guidelines will be, it seems to me that the

22   circuit seems to have found that the amount of loss is going to

23   be in the same neighborhood as it was when I imposed sentence

24   the first time.

25        I guess the other issues are now that there is a

1    certainty of appeal, even though the circuit has ruled.  And

2    there's the prospect for a lengthy sentence and there is,

3    perhaps, greater incentive to flee.  I assume that's what the

4    government is going to argue.  They argued that to some extent

5    in their papers.

6            I think counterbalancing that is the fact we have now

7    had many months in which the defendants have been on bail and

8    have not yet fled.  They have been complying with the

9    conditions of their bail.  And so, the issue is whether or not

10   the changed circumstances of failed appeal, the diminished

11   likelihood of success on the motion for reconsideration or en

12   banc or cert.

13           I mean, if you do the math, certainly, the prospects

14   of winning on those, as an empirical matter, sort of diminishes

15   as you move up that appellate chain, whether that will create

16   greater incentives for someone to flee.  I think that's where

17   we are to focus.  The standard, of course, it's the defendant's

18   burden to establish by clear and convincing evidence that they

19   are not a risk of flight.

20           I guess I'll have the government go first because you

21   teed this up, Mr. Anderson.

22           MR. ANDERSON:  Thank you.  I think you correctly

23   framed where we are today, which is that the circuit court

24   released the defendants on bail pending appeal a year before

25   they decided the case and they provided no explanation as to

Dapgvilc                        Conference

1    why bail was granted, provided no explanation of what, if any,

2    of this Court's previous findings were erroneous or whether

3    there was even a misapplication of the law in light of the

4    factual findings.

5          Throughout that process, Judge, and in repeated

6    submissions to this Court and in front of the Court of Appeals,

7    the defendants had a great hope and firm expectation that they

8    were on the cusp of victory.  Repeated submissions indicated

9    that the defendants were about to be vindicated, that their

10   convictions were about to be vacated.

11         THE COURT:  The submissions still seem to be saying

12   that.  I don't know.  Maybe hope springs eternal or they're

13   more optimistic than you.  I don't think the tenor of the

14   argument has changed.

15         MS. SHEVITZ:  I didn't hear.

16         THE COURT:  I don't think the tenor of the defendants'

17   arguments have changed.  They still seem to be quite certain or

18   sincere in their belief that they will ultimately prevail.

19         MR. ANDERSON:  I think that's exactly right, and I

20   think that's why the fact that they have remained in compliance

21   with their presentencing release and have appeared in court

22   simply is not indicative of their future behavior once the

23   circuit denies the application for en banc review and issues

24   the mandate.

25         The petition for rehearing by the panel and en banc

1    review is basically premised on the idea that the panel somehow

2    misapplied plain error in determining that the conviction

3    should stand.  And the panel consisted of Judge Cabranes, Judge

4    Judge Straub, and Judge Newman.  It's hard to believe that

5    those judges, who combined have close to a century of

6    experience, would have misunderstood how plain error works in a

7    criminal case.  It's the standard that's applied every day of

8    the week in the Court of Appeals.

9         The idea that this petition for rehearing en banc is

10   going to be granted and that's it's going to lead to some type

11   of relief, you're right, hope does spring eternal for the

12   defendants, but it's very unlikely.  At the time that petition

13   is denied and a mandate is issued, the calculus changes.

14        THE COURT:  Can I just stop you.

15        In your view, I wouldn't be detaining them today.  I'd

16   be waiting to see if and when the circuit denies the pending

17   motion.

18        MR. ANDERSON:  No, Judge.  I think the way you can

19   understand the fact that the defendants have been in compliance

20   with the bail conditions for the last year is because of this

21   hope, this irrational hope, that at some point, some court,

22   somewhere is going to find that there was a grievous error

23   committed in these proceedings and vindicate the defendants.

24        Once it is clear, and at some point it will be clear,

25   that that's not going to happen, there is no reason to believe

1     the defendants will continue to come to court and face the

2     certainty that they'll return to prison for a substantial

3     period of time.

4              I don't think the Court needs to wait until that

5     moment when the defendants finally have this realization.  It's

6     clear from where we are right now the reason they come back to

7     court is this expectation that they're going to be vindicated.

8     But as time progresses, those hopes become less and less

9     reasonable and we're getting to a point where they are going to

10    have the realization that there is not going to be vindication

11    around the corner.  That's just the beginning of this.

12             The principal arguments here are that the guidelines

13    are going to be the same.  The defendants each put in

14    submissions.  They didn't respond to that.  They didn't explain

15    to this Court how the guidelines are going to be any different

16    when we return for resentencing in light of the remand.

17             THE COURT:  I didn't invite the sort of lengthy

18    presentence submissions because that's not the purpose here.  I

19    take your point.  What is the likely sentence or what is the

20    likely guidelines range?  It forms the defendants' incentive to

21    flee and so, to that extent, I think the Court has to consider

22    it, but I don't intend to make a ruling with respect to loss

23    amount today when the mandate hasn't been issued and nobody's

24    had a chance to submit anything on the sentencing issues.

25             The government has given some of its view.  I think,

Dapgvilc                    Conference

1   frankly, the language of the circuit's decision suggests that

2   the loss amount is going to be as high, or higher, than it was

3   when I imposed sentence in 2010.

4           There might be arguments and facts that I'm not aware

5   of, so I don't want to prejudge it, but I think it's relevant

6   to consideration.  I agree to that.

7           MR. ANDERSON:  Absolutely.  We didn't ask you to

8   prejudge it.  We just provided a thumb-nail sketch of what we

9   expected the sentencing guidelines to be and the defendants

10  chose not to respond to the thumb-nail sketch that we provided.

11          I think that's meaningful because the signal it sends

12  is that there's nothing we're missing here.  Sentencing is

13  likely to involve the application of the same guidelines range,

14  it's the same facts, the same counts of conviction, the same

15  offense conduct.

16          Even though we will be returning for de novo

17  resentencing, how is this sentencing proceeding going to be any

18  different from the previous one?

19          In light of that, Judge, the other point that the

20  defendants chose not to respond to was, actually, Mr. Vilar's

21  own comments in the press that these sentences are substantial

22  and certainly, Mr. Vilar views the sentence as a life sentence.

23  In light of the substantial sentences that were imposed before,

24  the defendant's acknowledgment that these are substantial

25  sentences --

1          THE COURT:  Whether he acknowledges it or not,

2     certainly, they are what they are.

3          MR. ANDERSON:  It tells you what's in his mind.  The

4     only way you can tell what's in someone's mind is based on how

5     they act and what they say.  And we're trying to predict what

6     he will do if he's continued to be released on bail pending the

7     issuance of the mandate and the circuit's rejection of a

8     petition for en banc review.

9          It's significant that the defendant recognized

10    publicly that the sentence that was imposed is basically the

11    rest of his life.  There is no basis for this Court to believe

12    that at a renewed sentencing proceeding the outcome is going to

13    be any different.  Those are important factors because they

14    indicate what a defendant's incentives are while he's released

15    on bail facing incarceration for the remainder of his life.

16         Again, there are minimal ties here.  The defendants

17    criticize the government for somehow not giving significant

18    weight to romantic relationships that aren't recognized by law.

19    Neither of the defendants are married to the people who they're

20    residing with.

21         Here, there is a representation that there is a

22    romantic relationship involving a retired or

23    about-to-be-retired school teacher, but how can you even

24    measure what that is?  That's not a wife of 20 years or even a

25    relationship of 20 years.

Dapgvilc                    Conference

1          THE COURT:  I don't think it has to have legal status

2     to be considered by the Court.  There are family members.

3     Certainly, Mr. Tanaka has family members in the United States.

4          MR. ANDERSON:  In California, Judge.

5          THE COURT:  But if he has an important relationship to

6     him, I would presume, it seems to me, I have no reason to doubt

7     the seriousness of the relationship that's here in New York.  I

8     don't think there has to be a marriage certificate for me to

9     acknowledge it.

10          MR. ANDERSON:  There doesn't have to be, but a

11     marriage certificate would certainly be probative of it.

12     Certainly it would be probative if the relationship were older

13     than, say, a year or two years or a few months.

14          We have no information about how substantial nor have

15     we been given any indication by which we could measure how

16     substantial these purported relationships are.  What we do know

17     is Mr. Tanaka's wife and child are abroad and are not here.

18          THE COURT:  Yes; we have known that the whole time.

19          MR. ANDERSON:  I don't want to belabor the point.  I

20     don't want to belabor any of these points.

21          I think that our submission has simply not been

22     answered in the way you would expect the defendants who bear

23     the burden here to answer a submission, to explain how the

24     sentence is not going to be substantial when we return for

25     resentencing, how the guidelines are going to be different, how

Dapgvilc                    Conference

1    the defendants actually do have real ties to the United States

2    and to this region and don't have an incentive to just leave.

3          They haven't refuted any of this and it's their

4    burden.

5          THE COURT:  Many of these facts were true when the

6    circuit issued its ruling.  So the changed circumstance now is

7    a decision from the circuit that has upheld the conviction, and

8    that certainly intimates that the sentencing is going to be

9    probably the same guidelines range as it was when I imposed it

10   in 2010.

11         That's open for further discussion, but that I think

12   is a fair interpretation of this circuit's ruling.  That's a

13   new factor.

14         Any other new facts?  And the other fact is that they

15   have been complying, they have been reporting.  And your view

16   is that's simply explained by the fact that they had high hopes

17   before.

18         MR. ANDERSON:  Like the Court recognized a moment ago,

19   the submissions continue to express this belief that

20   vindication is around the corner, that somewhere, a panel or

21   the en banc court or the Supreme Court is about to say that

22   this whole prosecution went awry.  And it's unclear where this

23   comes from.  But at some point, hope will stop springing in

24   this fashion and whenever that comes, the defendants' flight

25   risk is just plain.

1          THE COURT:  Let me hear from defense counsel.  I have

2     their submissions, but I think I expect they'll have some

3     responses to your points.

4          Who is going to go first?  Mr. Tanaka goes first.

5     He's always the second one on the indictment.  He's probably

6     tired of going second all the time.  We'll let you go first.

7          MS. FISHER-BYRIALSEN:  I don't want to reargue

8     everything we put in our submission, but I'll comment on some

9     of the things the government said today.

10         Mr. Tanaka does have strong ties to the U.S.  He has

11    strong ties to his family in California, and, as we said in our

12    submission, he speaks with them regularly.  He's very close to

13    his mother and sister.  And the government has made it

14    basically impossible for Mr. Tanaka to see his wife in England.

15    He can't go there, and the relationship is completely severed.

16    He can't even go and get a legal divorce.  So the fact that

17    they don't think that his relationship with Ms. Shevitz is

18    legal or has any sort of legal bearing, there is no requirement

19    that people have to be married for them to have ties to New

20    York.  They live together.  They're together every single day.

21         I have been to where they live and met with them

22    there.  They live like a family lives.  I find it offensive

23    that they keep diminishing this simply because of the

24    circumstances under which they met.  I don't think that that's

25    fair, and I don't think that that sheds proper light on what

1    this relationship is and what ties he, therefore, has to New

2    York.

3            THE COURT:  I agree with virtually everything you

4    said.  I think there is a point that -- it's not a relationship

5    of long standing as is often in cases like this.  It's a

6    relatively recent relationship, and you're nodding.

7            MS. FISHER-BYRIALSEN:  In addition to that, Mr. Tanaka

8    has no means to flee.  He has no money.  He can't go anywhere.

9    He can't go back to England.  He couldn't get a visa to go

10   there.  So, I don't know why they're assuming that a

11   70-year-old man is going to live out the rest his days as a

12   fugitive.  It doesn't make sense.

13           He's been fighting this case all along.  He's been

14   coming to Court.  He's been participating in everything that's

15   been going on.  I don't see why that would change now.

16           In regards to their comments that we didn't respond to

17   what sentence he's facing, I'm new to this case, but if your

18   Honor, we would certainly argue to the contrary, but if you --

19   the original sentence for Mr. Tanaka was 60 months, which is

20   five years.  He's already done two and-a-half years.  So,

21   Mr. Tanaka certainly doesn't think that were you to sentence

22   him to another 60 months once again, that another two

23   and-a-half years is a reason to live the rest of his life as a

24   fugitive and leave now.

25           I would argue, your Honor, that you need to leave him

Dapgvilc                    Conference

1    out and he needs to stay where he is.

2                THE COURT:  Thank you.

3            Ms. Shevitz.

4            MS. SHEVITZ:  I want to address this loss figure for

5    resentencing.  The government wants to say, and I guess your

6    Honor has concluded, that the loss figure is going to be the

7    same.  That's what you said.

8                THE COURT:  I'm saying I think that's a fair reading

9    of the circuit's opinion.

10           MS. SHEVITZ:  At sentencing was the first time, last

11   sentencing, the losses were calculated and it was never

12   calculated by a jury, never.

13               THE COURT:  Yes.  They weren't asked to.

14           MS. SHEVITZ:  It would be under our theory of reliance

15   were an issue and the jury had to decide whether reliance

16   existed and whether losses were, in fact, related to the

17   alleged the misconduct, the misstatements, whatever the offense

18   conduct was.  And I know that the Court of Appeals has said

19   that at resentencing, your Honor is supposed to determine what

20   the offense conduct is.

21               THE COURT:  Right.

22           MS. SHEVITZ:  So, we don't even know the relationship

23   between that and the quote "losses."  At the new de novo

24   resentencing, if your Honor remembers, prior to sentencing,

25   Mr. Tanaka had David Ross submit a report that showed that

1    there was sufficient funds in the held accounts which are still

2    being held to pay all investors their claims.  That would mean

3    there was no loss.

4             THE COURT:  No, it wouldn't.  That's such a fallacious

5    reading of the guidelines.  Your view is that I could take a

6    million dollars of yours and not give it back to you and keep

7    it, but as long as I had a million dollars in an escrow account

8    some place, there was no loss?  We don't have to argue this

9    now, but I find that to be utter fallacy.

10            MS. SHEVITZ:  Let me say this:  What was not

11   presented, because your Honor said at that time, that you

12   wanted the government to respond to whether there was

13   sufficient funds there --

14            THE COURT:  I think it's relevant.

15            MS. SHEVITZ:  Of course, it is.

16            THE COURT:  But it's not relevant to loss.

17            MS. SHEVITZ:  It may be, but it may be relevant and

18   your Honor said to 3553 factors.

19            THE COURT:  But you said there's no loss.

20            MS. SHEVITZ:  But nobody responded to that then

21   because Mr. Litt's submission to your Honor about that came on

22   February 3, 2010.  The sentencing was on February 5, I believe.

23   No lawyer responded to Mr. Litt's loss calculation -- whether

24   it was or wasn't or he couldn't figure it out and there were

25   more investors.  Nobody really determined that, but that's the

Dapgvilc                    Conference

1    point.  3553 factors kick in there, even if, under the

2    guidelines, there was a quote "loss," but I'm going to

3    challenge that, too.  Why?  Because the other thing that was

4    not presented was that at the time of the shutdown, all the

5    money was not due then.

6            Surprisingly, at trial Lisa Mayer testified, page

7    1179, that she had settled and was being paid out $50,000 a

8    month.  That modification of the payout contract was not

9    brought up because counsel didn't bring it up, but I'm going

10   to.  Maybe you don't want to -- you want to still call it a

11   loss, but at that time of the shutdown, the full amount was not

12   due, and that's the same of other investors, too.

13           The shutdown created a run on the bank and that's why

14   people demanded their money then.  It's still being held so

15   they're not getting it back, but on May 25, 2005, all the

16   monies were not due to the investors; and thereafter, they

17   couldn't be paid.

18           Now, maybe the government wants to say, well, under

19   the loss theory and under the guidelines calculation, that's

20   still a loss.  I'm going to challenge that and I hope that I

21   can challenge that in a de novo resentencing because, in fact,

22   Graciela Chavez testified she didn't close her account either.

23           THE COURT:  You don't have to close your account.

24           MS. SHEVITZ:  But the money was not due is what I'm

25   saying.  I would like the opportunity to at least go into this

Dapgvilc                        Conference

1    because prior counsel did not.

2             THE COURT:  You'll certainly have the opportunity.

3    The only reason this is relevant to a bail hearing is whether

4    or not the defendants have an incentive to flee because they

5    see the handwriting on the wall.

6             So, I don't think they have to have certainty.  They

7    just have to have a concern that things will be dire and then

8    they might want to leave.

9             MS. SHEVITZ:  I'm concerned, too.  I'm concerned the

10   government is going to take the same position that there are

11   losses when, in fact, there's money sitting there and there's

12   always been money sitting there that was sufficient to pay the

13   investors who did not want their money back at the time.

14            There was only one client who wanted her money back at

15   the time and that was being worked out.  The others were being

16   worked out.  That was not presented at trial and that's for a

17   2255, which I hope I don't have to get into.  But what I'm

18   saying is this:  At a sentencing proceeding, loss is one

19   calculation, but 3553 trumps loss.  And those factors, those

20   characteristics were not gone into at the sentencing because

21   Mr. Litt's February 3, 2010, letter was never responded to, and

22   it left your Honor with an impression that Mr. Litt said in

23   that letter that there would be all these ATGF investors

24   somewhere out there who were going to be suffering losses.

25   Well, there aren't.  There aren't any.  There aren't any and

1    Mr. Colton didn't address that and Mr. Marks didn't address

2    that.  Nobody addressed the fact that there weren't any more.

3           Now, Mr. Gazes finally in his submission finally last

4    March I believe said, oh, now they think there's enough to pay

5    the known investors, except the known investors aren't even

6    spinning their accounts.

7           THE COURT:  There's wasn't enough to --

8           MS. SHEVITZ:  There was enough.

9           THE COURT:  I don't think you should be putting words

10   into his mouth.  I don't think there's any suggestion that

11   there's enough to pay everybody a hundred cents on the dollar.

12          MS. SHEVITZ:  I'm sorry.

13          THE COURT:  I don't think there's any suggestion

14   there's enough to pay everyone a hundred cents on the dollar.

15   There's certainly no suggestion that I heard other than on the

16   day of sentencing that there was enough back in 2005 or 2010 to

17   pay a hundred cents on the dollar.

18          MS. SHEVITZ:  I think that is a misconception; there

19   is and has been enough.

20          THE COURT:  If you say it loud enough and long enough,

21   I guess you may believe it, but that's not really the issue for

22   today.

23          MS. SHEVITZ:  My issue is that if we are going to talk

24   about losses, shouldn't we find out really if there were

25   losses, because I'm saying that on the basis of the record, and

Dapgvilc                    Conference

<table>
<tr><td>1</td><td>on the basis of what Mr. Gazes found, but he's not telling us</td></tr>
</table>

1   on the basis of what Mr. Gazes found, but he's not telling us

2   about which is another problem I have, the litigation by not

3   telling us what's going on --

4          THE COURT:  He's a receiver.  He doesn't work for you.

5   And so we're kind of going all over the place.  Let's stay

6   focused.

7          The focus is you have to establish by clear and

8   convincing evidence that Mr. Vilar is not a flight risk.

9   That's the burden.  And so you have to establish that.

10          MS. SHEVITZ:  Well, the government's fears have not

11   come to pass, is the first thing.  The Court of Appeals thought

12   he wasn't a flight risk.

13          When they issued their opinion, they said if there is

14   a bail issue, they're going to retain their jurisdiction to

15   hear it.  That suggests they have an issue with that, too.

16          THE COURT:  You kept telling me that the reason they

17   gave him bail pending appeal was because the conviction would

18   be overturned.  That didn't turn out to be true.  My point is

19   it's not good to read the tea leaves of what the circuit is

20   going to do from bits and pieces that are in the decision.  I

21   don't know what they will do.  They granted bail once before.

22   Maybe they'll do it again.

23          MS. SHEVITZ:  Well, Judge, Mr. Vilar is not going

24   anywhere.  He doesn't have a passport.  He doesn't have any

25   funds.  There aren't people out there who are going to take

1    care of him.  He has nowhere to go.  In contradistinction, he

2    has a relationship here in Queens now with a woman who he met

3    before this pretrial house arrest.

4           THE COURT:  Pending sentencing, posttrial pending

5    sentencing or before trial?

6           MS. SHEVITZ:  No, he met her before.  He had a

7    relationship with her.  He would like to be with her.  He is

8    being with her as much as he can, and he has nowhere else to

9    go.  He has no money.  Except for fears that he has people all

10   over the place, they don't exist and nobody has found any.

11   There isn't anybody.

12          The only hard evidence the government has is some

13   statement by this guy, John Burke.  I don't know if your Honor

14   is relying on that.

15          THE COURT:  I'm not relying on that.

16          MS. SHEVITZ:  Then they don't have anything to say

17   he's going to flee, except a fear that he might, which exists

18   in every case.  It exists in every case where a defendant is

19   out on bail and the government is fearful that the defendant is

20   going to flee, but that fear existed before.  And the Court of

21   Appeals said there are conditions to keep him here.  The

22   conditions are he's wearing a bracelet.  The pretrial people

23   know what's going on with them.

24          Your Honor has given him permission to travel.  He's

25   traveled before after the decision came down, and he came back

1    and he's here now.  And he has nowhere to go.  He has nowhere

2    to go.

3           And we do have a petition for rehearing, the

4    Dershowitz firm filed one.  I don't know if your Honor has had

5    a chance to review them, but they're not minor, shall I say.

6    Yes, I know it is a tough burden for rehearing; however, we are

7    raising the applicability of this Absolute case which was on a

8    pleading standard, to satisfy a pleading standard for domestic

9    transaction, not what the ultimate liability would be, but

10   Absolute says that you can satisfy, you can sustain a complaint

11   if you allege this or this.

12          Nobody has said, no court has said that that is enough

13   to find a domestic transaction and exclude the consideration of

14   anything else.  We have challenged that.

15          I suggest that because in Absolute itself, the Court

16   said that it's an area with significant ambiguity.  That's what

17   they said in Absolute.  They gave the plaintiff in Absolute the

18   chance to replead because they said it is such an uncertain

19   area that Absolute itself established a standard.  But that

20   standard wasn't the standard before.  And that's another thing

21   we're raising, that nobody said what the standard was before.

22   So to hold them to a pleading standard, a civil pleading

23   standard, for ultimate criminal liability doesn't seem to

24   comport with due process, and perhaps, is not the final word on

25   what domestic transaction means.  In Absolute itself, the Court

Dapgvilc                    Conference

 1   said it's an area with significant ambiguity and that's why

 2   we're going to let these guys replead.

 3          THE COURT:  I understand all of that.  You raise an

 4   interesting point that's different than the one I think you

 5   wanted to raise.  But right now, this is still I guess bail

 6   pending appeal in a sense, right?

 7          MS. SHEVITZ:  Yes.

 8          THE COURT:  The mandate hasn't issued.  So, it seems

 9   to me, at least until the pending motion is resolved, it's the

10   higher standard of bail pending appeal.  And I would have to

11   find, not only that the defendants have established by clear

12   and convincing evidence that they're not a risk of flight, but

13   also that there's a substantial question as far as the appeal

14   is concerned.

15          I think that burden is now tougher than it was the

16   last time I considered this because now the circuit has ruled,

17   and now you're making nuances, smaller arguments, with respect

18   to the circuit's ruling.

19          MS. SHEVITZ:  I don't think it's nuanced.  I think

20   it's a bigger argument.  I think it's a bigger argument because

21   Absolute wasn't there and Morrison wasn't there when these men

22   were tried.

23          THE COURT:  My point, it's an extra burden.  We've

24   only been arguing today about clear and convincing evidence

25   that the defendants are not a risk of flight.

Dapgvilc                          Conference

1          If we're really talking about bail pending appeal,

2     there is the additional burden of the nature of the appellate

3     issue and whether it presents a substantial question of law.

4          MS. SHEVITZ:  With all due respect, the government

5     filed this motion without much discussion of it before we filed

6     a petition for rehearing, and in deciding whether there is a

7     substantial issue, shouldn't we be discussing that, as well?

8     Yes, I know it's a tough standard on a petition for rehearing,

9     but it is a standard, and it's a possibility, more than a

10    possibility, in my view.

11         But the point is, shouldn't we be waiting now for the

12    Court of Appeals to grant or deny rehearing and then we can

13    move forward with a sentence?

14         They will show up.  We can argue our losses, that

15    losses should control, we can argue that 3553 factors should

16    control, and that if the money is there, if money is there,

17    which I'd like to be able to discuss at some point, nobody has

18    ever allowed us to discuss that, I would like --

19         THE COURT:  I don't think I had prevented it.

20         MS. SHEVITZ:  I have not been able to discuss that in

21    anything, Judge.  I can't discuss it here.  I can't discuss it

22    in the SEC case because you're telling me what it doesn't mean,

23    what -- are you telling me that it means this?  Nobody has said

24    so.  And I would like to show you that that is what it means.

25         THE COURT:  I'm not sentencing today, so I think we're

1    kind of going in circles now.

2              MS. SHEVITZ:  What I'm saying is losses should not

3    drive and they do not drive a sentence.  They don't drive a

4    sentence anymore.  Maybe they're overstated for the conduct

5    that these men committed.  We don't know what it is yet because

6    the Court of Appeals asked you to decide what the offense

7    conduct is that warrants sentencing, which I find a little

8    shocking myself.

9              But before we decide whether there are losses, perhaps

10   we should decide what the offense conduct that gives rise to

11   these losses are, because it has to be certain characteristics

12   under the guidelines.

13             I haven't had a chance to argue that because you still

14   have to decide what the offense conduct is.

15             THE COURT:  I have to get the mandate, right?

16             MS. SHEVITZ:  Yes, and we can't do that.  Maybe the

17   losses are going to be less.  But the fact is there are 3553

18   factors, including the fact that these men have been prosecuted

19   for ten years, the conduct is decades ago in some cases,

20   decades ago, and they have not been responsible for the fact

21   that the money is being withheld.  They are not responsible for

22   the fact that JPMorgan has not credited interest on these

23   withheld accounts.  Shocking.

24             THE COURT:  I think we're getting far afield.  We're

25   focused right now on risk of flight and perhaps whether there's

1   a substantial question of law.  I really am focused on risk of

2   flight.

3           MS. SHEVITZ:  The government's only shot of risk of

4   flight was that they have contacts abroad.

5           THE COURT:  I found that persuasive a couple of times

6   with respect to Mr. Vilar.

7           MS. SHEVITZ:  I'd like to know who his contacts are.

8   Can we have one?

9           THE COURT:  He lived abroad.

10          MS. SHEVITZ:  He hasn't lived abroad since 1989.  He

11  has not lived abroad since 1989.  He's lived in New York.  We

12  don't have one contact identified.  This has been the constant

13  theme that he has contacts abroad.

14          Where are they?  Who are they?  Do we have one?

15          THE COURT:  Again --

16          MS. SHEVITZ:  I hear you, and I can't refute a

17  negative.  I can't refute a negative.  I don't have contact

18  that I can say, hey, he doesn't know anybody there.

19          THE COURT:  If he created Amerindo Panama, then

20  presumably he knows some people in Panama.  If he had an office

21  in London, presumably he knows people in London.

22          MS. SHEVITZ:  Knowing people there does not mean

23  they're going to give you flight support and comfort and you

24  can come and live the rest of your life there as a fugitive.

25          THE COURT:  That's true, but if it were reversed then

Dapgvilc                    Conference

 1    I think the government would have some explaining to do, but

 2    again, it's your burden.

 3            MS. SHEVITZ:  I'm saying there is -- nobody identified

 4    my burden.  I hope can be shown by refuting the government's

 5    statement that it's not founded on evidence.  That's my -- I

 6    hope I can show, I hope I can cross examine that evidence or at

 7    least question it and say where are the contacts?

 8            His contacts are here.  He may know people there.  He

 9    did business there, but he hasn't lived there since 1989.  He

10    hasn't conducted business there since Amerindo was shut down

11    and actually, he was doing the business part, he was doing the

12    marketing part.  That's why it was hard to get it together

13    because nobody was talking to the both of them at the time.

14    And there are no contacts there, Judge.  There's no contacts.

15    There are no contacts and the government has not identified

16    one.

17            The only contact they identified that I can refute is

18    John Burke, who is a disgruntled nephew who fancies an account.

19    And he says that when Mr. Vilar turns 60, he said something

20    about living with family in Switzerland.  Is that evidence?

21            I'm saying that that didn't happen, that it was some

22    statement -- and there are no people in Switzerland, so I don't

23    know how else to refute it by saying there's no substance to

24    it, there's no substance, and nobody has said anything except

25    he knows people there.

Dapgvilc                    Conference

1          Well, I know people some people there, too, but I

2     don't expect -- and he hasn't been able to call up anyone and

3     get any help yet.  Nobody.  There's no funds.  There's no help.

4     There's no assistance.  There's no nothing.

5          He has a significant other in Queens and that is his

6     support and someone he's living with now while he's on bail.

7     That's what he has.

8          THE COURT:  Anything else the government wants to say

9     since I guess it's your motion?

10          MR. ANDERSON:  Just a moment.

11          THE COURT:  Okay.

12          MR. ANDERSON:  We don't have anything more.

13          The whole last bit about having no friends abroad, his

14     own submission, paragraph nine, in a parenthetical Ms. Shevitz

15     wrote hopefully he has some remaining friends abroad.  She

16     makes this strenuous argument he has no friends, but her own

17     submission contradicts it.

18          I think there's been a lot of hyperbole, but it

19     doesn't constitute clear and convincing evidence that the

20     defendants will continue coming to court, Judge.

21          THE COURT:  I think this is a close question.  And I'm

22     going to reserve a little longer so I can think about the

23     arguments and so I can also consider whether this is properly a

24     motion for bail pending appeal or bail pending sentencing

25     because there are different standards.

Dapgvilc                    Conference

1      Does anybody have a view as to which it is at this

2  point?

3      MR. ANDERSON:  It's actually an issue that we hadn't

4  considered before coming to court.  It's an interesting

5  question.

6      THE COURT:  I don't have a mandate, so the sentencing

7  is likely -- or certainly in the event that the mandate is

8  issued, but until it's issued, we're still pending appeal

9  because there's a motion for reconsideration and en banc

10 consideration, right?

11     MR. ANDERSON:  Right, which I suppose would mean that

12 the judgments are still --

13     MS. SHEVITZ:  I can't hear.

14     MR. ANDERSON:  -- which I suppose would indicate that

15 the judgments are still intact pending the issuance of the

16 mandate, so I imagine your Honor is correct, that this would be

17 bail pending the resolution of the appeal.

18     THE COURT:  He's saying he thinks it's probably bail

19 pending appeal as opposed to bail pending sentencing.

20     Does anybody disagree with that, that it's bail

21 pending sentencing instead of bail pending appeal?  The are

22 different standards, obviously.

23     MS. SHEVITZ:  Yes.

24     THE COURT:  Bail pending sentencing is a lower

25 standard; and bail pending appeal is a higher standard.  And it

1    requires an extra consideration of the seriousness of the

2    question presented on appeal.

3              MS. SHEVITZ:  If I might point out something.  Your

4    Honor thought that the issue of Morrison's applicability in

5    criminal cases is not a serious issue.

6              THE COURT:  I still think that because as the circuit

7    found that's no impact at all on the conviction because there

8    was ample evidence that the conduct took place in the United

9    States.  So, I think I can pretty well indicate every point you

10   have told me how wrong I was and that I was going to be

11   reversed.  It hasn't happened yet.  It could still happen, but

12   I'm not taking your prognostications too seriously.

13             I'm asking a simple question:  What's the standard?

14   Bail pending appeal or bail pending sentencing?

15             MS. SHEVITZ:  I think they asked for bail pending

16   sentencing.

17             THE COURT:  I didn't ask that.  They asked for which

18   is it at this point in your view?

19             MS. SHEVITZ:  I don't know.  I can't say right now.

20             MS. FISHER-BYRIALSEN:  I don't think we were prepared

21   to address that today.  If you want us to do a written

22   submission on that, we'd be happy.

23             THE COURT:  I'm not asking anybody to, but if they

24   want to, I certainly wouldn't prevent them from doing that, but

25   I don't want to keep this outstanding for much longer.  I think

Dapgvilc                    Conference

1   Mr. Tanaka and Vilar obviously want to get a resolution with

2   respect to the motion.

3           MS. FISHER-BYRIALSEN:  Obviously, we would prefer that

4   it was bail pending sentencing because that's better for us,

5   but I don't want to commit ourselves to something that's not

6   accurate or that's not good for our clients.

7           THE COURT:  I think it's a legal question and it

8   should turn simply on that.  If anybody wants to make a

9   submission, you can do that by the close of business Monday.

10  You don't have to.  I'm not asking for one.  If you would like

11  to I won't forestall it with that, I want to move to the SEC

12  case.

13          Is there something else you want to say?

14          MS. SHEVITZ:  Yes.  I want to say if your Honor is

15  considering revoking bail --

16          THE COURT:  I'm definitely considering revoking bail.

17          MS. SHEVITZ:  I understand that.  If and when you're

18  considering revoking bail, there are consequences of not having

19  a direct surrender.  I don't know if this would invoke the

20  prior sentence, but the sentence is going to be reversed or

21  vacated, so would this mean pretrial release or would he be

22  going back in as a sentenced offender, which means that I would

23  ask for voluntary surrender.

24          There are all these other issues that come up and

25  health issues, as well.  These men are septuagenarians, Judge.

1  It's not like an easy thing to just go in and out.  There are

2  health issues and we would like an opportunity to get

3  this done.  If this is going to be a sentence, a sentence as if

4  they're sentenced on appeal --

5          THE COURT:  It's a question of bail pending appeal.

6  There's two choices:  Yes, bail pending appeal, no bail pending

7  appeal.  I mean, I think everybody's had ample time to make the

8  submissions they want on that.

9          If you want to make a submission on whether a

10  different standard should be applied, then I'll let you do

11  that, but I don't think they're going to open round two to tell

12  me what are the consequences of denying bail.  I get that there

13  are potential issues with respect to health and things, but

14  that doesn't really go to risk of flight.

15          MS. SHEVITZ:  Although the fact that there are health

16  issues does go to risk of flight.

17          THE COURT:  But the collateral consequences with

18  respect to sentencing or the conditions of confinement I think

19  are not really before the Court.  Right now, I'm only

20  considering risk of flight and whether the defendants have met

21  their burden and perhaps also the quality of the appellate

22  issue.  Those are the only two things before the Court at this

23  point.

24          MS. SHEVITZ:  Let me ask one more thing, which is, if

25  your Honor does revoke bail, we would like the opportunity to

Dapgvilc                    Conference

1   seek a stay or seek a reversal, as the Court of Appeals did

2   last time on the bail issue, before they have to go in.

3          THE COURT:  Right.  I'll consider that.  I haven't

4   thought that through.  You certainly can make that application

5   if you're making it in advance.  I'll consider it at the time I

6   issue a ruling.  In the event it goes against you, I have

7   ruled.  So, I'll make that part of the ruling.

8          If I rule that they are to be denied bail, I will

9   consider your motion for a stay pending appeal to the circuit.

10  I'll consider that as part of the ruling I issue, so I won't

11  forget that.  Don't worry.

12         Anything else on the criminal case?  I'm thinking not

13  because we're only here for this tiny issue because the rest of

14  the case has not been sent back to me.

15         MR. ANDERSON:  Nothing from the government.

16         THE COURT:  You guys can go.  Anyone who needs a copy

17  of the transcript, can take it up with the court reporter

18  later.

19         (Adjourned)

20

21

22

23

24

25