UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-19-13
```

UNITED STATES OF AMERICA

-v-

ALBERTO VILAR and GARY TANAKA,

Defendants.

No. 05 Cr. 621 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

Now before the Court is the government's motion to revoke Defendants' bail. (Doc. No. 602.) For the reasons set forth below, the motion is granted.

I. BACKGROUND

A. Previous Proceedings

Defendants Alberto Vilar ("Vilar") and Gary Tanaka ("Tanaka") were indicted in 2005 on charges including conspiracy to commit securities fraud, investment advisor fraud, mail fraud, wire fraud, and money laundering. (Doc. Nos. 7, 16, 133.) After a jury trial in 2008, Vilar was convicted on all counts and Tanaka was convicted on three out of twelve courts. *See United States v. Vilar*, 729 F.3d 62, 69 (2d Cir. 2013). The Court revoked Vilar's bail one month later (Doc. No. 334), but continued Tanaka's bail.

On February 15, 2010, the Court sentenced Vilar to 108 months (nine years) imprisonment (Doc. No. 421) and sentenced Tanaka to 60 months (five years) imprisonment (Doc. No. 425). These sentences were well below the range prescribed by the United States Sentencing Guidelines, which for both Defendants was 210 to 262 months (about 17 to 22 years). (Tr. of Feb. 5, 2010 Sentencing, Doc. No. 434 ("Sent'g Tr."), at 26:4–6; 86:22–24.) Each Defendant filed an appeal

within days (Doc. Nos. 426, 427), but they nevertheless began serving their sentences. Vilar –
who had already been imprisoned – was remanded to the custody of the United States Marshals
after sentencing (Doc. No. 421), and Tanaka was ordered to report to his assigned correctional
facility on April 5, 2010 (Doc. No. 425), later extended to May 17, 2010 (Doc. No. 441).

Because of numerous extensions of the parties' filing deadlines in the Second Circuit, the
appeals were not fully submitted until mid-2012. At that time, Defendants submitted a motion for
bail pending appeal. (Doc. No. 519.) Defendants argued that their appeal raised substantial issues
that were "likely to result in reversal and dismissal of all counts." (*Id.* at 2.) The Court was
unpersuaded and found that Defendants (1) had not raised a substantial question on appeal; and (2)
were both flight risks. (Doc. No. 527 at 1–2.) The Court found that Vilar was a flight risk
because of his past pattern of dishonesty, his ties abroad, and the seven years remaining on his
sentence, and found that Tanaka was a flight risk because of his ties abroad and the two-and-a-half
years remaining on his sentence. (*Id.*) Defendants appealed that order, and the Second Circuit
granted bail pending appeal, remanding to the Court to set appropriate conditions. (Doc. No. 538.)

Almost a year later, on August 30, 2013, the Court of Appeals announced that it was
affirming Defendants' conviction, vacating their sentence, and remanding to the Court for
resentencing in light of *United States v. Morrison*, 130 S. Ct. 2869 (2010), which had been
decided while the appeal was pending and had overruled previously controlling Second Circuit
precedent. *Vilar*, 729 F.3d at 70, 98–99. The Court of Appeals, however, issued an opinion and
judgment only. It stayed the issuance of its mandate pending the determination of Defendants'
petition for rehearing or rehearing en banc (Doc. No. 543, *United States v. Vilar*, No. 10-521-cr
(L) (2d Cir. Sept. 11, 2013)), which has not yet been fully submitted.

### B.  The Current Motion

The same day that the Court of Appeals issued its judgment, the government requested a conference to address Defendants' bail status.  (Doc. No. 588 at 4.)  The Court held a conference on September 27, 2013 and set a schedule for each side to brief whether continued bail was appropriate.  (*See* Doc. No. 598.)  The government submitted its brief on October 4, 2013 (Doc. No. 602), and each Defendant submitted a brief on October 18, 2013 (Doc. Nos. 610, 611).  The Court heard oral arguments on October 25, 2013 and allowed supplemental briefing on the question of whether the appropriate standard to apply was the standard for bail pending sentencing, pursuant to 18 U.S.C. § 3143(a), or for bail pending appeal, pursuant to 18 U.S.C. §3143(b).  All parties submitted supplemental briefing on October 28, 2013.  (Doc. Nos. 615–617.)

### II.  DISCUSSION

In deciding this motion, the Court must address three issues.  First, the Court must determine whether it properly has jurisdiction.  Second, the Court must decide what standard controls the decision to grant bail.  And third, the Court must apply that standard to each of the Defendants.  As will be explained in greater detail, the Court determines that it does have jurisdiction, that the proper standard is that for bail pending appeal, and that bail for each Defendant should be revoked.

### A.  Jurisdiction

The Court has previously stated that "[e]ven though the mandate has not issued, this Court retains jurisdiction over the persons of the defendants at least for the limited purpose of reviewing, altering, or amending the conditions under which the court released the defendants."  (Doc. No. 588 at 3 (quoting *United States v. Sattar*, No. 02 Cr. 395 (JGK), 2009 WL 4038461, at *1 (S.D.N.Y. Nov. 18, 2009))).  The Second Circuit apparently shares this view.  *See Vilar*, 729 F.3d

3

at 99 n.40 ("We leave it to the District Court to consider in the first instance the question of whether bail should be granted pending any petition for certiorari."). To avoid any uncertainty or doubt, however, the Court now addresses this issue more thoroughly.

As a general matter, a notice of appeal transfers jurisdiction over "those aspects of the case involved in the appeal" from the district court to the appellate court. *See Negron v. United States*, 394 F. App'x 788, 792 (2d Cir. 2010) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). That jurisdiction remains with the appellate court until the issuance of the mandate. *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996). As far as jurisdiction is concerned, the appellate court's rendering of an opinion or summary order has no effect – only the mandate transfers jurisdiction. *United States v. Rivera*, 844 F.2d 916, 920–21 (2d Cir. 1988). In this case, although the Second Circuit has published its decision affirming Defendants' convictions and remanding for resentencing, it has not issued its mandate. The conviction and sentencing are therefore still, technically, on appeal and this Court lacks jurisdiction over those issues.

But the lack of jurisdiction over conviction and sentencing issues does not settle the question of the Court's jurisdiction to consider bail. The rule that an appeal divests the district court of jurisdiction exists "to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." *Rodgers*, 101 F.3d at 251. It follows by contraposition that when an issue has not been appealed – and thus is not before the appellate court – there is no risk of confusion or waste of time and the issue remains within the district court's jurisdiction. *See N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989) ("[T]he filing of a notice of appeal only divests the district court of jurisdiction respecting the questions raised and decided in the order that is on appeal.") Under that reasoning, because the Court's previous

4

decisions on bail are not on appeal, the Court would still have jurisdiction over bail determinations.

Moreover, the rule that an appeal divests the district court of jurisdiction "is not a per se rule. It is a judicially crafted rule rooted in the interest of judicial economy . . . ." *Rodgers*, 101 F.3d at 251. The rule should therefore accommodate the practical reality that district courts are often best suited to address fact-intensive and fast-moving bail questions, at least in the first instance. If a defendant violates his bail conditions or circumstances require immediate modification of a condition, an appellate court may not have time to convene, learn all the facts of the case, or take evidence. The district court, on the other hand, has usually overseen the case from the beginning, is familiar with the facts, is accustomed to taking evidence, and – as a single-judge court – is structured for faster action. *Cf. United States v. Abuhamra*, 389 F.3d 309, 318 (2d Cir. 2004) ("We defer to the district court on [factual findings in bail] matters because of its unique insights into the defendant as an individual and into his personal, professional, and financial circumstances."). Indeed, federal law reflects these considerations. Both the Bail Reform Act and Rule 9 of the Federal Rules of Appellate Procedure assume that a district court has jurisdiction to grant or deny bail while an appeal is pending. *See* 18 U.S.C. § 3141(b); Fed. R. App. P. 9(b).

Accordingly, the Court finds that it has jurisdiction to consider bail.

## B. The Appropriate Standard for Granting Bail

Section 3143 of the federal criminal code, part of the Bail Reform Act of 1984, provides two different standards for granting bail. 18 U.S.C. § 3143. Subsection 3143(a) provides the standard for granting bail pending sentencing. Subsection 3143(b) provides the standard for granting bail pending appeal by the defendant. When a defendant has been convicted and awaits sentencing, a court must deny bail unless it "finds by clear and convincing evidence that the

5

person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1).  When, on the other hand, a defendant has been sentenced to imprisonment and has filed an appeal or a petition for a writ of certiorari, a court must deny bail unless it finds (1) "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released"; *and* (2) that the appeal raises a substantial question of law or fact likely to result in a reversal, a new trial, or a sentence that will be less than the total time already served prior to and during the pendency of the appeal. 18 U.S.C. § 3143(b).

As discussed above, the Second Circuit has issued its judgment but not its mandate.  As a result, this case is technically still on appeal and Defendants' sentences are still technically in force.  Thus, the Court must apply the standard for bail pending appeal.  The Court recognizes that this outcome is, in some respects, unusual – Defendants must meet a higher standard now, when there is still some theoretical hope that their convictions could be reversed, but will be held to a lower standard as soon as the mandate issues and officially affirms their convictions.  But to hold otherwise, even if simpler, would be contrary to the clear language of the bail statute. Accordingly, the Court must grant bail if and only if both prongs of the subsection 3143(b) standard are satisfied.

## C.  Application

The Court previously found that both Defendants were flight risks and that their appeal did not raise substantial issues.  (Doc. No. 527 at 1–3.)  The Second Circuit, however, subsequently reversed the Court's order and granted Defendants bail.  (Doc. No. 538.)  Although the Second Circuit did not state the reasons for its decision, it must have found that the issues on appeal were substantial *and* that the Court's factual findings as to risk of flight were clearly erroneous.  *See* Fed. R. App. P. 9(c) (requiring an appellate court to make its decision regarding release in

accordance with 18 U.S.C. § 3143); *Abuhamra*, 389 F.3d at 318 ("In reviewing a detention challenge, we examine the district court's factual determinations for clear error. This clear error standard applies not only to the court's specific predicate factual findings but also to its overall assessment, based on those predicate facts, as to the risk of flight or danger presented by defendant's release." (citations omitted)).

Nevertheless, while the Second Circuit's findings must inform the Court's decision, they cannot control the decision at this point. Since the time when the Second Circuit granted bail, the situation has changed – the Second Circuit has announced its judgment affirming Defendants' convictions. Although the mandate has not issued, and the appeal is not final, the announcement of judgment is itself relevant to Defendants' risk of flight and to the substantiality of their remaining appeal. Whatever chances Defendants once had for having their conviction reversed, the odds are now lower. That change in odds in turn increases Defendants' risk of flight. The Court must consider this new fact in deciding whether to grant bail.

With both the Second Circuit's past holding and the changed circumstances in mind, the Court now turns to the two-pronged standard for bail pending appeal.

### 1.   Risk of Flight

Releasing a convicted defendant can be a risky proposition. If a convict flees, the law is flouted and justice is left undone. The Bail Reform Act aimed to eliminate that risk. *See Abuhamra*, 389 F.3d at 318 ("[P]resent federal law disfavors release on bail [after conviction]."). The statute requires a court to deny bail pending appeal unless it "finds by clear and convincing evidence that the [defendant] is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(b)(1)(A). Notably, a finding that a defendant "is not likely to flee" is not the same as a finding that a defendant will probably not flee or that the defendant is more likely than not to stay put. Even before conviction, a court must order detention

7

if it finds that the defendant's appearance cannot be "reasonably assure[d]," 18 U.S.C. 3142(e)(1),

which suggests that far more than 51% confidence that the defendant will not flee is required.

After conviction, the standard is meant to be far more onerous.  As such, "not likely to flee" means

there is no reasonable risk that the defendant will flee, in the sense that a reasonable person would

not worry that the defendant might flee. *See United States v. Lea*, 360 F.3d 401, 403 (2d Cir.

2004) (requiring a finding that a defendant "posed no risk of flight" to satisfy section 3143);

*United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991) ("To satisfy [paragraph 3143(b)(1)],

the trial judge must find that the person poses no risk of flight . . . .").  Moreover, the defendant

bears the burden of proving that there is no risk of flight. *United States v. Randell*, 761 F.2d 122,

125 (2d Cir.1985).

### a. Alberto Vilar

Subsection 3142(g) sets forth a list of factors for courts to consider in determining risk of

flight.[1]  Among these factors are "the person's character, physical and mental condition, family

---

[1] The full text of 18 U.S.C. § 3142(g) reads:

(g) Factors to be considered. – The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning –

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Vilar did not focus on these factors in his submissions or in his arguments at the bail hearing, but most weigh against his release. Vilar provides no evidence of family ties, community ties, or employment in the district. He does not make any attempt to defend his character. Vilar's physical and mental condition – particularly, his age – could make it more difficult for him to flee, but they also increase his incentive to flee. *Cf. United States v. Madoff*, 316 F. App'x 58, 59 (2d Cir. 2009) (upholding a court's denial of bail based on the defendant's age and the length of a potential sentence). Similarly, Vilar appears to have limited financial resources,[2] which could make it harder for him to flee, but which also gives him less to leave behind. Among these factors, the only factor that unambiguously favors Vilar is his history of compliance with bail conditions. (*See* Doc. No. 611 ¶¶ 10–11.) But this factor is relatively weak: most convicted felons who flee while on bail were, for a time, in compliance with their terms of release – until one day they were not.

---

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

[2] *But see Madoff*, 316 F. App'x at 59 ("[T]he district court was not required to treat this defendant's financial representations as reliable. The defendant . . . has had ample opportunity over a long period of time to secret substantial resources outside the country.").

Instead of focusing on the statutory factors, Vilar argues that the government's arguments regarding his risk of flight are flawed (Doc. No. 611 ¶ 4–8) and that he is unlikely to flee because (1) he is in a serious relationship with an unnamed woman in Queens (*id.* ¶ 9); (2) he has no passport and could not flee (*id.* ¶ 8); (3) he wants to stay to collect on the surplus investment assets he believes he will be entitled to when the case is resolved (*id.* ¶ 11); and (4) he believes he will not serve significant time in prison (*id.* ¶¶ 18–19).

Vilar's criticism of the government's position misses the point. Vilar bears the burden – the government does not need to provide any evidence or any arguments. The sole question is whether Vilar himself can establish that there is no reasonable risk that he will flee. Additionally, Vilar's argument that his risk of flight is no greater than any other convicted felon's falls particularly wide of the mark. (Tr. of October 25, 2013 Bail Hearing, Doc. No. 625 ("Bail Tr."), at 20:16–23.) Federal law applies a "presumption[] of danger and flight" to convicted felons. *Abuhamra*, 389 F.3d at 316. Thus, to the extent Vilar is similar to other convicted felons, federal law requires that he be imprisoned.

As for Vilar's affirmative arguments, most fail to show how he is sufficiently different from the run-of-the-mill convicted felon to establish that there is no risk he will flee. Vilar has been in a relationship for several years, but that is true for many, if not most, convicted felons. Further, Vilar has provided no evidence of his partner's ties to the district that would prevent her from fleeing with him. Vilar does not have a passport, but his lack of a passport is counterbalanced by his fluency in Spanish, his ties abroad, and his time spent living abroad.

The arguments that distinguish Vilar – that he hopes to collect surplus assets and that he believes he will not go back to prison – are entirely unpersuasive. Vilar has provided no evidence or any reason to believe that there will be any surplus assets for him to collect once his victims and the other investors have been paid. (Bail Tr. at 18:9–22.) To the contrary, according to the

10

Receiver in the related SEC case, there are not even enough assets to pay investors in full. (Doc. No. 329, *SEC v. Amerindo Inv. Advisors Inc.*, No. 05 Civ. 5231 (RJS).)  With respect to sentencing considerations, the Second Circuit specifically found that losses to at least three groups of investors – Lilly Cates, the Mayer Family, and Graciela Lecube-Chavez – could properly be considered under *Morrison. Vilar*, 729 F.3d at 76–79.  Counting those investors alone, the losses add up to over $20 million. (Sent'g Tr. at 23:25–24:5.)  That loss amount leads to precisely the same Guidelines range that Vilar faced at his first sentencing. (*Id.* at 24:16–19 (holding that the Guidelines range is unaffected as long as the losses are over $20 million and less than $50 million)).  Moreover, the Circuit's ruling directs the Court to consider additional losses as potentially relevant conduct. *Vilar*, 729 F.3d at 96.  As a result, there is a real risk that Vilar's sentencing prospects will be unchanged or worse at the second round of sentencing.

True, the Court must conduct a de novo sentencing, *Vilar*, 729 F.3d at 99, and could, ultimately, sentence Vilar even further below the Guidelines than it did at the first sentencing.[3] But the Court could also sentence Vilar within the Guidelines, which would mean a significantly higher sentence.  That danger gives Vilar ample incentive to flee.  Accordingly, the Court finds that Vilar has failed to demonstrate by clear and convincing evidence that he is not likely to flee if released.

---

[3] Vilar has accused the Court of prejudging his sentence and has even filed a motion for recusal based on the Court's appearance of impropriety and partiality. (Doc. Nos. 621, 622 ¶ 32.) This argument misses the mark.  Although the Court will certainly conduct a de novo sentencing proceeding upon the issuance of the mandate, the government's motion to revoke bail requires the Court to assess Defendants' risk of flight, which necessarily entails an analysis of the potential sentence faced by Defendants.  Moreover, nothing in the Second Circuit's opinion or in the bail statute requires the Court to disregard knowledge and information acquired while presiding over the case.  To the contrary, the bail statute and Second Circuit precedent make clear that district courts are encouraged to rely on such information, which can provide "unique insights into the defendant as an individual and into his personal, professional, and financial circumstances." *Abuhamra*, 389 F.3d at 318.

b.  Gary Tanaka

Tanaka's situation is different, but not different enough to justify a contrary result.  In his submission, Tanaka states that he has a mother and two sisters living in America and that he is currently in a serious relationship with Vivian Shevitz, Vilar's counsel.  (Doc. No. 610 at 2.)  He also argued at the bail hearing that he has less incentive to flee because he has already served two-and-a-half years and – assuming he received a similar term of imprisonment on resentencing – would only have two-and-a-half years left.  (Bail Tr. at 13:16–24.)  But a romantic relationship and family ties within the country – not the district – are insufficient to satisfy Tanaka's burden. Just as with Vilar, these do not distinguish Tanaka from the run-of-the-mill convicted felon who is presumptively a flight risk.  Further, Tanaka's argument that he is not likely to flee to avoid a two-and-a-half year sentence is flawed for two reasons.  First, it ignores the possibility that Tanaka's sentence after de novo resentencing could in fact be higher.  Second, it relies on the dubious assumption that a person would prefer to serve two-and-a-half years in prison than take his chances on the run.  If that assumption were valid, there would be a general rule that convicted felons sentenced to two-and-a-half years or less are outside of the presumptive risk of flight – which, of course, is not the law.  Indeed, that assumption is particularly unfounded for a man of Tanaka's age and health.  Tanaka is seventy years old and has a history of cancer.  At this point, two-and-a-half years may be more than he is willing to risk.  *Cf. Madoff*, 316 F. App'x at 59.

Although the Court takes into account the factors emphasized by Tanaka, his arguments do not establish that he is so unlikely to flee that the Court, the government, and the community can all rest at ease.  Considering the Second Circuit's affirmance of Tanaka's conviction and the possibility that he could, under the Guidelines, face up to twenty more years in prison, the Court has no confidence that Tanaka will not flee.  Accordingly, the Court finds that Tanaka has failed to demonstrate by clear and convincing evidence that he is not likely to flee if released.

2.   Substantial Question on Appeal

Because Defendants each raise the same issues on appeal, the Court addresses the second prong – whether the appeal raises a substantial question likely to result in a reversal, a new trial, or a sentence that will be less than the total time already served – for both Defendants simultaneously.

Put simply, the second prong asks whether there is a reasonable likelihood that a defendant will not face further imprisonment. *See Randell*, 761 F.2d at 125 ("[A substantial question] is a 'close' question or one that very well could be decided the other way." (internal quotation marks omitted)).  If a convicted felon will ultimately be imprisoned anyway, there is no benefit in putting off the inevitable.  But if there is a reasonable likelihood that the appeal will result in a defendant's release, then any further imprisonment is potentially unnecessary.  As long as the defendant is not dangerous or a flight risk, the benefit of avoiding that potentially unnecessary imprisonment justifies bail.

By granting bail, the Second Circuit implicitly held that the issue originally raised in the appeal was substantial and, if decided in Defendants' favor, was likely to result in Defendants' ultimate release.  That previous holding, however, offers little guidance for the present situation.  As the facts stand now, three appellate judges have unanimously affirmed Defendants' convictions.  The question that was close a year ago now appears to be settled.

Defendants argue that they have a strong petition for rehearing en banc and hope to see the Second Circuit panel reversed.  (Doc. No. 614 at 3.)  As a matter of sheer probability, the odds are hardly in Defendants' favor.  Rehearing en banc and certiorari are exceedingly rare.  (*Id.*)  Moreover, putting probabilities to the side, the Court finds that Defendants' remaining appellate arguments are not close.  Defendants' arguments that the panel misapplied plain error or violated Defendants' jury rights are not supported by precedent.  Indeed, at base, Defendants' claims – that

13

a new trial is necessary to allow cross-examination on the question of domesticity – are an attack on the very idea of harmless error.  Further, Defendants' arguments regarding what makes a transaction domestic and Defendants' claims that a criminal securities fraud conviction should require a showing of reliance are directly contrary to precedent.  *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67–68 (2d Cir. 2012); *SEC v. Apuzzo*, 689 F.3d 204, 213 (2d Cir. 2012).

Admittedly, sometimes legal outcomes can be surprising.  Nevertheless, the bail standard is focused on reasonable likelihoods, not lucky breaks.  Here, Defendants' appeal raises no substantial issues likely to result in a reversal, a new trial, or a sentence that will be less than the total time already served.  As noted above, this determination is not a prejudgment of Defendants' resentencings, which are not yet before the Court.  Nevertheless, the Bail Reform Act requires the Court to consider the likely sentencing and appellate outcomes confronting Defendants at this time.  Having done so – particularly in light of the Second Circuit's holdings with respect to the frauds perpetuated by Defendants against Lilly Cates, the Mayers, and Graciela Lecube-Chavez – the Court finds that the reasonably likely outcome is that, in the end, Defendants will return to prison.  Accordingly, the Court determines that neither Defendant satisfies the second prong of the standard for bail pending appeal.

As such, the Court revokes bail for both Defendants.

### D.  Stay Pending Appeal

At the bail hearing, Vilar requested that any revocation of bail be stayed pending appeal. (Bail Tr. at 31:24–32:11.)  To determine whether to grant a stay pending appeal, a court must consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the

public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). The first factor weighs against a stay. Although there might be some likelihood that the Circuit could again find that Vilar is not a flight risk, the Court finds it exceedingly unlikely that the Circuit could find that Vilar has raised a substantial issue on appeal. This is especially so given that Vilar's only argument left on appeal is that the Circuit panel itself misapplied Second Circuit precedents and the plain-error standard. The second factor, on the other hand, favors a stay – unnecessary imprisonment is always irreparable injury. But the third and fourth factors decisively come out against a stay. Vilar is a flight risk – if he is allowed to stay free and flees, the government will be prejudiced and the public will suffer. Accordingly, the Court denies Vilar's request for a stay pending appeal.[4]

### III.    CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT bail is revoked. Defendants shall surrender to the United States Marshals no later than November 20, 2013. The clerk of the court is respectfully directed to terminate the motion pending at docket number 602.

SO ORDERED.

Dated:      November 19, 2013
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

---

[4] Tanaka did not join this request, but to the extent he would have, his request would be denied for the same reasons.

15