USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED. 8/2/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                  Plaintiff,

-v-

AMERINDO INVESTMENT ADVISORS INC., *et al.*,

                  Defendants.

---

UNITED STATES OF AMERICA

-v-

ALBERTO WILLIAM VILAR, *et al.*,

                  Defendants.

No. 05-cv-5231 (RJS)

OPINION & ORDER

No. 05-cr-621 (RJS)

---

RICHARD J. SULLIVAN, Circuit Judge:

    Now before the Court are (1) the government's motion for a preliminary order of forfeiture as to substitute assets (No. 05-cr-621-RJS ("Criminal Action") Doc. No. 769); (2) the fourth and final application for compensation and reimbursement of expenses by the Receiver (No. 05-cv-5231-RJS ("Civil Action") Doc. No. 714); and (3) the fifth and final application for compensation and reimbursement of expenses by CBIZ Accounting Tax & Advisory of New York LLC and CBIZ Account Tax & Advisory of San Diego LLC (collectively "CBIZ"), the Court-approved financial advisors to the Receiver (Civil Action Doc. No. 715). For the reasons stated below, each of the above-mentioned motions is GRANTED. In addition, the Court will, in due course, conduct an ancillary proceeding in the Criminal Action pursuant to 21 U.S.C. § 853(n) and Federal Rule

of Criminal Procedure 32.2 to dispose of the remaining receivership assets.

I. BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history of this case, and accordingly will provide only the background necessary to decide the instant motions.

On April 25, 2014, the Court entered a Preliminary Order of Forfeiture/Money Judgment with respect to Defendant Vilar and Defendant Tanaka, making final as to each Defendant a joint and several money judgment in the amount of $20,578,855.28. (Criminal Action Doc. Nos. 684, 687.) The Court further ordered Vilar and Tanaka to pay restitution in the total amount of $26,637.502.69, also on a joint and several basis. (Criminal Action Doc. Nos. 682, 683.) The Court imposed those forfeiture and restitution orders after having found at the April 24, 2014 resentencing that the Defendants "indirectly obtained everything gained by [the Amerindo Corporations] because they entirely dominated and controlled the companies and used the companies' assets for their own personal expenses." (Criminal Action Doc. No. 694 at 30:14–17.)

On August 14, 2018, the government filed a motion in support of a proposed preliminary order of forfeiture as to substitute assets, proposing that approximately $12,950,596 in assets currently under the control of the Receiver in the Civil Action be forfeited as substitute assets. (Criminal Action Doc. No. 769). The Court is in receipt of responses to the government's motion from numerous stakeholders in both the Criminal Action and the Civil Action, including from Defendant Vilar (Criminal Action Doc. No. 788), Defendant Tanaka (Criminal Action Doc. No. 791), Lisa Mayer and Debra Mayer ("the Mayers") (Criminal Action Doc. No. 789), the Marcus Claimants[1] (Civil Action Doc. No. 708), Alfred Heitkonig (Civil Action Doc. Nos. 711, 713), the Receiver (Civil Action Doc. No. 709), and the U.S. Securities and Exchange Commission ("SEC")

---

[1] The Marcus Claimants include Paul Marcus, the Deane J. Marcus Trust, the Steven E. Marcus Trust, the Cheryl Marcus-Podhaizer Trust, and the Eve S. Marcus Children's Trust.

(Civil Action Doc. No. 710). The government filed a reply on October 12, 2018 (Criminal Action Doc. No. 795), and Defendant Vilar filed a sur-reply on October 15, 2018 (Criminal Action Doc. No. 797). On July 24, 2019, the Marcus Claimants filed a letter summarizing the state of the case and requesting a ruling from the Court on the outstanding issues in this matter. (Criminal Action Doc. No. 798.) The Mayers filed a similar letter on July 25, 2019. (Criminal Action Doc. No. 799.)

Furthermore, on December 17, 2018, the Receiver filed a fourth and final application for compensation and reimbursement of expenses and CBIZ filed a fifth and final application for compensation and reimbursement of expenses. (Civil Action Doc. Nos. 714, 715.) Attorney Vivian Shevitz, apparently on behalf of both Defendants, filed an opposition to the applications on January 7, 2019. (Civil Action Doc. No. 717.) The Receiver filed a reply on January 14, 2019. (Civil Action Doc. No. 719.)

## II. Forfeiture Order

The government seeks forfeiture of substitute assets currently controlled by the Receiver in the Civil Action and valued at approximately $12.9 million in order to (1) satisfy the $771,502 unpaid balance owed to victims under the Court's restitution orders and (2) partially satisfy the money judgments entered jointly and severally against Defendants in the amount of $20,578,855.28. (Criminal Action Doc. No. 769 at 6–7.) The SEC has stated that it does not object to the motion and consents to having its claim against the receivership assets be determined in the context of an ancillary proceeding in the Criminal Action.[2] (Civil Action Doc. No. 710.)

---

[2] In the ancillary proceeding phase of this case, under 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2, the government must provide notice of its intent to dispose of the property to known interested third parties. Third parties alleging an interest in the forfeited property will have thirty days from the date of last publication or actual notice to petition the Court for a hearing to determine the validity of their claims. 21 U.S.C. § 853(n)(2). At the end of the ancillary proceeding, the Court will "enter a final order of forfeiture by amending the preliminary order as necessary to account for any third-party rights." Fed. R. Crim. P. 32.2(c)(2).

Likewise, the Receiver has no objection to the motion, subject to the expenses and compensation claimed in the applications discussed below. (Civil Action Doc. No. 709.) Defendant Vilar, joined by Defendant Tanaka in a separate *pro se* submission, opposes the motion on the grounds that (1) the Supreme Court's decision in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), renders the Court's forfeiture orders invalid and therefore bars the forfeiture of substitute assets without a further hearing and (2) the government's motion is premature until the Court resolves Defendants' pending motion under 28 U.S.C. § 2255 (the "2255 motion").[3] (Criminal Action Doc. No. 788.) Meanwhile, three groups of claimants in the SEC action – the Mayers, Alfred Heitkonig, and the Marcus Claimants – also oppose the motion, primarily on the grounds that the motion undermines their claims to the substitute assets, which they are pursuing through the receivership process. The Court will address each opposition in turn.

1. Defendants' Opposition

As to Defendants' first argument, the Court finds that the underlying forfeiture orders remain valid post-*Honeycutt*. In *Honeycutt*, the Supreme Court held that, under 21 U.S.C. § 853, a defendant cannot be "held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire." 137 S. Ct. at 1630. As an initial matter, the Second Circuit has not yet ruled upon the applicability of *Honeycutt* – a decision that relied heavily on the intricacies of the particular statutory scheme at issue in that case – to forfeiture statutes other than § 853, which governs forfeiture for a subset of drug crimes. *See, e.g., United States v. McIntosh*, No. 11-cr-500 (SHS), 2017 WL 3396429, at *6 (S.D.N.Y. Aug. 8, 2017) (finding that *Honeycutt* did not overrule prior Second Circuit case law providing for joint and

---

[3] In his *pro se* submission, Defendant Tanaka also raises arguments regarding his trial counsel's ineffectiveness, as well as other issues raised in the 2255 motion. (Criminal Action Doc. No. 791.) Because those arguments do not bear on the instant motion and are properly considered in the context of the 2255 motion, which the Court has denied in a separately docketed order, the Court does not address them here.

several liability under 18 U.S.C. § 981(a)(1)(C)). Here, however, the Court concludes that *Honeycutt* is most likely applicable because the indictment relied in part on 18 U.S.C. § 982, which incorporates § 853 by reference.

Regardless, even assuming that *Honeycutt* applies to the forfeiture orders in question, the Court finds that it does not bar the forfeiture orders in this case because both Vilar and Tanaka personally obtained all the profits of their scheme. In imposing forfeiture at the April 24, 2014 resentencing, the Court found that "the defendants indirectly obtained everything gained by Amerindo because they entirely dominated and controlled the companies and used the companies' assets for their own personal expenses." (Criminal Action Doc. No. 694 at 30:14–17.) Thus, the structure of the conspiracy at issue differs drastically from that of the conspiracies contemplated in *Honeycutt*. In *Honeycutt*, the government sought forfeiture jointly and severally against a salaried employee at a store involved in selling chemicals used to manufacture methamphetamine, even though only the store's owner obtained the profits from the scheme. *See* 137 S. Ct. at 1630–31. In reaching its conclusion that joint and several liability was inappropriate, the *Honeycutt* Court likened the conspiracy to one in which the mastermind of a marijuana enterprise earned $3 million and paid a student $300 per month from the proceeds for delivery services, totaling $3,600. *Id.* at 1631–32. The Court concluded that holding the hypothetical student liable via a joint and several *conspiracy* liability theory for the total $3 million, rather than the $3,600 he personally obtained, would contravene the text and structure of § 853. In stark contrast to those conspiracies, which involved rigid separation in the roles and respective profits of the participants, Vilar and Tanaka acted jointly in carrying out their crimes and in securing the proceeds, which were kept in companies for which Defendants were the sole and equal partners. (Criminal Action Doc. No. 694 at 30:14–17.) Even now, Vilar and Tanaka's efforts with regard to the instant motion to retain

their interest in the entirety of the same pool of corporate assets based on their joint ownership of Amerindo underscore the fact that each defendant individually obtained the funds at issue. (Criminal Action Doc. No. 795 at 5.) In this circumstance, joint and several liability – as opposed to joint and several *conspiracy* liability that seeks to hold a defendant vicariously liable for profits never obtained by that defendant – remains wholly appropriate post-*Honeycutt*.[4]

2. Claimants' Opposition

The Claimants – the Mayers, Alfred Heitkonig, and the Marcus Claimants – raise a litany of arguments in opposition to the government's motion, primarily on the basis that entering the government's proposed preliminary order would jeopardize their own claims to the assets. The Mayers, relying in part on the SEC's prior view that the Receivership should continue, contend that the government's motion is premature because they are still owed a portion of their restitution judgment in the criminal case and seek to execute against the substitute assets to satisfy their separate state court judgments. (Criminal Action Doc. No. 789 at 8–15.) Alfred Heitkonig argues that the assets properly belong to the investor claimants and opposes what he perceives to be an unjustified appropriation of the funds by the SEC.[5] (Civil Action Doc. Nos. 711, 713.) He points to specific outstanding issues, such as disputes regarding valuation methodology, that must be resolved prior to a final distribution. (Civil Action Doc. No. 711.) Finally, the Marcus Claimants argue that granting the government's motion would disrupt the orderly continuation of the receivership, create duplicative litigation, and undermine the Marcus Claimants' ability to litigate outstanding issues regarding their claims, including their entitlement to the Retirement Benefits

---

[4] Defendants also make a prudential argument that the Court should abstain from ruling on the government's motion until after it has resolved the 2255 motion. Because the Court has now denied Defendants' 2255 motion in a separate order filed concurrently with the instant order, that argument is now moot.

[5] While Mr. Heitkonig will have the opportunity to fully brief this issue in the context of the ancillary proceeding, the Court notes that he appears to conflate the SEC and the government for purposes of this argument.

Scheme Account and their argument regarding differential treatment for ATGF and GFRDA investors. (Civil Action Doc. No. 708 at 5–12.) The various Claimants also cite the impact that granting the government's motion would have on pending appeals of the Court's prior orders in the Civil Action, which are currently stayed pending a final distribution plan or dissolution of the receivership. (*See, e.g.*, Civil Action Doc. No. 708 at 9; Criminal Action Doc. No. 789 at 14.)

Meanwhile, the SEC and the Receiver do not oppose the government's motion. The SEC's current position is that it "does not object to the Forfeiture Motion and consents to having its claim against the receivership assets . . . be determined in the context of that motion in the Criminal Action, along with any other claims that investors and other creditors may have against those assets that might be asserted in that forum." (Civil Action Doc. No. 710 at 1–2.) Likewise, the Receiver "has no objection to the Motion," subject to the applications for compensation and reimbursement discussed below. (Civil Action Doc. No. 709.)

Without ruling on the merits of the outstanding issues identified by the Claimants as bearing on their entitlement to the substitute assets, the Court finds that these arguments are premature and do not provide a basis for denying the government's motion. Each of these claims against the assets can and will be litigated in the context of the ancillary proceeding following entry of the preliminary order of forfeiture. As the government points out, the Claimants lack standing to oppose the forfeiture motion at this stage, *see, e.g.*, *DSI Assoc. LLC v. United States*, 496 F.3d 175, 184–85 (2d Cir. 2007), and will be free to pursue their arguments in the context of the ancillary proceeding. In light of the SEC and Receiver's approval of this manner of resolving the remaining issues, the Court finds that this approach – which would pave the way for an orderly resolution of all remaining claims while terminating Defendants' interests in the assets – is preferable. Contrary to the Claimants' arguments, this simplified approach should facilitate, rather

than hinder, the resolution of the Claimants' appeals in the Civil Action.

The Marcus Claimants further argue that the government has not demonstrated that forfeiture is appropriate because Defendant's possession of the funds did not give Defendants an ownership interest in the assets. This argument is also unavailing. As Defendants' opposition to the government's motion demonstrates, Defendants have asserted interests against the substitute assets, which are appropriately addressed via the forfeiture.

Accordingly, the government's motion for forfeiture of the substitute assets is GRANTED, as set forth in the separately docketed Preliminary Order of Forfeiture as to Substitute Assets, subject to the motions for compensation discussed below.

III. MOTIONS FOR COMPENSATION

Also before the Court are the applications for compensation and reimbursement filed by the Receiver and CBIZ. (Civil Action Doc. Nos. 714, 715.) For the reasons set forth below, both applications are GRANTED.

"A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred." *SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008). Like fee awards in other contexts, the reasonableness of a receiver's fee application is determined in the court's discretion, *SEC v. Northshore Asset Mgmt.*, No. 05 Civ. 2192 (WHP), 2009 WL 3122608, at *3 (S.D.N.Y. Sept. 29, 2009), and is judged by, among other things, the reasonableness of the hourly rate charged and the reasonableness of the number of hours billed, *Byers*, 590 F. Supp. 2d at 644.

1. Receiver's Application

The Receiver seeks $62,475.00 in compensation and $741.19 in reimbursement for expenses for the period beginning January 25, 2017 and ending October 25, 2018. (Civil Action

Doc. No. 714 at 1.) These amounts incorporate a requested $100.00 increase to the hourly rates charged, from $350 to $450 for Ian Gazes and $345 to $445 for counsel David Dinoso. Defendants oppose this rate increase, arguing that the Receiver gives no good reason for the higher rate. (Civil Action Doc. No. 717 at 1.) The Receiver maintains that the increase is reasonable because it is limited to services rendered from January 2017 onward, represents a 43% discount on the Receiver's prevailing hourly rate in 2013, and results in a blended hourly rate of $270 over the course of the receivership. (Civil Action Doc. No. 719 at 2–3.)

The Court determines that the increased rate sought by the Receiver is reasonable for several reasons. First, the SEC, after having reviewed the Receiver's application, has no objection to the requested fees and expenses, including the requested rate increase. (*See* Civil Action Doc. No. 714 at 1.) The SEC's approval is a significant factor in determining the reasonableness of the compensation and reimbursement sought. *See Byers*, 590 F. Supp. 2d at 644 ("[I]n a securities receivership, [o]pposition or acquiescence by the SEC to the fee application will be given great weight." (internal quotation marks and citation omitted)). The SEC deemed the rate increase appropriate in light of the length of the receivership, the relatively small amount of the increase, and the fact that investor claimants have been paid in full. (Civil Action Doc. No. 719 at 2 n.1.) The hourly rates remain significantly discounted from the ordinary rates of the Receiver and Mr. Dinoso, which as of 2015 were $800 for the Receiver and $575 for Mr. Dinoso. (Civil Action Doc. No. 552 at 2.) Furthermore, the overall blended hourly rate of $270 between the years of 2013 and 2018 is reasonable in light of amounts approved in other cases. *See, e.g., Byers*, 590 F. Supp. 2d at 645 (finding an hourly rate of $250 to be reasonable for a receiver in 2008); *SEC v. Goren*, 272 F. Supp. 2d 202, 208 (E.D.N.Y. 2003) (approving hourly rates of up to $200 for a receiver's attorneys in 2003).

Likewise, the Court finds that the total amount sought by the Receiver is reasonable. The SEC's approval, as noted above, weighs heavily in favor of reasonableness. Additionally, the Court finds that the hours expended – 79.5 by Mr. Gazes and 60 by Mr. Dinoso – are fully documented and do not appear excessive.

Accordingly, IT IS HEREBY ORDERED THAT the Receiver is awarded $62,475.00 in compensation and $741.19 in reimbursement for expenses for the period beginning January 25, 2017 and ending October 25, 2018. The Receiver's compensation and expenses shall be paid from the liquidated assets maintained in the Amerindo Technology Growth Fund II, which is a receivership asset under the jurisdiction of this Court. (Civil Action Doc. No. 507.)

2. CBIZ's Application

CBIZ seeks compensation of $16,124.50 – and seeks no reimbursement of expenses – for the period beginning December 1, 2017 and ending September 13, 2018. The Court determines that the amount sought by CBIZ is reasonable for several reasons. Unlike the Receiver's application, which was opposed by Defendants, CBIZ's application is unopposed. The SEC has not objected to CBIZ's application, which, as noted above, is a significant factor in determining the reasonableness of the compensation sought. The hourly rates are substantially the same as the ones found reasonable by the Court in its July 20, 2018 Order granting CBIZ's fourth interim application for compensation and expenses (Civil Action Doc. No. 703), with the exception of a modest increase in the rate of associate Patrick Donnelly, from $270 to $285. In light of the deep discount of 30% on CBIZ's prevailing rates and the low number of hours expended – 5.6 hours for managing director Brian Ryniker, 48.6 hours for manager Gennady Spivak, and 0.4 hours for Mr. Donnelly, all of which have been fully documented – the Court finds that CBIZ's request is reasonable.

Accordingly, IT IS HEREBY ORDERED THAT CBIZ is awarded compensation of $16,124.50 for the period beginning December 1, 2017 and ending September 13, 2018. CBIZ's compensation and expenses shall be paid from the liquidated assets maintained in the Amerindo Technology Growth Fund II. (Civil Action Doc. No. 507.)

IV. CONCLUSION

The government's motion in support of its preliminary forfeiture order is GRANTED, as set forth in the separately docketed Preliminary Order of Forfeiture as to Substitute Assets, subject to the expenses GRANTED in the Receiver's and CBIZ's motions for compensation and reimbursement. The government is directed to file an update letter no later than August 12, 2019 setting forth proposed next steps regarding the anticipated ancillary proceeding. Because the Court will not issue a final distribution plan until after the ancillary proceeding, *see* Fed. R. Crim. P. 32.2(c)(2), the Civil Action, No. 05-cv-5231, shall remain open and the receivership shall continue pending resolution of the ancillary forfeiture proceeding in the Criminal Action.

The Clerk of Court is respectfully directed to terminate the motions pending at Doc. No. 769 in Case No. 05-cr-621 and Doc. Nos. 714 and 715 in Case No. 05-cv-5231.

SO ORDERED.

Dated:     August 2, 2019
              New York, New York

                                               RICHARD J. SULLIVAN
                                               UNITED STATES CIRCUIT JUDGE
                                               Sitting by Designation