USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/12/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALBERTO VILAR and GARY TANAKA,

    Petitioners,

-v-

UNITED STATES OF AMERICA,

    Respondent.

No. 17-cv-1491 (RJS)
OPINION & ORDER

UNITED STATES OF AMERICA

-v-

ALBERTO VILAR and GARY TANAKA,

    Defendants.

No. 05-cr-621 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Petitioners Alberto William Vilar and Gary Tanaka bring this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct Vilar's 120-month sentence and Tanaka's 72-month sentence imposed by the Court on April 24, 2014. (05-cr-621 Doc. No. 756 ("Pet.").) For the reasons set forth below, the petition is denied.

I. BACKGROUND[1]

The Court assumes the parties' familiarity with the underlying facts and procedural history of this case, and therefore offers only a short summary of each for the purposes of this motion. In

---

[1] The following facts are taken from the trial transcript ("Tr."), exhibits introduced at trial, and the Second Circuit's prior decisions in this case, with all inferences drawn in favor of the government. *See, e.g., United States v. Gomez*, 644 F. Supp. 2d 362, 366 (S.D.N.Y. 2009) (Chin, J.). Unless otherwise noted, citations to the docket sheet refer to the docket in the criminal case, 05-cr-621 (RJS). In ruling on this motion, the Court has also considered the Petition, the government's Opposition to the Petition for Vacatur (Doc. No. 764 ("Opp'n")), and Petitioners' Reply Memorandum (Doc. No. 765 ("Reply")).

1986, Vilar and Tanaka together founded Amerindo Investment Advisors Inc. ("Amerindo U.S."), an investment adviser registered with the U.S. Securities and Exchange Commission ("SEC"). *See United States v. Vilar*, 729 F.3d 62, 68 (2d Cir. 2013). Vilar and Tanaka also founded Amerindo Investment Advisors, Inc. ("Amerindo Panama"), a corporation organized under the laws of the Republic of Panama, and Amerindo Investment Advisors (UK) Ltd. ("Amerindo U.K."), a United Kingdom corporation. *Id.*

Beginning in July 1986 and until at least May 2005, Vilar and Tanaka offered clients the opportunity to invest in "Guaranteed Fixed Rate Deposit Accounts" ("GFRDAs") through their funds. *Id.* Vilar and Tanaka promised investors that the GFRDA program would receive a high fixed rate of interest over a set time period and that "the overwhelming majority of the GFRDA funds would be invested in high-quality, short-term deposits, including U.S. Treasury bills." *Id.* Instead, they invested the entirety of the funds in high-risk technology and biotechnology stocks. *Id.* Thus, "when the so-called dot-com bubble 'burst' in the fall of 2000, the value of the investments held by the GFRDAs dropped precipitously" so that Vilar and Tanaka were unable to pay the promised rate of return, and several GFRDA clients lost millions of dollars. *Id.*

Subsequently, in June 2002, Vilar and Tanaka offered their client Lily Cates the opportunity to invest in their Small Business Investment Company ("SBIC"). *Id.* Vilar told Cates that he and Tanaka had been approved for an SBIC license, which would allow the SBIC to obtain matching funds from the federal government's Small Business Administration ("SBA") for the SBIC's investments, when, in fact, they had never received such a license, and their applications for a license had been repeatedly denied. *Id.*

On June 20, 2002, Cates invested $5 million in the Amerindo SBIC. Her funds were deposited into a bank account in the name of a Panamanian corporation called "Amerindo

Management Inc." ("AMI"). *Id.* at 69. Over the next two years Vilar and Tanaka used Cates's SBIC investment account for their own personal and corporate obligations. *Id.*

In early 2005, Cates asked Vilar to return her investment and close her account. *Id.* When Vilar informed her that she would need to address her request to Amerindo Panama, Cates reported Vilar and Tanaka to the SEC. *Id.* On August 15, 2006, Vilar and Tanaka were indicted on twelve counts, charging them with:

> (1) [C]onspiracy to commit securities fraud, investment adviser fraud, mail fraud, wire fraud, and money laundering, in violation of 18 U.S.C. § 371 (Count One); (2) securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b–5 (Counts Two and Three); (3) investment adviser fraud, in violation of 15 U.S.C. §§ 80b–6 and 80b–7 (Count Four); (4) mail fraud, in violation of 18 U.S.C. § 1341 (Count Five); (5) wire fraud, in violation of 18 U.S.C. § 1343 (Counts Six and Seven); (6) money laundering, in violation of 18 U.S.C. § 1957 (Counts Eight through Eleven); and (7) the making of false statements to the SEC, in violation of 18 U.S.C. § 1001(a) (Count Twelve).

*Id.*

On September 22, 2008, Vilar and Tanaka were tried before a jury in this Court. *Id.* On November 19, 2008, after a nine-week trial, Vilar was convicted on all twelve counts and Tanaka was convicted on Counts One (conspiracy), Three (securities fraud relating to the GFRDA scheme), and Four (investment adviser fraud). *Id.*

On February 5, 2010, the Court imposed a sentence of 108 months' imprisonment and a $25,000 fine on Vilar, and on February 10, 2010, the Court imposed a sentence of 60 months' imprisonment and a $25,000 fine on Tanaka. (Doc. Nos. 421, 425). In addition, on April 7, 2010, the Court ordered Vilar and Tanaka to pay nearly $35 million in restitution and more than $54 million in forfeiture. (Doc. Nos. 436–439.)

3

Petitioners thereafter appealed to the Second Circuit, raising a variety of challenges to their convictions and sentences. On August 30, 2013, the Second Circuit affirmed Petitioners' convictions, but remanded to the District Court for resentencing. *Vilar*, 729 F.3d at 96. At the April 24, 2014 resentencing, the Court determined that Petitioners had "engage[d] in anti-social conduct following the initial sentence" through behavior that "seemed designed at every step to slow down the distribution process and punish the investors, particularly those who testified against [Petitioners] at trial." (Doc. No. 694 ("Resentencing Tr.") at 49–50.) Accordingly, the Court imposed a sentence of 120 months' imprisonment and a $10 million fine on Vilar, and 72 months' imprisonment and a $10 million fine on Tanaka. (Doc. Nos. 685, 686.) The Court also ordered forfeiture and restitution totaling over $47 million. (Doc. Nos. 684, 687.)

Following the resentencing, Petitioners again appealed to the Second Circuit. On March 23, 2016, the Second Circuit again affirmed Petitioners' conviction, but vacated their $10 million fines. *See United States v. Tanaka*, 644 F. App'x 36, 39 (2d Cir. 2016). On November 2, 2016, with the consent of all parties, the Court declined to impose new fines on either defendant and otherwise reimposed the sentences previously imposed in 2014. (Doc. Nos. 753, 754.)

On February 24, 2017, Petitioners filed the instant Petition, which was fully briefed on May 30, 2017.[2] Petitioners argue that their convictions should be vacated because their trial

---

[2] On June 23, 2017, Petitioners submitted a supplemental letter seeking to draw the Court's attention two recent Supreme Court opinions – *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), and *Kokesh v. SEC*, 137 S. Ct. 1635 (2017) – as potentially providing "separate grounds for relief" that are "apart from the pending 2255 [motion]" with respect to "disgorgement and penalties in the SEC case" as well as the Court's forfeiture orders in the criminal case. (Doc. No. 766.) Petitioners' letter suggests that these cases "bear on the 2255 [motion]." (*Id.*) As Petitioners recognize, their reference to *Kokesh* relates solely to the civil SEC action and has no bearing on the instant motion. As to *Honeycutt*, Petitioner's argument pertains solely to non-custodial aspects of Petitioners' sentences – a challenge which is not cognizable on a motion for habeas relief. *See United States v. Rutigliano*, 887 F.3d 98, 105 (2d Cir. 2018); *United States v. Munson*, No. 06-cr-143 (JGK), 2019 WL 188493, at *2 (S.D.N.Y. Jan. 14, 2019). Moreover, any challenge to the forfeiture orders based on *Honeycutt* fails on the merits, as discussed by the Court in the separately-docketed opinion and order regarding the government's preliminary order of forfeiture as to substitute assets, which is being filed concurrently with this opinion.

4

counsel provided ineffective assistance by failing to (1) argue that the securities fraud count should be dismissed on statute of limitations grounds (Pet. at 26), (2) raise certain defenses at trial (Pet. at 30–60), and (3) cross-examine government witnesses on certain topics (Pet. at 27). Petitioners also argue that the government impermissibly withheld *Brady* and *Giglio* material. (Pet. at 61.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, "a federal prisoner may move the sentencing court to vacate, set aside, or correct the sentence on the ground that such sentence was illegally imposed." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). Relief is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal citations and quotation marks omitted). If proven, a claim of ineffective assistance of counsel is a constitutional error that warrants relief under § 2255. *United States v. Carmichael*, 216 F.3d 224, 227 (2d Cir. 2000) (citing *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998)).

The Sixth Amendment right to counsel requires that a criminal defendant be provided "the effective assistance of counsel." *United States v. Daugerdas*, 915 F. Supp. 2d 493, 495 (S.D.N.Y. 2013) (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). This right to effective assistance applies equally to trial counsel and appellate counsel. *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001) (citing *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985)). To prevail on an ineffective assistance of counsel claim, a petitioner must prove that (1) his counsel's performance was deficient and (2) he was prejudiced by the deficient performance. *Gueits v. Kirkpatrick*, 612 F.3d 118, 122 (2d Cir. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). An attorney's performance is considered deficient under the Sixth Amendment only if it "fell below

an objective standard of reasonableness under prevailing professional norms." *Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008) (internal quotation marks and citations omitted). In determining whether an attorney's performance was objectively unreasonable, however, a court must view the attorney's conduct in light of "the circumstances counsel faced at the time of the relevant conduct . . . ." *Id.* (citations omitted); *see also McKee v. United States*, 167 F.3d 103, 106 (1999) ("[A] court may not use hindsight to second-guess counsel's tactical choices.") (internal quotation marks and citations omitted). Yet even if a petitioner establishes that his counsel's conduct was objectively unreasonable, he or she is also required to demonstrate prejudice, which means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. While this prejudice prong "does not require a showing that counsel's actions more likely than not altered the outcome," it does require a petitioner to show that "[t]he likelihood of a different result [was] substantial, not just conceivable." *United States v. Thornhill*, 34 F. Supp. 3d 334, 361 (S.D.N.Y. 2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

### III. Discussion

The government argues that the Petition should be denied on two grounds: (1) the bulk of Petitioners' arguments are procedurally barred by the Second Circuit's decision on direct appeal under the "mandate rule," and (2) Petitioners do not satisfy the *Strickland* standard with respect to any of their allegations of ineffective assistance of counsel. (Opp'n at 12–13.) The Court agrees.

#### A. Mandate Rule

The mandate rule "bars re-litigation of issues already decided on direct appeal," including "matters expressly decided by the appellate court" as well as "issues impliedly resolved by the appellate court's mandate." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010). Here,

6

the majority of Petitioners' claims are predicated on arguments already rejected by the Second Circuit; they are therefore barred by the mandate rule.

1. Statute of Limitations

Petitioners first argue that their counsel was ineffective because they failed to argue that Count Three, a securities fraud count related to investments in the GFRDAs, fell outside the five-year statute of limitations established by 18 U.S.C. § 3282. (Pet. at 26.) But the underlying issue on which this ineffective assistance claim rests was previously raised in Petitioners' first direct appeal. (*See* Vilar First Appeal Br. 60–63 ("Point II: The Statute of Limitations Plainly Barred Prosecution of Count Three, the 'GFRDA Fraud'"); Tanaka First Appeal Br. 124–25 ("Point VI: Tanaka Joins in the Arguments of His Co-Defendant Alberto Vilar")). Moreover, the Second Circuit rejected that argument on its merits. *See Vilar*, 729 F.3d at 67 ("Vilar and Tanaka's remaining claims are without merit."). Because Petitioners cannot now relitigate the statute of limitations issue, and given that "[f]ailure to make a meritless argument does not amount to ineffective assistance," the Second Circuit's prior ruling forecloses the possibility of § 2255 relief on these grounds. *United States v. Regalado*, 518 F.3d 143, 149 n.3 (2d Cir. 2008).

2. Failure to Develop Certain Defenses

Petitioners' ineffective assistance claims based on an alleged failure by counsel to develop certain defenses similarly rest on contentions rejected by the Second Circuit on direct appeal. Specifically, Petitioners argue that trial counsel was ineffective because they did not put forth the defenses that: (1) the SBIC investment was not a "sham," and that, consequently, Vilar did not intend to steal from Lily Cates, (2) Amerindo Panama was not a "sham" business, (3) the relevant conduct constituted contract modification rather than fraud, and that (4) the victims suffered no actual loss. Because each of these defenses was rejected by the Second Circuit's ruling on direct

7

appeal, any alleged failure by trial counsel to raise those defenses cannot form the basis of an ineffective assistance claim.

Petitioners' first argument is based on the previously-litigated – and rejected – notions that the SBIC investment was legitimate and that the government failed to sufficiently prove Vilar's intent. Vilar's first appeal challenged the sufficiency of the evidence of his conviction relating to the SBIC fraud. *See Vilar*, 729 F.3d at 92. In reviewing the trial record, the Second Circuit found "more than enough evidence for a reasonable juror to find, beyond a reasonable doubt, that Vilar lied to Cates about the nature of her SBIC investment, and in particular about the status of the SBIC license." *Id.* Further, the Second Circuit clarified that "the government was under no obligation to prove that [Vilar] wanted to steal Cates's money, only that he intended to defraud her in connection with the sale of the SBIC investment;" on this issue, the Circuit found that "[t]here is no doubt that there was sufficient evidence of this intent to support the jury's verdict." *Id.* (internal citations omitted). Thus, Petitioners' present ineffective assistance of counsel claim regarding the SBIC investment amounts to an attempt to relitigate issues already decided on direct appeal.

Similarly, Petitioners' ineffectiveness claim based on trial counsel's supposed failure to defend against allegations that Amerindo Panama was illegitimate cannot stand, as the underlying issue was settled by the Second Circuit in its ruling upholding the sufficiency of the evidence supporting the convictions. *See Vilar*, 729 F.3d at 91–95. In particular, Petitioner's argument that counsel should have invoked Section 30 of the Securities Exchange Act to argue an extraterritoriality defense (Pet. at 31) was considered and rejected by the Circuit. *See Vilar*, 729 F.3d at 70 ("[W]e agree that the record in this case confirms that Vilar and Tanaka did perpetrate

8

fraud in connection with domestic securities transactions, and therefore we affirm their convictions.").

Petitioners' ineffectiveness claim predicated on trial counsel's alleged "fail[ure] to investigate and present evidence of [a] contract modification defense" (Pet. at 46) was likewise advanced – and disposed of – on direct appeal. (*See, e.g.*, Vilar First Appeal Br. 84 ("Such conduct . . . may have been a breach of contract, but it was insufficient [to support a conviction] without proof of a lack of an intention to perform *ab initio*, and there was none."); *id.* at 88 ("This was a breach of contract, not fraud."); *id.* at 95 ("In addition, although Vilar should not have had to defend a contract claim in a federal criminal court, once he was there, counsel should have defended him on the ground that this was an anticipatory breach of contract, gone wrong.").) These arguments were also rejected by the Second Circuit. *See Vilar*, 729 F.3d at 99 ("Vilar and Tanaka's remaining claims are without merit.").

Finally, Petitioners contend that their counsel was ineffective at sentencing for failing to investigate the value of the Amerindo Panama assets or make submissions about forfeiture or restitution prior to jury deliberations. (Pet. at 53–60.) But this argument is a transparent attempt to repackage Petitioners' well-worn argument that there was no loss – an argument considered and rejected by the Second Circuit when it affirmed Petitioners' sentences of imprisonment, restitution, and forfeiture. (*See* Tanaka Second Appeal Br. 7, 33); *see also Tanaka*, 644 F. App'x at 40 (stating that "[w]e have reviewed defendants' remaining arguments and conclude they are without merit" and affirming Defendants' sentences of imprisonment, restitution, and forfeiture).

The majority of Petitioners' arguments are thus barred by the Second Circuit's direct appeal rulings, as they rest on "matters expressly decided by the appellate court" or "issues impliedly

9

resolved by the appellate court's mandate." *Yick Man Mui*, 614 F.3d at 53. But even if these arguments were not procedurally barred, they would still fail on the merits.

First, as to Petitioners' statute of limitations argument, Petitioners cannot satisfy either the performance or prejudice prongs of *Strickland*. Petitioners contend that because the last investment into the GFRDA was on January 4, 2001, any fraudulent activity occurred more than five years prior to the GFRDA charges. (Pet. at 26.) But in cases concerning a scheme to defraud, acts for the purpose of either "executing the scheme or 'lulling' victims to prevent them from complaining to the authorities" constitute conduct in furtherance of the scheme or conspiracy. *United States v. Scop*, 846 F.2d 135, 138–39 (2d Cir. 1988) (citing *United States v. Lane*, 474 U.S. 438, 451–52 (1986)). Here, the trial record "contains ample evidence that . . . Vilar and Tanaka continued to engage in conduct aimed to reassure investors and prevent them from redeeming their investments within the five-year limitations period." *Vilar*, 729 F.3d at 87 n.22. "Evidence of continued . . . reassurances to customers . . . was sufficient to permit a rational jury to conclude that the conspiracy and substantive scheme to defraud continued" into the statute of limitations period. *Scop*, 846 F.2d at 139. The statute of limitations defense is therefore nonviable, and Petitioners cannot show that their attorneys' decision not to argue for dismissal on that meritless ground was either deficient performance or prejudicial to their defense.

Likewise, Petitioners cannot establish that trial counsel's failure to develop defenses regarding the validity of the SBIC investment constituted ineffective assistance. In light of the extensive evidence presented at trial, which established that Petitioners did not obtain the requisite license for the SBIC (Tr. 1526–74, 1667–68) and that Vilar made misrepresentations about the SBIC to Cates (Tr. 2100–06), Petitioners cannot show that trial counsel's overall strategy of focusing on intent to defraud, instead of advancing ineffectual arguments regarding the legitimacy

of the SBIC, was deficient performance; nor can they come close to showing that "the result of the proceeding would have been different" absent that decision. *Strickland*, 466 U.S. at 694.

The same is true of Petitioners' claim of ineffective assistance based on a failure to develop the defense that Amerindo Panama was not a sham entity. Petitioners now envision "a defense theory based on the truth of the separateness of the defendants' businesses and the full reporting of Panama to the SEC since 1985." (Pet. at 36.) Yet, as the government points out, the "fact that Amerindo Panama was a separate entity as a legal matter was never in dispute." (Opp'n at 19.) Accordingly, any complaint Petitioners now have with respect to trial counsel's framing of the issue amounts to a dispute over trial strategy with the benefit of hindsight – a heartland example of the type of argument that is insufficient to demonstrate deficient performance under *Strickland*. *See McKee*, 167 F.3d at 106.

Petitioners' contention regarding trial counsel's failure to develop a contract modification defense also fails to show ineffective assistance. As an initial matter, the record reflects that trial counsel did, in fact, raise such a defense. (*See* Tr. at 5462 (Petitioner Tanaka's counsel, in his summation, asking the jury to "send[] this case back across the street with respect to Gary [Tanaka] in terms of back into the contract case it should have been.").) To the extent that Petitioners argue that trial counsel should have further developed this argument by providing "evidence to demonstrate that contract disputes were being addressed through accords and satisfactions and modified payouts" and explaining to the jury "the concept of 'efficient breach'" (Pet. at 46, 49), this is ultimately a *legal* argument that would have gotten no traction with the Court in light of the ample evidence of Petitioners' intent to defraud. *See U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 652–53 (2d Cir. 2016) (emphasizing contemporaneous fraudulent intent as the key factor that elevates a breach of contract into fraud). Furthermore, when directed at the

jury, the contract "defense" amounts to an argument for jury nullification. Needless to say, in light of the Second Circuit's "categorical[] reject[ion]" of "the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent," defense counsel's decision not to argue more vigorously for jury nullification cannot constitute ineffective assistance of counsel. *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 2007); *see also, e.g.*, *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983) ("[D]efense counsel may not argue jury nullification during closing argument."). Counsel's decision to focus on alternative defenses beyond the contract modification defense thus falls comfortably within the boundaries of reasonable trial strategy and tactics. Such "[a]ctions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." *United States v. Bayless*, 201 F.3d 116, 130–31 (2d Cir. 2000) (citations omitted). Moreover, since there was ample evidence of Petitioners' fraud, Petitioners do not come close to establishing prejudice under *Strickland*'s second prong.

Petitioners' claim that counsel was ineffective at the sentencing stage for failing to investigate the value of the Amerindo Panama assets or make submissions about forfeiture or restitution likewise fails. First, defense counsel *did* ultimately contest the loss amount calculated by the government. (*See, e.g.*, Doc. No. 352 at 1 ("[T]he spurious guidelines analysis contained in the Presentence Report should be rejected, principally because the victims suffered no actual loss.")). With respect to restitution, Petitioners' argument that trial counsel should have sought "reliance" hearings (*see* Pet. at 58–60) is without basis in law, as the Second Circuit has held that "[r]eliance . . . is not an element of a criminal case brought by the government under Section 10(b) or Rule 10b-5." *Vilar*, 729 F.3d at 88. Defense counsel's reasonable, strategic choices with respect to which arguments to advance at sentencing cannot form the basis of an ineffective assistance

12

claim. But whether made or not, these arguments would not have altered the outcome of the trial or sentencing, thereby failing *Strickland*'s second prong as well.

Thus, each of Petitioner's arguments – including those that cannot justify habeas relief for the independent reason that they are procedurally barred – lacks merit.

B. Petitioners Fail to Demonstrate Ineffective Assistance

Although not procedurally barred, Petitioners' two remaining arguments – (1) that trial counsel was ineffective because they failed to adequately cross-examine witnesses and (2) that *Brady/Giglio* errors necessitate a new trial – likewise fail on the merits.

1. Cross-Examination

Petitioners argue that trial counsel was ineffective due to a failure to conduct adequate cross-examinations of certain government witnesses. (Pet. at 27.) Specifically, they allege that their attorneys should have conducted a more extensive cross-examination of Lily Cates and Lisa Mayer to "impeach" them and to "elicit positive information." (*Id.*) Yet Petitioners fall far short of establishing the performance prong of *Strickland*. As an initial matter, the notion that defense counsel's cross-examination of these witnesses was cursory is belied by the trial transcripts, in which the cross-examinations of witnesses Cates and Mayer run nearly 98 and 223 pages, respectively. (Trial Tr. at 2205–2301, 1160–1365, 1374–1392.) Even if this were not the case, counsel's "[d]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). As established in *Strickland*, to succeed on an ineffective assistance of counsel claim, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. "[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and . . . [the court]

13

should not second guess such decisions unless there is no strategic or tactical justification for the course taken." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998). Petitioners' assertion that a different approach to cross-examination could have "put the case in a different light" (Pet. at 27) falls far short of establishing the absence of strategic or tactical justification for the method selected by trial counsel. The robust cross-examination evident in the record accords with defense counsel's overarching strategy of demonstrating the absence of criminal intent. Petitioners therefore cannot satisfy the *Strickland* standard, and habeas relief is not warranted on this basis.

2. *Brady/Giglio* Errors

Petitioners also argue that they are entitled to habeas relief on the basis of *Brady/Giglio* errors. The Court is unpersuaded. Under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972), "[t]he government has a duty to disclose all material evidence favorable to a criminal defendant." *United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 161 (2d Cir. 2008). A *Brady/Giglio* violation includes three elements: (1) the evidence at issue must be favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence must have been suppressed by the government, either willfully or inadvertently; and (3) prejudice must have ensued. *United States v. Douglas*, 525 F.3d 225, 244–45 (2d Cir. 2008) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

Petitioners assert, in conclusory fashion, that the government withheld information that would have undermined the government's position that the SBIC investment and Amerindo Panama were fraudulent. (Pet. at 61.) Yet it is unclear what specific evidence Petitioners reference. Furthermore, Petitioners' argument fails to establish the materiality of this evidence or, in the face of the ample evidence in the record, suggest how the alleged suppression could have

14

prejudiced them. Accordingly, Petitioners fail to establish a *Brady* violation or entitlement to habeas relief.

IV. CONCLUSION

For the foregoing reasons, Petitioners have failed to establish their entitlement to habeas relief pursuant to 28 U.S.C. § 2255. Accordingly, IT IS HEREBY ORDERED THAT the Petition is denied.

The Clerk of Court is respectfully directed to terminate the motions pending at document numbers 755 and 756 in case No. 05-cr-621 and to close case 17-cv-1491.

SO ORDERED.

Dated: August 2, 2019
New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation