**LAW OFFICES OF**

**DONNA R. NEWMAN**

ATTORNEY AT LAW
20 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10007
TEL. 212-229-1516
FAX 212-676-7497
DONNANEWMANLAW@AOL.COM
MEMBER: N.Y. & N.J. BAR

December 24, 2020

Via ECF & Email

The Honorable Richard J. Sullivan
United States Circuit Judge
United States Court of Appeal for
  The Second Circuit
40 Foley Square
New York, New York 10007

             Re: *United States v. Vilar*
               05 Cr 621 (RJS)

Dear Judge Sullivan:

  I, along with Michael K. Bachrach, Esq., write seeking an order: (1) compelling the Government to collect restitution from Gary Tanaka, Alberto Vilar's co-defendant; (2) staying Mr. Vilar's payment of restitution until Mr. Tanaka has made restitution payments equal to the amount Mr. Vilar has paid; and/or (3) compelling the release of a portion of Substitute Assets deposited with the United States Marshals Service by the Government on or about September 26, 2019, for the purpose of satisfying all outstanding restitution;[1] and (4) reappointing myself and Mr. Bachrach under the Criminal Justice Act *nunc pro tunc* to July 1, 2020, specifically to aid the Trustees of the Amerindo Advisors (UK) Ltd. Ret. Benefits Scheme in any settlement negotiations they have with the Government and to directly discuss a global settlement of all pending litigations with the Government on Mr. Vilar's behalf.

**PRIOR APPOINTMENTS**

  As you may recall, Mr. Bachrach had initially been appointed pursuant to the Criminal Justice Act by the Second Circuit for purposes of representing Mr. Vilar in relation to Mr. Vilar's direct appeal of his (second) Judgment, dated, April 24, 2014 (Doc. No. 686); *see* Order, dated, May 29, 2014, *United States v. Vilar and Tanaka*, Docket No. 14-1452 (L), 14-1453 (con) (2d Cir.) (Doc. No. 31) (appointing Mr. Bachrach on appeal). Mr. Bachrach was thereafter appointed by this Court after the Second Circuit ordered remand for resentencing. <u>See</u> Appointment Order, dated, June 6, 2016 (Doc. No. 715); *see also United States v. Tanaka and Vilar*, 644 Fed.App'x 36, 40 (2d Cir. 2016). On August 30, 2018, I was appointed by Your Honor to assist Mr. Bachrach as co-counsel, <u>see</u> Order, dated, August 30, 2018 (Doc. No. 776), with respect to the Government's

---

[1] Approximately $12,768,680.89 in United States currency of seized substitute assets is being held by the United States Marshals Service. <u>See</u> Doc. No. 845 at 3.

The Honorable Richard J. Sullivan
December 24, 2020
Page 2

subsequent motion (Doc. No. 769) seeking a preliminary order of forfeiture of all of Mr. Vilar (and co-defendant Gary Tanaka)'s, right, title, and interest in substitute assets then held by the Receiver, who had been appointed by Your Honor in the Civil Action, *SEC v Amerindo Investment Advisors Inc., et al,* 05 Cv. 5231 (RJS); *see* Order, dated, August 2, 2019 (Doc. No. 800 at 3).

Over defense objection, Your Honor granted the Government's motion and entered a Preliminary Order of Forfeiture as to Substitute Assets (namely certain funds and brokerage accounts). *See* Order, dated, August 2, 2019 (Doc. No. # 802). On December 10, 2019, this Court, upon the Government's motion (Doc. No. # 845), issued a Second Preliminary Order of Forfeiture as to Substitute Assets, specifically forfeiting the defendants' rights, title, and interest in the J.P. Morgan Chase brokerage account number 102-05012 MOD, held in the name of the Trustee of the Amerindo Advisors (UK) Ltd. Ret. Benefits Scheme. *See* Order, dated, December 10, 2019 (Doc. No. 846). Mr. Vilar appealed these two Orders to the Second Circuit and that appeal is pending (Opening Briefs on Appeal are due January 25, 2021). Mr. Bachrach and I represent Mr. Vilar, pursuant to the Criminal Justice Act, before the Second Circuit on this latest appeal. *See, generally*, *United States v. Vilar and Tanaka*, 19-2492 (L), 19-2602 (con), 19-4200 (con), 20-421 (con).

## **BACKGROUND**

On August 14, 2006, Mr. Vilar and Mr. Tanaka were charged in a twelve-count Third Superseding Indictment, S3 05 Cr. 621, with a variety of fraud offenses arising from their management and investments of clients' funds held in several of their investment advisor companies. On November 19, 2008, a jury found Mr. Vilar guilty of all twelve counts charged and found Mr. Tanaka guilty of Counts One, Three and Four of the Indictment. On December 13, 2016, after two separate appeals, each of which resulted in remands for re-sentencing, *see United States v. Vilar and Tanaka*, 729 F.3d 62 (2d Cir. 2013); *United States v. Tanaka and Vilar*, 644 Fed.App'x 36, 40 (2d Cir. 2016); this Court ordered that the defendants pay $26,637,502.69 in restitution and forfeit $20,578,855.28 in forfeiture, *see, e.g.*, Judgment, dated, December 13, 2016 (Doc. No. 753), at 7-8, *citing*, Preliminary Order of Forfeiture/Money Judgment, dated, April 25, 2014 (Doc. No. 684). Restitution and forfeiture were both ordered to be collected jointly and severally from both defendants. *See, e.g.*, Judgment, dated, December 13, 2016 (Doc. No. 753), at 8; Preliminary Order of Forfeiture/Money Judgment, dated, April 25, 2014 (Doc. No. 684), at 2-3.

Upon motion of the Government (Doc. No. 769), this Court entered a Preliminary Order of Forfeiture as to Substitute Assets related to five J.P. Morgan Chase brokerage accounts as well as approximately $273,611.89 in funds formerly held by @Ventures Management, LLC for the benefit of Amerindo Technology Growth Fund II, Inc. (Doc. No. 802). *See* Order, dated, August 2, 2019 (Doc. No. 802). Subsequently, upon a second Government motion (Doc. No. 845), this Court entered a Second Preliminary Order of Forfeiture as to Substitute Assets related to an additional J.P. Morgan Chase brokerage account held in the name of the Trustees of the Amerindo Advisors (UK) Ltd. Ret. Benefits Scheme (hereinafter, the "UK pension scheme"). *See* Order, dated, December 9, 2019 (Doc. No. 848), at 2. These two substitute asset orders are the subject of the pending appeal to which Mr. Bachrach and I represent Mr. Vilar in the Second Circuit. *See United States v. Vilar and Tanaka*, 19-2492 (L), 19-2602 (con), 19-4200 (con), 20-421 (con).

The Honorable Richard J. Sullivan
December 24, 2020
Page 3

**RESTITUTION**

The Amended Judgment of Conviction filed on December 13, 2016, identifies the following as restitution payments to be made and to the following payees:

| | |
|---|---|
| Lily Cates | $11,973,096.63 |
| Lisa and Debra Mayer | $13,255.770.98 |
| Graciela Chavez | $62,556.42 |
| Tara Colburn | $1,209,396.76 |
| Robert M. Cox | $136,681.90 |
| | $26,637,502.69 |

See Judgment, dated, December 13, 2016 (Doc. No. 753), at 7.

On July 14, 2017, this Court approved the Receiver's Fourth Interim report which indicated that the Receiver had already disbursed the sum of $54,4040,467.83 – an amount which constituted the full principle due victims for their claims filed in the SEC Action plus the Receiver's request to distribute an additional $13,849,639.27 to these investors as an adjustment for inflation interest. *See* Order, dated, July 14, 2017, *SEC v. Amerindo*, 05 Cv. 5231 (RJS) (Doc. No. 669), at 1, 2, 19, 21 (chart of payments Receiver made and the inflation interest for each of the SEC claimants, attached hereto as, "Exhibit A"); *see also Id.* Doc. No. 640-1, Exhibits A-D (Receiver's Charts of Disbursements to Claimants). Notably, several of the claimants in the SEC case and to whom the Receiver disbursed funds were also the identified victims to whom restitution was due in the criminal case. *Compare Id., with* Judgment, Doc. No. 753, at 7.

After making the aforementioned disbursements, the Receiver retained in his control accounts totaling approximately $12,950,596 – the funds sought in the Government's August 14, 2018, motion for substitute assets (Doc. No. 769 at 7). The Government indicated at the time "the victims have now received disbursements in the full amount of their claims filed in the SEC Action and that a balance of $771,502 remains to compensate the [overlap] victims under the Court's restitution order in the criminal case." *Id.* at 6-7. The Government further indicated that it intended "to recommend that $771,502 balance be paid to the victims out of the Substitute Assets through the restoration process provided under the Regulations Governing the Remission or Mitigation of Administrative, Civil and Criminal Forfeitures." *Id.* at 7, *citing*, 28 C.F.R. § 9. Thereafter, the Government advised this Court that "[t]he United States Marshals Serviced subsequently seized [$12,768,680.89 of] substitute assets on or around September 26, 2019." Gov't Mot. in Sup. Of Proposed Second Preliminary Order of Forfeiture as to Substitute Assets, dated, December 6, 2019 (Doc. No. 845), at 3. It is counsels' understanding that the Marshals still retain possession of these assets due to the pending appeal, and the distribution of the assets are stayed. *See* Order, dated, October 24, 2019 (Doc. No. 839) (this Court indicating that it will not order distribution of the substitute assets until the resolution of the substitute asset appeal).

When asked for an accounting of restitution paid, Assistant United States Attorney Alex Wilson, advised counsel via an email on July 3, 2020 after accounting for the receivership payments, the following victims still have outstanding restitution due in the following amounts:

| | |
|---|---:|
| Lily Cates | $437,448.63 |
| Lisa and Debra Mayer | $190,674.34 |
| Graciela Chavez | $1,950.42 |
| Tara Colburn (LA Opera) | $303,331.76 |
| Robert M. Cox | $29,769.90 |
| | **$962,175.05** |

On December 18, 2020, in response to defense counsels' repeated requests for an accounting, AUSA Wilson provided the attached spreadsheet revealing Mr. Tanaka has not been contributing his share to restitution owed and the Government will first begin collection via its Treasury Offset Program ("TOP") in January 2021. *See* Exhibit B (Email Attachment from AUSA Wilson).

Meanwhile the Government has been collecting restitution from Mr. Vilar since 2014. As of March 11, 2020, the Government, through its civil forfeiture unit, has collected from Mr. Vilar directly no less than a total of $15,965.77.[2] *See* Exhibit C (Email Attachment received from AUSA Childs on December 4, 2020). The majority of this money reflects the Government's deductions through TOP of 15% of Mr. Vilar's social security monthly benefit check.[3] AUSA Child's accounting of the money directly seized from Mr. Vilar indicates Mr. Vilar's "Current Liability" is $36,505,174.89. *See* Exhibit C. AUSA Wilson, on the other hand, stated to counsel, Mr. Vilar's restitution debt is in excess of only $900,000.00.

Mr. Vilar is 80 years old, a broken individual, penniless, and destitute. His social security check is his only source of income. Up until March 2020 when all restitution payments were halted due to COVID-19, $316.81 a month was being taken from his social security check. His monthly social security check is $2,200 but this amount fluctuates and has been as low as $1,450 after reductions taken through TOP. This left Mr. Vilar with less than two-thousand dollars per month to live on. The Government reinstituted deductions from Mr. Vilar's monthly checks in November 2020. As of December, approximately $344 was deducted from his social security benefit check which amounts to 15%.

---

[2]     The first $1,200 applied to satisfy the assessment imposed pursuant to 18 U.S.C. § 3013 for which he is solely liable, and thereafter payments applied toward the $26,637,502.69 restitution, for which he is jointly and severally liable with Mr. Tanaka under 18 U.S.C. § 3664. Pursuant to 18 U.S.C. § 3612(c), criminal payments must be applied in the following order: special assessments, restitution to all victims, then other fines, penalties, costs or other payments required under the sentence.

[3]     This calculation does not include the money taken by the Government from Mr. Vilar's social security benefit check for the months of November and December. AUSA Childs advised counsel that she had received approval to reduce the TOP deducted to 8%. However, Mr. Vilar has not seen the reduced percentage deduction. In any event, as explained herein, even this reduced percentage presents an enormous financial hardship to Mr. Vilar.

The Honorable Richard J. Sullivan
December 24, 2020
Page 5

After the deductions, Mr. Vilar is left to live on an income that is below poverty. He shares a studio apartment in Long Island City and must sleep on a couch. He tries to spend no more than $300 a month on food so he can stretch his income over the month. His share of the rent is $600. His medical copay expenses are about $400 per month, and he pays $138 per month as per a monthly installment payment for his hearing aids. His out-pocket co-payments for his medications are close to $90.

Mr. Vilar is not only penniless but has numerous medical conditions which are debilitating, if not life threatening. Since his release from prison in 2018, he has had four surgeries to fix his bladder that was permanently damaged as a result of the failure of the Bureau of Prisons to authorize surgery on his enlarged prostate. He also suffers from gastrointestinal problem which interferes with his ability to move his bowels. He had been seeing a specialist at Mount Sinai for 15 months. Every time he visits this specialist, he must pay a co-pay visit fee of $40. Over the last year, he has developed a weakness in both legs that have impaired his ability to walk. His Rehabilitation Medicine treating physician prescribed physical therapy for this condition. Mr. Vilar has stopped the prescribed twice-weekly physical therapy treatment due to the $320 per month co-payment costs. Walking up the subway stairs presents an insurmountable challenge and he avoids taking public transportation as a result – the result is he rarely leaves his small apartment.

Also due to lack of funds, he has stopped taking some of his prescribed medications. He estimates he owes $15,000.00 in unpaid medical bills. His eyes need to be checked but he can't afford the co-payment fee. He is forced to wear his eight-year-old bifocals, although he needs stronger glasses. He has avoided seeing the dentist for the same reason: lack of funds to pay the co-pay fee.

In light of the extremely difficult financial situation that Mr. Vilar finds himself, and in light of the deductions from the Treasury Offset Program of a portion of Mr. Vilar's monthly social security benefit check, we respectfully ask the Court for an Order immediately relieving the Probation Department from the obligation to collect additional money from Mr. Vilar toward payment of his restitution order as a condition of his supervised release. Mr. Vilar, at a minimum, should not be required to pay two arms of the Government for the same debt. Furthermore, given that the restitution order was issued jointly and severally, it is just plain, old-fashioned, fair and equitable, to stay Mr. Vilar's TOP payments until Mr. Tanaka's payments towards restitution equal the amount Mr. Vilar has already contributed.

Finally, we respectfully request that this Court direct the release of a portion of the funds now held by the U.S. Marshals to the extent necessary to satisfy all legitimate and remaining restitution claims. Notwithstanding our prior position with regard to the distribution of substitute assets to satisfy this Court's forfeiture Orders, *see* Def. letter, dated, October 17, 2019 (Doc. No. 833); Def. Reply-letter, dated, October 23, 2019 (Doc. No. 837), we recognize now that it simply makes no sense for *the victims* to remain unpaid pending the substitute asset appeal, particularly given that the restitution owed continues to increase due to the accumulating inflation interest. In the alternative, we ask the Court to stay Mr. Vilar's restitution obligation until a resolution of the appeal. At a minimum, we ask the Court to suspend interest due on the outstanding restitution, in as much as the money now in the hands of the Marshals should have been given directly to the

The Honorable Richard J. Sullivan
December 24, 2020
Page 6

victims as soon as the Receiver released the excess funds he was holding.  At least that was the intent of all the parties.

**REAPPOINTMENT OF COUNSEL**

Since July, Mr. Bachrach and I have been assisting Mr. Vilar in attempting to resolve the issue of his payment of restitution and attempting to negotiate a global resolution of all pending litigations related to this case.  Toward that end, we have not only spent an extended period of time reviewing the docket in the criminal case and the SEC matter, but also conferring with the Government, and more lately, counsel for the Trustee to the UK Pension Scheme.  To continue to explore a possible global settlement and to assist Mr. Vilar in understanding the restitution amounts that have been paid and that remain to be paid, and to the extent our prior appointments in this case are not alone sufficient, we ask this Court to appoint Mr. Bachrach and I specifically for these purposes.  As before, we will make every effort not to duplicate efforts but rather to complement each other's work representing Mr. Vilar.  Accordingly, to the extent this Court believes that our prior appointment orders are not alone sufficient, we respectfully request the Court enter an order appointing Mr. Bachrach and I *nunc pro tunc* to July 1, 2020 for these purposes as well.

                                                       Respectfully,
                                                        /s/
                                                   Donna R. Newman
                                                        /s/
                                                 Michael K. Bachrach

Cc: All counsel of record (by ECF)
    Alberto Vilar (by email)