UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

ALBERTO WILLIAM VILAR, *et al.*,

Defendants.

No. 05-cr-621 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

On December 9, 2019, the Court entered a Second Preliminary Order of Forfeiture as to substitute assets from a JP Morgan brokerage account held in the name of the Trustees of the Amerindo Advisors (UK) Limited Retirement Benefits Scheme ("Pension Scheme"). (Doc. No. 848 ("Second Preliminary Forfeiture Order" or "Order").) Now before the Court are three filings from the Pension Scheme: (1) a letter filed April 16, 2021, seeking an order directing JP Morgan to release $2,000,000 from the Pension Scheme to pay for various legal and other professional fees that the trust has incurred or will incur throughout this litigation (Doc. No. 948); (2) a motion for summary judgment on the Pension Scheme's petition asserting an interest in the assets subject to the Second Preliminary Forfeiture Order (Doc. No. 956; *see also* Doc. No. 953 (proposing a briefing schedule)); and (3) a letter filed July 15, 2021, seeking an order directing JP Morgan to allow the assets in the Pension Scheme to be repatriated to the United Kingdom where the assets can be divided into distinct retirement accounts for each beneficiary (Doc. No. 960).

The Pension Scheme's filings prompted others. On April 27, 2021, the government stated that it did not object to the Pension Scheme's request to release $2,000,000 "to the extent

that the released funds are not deducted from the portion of Pension Scheme assets that are ultimately found by the Court to be forfeitable to the Government or to the third-party investor petitioners." (Doc. No. 950.) The next day, third-party petitioners Lisa and Debra Mayer joined the government's letter, noting that they objected to releasing funds in any way that "would impinge on their claims and rights." (Doc. No. 951.) Soon after, another third-party petitioner, James Stableford, filed a letter arguing that "the Court need not resolve . . . now" the manner in which the Pension Scheme should cover its $2,000,000 costs since the Court has not yet decided the third-parties' rights to the Pension Scheme. (Doc. No. 954.)

The government also submitted filings relevant to the Pension Scheme's motion for summary judgment. Specifically, on May 3, 2021, the government proposed that the Court schedule discovery and summary judgment motions to begin after the Court resolves the government's pending motion to dismiss various third-party petitions. (Doc. No. 952.) After the Pension Scheme moved for summary judgment, the government moved to deny that motion as premature. (Doc. No. 957; *see also* Doc. No. 958 (Mayers joining the government's motion).) In doing so, the government expressed its willingness to agree "to an order distributing the Pension Scheme's assets to individual retirement plans," which would protect the interests of the Pension Scheme's innocent beneficiaries. (Doc. No. 957.)

Turning to each issue raised in these filings, the Court denies without prejudice both the requested order to release $2,000,000 and the motion for summary judgment, and the Court orders the government and the Pension Scheme to submit a joint letter addressing repatriation.

*First*, as to the Pension Scheme's requested release of $2,000,000, it bears repeating that "the Second Preliminary Order of Forfeiture does not suggest that the *entirety* of the J.P. Morgan Chase brokerage account constituting the Additional Assets is subject to forfeiture." *Sec. &*

*Exch. Comm'n v. Amerindo Inv. Advisors Inc.*, No. 05-cr-621 (RJS), 2020 WL 236748, at *2 (S.D.N.Y. Jan. 14, 2020). Rather, the Order directs that the criminal defendants' "right, title and interest in the Additional Assets are hereby forfeited to the United States of America . . . except to the extent that the total portion of the Substitute Assets and the Additional Assets ultimately forfeited to the United States in a Final Order of Forfeiture after the adjudication of all third party interests exceeds the amount of the Money Judgments." (Doc. No. 848 ¶ 1.) JP Morgan therefore would not run afoul of the Order by releasing Pension Scheme funds so long as the release of money did not reduce the portion of the assets that could be forfeitable to the government or interested third parties. But of course, the extent of the third-parties' interest in the assets remains uncertain during the pendency of the ancillary proceeding. Accordingly, an order directing JP Morgan to release $2,000,000 risks prejudicing these parties' (or the government's) interests, thus running headlong into the Second Preliminary Forfeiture Order. While the Court would entertain proposals for an order that clearly avoided such risks, it is persuaded that broadly directing the release of $2,000,000 at this time does not fit the bill.

*Second*, the Pension Scheme's motion for summary judgment is premature. Rule 32.2 of the Federal Rules of Criminal Procedure establishes a series of sequential events for this ancillary proceeding: as an initial matter, the Court must resolve the government's pending motion to dismiss third-party petitions asserting an interest in the forfeiture assets; "[a]fter disposing" of this motion, the Court may permit discovery; and then, "[w]hen discovery ends, a party may move for summary judgment." Fed. R. Cr. P. 32.2(c)(1); *see also* *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004) ("Only after some discovery has taken place may a party move for summary judgment . . . ."). In light of this ordering of events, the Pension

Scheme's motion for summary judgment must await resolution of the pending motion to dismiss as well as any discovery that the Court may thereafter deem appropriate.

*Third*, the Court needs additional details before ruling on the Pension Scheme's request to repatriate assets to the United Kingdom. To start, though the government expressed a willingness to consent to an order distributing the Pension Scheme's funds to individual retirement plans (Doc. No. 597), the government has not yet staked out a position on repatriation. Moreover, neither the government nor the Pension Scheme has addressed whether moving the assets overseas would undermine efforts of interested third parties to collect those assets in the event that the Court rules in their favor in the ancillary proceeding. And most importantly, it is unclear whether a repatriation order would be consistent with the Second Preliminary Forfeiture Order, which identifies assets held in a specific, number-identified JP Morgan account. If a repatriation order would effectively, even if marginally, amend the Second Preliminary Forfeiture Order, the Court likely would lack authority to enter the order since the Second Preliminary Forfeiture Order is currently on appeal. *See Manrique v. United States*, 137 S. Ct. 1266, 1271 (2017) ("Filing a notice of appeal transfers adjudicatory authority from the district court to the court of appeals."); *United States v. Bennett*, No. 97-cr-639 (SAS), 2004 WL 829015, at *3 (S.D.N.Y. Apr. 15, 2004) ("Although the district court has jurisdiction to consider third party claims to property [subject to a forfeiture order,] . . . after a notice of appeal is filed, the district court lacks jurisdiction to consider a defendant's claims." (quoting *United States v. Libretti*, 38 F.3d 523, 527 (10th Cir. 1994)).

Accordingly, IT IS HEREBY ORDERED THAT the Pension Scheme's request for an order directing JP Morgan to release $2,000,000 is DENIED without prejudice. IT IS FURTHER ORDERED THAT the Pension Scheme's motion for summary judgment is DENIED

without prejudice. Finally, IT IS ORDERED THAT the Pension Scheme and the government shall submit a joint letter by August 11, 2021, addressing the concerns outlined in the preceding paragraph. The Clerk of Court is respectfully directed to terminate the motions pending at document numbers 948, 956, 957, and 960.

SO ORDERED.

Dated: July 28, 2021
New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation