UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| - v - | |
| AMERINDO INVESTMENT ADVISORS INC., AMERINDO INVESTMENT ADVISORS, INC., AMERINDO ADVISORS UK LIMITED, AMERINDO MANAGEMENT INC., AMERINDO TECHNOLOGY GROWTH FUND, INC., AMERINDO TECHNOLOGY GROWTH FUND II, INC., and TECHNO RAQUIA, S.A., | No. 05-cv-5231 (RJS) |
| Defendants, | |
| and | |
| CITIBANK, N.A., AMERICAN STOCK TRANSFER & TRUST CO., LLC, and EQ SHAREOWNER SERVICES, | ORDER |
| Garnishees. | |
| UNITED STATES OF AMERICA | |
| -v- | |
| ALBERTO WILLIAM VILAR, *et al*., | No. 05-cr-621 (RJS) |
| Defendants. | |

RICHARD J. SULLIVAN, Circuit Judge:

    Before the Court are several motions related to the efforts of the Securities and Exchange

Commission ("SEC") to collect on a judgment entered by this Court against Amerindo Technology

Growth Fund II, Inc. ("ATGF II").  Specifically, the SEC has moved for a disposition order requiring the garnishment of certain properties belonging to ATGF II.  (Doc. No. 773.)[1]  That motion has spawned separate motions to raise objections to the garnishment filed by (1) ATGF II; (2) Alberto Vilar and Gary Tanaka, who are defendants in the related criminal action; (3) Lisa and Debra Mayer, interested parties in the SEC action; and (4) a group of claimants in the SEC action affiliated with investor Paul Marcus ("the Marcus Claimants").  (Doc. Nos. 775, 785, 786; 05-cr-621, Doc. Nos. 940, 942.)  For the reasons set forth below, the Court denies ATGF II's objection as untimely, grants the motions of the third-party objectors, and denies the SEC's motion for a disposition order.

## I.    Background

In 2005, the SEC brought this civil action against Vilar and Tanaka, along with one of the Amerindo entities controlled by them, for violating federal securities laws in connection with their investment schemes.  (Doc. No. 1.)  Later that year, the SEC amended its complaint to add several additional Amerindo entities, including ATGF II.  (Doc. No. 44.)  The Court appointed a Receiver over all assets of the Amerindo entities in 2012 and confirmed the Receiver's appointment in 2013.  (Doc. Nos. 267, 272.)  The following year, the Court entered a default judgment against ATGF II, finding it jointly and severally liable with the other Amerindo entities for $36,570,451.87 and ordering it to pay a civil penalty in the amount of $17,969,803.27.  (Doc. No. 435 at 5.)  During the course of the Receivership, the Court approved four interim distributions to the defrauded investors, ultimately returning the entirety of the investors' principal in the amount of $54,404,467.83, plus an inflation adjustment of $13,849,639.27.  *See generally SEC v. Amerindo*

---

[1] Unless otherwise specified, all record citations are to case number 05-cv-5231; case number 05-cr-621 is the related criminal case in which Vilar and Tanaka were named as defendants and convicted at trial.  References to page numbers correspond to docketing's pagination, not to the filing's own pagination.

*Inv. Advisors Inc.*, No. 05-cv-5231 (RJS), 2017 WL 3017504, at *1 (S.D.N.Y. July 14, 2017).  The Receivership remains open during the pendency of the ancillary forfeiture proceeding in the parallel criminal case.  (Doc. No. 722 at 11.)

On December 21, 2020, the Court issued a post-judgment writ of garnishment (the "Garnishment Order" or the "Order"), pursuant to the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3205, against assets controlled by Garnishees Citibank, N.A. ("Citibank"), American Stock Transfer & Trust Co., LLC. ("AST"), and Equiniti Trust Co. d/b/a EQ Shareowner Services ("EQ"), on the civil penalties of $17,969,803.27 owed to the SEC by each of the entity Defendants, including ATGF II.  (Doc. No. 763.)  The Garnishment Order required the Garnishees to respond within ten days, and an attached exhibit informed the entity Defendants that they had a right to object to the Garnishees' answers and/or to request a hearing if they did so "[w]ithin 20 days" of receiving the answer.  (*Id.* at 3, 14.)  On January 4, 2021, the SEC served the entity Defendants and Garnishees with the Order and with a notice provided by the Clerk of Court (Doc. Nos. 762, 766), which explained that the Defendants also had the right to object to garnishment itself, so long as they did so "within 20 days" of being served with the Clerk's notice (Doc. No. 765 at 3).  Neither the Court's Order nor the Clerk's notice required third parties who were not named in the Garnishment Order to object within a particular time period.

Within ten days, the Garnishees had filed their answers to the Garnishment Order and served them on the entity Defendants by mail.  The Garnishees identified the following non-exempt property as within their possession, custody, or control:

- $12,964.22 in United States currency held by Citibank in the name of ATGF II;

- $4,155,885.00 in securities held by EQ in the name of ATGF II; and

- $8,637,911.11 in securities held by AST in the name of ATGF II.

(Doc. Nos. 767, 769, and 770.)[2]  The Garnishees did not claim any exemptions, objections, defenses, or off-sets, either for themselves or on ATGF II's behalf.[3]

On March 2, 2021, more than 45 days after the Garnishees docketed their answers, the SEC moved for a disposition order directing the relevant Garnishees to liquidate and remit the Garnishment Assets to the SEC as partial satisfaction of the judgment against ATGF II.  (Doc. No. 773.)  Soon after, ATGF II asked the Court to consider its "late objection to the disposition" of the Garnishment Assets, and asserted that the assets should be added to the Receivership and/or be used to satisfy forfeiture in the related criminal case.  (Doc. No. 775.)  Three days later, Vilar and Tanaka objected on the same grounds, explaining that they "had no idea that by not objecting in 20 days, they would be waiving their right to object to the disposition of nearly $13 million in assets."  (05-cr-621, Doc. No. 935 at 1–2.)  The Mayers then sought to join Vilar and Tanaka's letter motion to argue that the "Garnishment Assets should have been subject to the [R]eceivership" and "ultimately made part of the forfeiture proceeding."  (Doc. No. 785; *see also* Doc. No. 778.)  Finally, the Marcus Claimants requested leave to object, though their letter motion primarily expressed doubt "about the completeness of the Receiver's discharge of his responsibility."  (Doc. No. 786 at 1.)

The SEC responded to several of these objections, arguing that the objections were untimely and, in any event, baseless.  (Doc. Nos. 779, 783.)  In addition, the government filed a response to Vilar and Tanaka's submission, explaining that the Garnishment Assets were not

---

[2] On February 2, 2021, AST amended its answer to identify ATGF II as the property holder.  (Doc. No. 771.)

[3] The only docket activity between the filing of Garnishees' answers and the SEC's instant motion was a letter filed by the Marcus Claimants stating that AST's answers "raise[d] concerns about whether the Receiver has recovered all of the Amerindo assets capable of monetization" and "request[ing] that the Court conduct an inquiry into the Receiver's performance."  (Doc. No. 772.)  The Court declines that request, but notes once again that it is only due to the Receiver's admirable efforts that the investors have recovered more than $68,000,000, making this one of the most successful receiverships in history.

subject to the operative forfeiture orders in the criminal case.  (05-cr-621, Doc. No. 939.)  Vilar and Tanaka submitted a reply to both the SEC and the government, emphasizing their view that garnishment represents "an attempt to circumvent the authority of the Receiver."  (05-cr-621, Doc. No. 940.)

Separately, Vilar and Tanaka requested that "the Court hold its decision [on garnishment] in abeyance" while they attempted to negotiate a global settlement with the government in the criminal case.  (05-cr-621, Doc. No. 941).  On August 13, 2021, the government informed the Court that it had reached an agreement in principle on a global settlement with Vilar and Tanaka.  (05-cr-621, Doc. No. 965.)  Less than a month later, on September 8, 2021, the Court received notice that Vilar had passed away.[4]  (Doc. No. 793.)  On October 15, 2021, the government finalized a global settlement with Tanaka and various Amerindo corporate entities.  (05-cr-621, Docs. No. 966, 977.)

## II.   Analysis

The Court agrees with the SEC that the objection filed by ATGF II is untimely.  Under the FDCPA, "[a]fter the garnishee files an answer if no hearing is requested within the required time period, the court shall promptly enter an order as to the disposition" of the garnished property.  28 U.S.C. § 3205(c)(5).  There are two, overlapping time periods for a party to object to garnishment and/or request a hearing.  First, as the Court has already explained (Doc. No. 763 at 14), a "judgment debtor" may request a hearing within 20 days of receiving notice of the writ of garnishment.  *See id.* § 3202(d).  Second, as the notice from the Clerk noted, "[w]ithin 20 days after receipt of the [garnishee's] answer, the judgment debtor or the United States may file a written

---

[4] Vilar's passing does not preclude the Court from adjudicating the current motions, because the other third-party objectors likewise requested that the Court find that the Garnishment Assets are part of the Receivership and/or part of the forfeiture proceeding in the criminal case.

objection to the answer and request a hearing." *Id.* § 3205(c)(5).  Here, the ATGF II's objection was not filed until 37 days after receiving the writ of garnishment and 27 days after receiving the Garnishees' answers.  Consequently, the objection was untimely, and the Court will not consider it.  *See United States v. Kwai Fun Wong*, 575 U.S. 402, 410–11 (2015) ("[W]e have described filing deadlines as quintessential claim-processing rules, which seek to promote the orderly progress of litigation[.]" (internal quotation marks omitted)); *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019) ("A claim-processing rule may be mandatory in the sense that a court must enforce the rule if a party properly raises it." (internal quotation marks and alteration omitted)).

The third-party objectors, however, are on very different footing.  The FDCPA implies "that nonparties with an interest in the targeted property may participate in the collection proceedings for the purpose of asserting their interest in the property." *United States v. Kollintzas*, 501 F.3d 796, 801 (7th Cir. 2007); *see also* 28 U.S.C. § 3202(c) ("A copy of the notice and a copy of the application for granting a remedy under this subchapter shall be served . . . on each person whom the United States, after diligent inquiry, has reasonable cause to believe has an interest in property to which the remedy is directed.").  This is consistent with the long-recognized principle that the "essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976) (internal quotation marks and parentheses omitted).

Although the SEC contends that the third parties failed to timely object, neither the Court's Garnishment Order nor the Clerk's notice directed third parties to file objections within twenty days of the Garnishees' answers.  The FDCPA likewise does not explicitly state that its timing rules apply to objections filed by third parties.  *See* 18 U.S.C. § 3205(c)(5) (setting deadline for

"the judgment debtor or the United States" to object); *id.* § 3202(d) (providing 20 days in which "the judgment debtor" can request to quash a garnishment order).  Accordingly, the Court will consider the third parties' objections.

In considering those objections, the Court is ultimately persuaded that the Garnishment Assets are, in fact, Receivership Assets.  The Court appointed Ian Gazes as the Receiver over all assets of the Amerindo companies – including ATGF II – in 2012, and confirmed his appointment in 2013.  (Doc. Nos. 267, 272.)  To dispel any doubt on the matter, the Court explicitly ordered in 2014 that "the Receivership Assets of the Companies over which the Receiver has been appointed include *all* assets of the Companies, wherever held."  (Doc. No. 507 at 2 (emphasis in original)).  And since the Receivership remains open (Doc. No. 722 at 11), the Garnishment Assets are properly understood to fall within it.  Of course, the SEC's outstanding judgment against the entity Defendants means that it retains an interest in these assets, but that interest should be considered alongside those of the investors, who likewise claim an interest in the property.

While the third-party objectors have further argued that the Garnishment Assets are, or should be, part of the forfeiture proceeding in the criminal action, the Court disagrees.  Clearly, the Garnishment Assets are not subject to either of the operative forfeiture orders that were entered in the criminal action.  (*See* 05-cr-621, Doc. Nos. 802, 848).  Moreover, the government has disclaimed any intention of pursuing the Garnishment Assets since it believes that the assets already part of the forfeiture proceeding will cover the restitution and forfeiture judgments.  As a result, there is currently no need to wrap the Garnishment Assets into the assets subject to the ancillary forfeiture proceeding.

### III.    Conclusion

For the reasons given above, IT IS HEREBY ORDERED that ATGF II's motion for an untimely objection to the Garnishment Order is DENIED; the remaining motions for leave to file objections are GRANTED; and the SEC's motion for a disposition order is DENIED.  IT IS FURTHER ORDERED that, by January 28, 2022, the SEC shall submit a letter to the Court proposing next steps to bring the Garnishment Assets under the control of the Receivership.

Finally, the Clerk of Court is respectfully directed to close the open motions at 05-cv-5231, document numbers 775, 785, and 786, as well as the open motions at 05-cr-621, document numbers 940, 941, and 942.

SO ORDERED.

Dated:         January 3, 2022
               New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

8